

# SUBCONTRACT AGREEMENT

This agreement made as of the 10th day of January in the year 2002:

BETWEEN the Contractor: **PEACOCK CONSTRUCTION COMPANY, INC.**
P.O. Box 530098
Harlingen, Texas 78553

and the Subcontractor: **SOUTH TEXAS MASONRY**
805 E. Business 83
Pharr, Texas 78577

The Project: **LAS DUNAS CONDOMINIUMS**
4212 Gulf Boulevard
South Padre Island, Texas

The Owner: **LAS DUNAS INC.**
4212 Gulf Boulevard
South Padre Island, Texas

The Architect: **LABUNSKI ASSOCIATES**
1514 S. 77 Sunshine Strip Ste. 24
Harlingen, Texas 78550

The Contractor and Subcontractor agree as set forth below:

## ARTICLE 1 - The Contract Documents

1.1 The Contract Documents for this Subcontract consist of this Agreement and any Exhibits attached hereto, the Drawings, the specifications, all Addenda issued prior to and all Modifications issued after execution of the Agreement between the Owner and Contractor and agreed upon by the parties to this Subcontract. These form the Subcontract, and are a part of the Subcontract as if attached to this Agreement or repeated herein.

## ARTICLE 2 - The Work

2.1 The Subcontractor shall perform all the Work required by the Contract document for:
**MASONRY**
**STUCCO**
Note: Delete all EIFS (except at mouldings as shown on plans)
Price includes Surewall/ Plaster Only

## ARTICLE 3 - The Contract Sum

3.1 The Contractor shall pay the Subcontractor in current funds for the performance of the Work, subject to additions and deductions, the Contract sum of:

3.2 The Contract sum is determined as follows: Per Revised Quotes Dated 12/10/01



EXHIBIT 1

## ARTICLE 4 - Progress Payments

4.1 The Contractor shall pay the Subcontractor monthly progress payments less any stated retainage. 10%

4.2 Applications for monthly progress payments shall be in writing, shall state the estimated percentage of the Work in this Subcontract that has been satisfactorily completed and shall be submitted to the *CONTRACTOR FOR APPROVAL ON OR BEFORE THE 25th DAY OF EACH MONTH.*

4.2.1 Draw Requests to Contractor shall be on an approved Draw Request Form with a complete cost breakdown satisfactory to Contractor and Owner. *NO DRAW REQUESTS WILL BE SUBMITTED FOR PAYMENT WITHOUT THE BREAKDOWN.*

4.3 Progress payments will be made to the Subcontractor within 7 days of receipt of funds from Owner to General Contractor.

4.4 No payment received by the Subcontractor shall be used to satisfy or secure any indebtedness other than one owed by the Subcontractor to a person furnishing labor or materials for use in performing Subcontractor's Work.

4.5 The Contractor shall have the right at all times to contact the Subcontractor's subcontractors and suppliers to ensure that the same are being paid by the Subcontractor for labor or materials furnished for use in performing the Subcontractor's Work. The Contractor shall also have the right to issue joint checks to the Subcontractor and their Subcontractors and Suppliers.

4.6 When required by the Contractor, and as a prerequisite for payment, the Subcontractor shall provide, in a form satisfactory to the Owner and the Contractor, partial lien or claim waivers and affidavits from the Subcontractor and its subcontractors and suppliers for the completed Subcontractor's Work. Such waivers may be made conditional upon payment.

4.7 *IN ORDER TO BE PAID FOR STORED MATERIAL*, Subcontractor must furnish to Contractor invoices and property insurance covering stored material at storage location. *THE INVOICES AND INSURANCE CERTIFICATES MUST ACCOMPANY THE MONTHLY APPLICATION FOR PAYMENT.* Only completely fabricated items will be considered as stored material (no components). All materials stored by Subcontractor at the jobsite shall be the responsibility of the Subcontractor and shall be insured by same. Joint checks may be required for payment.

4.8 Retainage 10%.

## ARTICLE 5 - Final Payment

5.1 Final payment, constituting the entire unpaid balance of the Contract Sum, shall be due when the Work described in this Subcontract is fully completed and performed and is satisfactory to the Architect, and shall be payable approximately 30 days after substantial completion of the Project, or at such time as the retainage is paid to the General Contractor.

5.2 Before issuance of the final payment, the Subcontractor, if required, shall submit evidence satisfactory to the Contractor that all payrolls, bills for materials and equipment, and all known indebtedness connected with the Subcontractor's Work have been satisfied.

## ARTICLE 6 - Insurance

6.1 Prior to starting work, the Subcontractor shall obtain any insurance, including Worker's Compensation and General Liability, required by the Contract Documents, from a responsible insurer, and shall furnish satisfactory evidence to the Contractor that the Subcontractor has complied with these requirements. Subcontractor's Insurance will be considered as Primary.

6.2 In the event the Subcontractor fails to obtain or maintain any insurance coverage required under this Agreement, the Contractor may purchase such coverage and charge the expense thereof to the Subcontractor.

6.3 Subcontractor agrees to indemnify, defend, and hold harmless the Contractor (or Owner or subcontractor, their affiliated entities, and employees and agents) from and against any and all losses, claims, suits, actions, demands, damages, fines, penalties, costs (including any and all related court costs and attorney's fees), liabilities or causes of action for bodily injury, death or property damage (including claims or causes of action for bodily injury or death to employees of the subcontractor who may or not be acting in the course and scope of their employment at the time of their bodily injury or death which occurs in connection with or involves in any manner subcontractor's or subcontractor's agents' employees', invitees', performance of work or service under this contract, regardless of whether or not such claims or alleged acts or omissions are caused in whole or in part (or are alleged to be caused in whole or in part) by any negligence on the part of the Contractor.

6.4 It is the specific intent of the parties to this contract that the subcontractor is agreeing to indemnify the Contractor for the effects of the General Contractor's its agents' and employees' own negligence or other wrongful conduct.

## ARTICLE 7 - Warranty

7.1 The Subcontractor warrants its work against all deficiencies and defects in materials and/or workmanship and as called for in the Contract Documents. If no guarantee or warranty is required of the Subcontractor in the Contract Documents, then the Subcontractor shall guarantee or warranty its work as described above for the period of one year from the date(s) of substantial completion of all or a designated portion of the Subcontractor's work or acceptance or use by the Contractor or Owner of designated equipment, whichever is sooner.

## ARTICLE 8 - Notice to Cure

8.1 If the Subcontractor refuses or fails to supply enough properly skilled workers, proper materials, or maintain the Schedule of Work, or it fails to make prompt payment for its workers, sub-contractors or suppliers, disregards laws, ordinances, rules, regulations or orders of any public authority having jurisdiction, or otherwise is guilty of a material breach

of a provision of this Agreement, and fails within three (3) working days after receipt of written notice to correct such default with diligence and promptness, then the Contractor, without prejudice to any rights or remedies, shall have the right to any or all of the following remedies:

(a) supply such number of workers and quantity or materials, equipment and other facilities as the Contractor deems necessary for the completion of the Subcontractor's Work, or any part thereof which the Subcontractor has failed to complete or perform after notice, and charge the cost thereof to the Subcontractor, who shall be liable for the payment of same including reasonable overhead, profit and attorney's fees;

(b) contract with one or more additional contractors to perform such part of the Subcontractor's Work as the Contractor shall determine will provide the most expeditious completion of the total Work and charge the cost thereof to the Subcontractor;

(c) withhold payment of any monies due the Subcontractor pending corrective action to the extent required by and to the satisfaction of the Contractor and;

(d) in the event of an emergency affecting the safety of persons or property, the Contractor may proceed as above without notice.

## ARTICLE 9 - Miscellaneous

9.1 Clean-up - At all times keep the building and premises free from debris and unsafe conditions resulting from the Subcontractor's Work. If the Subcontractor fails to remove their debris, the Contractor will do the clean up at the expense of the Subcontractor.

9.2 Pre-Construction Meeting - This is a mandatory meeting for all Subcontractors and major suppliers.

9.3 Job Progress Meetings - To be scheduled on a monthly basis. Attendance of the meetings is mandatory and shall be a prerequisite for approval of monthly draws.

9.4 Safety - Subcontractor is responsible for the safety of his/her personnel while on the jobsite. All OSHA regulations for safety to be strictly followed. (If discrepancies are found by supervisory management of Peacock Construction Co., Inc. or their consultants, written notice shall be given to cure. The subcontractor must immediately remove the hazard and has 3 calendar days to cure. If a subcontractor flagrantly disregards warnings and does not attempt cure, then they will be deemed in breach of contract. Necessary procedures to cure pertaining to breach of contract are in Article 8.) Any penalties due to violations shall be borne solely by the subcontractor. Safety meetings to be held regularly at the jobsite and attendance is mandatory.

This agreement is entered into as of the day and year first written above.

CONTRACTOR:

_____
PEACOCK CONSTRUCTION CO., INC.
William T. Peacock – President

SUBCONTRACTOR:

_____
SOUTH TEXAS MASONRY
Baldemar Salazar