United States District Court
Southern District of Texas
FILED

APR 1 8 2005

Michael N. Milby
Clerk of Court

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| PEACOCK CONSTRUCTION COMPANY, INC. | § | |
| | § | |
| *v.* | § | CIVIL ACTION NO. B-04-111 |
| | § | |
| HARTFORD LLOYD'S INSURANCE COMPANY | § | |

### PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF COVERAGE, AND RESPONSE IN OPPOSITION TO DEFENDANT'S 12(B)(6) MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT (*WITH AUTHORITIES*)

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now plaintiff, **PEACOCK CONSTRUCTION COMPANY, INC.** (hereinafter "Peacock"), pursuant to FED. R. CIV. P. 56, and, subject to its other pending motions on file herein, files this Cross-Motion for Summary Judgment on the Issue of Coverage, and Response in Opposition to the 12(B)(6) Motion to Dismiss or Alternatively for Summary Judgment of Defendant Hartford Lloyd's Insurance Company (hereinafter "Hartford Lloyd's Motion to Dismiss"), and would show unto the court as follows:

### I.

In support of this pleading, Peacock relies on the following summary judgment evidence, tendered herewith in a separate binder due to its voluminousness:

A.    The Affidavit of William T. Peacock, Jr., and its attached Exhibits "A" through "D", Tab 1 of the binder (hereinafter "Peacock Affidavit);

---

*Peacock Construction v. Hartford, et al.*; Cross-Mot. for Partial Summ/Jdmt -- p. 1 of 45 pgs.

B.   The oral deposition of Hartford Lloyd's company representative Bert Bartram, along with part of its Exhibit 2 (those documents referenced in this pleading, as the exhibit itself consists of the entire Hartford Lloyd's claims file of approximately 600 pages), its Exhibits 3 - 4, and 6-15, Tab 2 of the binder (not attached are its Exhibits 1 and 5, consisting of the entire Hartford Lloyd's underwriting file and the "Hartford Spectrum Business Insurance Policy", respectively);

C.   The oral deposition of Hartford Lloyd's claim services consultant Nancy Kaechler, along with its Exhibits "1" and "2, Tab 3 of the binder;

D.   The oral deposition of Hartford Lloyd's designated expert witness Michael Sean Quinn, along with its Exhibits 4 through 16 (not attached are its Exhibit 1 [Hartford Lloyd's Expert Designation, including Quinn Expert Report], Exhibit 2 [Quinn resumé] and Exhibit 3 [Quinn case law file], Tab 4 of the binder;

E.   The transcript of the hearing on Plaintiff's Motion to Remand dated December 16, 2004, Tab 5 of the binder;

F.   The "Hartford Spectrum Business Insurance Policy" number 46 SBA NS 1014, underwritten by Hartford Lloyd's and issued to South Texas Masonry as the named insured, in effect between December 1, 2001 and December 1, 2002 (hereinafter "the policy"), attached as Exhibit 2 to Hartford Lloyd's Motion to Dismiss (also constituting Bartram depo. Ex. 5);

G.   The Expert Report of Michael Sean Quinn (hereinafter "Quinn Expert Report"), attached as Exhibit 3 to Hartford Lloyd's Motion to Dismiss (also constituting Ex. "A" to Quinn depo. Ex. 1);

H.   The subcontract agreement dated January 10, 2002 between Peacock and South Texas Masonry (hereinafter "the subcontract agreement"), attached as Exhibit "A" to the Peacock Affidavit, and as Ex. 1 to Hartford Lloyd's Motion to Dismiss (also constituting Bartram depo. Ex. 6; Quinn depo. Ex. 4, and the last four pages of Quinn depo. Ex. 10).

---

## II.

This Court has acknowledged that it is familiar with the underlying facts of this case, and therefore they will not be repeated here.  Hartford Lloyd's denial of coverage under the policy is based on the following allegations, each of which will be addressed directly:

    A.   That Peacock does not qualify as an "additional insured" under the policy;

    B.   That even if Peacock qualified as an "additional insured", there nevertheless could be no coverage, as the incident did not relate to work performed by South Texas Masonry at the Las Dunas Condominium project;

    C.   That the indemnification provisions of the subcontract agreement are invalid because they do not meet the "fair notice" requirements of Texas law;

    D.   Unspecified "policy terms, conditions or exclusions that might preclude coverage".

**A.    Peacock qualifies as an "additional insured" under the policy as a matter of law.**

Hartford Lloyd's has taken the position that Peacock does not qualify as an "additional insured" under the policy issued to South Texas Masonry.  The pertinent provision (referred to in the industry as an "additional insured endorsement"), is found under Section C of the policy -- "WHO IS AN INSURED" -- and reads, in pertinent part, as follows:

    2.   Each of the following is also an insured:

        * * * * * * * * * * * * * * * * *

        **f.   Additional Insureds by Contract, Agreement or Permit**

           Any person or organization with whom you agreed, because of a written contract or agreement or permit, to provide insurance such as is afforded under this Business Liability Coverage Form, but

---

*Peacock Construction v. Hartford, et al.*; Cross-Mot. for Partial Summ/Jdmt -- p. 3 of 45 pgs.

only with respect to your operations, "your work" or facilities owned or used by you. (Exhibit 2 to Hartford Lloyd's Motion to Dismiss, Business Liability Coverage Form [SS 00 08 03 00], pp. 10-11 of 21.)

The subcontract agreement provides, in pertinent part, as follows:

## **ARTICLE 1 - The Contract Documents**

1.1  The Contract Documents for this Subcontract consist of this Agreement and any Exhibits attached hereto, the Drawings, the specifications, all Addenda issued prior to and all Modifications issued after execution of the Agreement between the Owner and Contractor and agreed upon by the parties to this Subcontract. These form the Subcontract, and are a part of the Subcontract as if attached to this Agreement or repeated herein.

* * * * * * * * * * * * * * * * * * * * *

## **ARTICLE 6 - Insurance**

6.1  Prior to starting work, the Subcontractor shall obtain any insurance, including Worker's Compensation and General Liability, required by the Contract Documents, from a responsible insurer, and shall furnish satisfactory evidence to the Contractor that the Subcontractor has complied with these requirements. Subcontractor's Insurance will be considered as Primary.

6.2  In the event the Subcontractor fails to obtain or maintain any insurance coverage required under this Agreement, the Contractor may purchase such coverage and charge the expense thereof to the Subcontractor.

Hartford Lloyd's position is that there is no coverage under the policy because the subcontract agreement does not specifically state that Peacock is to be named as an "additional insured" (Kaechler depo. at 22-23, 25, 29; Bartram depo. at 51-52, 60, 68-69, 71-72; Bartram depo. Ex. 2, Bates 00639-50, *passim*; Ex. 4, p. 3; Ex. 15, p. 1; Quinn depo. Ex. 11, p. 3; Ex. 13, p. 1). However, Hartford Lloyd's expert witness, Michael Sean Quinn, testified that the

---

exact words "additional insured" are not required in the underlying contract agreement for there to be coverage under the policy (Quinn depo. at 61-62). Nancy Kaechler further testified that in her opinion, it did not appear that the intent of the insurance provisions -- paragraphs 6.1 and 6.2 of the subcontract agreement -- was "to be an additional insured on the policy but to verify that the . . . subcontractors [sic] had coverage" (Kaechler depo. at 36-37; See also, Bartram depo. Ex. 2, Bates 00648, entry for 3/11/03 "REC'D COPY OF THE CONTRACT FROM THE INSD [SOUTH TEXAS MASONRY]. THE CONTRACT STATE [SIC] THE INSD WAS TO OBTAIN GL INSURANCE AS REQUIRED BY THE CONTRACT DOCS").

Hartford Lloyd's obviously focuses on the language of paragraph 6.1 of the subcontract agreement, which on its face does not specifically call for Peacock to be named as an additional insured on any general liability policy issued to South Texas Masonry. In its Motion to Dismiss, Hartford Lloyd's argues that under the subcontract agreement "South Texas Masonry was required to obtain a policy of liability insurance, *but did not require that Peacock be named as an additional insured*" (Hartford Lloyd's Motion to Dismiss, p. 1) (emphasis added). Bert Bartram testified that "There is a provision within the subcontract agreement that I believe stipulates that South Texas Masonry purchased [sic] general liability and worker's compensation coverage, which they did. I know of no provision within the subcontract agreement that stipulates that South Texas Masonry is to provide a general liability or workers compensation coverage *for* Peacock Construction". (Bartram depo. at 73, emphasis added). Michael Sean Quinn, in his report, specifically noted that "The relevant language of the

---

*Peacock Construction v. Hartford, et al.*; Cross-Mot. for Partial Summ/Jdmt -- p. 5 of 45 pgs.

contract [subcontract agreement] *does not require* STM [South Texas Masonry] to obtain any sort of insurance *for* PCCI [Peacock]. Article 6.1 *does not require that PCCI be covered* in any liability insurance obtained" (Quinn Report at 13, emphasis added). He continues in that vein, noting that "There is nothing explicit in the language of Art. 6.1 which amounts to or entails *Buy some for PCCI*". (Quinn Report at 13, emphasis in original). Hartford Lloyd's focus is misplaced. The focus, rather, should be on the language of the "additional insured endorsement" of the policy itself. On its face, it does not limit its application to any person or organization "for" whom South Texas Masonry agreed to provide liability insurance, but "with" whom South Texas Masonry agreed to provide such insurance. Nothing within the "additional insured" endorsement requires that South Texas Masonry provide insurance "for" such person or organization, much less specifically name such person or organization as an "additional insured". Thus, there is nothing in this provision which would require South Texas Masonry, under the subcontract agreement, to provide insurance *for* Peacock -- or to specifically name Peacock as an "additional insured" under its policy. Indeed, on its face this language can only be interpreted to mean that if South Texas Masonry -- in its subcontract agreement with Peacock -- agrees with Peacock to provide liability insurance, then *ipso facto* Peacock would qualify as an "additional insured".

Because of the language of the "additional insured endorsement" of the policy, the cases relied on by Michael Sean Quinn in his report as supporting his analysis are easily distinguishable. *Continental Casualty Co. v. Fina Oil & Chemical Co.*, 126 S.W.3d 163, 166

(Tex. App. -- Houston [1st Dist.] 2003, pet. filed) involved an "additional insured endorsement" in a CGL policy that by its very terms specified that coverage would be provided "IF YOU [SUBCONTRACTOR] ARE *REQUIRED TO ADD ANOTHER PERSON OR ORGANIZATION AS AN ADDITIONAL INSURED* ON THIS POLICY UNDER A WRITTEN CONTRACT OR AGREEMENT" (emphasis added). Clearly, then, the "terms and conditions" of two purchase orders that "made no reference to the provision of insurance" by the subcontractor to the contractor, and which were entered into following the presentation of bid documents which proposed to "furnish . . . insurance", did not suffice to make the contractor an "additional insured" entitled to coverage in an action by the subcontractor's employee -- as the underlying contract did not comply with the contract of insurance. *Id.* at 167-69.  To comply with the terms of the "additional insured endorsement" of the policy, the proposal and purchase orders would have had to "specifically require adding Fina [contractor] as an additional insured". *Id.* at 169. In *Trapani v. 10 Arial Way Associates*, 755 N.Y.S.2d 396, 398 (N.Y. Sup. Ct., App. Div. 2003), the "additional insured endorsement" provided coverage for "Any person or organization . . .which requires in a 'work contract' that such person or organization *be made an insured under this policy*" (emphasis added). A one page "Quotation" to do electrical work submitted by a subcontractor which contained the phrase "General liability & workers compensation insurance certificates to follow" clearly did not suffice to make the landowner and general contractor "additional insureds" under the express terms of the policy. *Id.* These two cases are clearly distinguishable, in that the "additional insured endorsement"

---

*Peacock Construction v. Hartford, et al.*; Cross-Mot. for Partial Summ/Jdmt -- p. 7 of 45 pgs.

of the policy at issue herein does not specify that the underlying written agreement must require that another person or organization be named as an "additional insured" for there to be coverage.

The final case relied on by Mr. Quinn, *A.F. Lusi Construction, Inc. v. Peerless Insurance Co.*, 847 A.2d 254 (R.I. 2004) involves a general liability policy with an "additional insured endorsement" similar in language to the one herein -- "to include as an additional insured any person or organization with whom you [Pazquazzi] agreed, because of a written contract or agreement or permit, to provide insurance such as is afforded under this policy". *Id.* at 257. That case, however, is distinguishable because of the language found in the underlying subcontract agreement, which -- unlike the subcontract agreement herein -- did not reflect an obligation on the part of the subcontractor to purchase liability insurance. *Id.* at 258-59. The subcontract agreement in *Lusi* provided that "[T]he Subcontractor [Pazquazzi] shall obtain the required insurance from a responsible insurer, and shall furnish satisfactory evidence to the Contractor [Lusi] that the Subcontractor has complied with the requirements of this Article 9". However, the parties failed to include a description of "the required insurance" in the space provided, which read "Here insert any insurance requirements and Subcontractor's responsibility for obtaining, maintaining and paying for necessary insurance with limits equaling or exceeding those specified in the Contract Documents and inserted below, or required by law". *Id.* at 259. Because this information was left blank, the subcontract agreement in *Lusi* did not "clearly and unambiguously require Pazquazzi to purchase liability insurance"; provided "no support for Lusi's contention that Pazquazzi was required to obtain

---

*Peacock Construction v. Hartford, et al.*; Cross-Mot. for Partial Summ/Jdmt -- p. 8 of 45 pgs.

insurance that would indemnify and provide a defense for Lusi against the negligence claims asserted in the underlying Genereux [injured employee of Pazquazzi] lawsuit"; and "lacks the very information that presumably would have answered this question". *Id.* at 257-58. Furthermore, the certificate of liability insurance issued therein provided "no evidence of any obligation on Pazquazzi's part to provide insurance that would cover Genereux' negligence claims against Lusi". The certificate merely referenced 'BLKT ADD'L INS", and nowhere named Lusi -- or any other party -- as an additional insured. *Id.* at 259. There therefore was "no evidence" within the terms of the subcontract agreement and the certificate of insurance therein that Pazquazzi had agreed "with" Lusi "to provide insurance such as is afforded under this policy [general liability insurance]".

Unlike the subcontract agreement in *Lusi,* paragraph 6.1 of the subcontract agreement between Peacock and South Texas Masonry clearly provides that "[p]rior to starting work, the Subcontractor shall obtain any insurance, including Worker's Compensation and *General Liability* required by the Contract Documents . . ." (emphasis added). Clearly, South Texas Masonry contracted "with" Peacock to provide general liability insurance -- the very type of insurance provided under the "Hartford Spectrum Business Insurance Policy" at issue. That is all that was required to conform with the "additional insured endorsement" of the policy, and for Peacock to qualify as an "additional insured" as a matter of law. Additionally, that this was the party's intent is clear by the terms of the Certificate of Liability Insurance dated January 15, 2002, which clearly states -- within the box designated "DESCRIPTION OF OPERATIONS"

-- "Peacock Construction Company, Inc. is named as Additional Insured.   Waiver of Subrogation in favor [of] Additional Insured". (Bartram Ex. 12; Quinn Ex. 9).[1]

Insurance policies are controlled by rules of interpretation and construction applicable to contracts generally. *Trinity Universal Insurance Co. v. Cowan*, 945 S.W.2d 819, 823 (Tex. 1997); *Nat'l Union Fire Insurance Co. v. CBI Industries, Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).  The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument.  *Id.*  Terms in contracts are given their plain, ordinary and generally accepted meaning unless the contract itself shows that particular definitions are used to replace that meaning. *Ramsay v. Maryland American General Insurance Co.*, 533 S.W.2d 344, 346 (Tex. 1976); *Western Reserve Life Insurance Co. v. Meadows*, 261 S.W.2d 554, 557 (Tex. 1953).  If a written contract is so worded that it can be given a definite or certain legal meaning, it is not ambiguous.  *Nat'l Union, supra* at 520.  The interpretation of an unambiguous contract is an question of law for the court.  *Perry v. Houston Independent School Dist.*, 902 S.W.2d 544, 547 (Tex. App. -- Houston [1st Dist.] 1995), *writ dism'd w.o.j.*) Moreover, an intent to exclude coverage must be expressed in clear and unambiguous language.  *State Farm Fire & Casualty Co. v. Reed*, 873 S.W.2d 698, 699 (Tex. 1993).  If an insurance policy is ambiguous, however, the interpretation that most favors coverage will be

---

[1] The other Certificate of Liability insurance issued during the effective term of the policy, dated August 30, 2002, does not contain this reference within the "DESCRIPTION OF OPERATIONS", but lists Peacock Construction Company in the box below the notation "Certificate Holder" and "Additional Insured; Insurer Letter" -- as also does the January 15, 2002 certificate (Kaechler depo. Ex. 1).

---

adopted, and it will be interpreted in favor of the insured. *Grain Dealers Mutual Insurance Co.*
*v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997); *Reed, supra.*

Applying the accepted rules for contract interpretation, the "additional insured
endorsement" of the policy is clear. Coverage is provided as an "additional insured" to any
person or organization "with" whom the named insured has agreed in writing to provide
coverage under a general liability policy. Language of a contract should be given its plain
grammatical meaning unless it definitely appears that the intent of the parties would thereby
be defeated. *Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 529 (Tex. 1987). The word
"with" is one of ordinary meaning, and is clearly not synonymous with "for". Counsel for
Hartford Lloyd's was therefore correct when he judicially admitted in open court that "Our
position in this case is that, yes, Peacock Construction Company *is an additional insured* with
South Texas Masonry only as to the quality and the terms of the contract". (Transcript of the
12/16/04 hearing on Plaintiff's Motion to Remand, at 20) (emphasis added). Under Texas law,
a formal declaration made in open court by a party or counsel constitutes a judicial admission.
*See, Smith v. Altman*, 26 S.W.3d 705, 708-09 (Tex. App. -- Waco 2000, pet. dism'd w.o.j.).
As a matter of law, therefore, Peacock qualifies as an "additional insured" under the policy.
Regardless, even if there is some ambiguity in interpreting the word "with", this can be of no
consolation to Hartford Lloyd's, since any ambiguity must be resolved in favor of coverage.
Accordingly, the analysis should end here, and this Honorable Court should find as a matter
of law that Peacock qualifies as an "additional insured" under the policy.

Regardless, it is clear from the record that the intent of the parties to the subcontract agreement was for Peacock to be an additional insured on the South Texas Masonry policy. Peacock's subcontractors on the Las Dunas project, including South Texas Masonry, were required to comply with written instructions presented with their subcontract agreements before commencing work, compliance with which was an essential part of the subcontract agreements between Peacock and its subcontractors. This included delivery of a Certificate of Insurance designating Peacock as an "additional insured" under the subcontractors' general liability insurance policies, and a sample certificate was provided which noted "THE INSURANCE CERTIFICATE FURNISHED TO US [PEACOCK] BY YOUR AGENT MUST MEET OR SURPASS THE LIMITS AS NOTED ON THIS SAMPLE. ALL WORDING SHALL APPLY". The sample certificate clearly and unequivocally noted that there was to be a "WAIVER OF SUBROGATION AND ADDITIONAL INSURED IN FAVOR OF CERTIFICATE HOLDER [PEACOCK] ON GENERAL LIABILITY". (Peacock Affidavit, and its Ex. "B"; Bartram depo. Ex. 2, Bates 01076-78, p. 1; Ex. 7, 11; Ex. 14, pp. 8-10; Quinn depo. Ex. 5; Ex. 6, pp. 8-10; Ex. 7). It was in compliance with these conditions that Peacock was presented with two Certificates of Liability Insurance regarding coverage under South Texas Masonry's Commercial General Liability policy (CGL) which was in effect between December 1, 2001 and December 2, 2002 -- one dated January 15, 2002, and one dated August 30, 2002. These were issued through McQueary Henry Bowles & Troy, and clearly designated Peacock as an "additional insured". (Bartram depo. Ex. 2, Bates 01076-78, p. 1 ("As you can

---

*Peacock Construction v. Hartford, et al.*; Cross-Mot. for Partial Summ/Jdmt -- p. 12 of 45 pgs.

see the 'Sample' Certificate of Insurance states that the Certificate holder (Peacock) will be named as an additional insured".); Bartram depo. Ex. 12; Ex. 13; Kaechler depo. Ex. 1; Quinn depo. Ex. 8, 9).[2]

Baldemar Salazar of South Texas Masonry was aware of Peacock's policies *vis-a-vis* its subcontractors due to a prior course of dealing with Peacock (Peacock Affidavit). David Dunn, an attorney hired by Hartford Lloyd's to represent South Texas Masonry in the underlying state court action, informed Nancy Kaechler that "I checked with Baldemar Salazar at South Texas Masonry regarding his course of dealings with Peacock Construction on projects where they had worked together prior to the one where the incident involved in this litigation occurred. As it turns out, South Texas Masonry has uniformally provided Peacock with Certificates of Insurance that named them [*sic*] as additional insureds on the projects where they worked together prior to the one involved in this litigation. *This is certainly strong evidence in support of Peacock's claim that South Texas Masonry was contractually obligated to name them as an additional insured"*, and that "past business dealings between South Texas Masonry and Peacock were such that Peacock *was always named as an additional insured* on South Texas Masonry's policy". (Bartram depo. Ex. 2, Bates 10176-78, p. 2) (emphasis added).

_____

[2] These certificates erroneously noted the underwriter as Hartford Casualty Insurance Company, an error that had no bearing on Hartford Lloyd's decision to disclaim coverage under the policy (Kaechler depo. at 50; Quinn depo. at 55, 159-61). At least one other subcontractor at the Las Dunas project, Firecheck of Texas, Inc., obtained a Certificate of Liability Insurance on January 23, 2002 designating Peacock as an "additional insured" on a CGL policy issued by a Hartford affiliate (Kaechler Ex. 2).

_____

It is further clear that the "Contract Documents" referenced in paragraph 1.1 of the subcontract agreement include the primary contract between Peacock and Las Dunas, Inc., and the underlying specifications found in the Project Manual (Peacock Affidavit, Exhibits "C" and "D", respectively). By clearly referencing them, these items became part of the subcontract agreement as a matter of law -- for when a contract refers to another document, that other document is to be interpreted as part of the contract. *See, Gilliam v. Global Leak Detection USA, Inc.*, 141 F.Supp.2d 734, 737-38 (S.D. Tex. 2001). Under the Agreement between Peacock and Las Dunas, Inc., the project "Specifications" are contained in the "Project Manuals" [*sic*], which was presented to and reviewed by Baldemar Salazar prior to South Texas Masonry's submission of a bid for consideration as a subcontractor on the project -- and which was also available at all times for review by all subcontractors at the jobsite -- including South Texas Masonry. (Peacock Affidavit, and its Exhibit "C", Article 8.1.4). The "Contract Documents" for purposes of the Project Manual consisted of the Agreement between the Owner [Las Dunas, Inc.] and the Contractor [Peacock]; the conditions of the Contract (General, Supplementary and other Conditions); Drawings; Specifications; Addenda and subsequent Modifications. The "Project Manual" required that the Contractor purchase CGL insurance naming the Owner -- and others -- as "additional insureds", and further required the Contractor to indemnify the Owner. This included obtaining liability insurance coverage for "claims for damages because of bodily injury . . . or death of a person other than the Contractor's employees", and indemnification of the Owner against a "claim by an employee of . . . a

Subcontractor". This coverage was not only for incidents arising out of the Contractor's operations, but also operations "by any Subcontractor". Moreover, the Contractor was to "require each Subcontractor, to the extent of the work to be performed by the Subcontractor, to be bound to the Contractor by the terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities which the Contractor by these Documents assumes toward the Owner and Architect". (Peacock Affidavit, Ex. "D" -- General Conditions of the Contract for Construction", p. 6, Art. 1.1.1 "THE CONTRACT DOCUMENTS"; p. 10, Art. 3.18 "INDEMNIFICATION"; p. 14, Art. 5.3.1 "SUBCONTRACTUAL RELATIONS"; pp. 19-20, Art. 11.1 "CONTRACTOR'S LIABILITY INSURANCE"; "SUPPLEMENTARY GENERAL CONDITIONS", Art. 11 -- "INSURANCES AND BONDS", pp. 7-8; and Section 01503 -- "INSURANCE AND BONDS", pp. 1-2).

Revisiting the *Lusi* case, the contractor therein argued that the terms of the "flow-down provision" of the primary contract between it and the state of Rhode Island indicated that "Pazquazzi agreed to provide insurance for Lusi". This provision, found at Section 5.31 of the contract between Lusi and the state, had identical language to that found in the primary contract between Peacock and Las Dunas, Inc., and reads, in pertinent part, as follows:

> "By appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities which the Contractor, by these Documents, assumes toward the Owner and Architect". *Lusi, supra* at 261.

---

The Supreme Court of Rhode Island noted that Lusi had to satisfy three prerequisites before it could qualify as an additional insured: (1) prove the existence of an agreement on Lusi's part to provide insurance for the state and the architect that would indemnify them for Lusi's alleged negligence; (2) prove the existence on an agreement on Pazquazzi's part to assume toward Lusi the same insurance obligations and responsibilities that Lusi had assumed toward the state and the project's architect; and (3) show that such an agreement by Pazquazzi would cover the alleged negligence in the underlying lawsuit because such a claim related to "the extent of the work to be performed" by Pazquazzi. The Supreme Court of Rhode Island then noted that Lusi had failed on all three counts. *Id.* at 260. To begin with, Lusi failed to provide the Rhode Island Supreme Court with copies of the general and supplementary conditions of the primary contract in order to allow the Court to ascertain what obligations Pazquazzi may have agreed to undertake with respect to insurance, by failing to include the entire primary contract as part of the record. *Id.* at 762-63. Notably, Lusi did not provide copies of paragraph 3.18 of the "general conditions of the contract for construction", or the text of any other provision that specifically required Lusi to obtain insurance to indemnify the state for claims arising out of the state's negligence, Lusi's negligence, or that of any subcontractor. Accordingly, the Rhode Island Supreme Court lacked sufficient information on which it could discern to what extent the primary contract required Lusi to provide insurance from its subcontractors that would be for the benefit of either Lusi or the state, much less to what extent Pazquazzi agreed to do so. *Id.* at 263. Moreover, the Rhode Island Supreme Court noted that

having failed to identify any insurance under Article 9 of the subcontract agreement therein, Lusi could not rely on the indemnification provisions of the subcontract agreement as being "the legal equivalent of a duty to procure insurance coverage for that indemnity obligation". *Id*. at 260. Finally, the Rhode Island Supreme Court noted that the "flow-down provision" of the primary contract between Lusi and the state suggested that Lusi agreed only to have each subcontractor assume towards Lusi those obligations that Lusi assumed towards the owner and the architect, but only "to the extent of the [w]ork to be performed by the [s]ubcontractor". Accordingly, even if Lusi qualified as an "additional insured", the Court was "unable to say" that the CGL policy provided coverage to indemnify Lusi for its own negligence. *Id*. at 263-64.

In contrast, in the present case Peacock has provided the court with copies of its primary contract with Las Dunas, Inc., and the Project Manual which forms part and parcel thereof. (Peacock Affidavit, Exhibits "C" and "D", respectively). These contain, specifically, the insurance obligations undertaken between Peacock and Las Dunas, Inc., including the "INDEMNIFICATION" provision found at paragraph 3.18 of the "General Conditions of the Contract for Construction", which was absent from the record in the *Lusi* case. Moreover, unlike the subcontract agreement between Lusi and Pazquazzi, the subcontract agreement herein represents the express agreement by South Texas Masonry to be bound by the Contract Documents, including the insurance requirements therein between Peacock and Las Dunas, Inc. As heretofore noted, South Texas Masonry expressly obligated itself to provide general liability insurance as "required by the Contract Documents". (Subcontract Agreement, Art. 6.1).

Additionally, South Texas Masonry expressly obligated itself to "perform all the work required by the Contract Document [*sic*] for: MASONRY . . . STUCCO" (Subcontract Agreement, Art. 2.1); and South Texas Masonry expressly agreed to warrant its work "as called for in the Contract Documents" (Subcontract Agreement, Art. 7.1). It is therefore clear and unequivocal that Peacock required South Texas Masonry to agree to be bound by the terms of the "Contract Documents", including all provisions of the primary contract between Peacock and Las Dunas, Inc., the Project Manual, and all specifications therein -- including the insurance and indemnification requirements. These were reviewed by Baldemar Salazar of South Texas Masonry, and the Project Manual was available on-site for inspection by all subcontractors at all times. (Peacock Affidavit). By virtue of these provisions being incorporated into the subcontract agreement -- including the requirement that all subcontractors assume the same obligations and responsibilities to Peacock that Peacock assumed to Las Dunas, Inc. -- it is clear that Peacock qualifies as an "additional insured" under the general liability insurance policy procured by South Texas Masonry, inasmuch as Peacock itself was required to name the Owner as an additional insured in any liability insurance policy procured by Peacock. Moreover, as set forth below, the underlying incident clearly related to "the extent of the work to be performed" by South Texas Masonry, and the indemnification provisions of the Subcontract Agreement comport with the "express negligence" rule and contemplate the indemnification of Peacock for its own negligence.

---

It is therefore abundantly clear that the "Contract Documents" which formed part of the subcontract agreement required that South Texas Masonry obtain a CGL policy naming Peacock as an "additional insured" -- even if that was not expressly noted in paragraph 6.1 of the subcontract agreement. This Honorable Court was therefore quite correct in noting in its Order Denying Plaintiff's Motion to Remand of January 21, 2005, that "The [subcontract] agreement required that South Texas Masonry obtain a primary general liability insurance policy naming Peacock Construction as an additional insured". Accordingly, if that was an express requirement of the "additional insured endorsement" of the policy -- as claimed by Hartford Lloyd's -- the subcontract agreement would be compliant with such terms, and Peacock would qualify as an "additional insured" as a matter of law.

**B.    The death of Jose Guadalupe Salazar, and the injuries to Remedios Corral and Jose Gracia, were "with respect to" the operations of South Texas Masonry as a matter of law.**

It is undisputed that at the time of the incident in which Jose Guadalupe Salazar was killed, and Remedios Corral and Jose Gracia injured, they were at the jobsite at the Las Dunas Condominium project because of the work that South Texas Masonry was doing for Peacock (Quinn depo. at 75-76, 112-13).[3]    It is further undisputed that the beneficiaries of Jose

---

[3] In its Motion to Dismiss, Hartford Lloyd's judicially admits that "employees of South Texas Masonry were performing work in the furtherance of their [sic] subcontract with Peacock Construction Company when a crane which was operated by Peacock lowered a load of steel rebar and the load fell upon the contract employees of South Texas Masonry". Hartford Lloyd's expert, Michael Sean Quinn, has recognized that the injured employees "were there doing work they had agreed to do . . . They were doing construction stuff"; that their leaving the premises was "part of the job" and "related to their work"; and that they were "clearly still at work in the sense of premises" (Quinn depo. at 76, 112-13,

Guadalupe Salazar, and Remedios Corral and Jose Gracia, individually, were paid worker's

compensation benefits as a result of the incident -- which has even been acknowledged by

counsel for Hartford Lloyd's in open court (Quinn depo. at 113, 135; Kaechler depo. at 58;

Bartram Ex. 2, Bates 00650 - entry for 2/13/03, Bates 00648-49 - entry for 3/04/03, Bates

00645 - entry for 12/12/03; transcript of 12/16/04 hearing on Plaintiff's Motion to Remand, at

20). Yet, Hartford Lloyd's contends that even if Peacock qualifies as an "additional insured"

under the policy, there could be coverage "but only with respect to your [South Texas

Masonry's] operations, 'your work' or facilities owned or used by you" under the "additional

insured endorsement" of the policy -- a provision that the underlying incident purportedly

would not trigger (Exhibit 2 to Hartford Lloyd's Motion to Dismiss, Business Liability

Coverage Form, p. 11 of 21). Under Section G 22(a) of the policy, "your work" is defined, in

---

**Footnote 3 cont'd.**
119). Moreover, since it was first advised of the underlying litigation, Hartford Lloyd's has been aware from the pleadings that these individuals were working for South Texas Masonry when they were injured. (Bartram depo. Ex. 2, Bates 00650, entry for 2/13/03 -- "THEY WERE WORKING ON A CONDO PROJECT WHEN THE LINE ON A CRANE OPERATED BY PEACOCK CONSTRUCTION BROKE AND THE CRANE'S LOAD FELL ON JOSE SALAZAR AND OTHERS"; Bates 01243-52, "Plaintiffs' Second Amended Original Petition for Injunction and Damages", at p. 3, and Bates 01253-57, "Petition-in-Intervention", at pp. 2-3 -- Jose Guadalupe Salazar and Remedios Corral "were working on the tenth floor of the 'Las Dunas' condominium construction project . . . Toward the conclusion of the workday, as they were preparing to leave the work site . . . they were struck by a load of steel rebar being lifted by a crane at said construction project . . . At the time of the incident, Jose Guadalupe Salazar and Remedios Corral were working in the course and scope of their employment with South Texas Masonry, a subcontractor on the project"; Bates 00647, entry for 8/27/03 "THEY HAVE SENT A THIRD AMENDED PETITION THAT DOES NOT HAVE ANY ALLEGATIONS AGAINST OUR INSD [SOUTH TEXAS MASONRY]. HOWEVER, THE PARTIES WHO WERE INJURED WERE INSD EMPLOYEES". See also, Bartram depo. Ex. 4, p. 2; Quinn depo. Ex. 11, p. 2).

---

*Peacock Construction v. Hartford, et al.*; Cross-Mot. for Partial Summ/Jdmt -- p. 20 of 45 pgs.

pertinent part, as: "Work or operations performed by you [South Texas Masonry] or on your

behalf" (Exhibit 2 to Hartford Lloyd's Motion to Dismiss, Business Liability Coverage Form,

p. 21 of 21). The bases for this argument are that:

1.  The incident occurred at the end of the workday, as the three individuals
    were preparing to leave the worksite, and "[t]he lifting and moving of the
    rebar by the crane does not appear to have been the work of STM [South
    Texas Masonry], nor was it part of STM's operation". (Quinn depo. at 73-
    76, 110-11, 113-14; Kaechler depo. at 38-39; Quinn Expert Report, p. 14)[4];

2.  The incident was purportedly caused by "Peacock's sole negligence", and
    therefore "is not with respect to South Texas Masonry's operations, work
    or facilities owned or used by South Texas Masonry" (Kaechler depo. at 31-
    32, 39-40, 44; Bartram depo. at 69-71; Bartram depo. Ex. 15; Quinn depo.
    Ex. 13)[5].

---

[4] Mr. Quinn is inconsistent in his position. In his report he focuses solely on the moving of the
rebar by the crane as not being part of the work or operations of South Texas Masonry. Of course, he
is simply wrong in that regard, for even he acknowledges that the rebar "belonged to STM, and which
they were going to be using the next day or day after" (Quinn depo. at 73). Indeed, it is clear from the
Contract Documents that the rebar was necessary for the masonry services provided by South Texas
Masonry. (Peacock Affidavit, Ex. "C", "Revised Budget Estimate Detail" dated August 23, 2001, p.
3. "FOUNDATION" -- "Reinforcing rebar for masonry to be embedded into foundation";
"MASONRY" -- "Rebar to be installed in this contract from the material is listed in foundation
rebar"; Ex. "D", Section 03200 -- "CONCRETE REINFORCEMENT", Section 04150 --"MASONRY
ACCESSORIES"). See also, Bartram depo. Ex. 2, Bates 00646-47, entry for 9/29/03 -- wherein
Nancy Kaechler (NJK) acknowledged the allegations in Plaintiff's Third Amended Original Petition
for Injunction and Damages (Bates 01215-26) that "THE REBAR THAT PEACOCK WAS MOVING
WAS FOR THE INSDS [SOUTH TEXAS MASONRY'S] OPERATIONS. THIS WILL TRIGGER
A DUTY TO DEFEND". At his deposition, Mr. Quinn testified, however, that his position was based
"on the assumption that these guys were leaving for the day -- the work was over". He acknowledges
that "I could be talked out of that". He also recognizes that payment of worker's compensation benefits
is relevant in the determination of whether the injured employees were in the course and scope of their
employment with South Texas Masonry at the time of the incident. (Quinn depo. at 111)

[5] This position was first articulated in a letter dated February 26, 2004, from Nancy Kaechler
to Ruben Peña (Bartram depo. Ex. 15, p. 2; Quinn depo. Ex. 13, p. 1). It was not mentioned in the
original disclaimer letter of April 3, 2003 from Nancy Kaechler to Peacock (Bartram depo. Ex. 4; Quinn

---

Texas caselaw makes short shrift of these positions.  In analyzing whether an employee's injury arises out of his employer's work for purposes of an "additional insured endorsement" under a Commercial General Liability (CGL) policy -- where his employer is the named insured under the policy -- the focus is on whether the employee is on the site for the purpose of carrying out his employer's work.  *Highland Park Shopping Village v. Trinity Universal Insurance Co.*, 36 S.W.3d 916, 917-18 (Tex. App. -- Dallas 2001, no pet.) (contractor's CGL carrier unsuccessfully sought declaratory judgment that landowners were not additional insureds with respect to liability for injury to the contractor's employee); *McCarthy Brothers Co. v. Continental Lloyds Insurance Company*, 7 S.W.3d 725, 729-30 (Tex. App. -- Austin 1999, no pet.) (general contractor successfully brought declaratory judgment action against subcontractors' CGL insurers for determination that the general contractor was an additional insured with respect to liability for injury to subcontractors' employee); *Admiral Insurance Co. v. Trident NGL, Inc.*, 988 S.W.2d 451, 454-55 (Tex. App. -- Houston [1st Dist.] 1999, pet. denied) (owner of oil and gas facility successfully brought action against contractor's CGL insurer to recover cost of settling claim by contractor's employee).  *See also, Mid-Continent Casualty Co. v. Swift Energy Co.*, 206 F.3d 487, 497-500 (5th Cir. 2000) (contractors' CGL

---

**Footnote 5 cont'd.**
depo. Ex. 11), or in a subsequent letter dated August 27, 2003 from Nancy Kaechler to Cary Toland (Quinn depo. Ex. 12).  However, it was first contemplated nearly a year earlier. (Bartram depo. Ex. 2, Bates 00648, entry for 4/03/03 "THE ADD'L INSURED STATUS WILL NOT RESPOND TO ALLEGATIONS OF PEACOCK'S OWN NEGLIGENCE, ONLY NEGLIGENCE THAT IS ATTRIBUTED TO PEACOCK THAT AROSE OUT OF THE INSD [SOUTH TEXAS MASONRY'S] OPERATIONS".

---

carrier unsuccessfully sought declaratory judgment that it was not required to indemnify or defend well operator in suit filed by injured employee of contractor); and *Mid-Continent Casualty Co. v. Chevron Pipeline Co.*, 205 F.3d 222, 226-29 (5th Cir. 2000) (contractors' liability carrier unsuccessfully sought declaratory judgment that policy did not cover judgment for contractor's employee against landowner) (both cases applying Texas law, following *McCarthy* and *Admiral, supra,* on the premise that the Supreme Court of Texas would so do.)

The *Trinity* decision is most directly in point, and related to coverage for an additional insured which would apply "only with respect to liability arising out of 'your work' for that [additional] insured by or for you [named insured]"[6]. "Your work" was defined as "work or

---

[6] While there is no Texas caselaw construing the exact language found in the policy -- "but only with respect to your operations, 'your work' or facilities owned or used by you" -- the overwhelming majority rule is that identical language contained within CGL policies issued by Hartford affiliates has been construed to provide coverage to an "additional insured" for injury to an employee of the named insured performing work that his employer had contracted to do. *Hartford Casualty Insurance Co. v. Travelers Indemnity Co.*, 2 Cal.Rptr.3d 18, 22-25 (Cal. App. 2003) *rev. denied*; *Daimler Chrysler Corp. v. Process Development Corp.*, 2003 WL 21715874, slip op. at 13 (Mich. App. 2003) (per curiam, not designated for publication), *appeal denied*, 674 N.W.2d 153 (Mich. 2003); *J. Jones Construction Co. v. Hartford Fire Insurance Co.*, 645 N.E.2d 980, 982 (Ill. App. 1995), *appeal denied*, 652 N.E.2d 342 (Ill. 1995). Also rejected was the argument by Hartford that the endorsement limited coverage to injuries attributable to the named insured's negligence, and did not authorize coverage where the only allegation of negligence was against the "additional insured". *Travelers Indemnity, supra; Jones Construction, supra*. Indeed, the "plain commonsense meaning" of the provision requires no more than a "minimal causal connection or incidental relationship" between the claim against the "additional insured" and the named insured's operations. *Travelers Indemnity, supra* at 25. *See also, AIU Insurance Co. v. Clarendon America Insurance Co.*, 2005 WL 591113, slip op. at 5 (Cal. App. 2005) (not yet designated for publication); *United States Fire Insurance Co. v. Aetna Life & Casualty*, 684 N.E.2d 956, 961-63 (Ill. App. 1997), *appeal denied*, 690 N.E.2d 1388 (Ill. 1998). *Contra, Lusi, supra* at 259, 264. Additionally, the Fifth Circuit has interpreted similar language and held that an oil company is entitled to coverage and indemnification from a contractor's CGL policy in a claim by the contractor's employee, where the "additional insured endorsement" applied "only with respect to operations performed by or for the named insured". *Saavedra v. Murphy Oil USA, Inc.*, 930 F.2d 1104,

---

operations performed by you [named insured] or on your behalf" -- exactly as defined in the policy in the case at bar. *Trinity, supra* at 917. The named insured's employee was held to have been on the premises to do the work of his employer when his injury occurred, *even though he had completed the job and was returning to his car when he was injured. Id.* at 917-18. Moreover, the employee recovered worker's compensation benefits for his injury. *Id.* at 917. It was no bar to coverage that the injured employee's suit alleged negligence only on the part of the "additional insured", and not on the part of his employer -- the named insured. *Id.* at 917-18. Indeed, Texas caselaw is clear that even if the the injured employee alleges negligence only on the part of the "additional insured", and not on the part of his employer (the named insured), the incident still relates to or arises out of the work or operations of his employer. *Id.* at 917-18; *McCarthy, supra* at 727, 730-31; *Admiral, supra* at 453-55. As a matter of law, therefore, the incident in which Jose Guadalupe Salazar was killed, and Remedios Corral and Jose Gracia injured, was "with respect to" the operations of South Texas Masonry for purposes of the "additional insured endorsement" of the policy.

---

**Footnote 6 cont'd.**
1110 (5th Cir. 1991) (applying Louisiana law). *Accord, Lim v. Atlas-Gem Erectors Co., Inc.*, 638 N.Y.S.2d 946, 947 (N.Y. Sup. Ct., App. Div. 1996) *mem.; Florida Power & Light Co. v. Penn America Insurance Co.*, 654 So.2d 276, 278-79 (Fla. App. 1995).

---

**C.    Peacock is afforded coverage under the policy as a matter of law because the indemnification provisions of the subcontract agreement between Peacock and South Texas Masonry are valid and enforceable.**

In its Motion to Dismiss, Hartford Lloyd's has abandoned its contention that there is no coverage under the policy for Peacock under the indemnification provisions of the subcontract agreement between South Texas Masonry and Peacock, which read as follows:

### ARTICLE 6 – Insurance

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

6.3    Subcontractor agrees to indemnify, defend, and hold harmless the Contractor (or Owner of subcontractor, their affiliated entities, and employees and agents) from and against any and all losses, claims, suits, actions, demands, damages, fines, penalties, costs (including any and all related court costs and attorney's fees), liabilities or causes of action for bodily injury, death or property damage (including claims or causes of action for bodily injury or death to employees of the subcontractor who may or not be [sic] acting in the course and scope of their employment at the time of their bodily injury or death which occurs in connection with or involves in any manner subcontractor's or subcontractor's agents' employees, invitees', performance of work or service under this contract, regardless of whether or not such claims or alleged acts or omissions are caused in whole or in part (or are alleged to be caused in whole or in part) by any negligence on the part of the Contractor.

6.4    It is the specific intent of the parties to this contract that the subcontractor is agreeing to indemnify the Contractor for the  effects of the General Contractor's its agents' and employees' own negligence or other wrongful conduct.

It is clear that under the "COVERAGES" portion of the policy, specifically under paragraph A(1)(a), Hartford Lloyd's "will pay on behalf of the insured [South Texas Masonry] those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies" (Exhibit 2 to Hartford Lloyd's Motion to Dismiss,

Business Liability Coverage Form, p. 1 of 21).  While there is a general exclusion for bodily injury damages assumed under a contract, paragraph B(1)(b)(2) qualifies that "[t]his exclusion does not apply to liability for damages because of: (b) 'Bodily Injury' . . . assumed in a contract or agreement that is an 'insured contract' . . . and that such damages include "reasonable attorney fees and necessary litigation expenses incurred by or for an indemnitee" provided that: (i) "liability . . . for . . . that indemnitee's defense has also been assumed in the same 'insured contract', and (ii) Such attorney fees and litigation expenses are for defense of that indemnitee against a civil proceeding in which damages to which this insurance applies are alleged". (Exhibit 2 to Hartford Lloyd's Motion to Dismiss, Business Liability Coverage Form, p. 4 of 21).  The indemnity provisions of the subcontract agreement clearly qualify as an "insured contract" under the policy, as the pertinent definition of "insured contract" is found at paragraph G (10)(f) to include "[t]hat part of any other contract or agreement pertaining to your business . . . under  which you assume the liability of another party to pay for 'bodily injury' . . . to a third person" (Exhibit 2 to Hartford Lloyd's Motion to Dismiss, Business Liability Coverage Form, p. 19 or 21)[7].  It is therefore clear that there would be coverage under the policy under valid indemnity agreements that conform with the requirements of Texas law. (See, Quinn depo. at 79-81; Bartram depo. at 85-88; Kaechler depo. at 24-25, 55).

---

[7] *See, XL Specialty Insurance Co. v. Kiewit Offshore Services, Ltd.*, 336 F.Supp.3d 673, 676 (S.D. Tex. 2004), where it was held that the indemnification provision of a subcontract agreement fell "squarely within the definition of 'insured contract'" found in a marine liability policy with language virtually identical to that of the policy involved herein.

---

Hartford Lloyd's originally disclaimed coverage on April 3, 2003 under the indemnification provisions of the subcontract agreement with the vague allegation that "[t]he contract language is not valid as set forth in the State of Texas and is not conspicuous" (Bartram depo. Ex. 4, p. 3; Quinn depo. Ex. 11, p. 3; See also, Bartram depo. Ex. 2, Bates 00639-52, *passim*). Notably, this argument was not expressly reiterated as a basis for denial of coverage in the subsequent disclaimer letters of August 27, 2003 and February 26, 2004 (Bartram depo. Ex. 12, 13; Quinn depo. Ex. 13). To be valid under Texas law, indemnity provisions of a contract must meet the "fair notice" requirements of conspicuousness and express negligence. *Dresser Industries, Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993); *Enserch Corp. v. Parker*, 794 S.W.2d 2, 8 (Tex. 1990). Compliance with both of these requirements is a question of law for the court. *Dresser, supra* at 509; *Alcoa v. Hydrochem Industrial Services, Inc.*, 2005 WL 608232, mem. op. at 7 (Tex. App. -- Corpus Christi-Edinburg 2005, no pet.) (not yet designated for publication); *Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc.*, 945 S.W.3d 163, 169 (Tex. App. -- Houston [14th Dist.] 2003, no pet.). On the present record, it is clear that the indemnity provisions of the subcontract agreement met both of these requirements as a matter of law.

1. **The indemnification provisions comply as a matter of law with the "express negligence" rule for purposes of the "fair notice" requirements of Texas law.**

Hartford Lloyd's has articulated no cogent rationale as to why the indemnification provisions of the subcontract agreement are not valid under Texas law. According to Nancy

Kaechler, the indemnification provisions "appear to be overly broad" (Kaechler depo. at 40-44). Moreover, although she is not an attorney, she opined that it was her understanding that it is against public policy in Texas to indemnify another party for its sole neligence (Kaechler depo. at 6, 39). Bert Bartram, Hartford Lloyd's designated company representative -- who is also not a lawyer -- could not shed any light on the subject other than to say that they had to comport with Texas caselaw, specifically the "Dresser" and "Ethel" [*sic*] cases (Bartram depo. at 75, 86).[8] When asked to be specific, he just responded that "you'd have to ask Ms. Kaechler" (Bartram depo. at 79). Hartford Lloyd's designated expert witness, Michael Sean Quinn -- who is an attorney -- opined that his objection to the indemnification provisions is that they purported to indemnify Peacock for potential causes of action beyond negligence, as long as an allegation of negligence was also made against Peacock (Quinn depo. at 6, 81-86, 89, 92-93, 99). This is based on the "in whole or in part" language of paragraph 6.3, and apparently also on the "other wrongful acts" language of paragraph 6.4 (See, Quinn depo. at 81, 83, 86). According to Quinn, an indemnification provision for anything other than negligence is invalid under Texas law (Quinn depo. at 82-83). He acknowledged, however, that the indemnification provisions do expressly cover the negligence of Peacock (Quinn depo. at 83, 93). He also recognized that the underlying personal injury claims alleged causes of action against Peacock and Consolidated Crane Company based solely on negligence, and would trigger an otherwise

---

[8] He is obviously referring to the decisions of the Supreme Court of Texas in *Dresser Industries, Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505 (Tex. 1993) and *Ethyl Corp. v. Daniel Construction Co.*, 725 S.W.2d 705 (Tex. 1987).

---

valid indemnity agreement (Quinn depo. at 87).  Further in that regard, David Dunn made it clear to Nancy Kaechler that "[t]he language of the indemnity provision is really pretty good and I think that the indemnity provision would be enforced in favor of Peacock provided that it meets the conspicuity requirement" (Bartram depo. Ex. 2, Bates 01076-78, p. 2).  Moreover, as early as March 11, 2003, upon receipt of a copy of the subcontract agreement from South Texas Masonry, Nancy Kaechler (NJK) clearly recognized that "THE INTENT OF THE CONTRACT IS TO INDEMNIFY THE CONTRACTOR - PEACOCK - FOR THE EFFECTS OF THE GC'S AGENT AND EMPLOYEES OWN *NEGLIGENCE* OR OTHER WRONGFUL CONDUCT" (Bartram depo. Ex. 2, Bates 00648 - entry for 3/11/03) (emphasis added).

The "express negligence" doctrine states that a party seeking indemnity from the consequences of that party's own negligence must express that intent in specific terms within the four corners of the contract. *Dresser, supra; Enserch, supra; Ethyl Corp. v. Daniel Construction Co.*, 725 S.W.2d 705, 707-08 (Tex. 1987).  This specificity is required because the potential unfairness of such exculpatory clauses must be balanced against the strong public policy considerations supporting a party's freedom to contract. *Banner Sign & Barricade, Inc. v. Price Construction, Inc.*, 94 S.W.3d 692, 695 (Tex. App. -- San Antonio 2002, pet. denied). The indemnification provisions of the subcontract agreement clearly, unequivocally and expressly recognize that their intent is to indemnify the Contractor [Peacock] for its own negligence -- 6.3 "caused in whole or in part . . . by any *negligence* on the part of the

Contractor"; 6.4 "for the effects of the General Contractor's . . . own *negligence* or other

wrongful conduct" (emphasis added). This is sufficient, and is all that is required to comport

with Texas law.[9]   Moreover, there is no decisional law in Texas where indemnification

provisions expressly referencing the indemnitee's negligence have been held invalid, overly

broad, or void as against public policy because they may be construed to indemnify a party for

acts or omissions beyond negligence, or because they are limited to the indemnitee's sole

negligence. In fact, reported decisions overwhelmingly hold to the contrary. *E.g., Maxus*

*Exploration v. Moran Brothers*, 817 S.W.2d 50, 51-52 n. 1, 56 (Tex. 1991) (mutual

indemnification provisions that applied "without limit and *without regard to the cause or*

*causes thereof, including* . . . the negligence of any party or parties, whether such negligence

be *sole*, joint, or concurrent, active or passive" was held to clearly and unequivocally indemnify

---

[9] Indeed, when indemnity provisions have failed to meet the "express negligence" test, it is generally because the word "negligence" is not specifically mentioned. *Trinity Industries, Inc. v. Ashland, Inc.*, 53 S.W.3d 852, 869 (Tex. App. -- Austin 2001, pet. denied); *Monsanto Co. v. Owens-Corning Fiberglas*, 764 S.W.2d 293, 295 (Tex. App. -- Houston [1st Dist.] 1988, no writ); *Adams Resources Exploration Corp. v. Resources Drilling*, 761 S.W.2d 63, 65 (Tex. App. -- Houston [14th Dist.] 1988, no writ). Moreover, an indemnity agreement that implies an obligation to indemnify for the indemnitee's own negligence as to one category or type of liability by excluding it from a different category or type of liability is not enforceable under the "express negligence" doctrine. Thus, an indemnity agreement excluding only "claims arising out of accidents resulting from the sole negligence of the owner" did not specifically state that the indemnitor was obligated to indemnify the owner for its own negligence. *Singleton v. Crown Central Petroleum Corp.*, 729 S.W.2d 690 (Tex. 1987). *See also, Quorum Health Resources, LLC v. Maverick County Hospital District*, 308 F.3d 451, 465-68 (5th Cir. 2002) (indemnity provision which expressly excluded "gross negligence" from the indemnification obligation was insufficient to require indemnification for simple negligence).

---

a party against the consequences of its own negligence) (emphasis added)[10]. *Ensrch, supra,* at 6-8 (indemnity agreement that read, in pertinent part -- "regardless of whether such claims or actions are founded *in whole or in part* upon alleged negligence of [Ensrch] . . ." and "further agrees to indemnify and hold harmless [Ensrch] . . . in respect to *any such matters*" comported with the "express negligence" doctrine, even though the actual reference to negligence was made in a separate sentence from the reference to indemnification) (emphasis added); *Atlantic Richfield Co. v. Petroleum Personnel, Inc.*, 768 S.W.2d 724, 726 (Tex. 1989) (indemnification agreement which read "including, *but not limited to,* any negligent acts or omissions of [ARCO]" was sufficient to meet the requirements of the "express negligence" doctrine) (emphasis added); *Alcoa, supra* ("express negligence" doctrine satisfied by indemnification provision "resulting from any act or omission, negligent *or otherwise,* on the part of the Seller") (emphasis added); *Lehmann v. Har-Con Corp.*, 76 S.W.3d 555, 562-63 (Tex. App. -- Houston [14th Dist.] 2002, no pet.) (indemnification provision limited to the "sole negligence" of the indemnitee comported with the "express negligence" rule, and was sufficient to include other types of negligence); *B-F-W Construction Co. v. Garza*, 748 S.W.2d 611, 613 (Tex. App. -- Fort Worth 1998, no writ) (indemnification language requiring subcontractor to indemnify contractor *"regardless of any cause or of any concurrent or contributing fault* or negligence of the contractor" met the express negligence rule) (emphasis

---

[10] The Fifth Circuit has also held nearly identical language to indemnify a party against its own negligence. *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 539-41 (Fifth Cir. 1986) (applying federal maritime law).

---