added). As a matter of law, paragraphs 6.3 and 6.4 of the subcontract agreement satisfy the "express negligence" rule, and there is no basis whatsoever for Hartford Lloyd's arguments to the contrary.

> 2. **The indemnification provisions are conspicuous as a matter of law for purposes of the "fair notice" requirements of Texas law.**

It is disingenuous, at best, for Hartford Lloyd's to have argued that the indemnification provisions of the four page subcontract agreement are "inconspicuous". Its own expert, Michael Sean Quinn, testified that "The contract is too short for almost anything to be inconspicuous. If they . . . mean is, is that it's hard to find . . . no, I don't think so. I think it's easy to find" (Quinn depo. at 102). He further testified that "It wouldn't make any sense for her [Nancy Kaechler] to be saying that [the indemnification provisions were not conspicuous]", and "No, I don't think they're hard to find", and "but they're not hard to find" (Quinn depo. at 109-10). Nancy Kaechler herself had no problem identifying the indemnification provisions of the subcontract agreement, and the only basis for her argument that they are not conspicuous is that they are "not set apart by bold type or a different font to make it [*sic*] stand out". (Kaechler depo. at 40-41).

For purposes of an indemnification provision in a contract, a clause is "conspicuous" when a reasonable person against whom it is to operate ought to have noticed it. *Dresser, supra*, at 511. Language in capital headings, language in contrasting type or color, or language in an extremely short document, such as a telegram, is conspicuous. *Id.* The four page

---

subcontract agreement between Peacock and South Texas Masonry is so short that even Hartford Lloyd's expert, Michael Sean Quinn, found that the indemnification provisions at paragraphs 6.3 and 6.4 thereof are conspicuous. The matter is not even contested, and this Honorable Court should hold that the indemnification provisions are conspicuous as a matter of law. Regardless, paragraphs 6.3 and 6.4 form part of a related four paragraph grouping found under the heading "ARTICLE 6 - Insurance" at page 3 of the contract. A similar grouping of insurance and indemnity provisions in a drilling contract -- although set out in two separate paragraphs -- was not inconspicuous -- as both paragraphs were held to "attract the attention of a reasonable person" as a matter of law. *Tesoro Petroleum Corp. v. Nabors Drilling USA*, 106 S.W.3d 118, 132 (Tex. App. -- Houston [1st Dist.] 2002, pet. denied). So have indemnification provisions constituting two subparagraphs contained within a general, all-encompassing paragraph heading containing fifteen separate subparagraphs dealing with indemnity, responsibility for loss or damage, releases of liability and allocations of risk found on the front side of a drilling contract. *Ranger Insurance Co. v. American Int'l Speciality Lines Insurance Co.*, 78 S.W.3d 659, 664-65 (Tex. App. -- Houston [1st Dist.] 2002, no pet.). Additionally, the indemnity language found on the front of a single page contract, which was not hidden or surrounded by unrelated terms, has also been held conspicuous. *Enserch, supra,* at 9. The indemnity provisions of the subcontract agreement in this case are not hidden within unrelated provisions, are not on the back of any part of the contract, and are not concealed within a voluminous contract -- as were indemnity provisions previously held to be

---

inconspicuous. *E.g., Dresser, supra* at 511 (indemnity provisions found on the backs of work orders in a series of numbered paragraphs without headings or contrasting type, which were incorporated by reference on the front sides of the contracts, were held inconspicuous); *Alcoa, supra*, mem. op. at 6, 8-9 (indemnity clause located on one of six additional contract documents which were incorporated by reference in an unsigned purchase order held inconspicuous, where it was located in a separate document, Form R-380-1, which was generically labeled "Supplemental Terms and Conditions", and contained two pages of small typewritten text divided into sixteen numbered sections. Notably, the court felt that "[h]ad Form R-380-1 been the only document incorporated by reference, its singularity may have called sufficient attention to itself".); *Douglas Cablevision v. Swepco*, 992 S.W.2d 503, 509 (Tex. App. -- Texarkana 1999, pet. denied) (indemnity provision constituting two sentences spanning roughly one-half page in a thirteen page contract held inconspicuous).

    **3.  South Texas Masonry had actual notice of the indemnification provisions of the subcontract agreement as a matter of law.**

The "conspicuousness" element of the "fair notice" requirement under Texas law is immaterial and does not even have to be addressed if the indemnitor has actual notice or knowledge of the indemnity agreement. *Dresser, supra* at 508 n. 2; *Cate v. Dover Corp.*, 790 S.W.2d 559, 561 (Tex. 1990); *Alcoa, supra,* mem. op. at 10; *Chesapeake, supra,* at 169; *Coastal Transport Co. v. Crown Central Petroleum Corp.*, 20 S.W.3d 119, 126-27 (Tex. App. -- Houston [14th Dist.] 2000, pet. denied). It is undisputed that Baldemar Salazar of South

---

Texas Masonry read and signed the subcontract agreement, as specifically instructed in Peacock's transmittal documents (Peacock Affidavit -- "I personally negotiated with Baldemar Salazar of South Texas Masonry, and presented him with the subcontract agreement . . . which he read and signed in my presence"; and its Ex. "B" -- "attached are two Originals of your Subcontract Agreement with our company [Peacock] . . . please read all articles and attachments thoroughly and return them to be signed by Mr. Peacock"; Quinn depo. at 104-06; Quinn depo. Ex. 10, p. 2 -- "The following is the contract we [South Texas Masonry] signed prior to commencing work at Las Dunas condominiums").

There is also a presumption under Texas law that a party who has an opportunity to read a contract and signs it knows its contents as a matter of law. *Lee v. Wal-Mart Stores, Inc.*, 943 F.2d 554, 560 (5th Cir. 1991) (applying Texas law); *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996) (orig. proceeding, per curiam); *Cantella Co., Inc. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996) (orig. proceeding, per curiam); *P.G. Bell Co. v. United States Fidelity & Guaranty* Co., 853 S.W.2d 187, 189 (Tex. App. -- Corpus Christi 1993, no writ). Moreover, parties to a contract have an obligation to protect themselves by reading what they sign, and cannot excuse themselves from that obligation absent a basis for fraud. *G-W-L, Inc. v. Robichaux*, 643 S.W.2d 392, 393 (Tex. 1982); *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962); *Barnett v. Network Solutions, Inc.*, 38 S.W.3d 200, 204 (Tex. App. -- Eastland 2001, pet. denied). Thus, even if there were a question as to the conspicuousness of the indemnity provisions of the subcontract agreement, the same would be immaterial given the applicable

---

*Peacock Construction v. Hartford, et al.*; Cross-Mot. for Partial Summ/Jdmt -- p. 35 of 45 pgs.

presumption under Texas law that South Texas Masonry had actual notice thereof as a matter of law.

D. **Under the "severability of interests" clause of the policy, Peacock, as an "additional insured", is afforded coverage against claims by employees of South Texas Masonry.**

In her disclaimer letters of April 3, 2003 and February 26, 2004, Nancy Kaechler of Hartford Lloyd's noted that "[t]his correspondence is not intended, nor shall it be construed as, an exhaustive listing of policy terms, conditions or exclusions which might preclude coverage under The Hartford Policy" (Bartram depo. Ex. 4, p. 3; 15, p. 2; Quinn depo. Ex. 11, p. 3; Ex. 13, p. 2). Hartford Lloyd's counsel has argued in open court that because the injured employees were prevented from suing South Texas Masonry due to the worker's compensation bar, they could obtain no relief against Peacock as an "additional insured" under the policy because Peacock purportedly did not "get a better position" than, and were "equivalent with", South Texas Masonry. Moreover, since the policy would provide no coverage to South Texas Masonry under its "employee exclusion" provision, it would not provide coverage to Peacock irrespective of the fact that the injured parties were not Peacock's employees. (Transcript of 12/16/04 hearing on Plaintiff's Motion to Remand, at 20). This argument was never considered or articulated as a basis for denial of coverage by Hartford Lloyd's, and has not been made in its Motion to Dismiss. (See, Kaechler depo. at 45-46; Bartram depo. at 61; Quinn depo. at 135-40). Under the "severability of interests" clause found at paragraph E(5) of the policy -- "Separation of Insureds" -- South Texas Masonry and Peacock are not identical for purposes

---

*Peacock Construction v. Hartford, et al.*; Cross-Mot. for Partial Summ/Jdmt -- p. 36 of 45 pgs.

of coverage. This clause provides that except with respect to the limits of liability, the insurance applies: (b) "Separately to each insured against whom a claim is made or 'suit' is brought". (Ex. 2 to Hartford Lloyd's Motion to Dismiss, Business Liability Coverage Form, p. 15 of 21). In fact, the Supreme Court of Texas has recently recognized that a "severability of interests" clause in a CGL policy worded exactly the same "expressly creates separate insurance policies" for the insureds. *King v. Dallas Fire Insurance Co.*, 85 S.W.3d 185, 188 (Tex. 2002). Thus, the "workers compensation exclusion" and "employee exclusion" provisions of the policy, paragraphs B(1)(d) & (e) (Ex. 2 to Hartford Lloyd's Motion to Dismiss, Business Liability Coverage Form, pp. 4-5 of 21) -- excluding from coverage claims for bodily injury to an insured's employees -- will not operate against Peacock as a matter of law -- as the injured parties were not employees of Peacock. *Commercial Standard Insurance Co. v. American General Insurance Co.*, 455 S.W.2d 714, 717-21 (Tex. 1970) (due to the absence of an employer-employee relationship, the "workers compensation exclusion" and "employee exclusion" in an automobile policy did not exclude coverage of claims by injured employees of a general contractor -- an omnibus or "additional insured" under the policy -- against a subcontractor and its employees, who were also omnibus insureds)[11]; *Admiral, supra* at 455-56 ("employee exclusion" in a CGL policy did not apply to deny coverage to an "additional insured" for a claim by a named insured's injured employee). *See also, Centennial*

---

[11] Ironically, the *Commercial Standard* case arose out of an incident whereby the employee of a contractor was injured when a mobile crane owned and operated by a subcontractor collapsed while transporting a load of concrete. 455 S.W.2d at 715-16.

---

*Insurance Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 383-86 (5th Cir. 1998) (applying Mississippi law, holding that the "worker's compensation exclusion" and "employee exclusion" in an automobile policy were triggered only when the insured claiming coverage is being sued by one of its employees, and did not bar coverage for an "additional insured" being sued by the employee of the named insured); *Zaiontz v. Trinity Universal Insurance Co.*, 87 S.W.3d 565, 567-69 (Tex. App. -- San Antonio 2002, pet. denied) (recognizing that because CGL and umbrella policies contained "severability of insureds" clauses, the "employee exclusion" would apply only if the insured who was actually seeking coverage under the policy was the injured claimant's employer). Accordingly, as a matter of law, Peacock is not excluded from coverage because of the "workers compensation exclusion" and the "employee exclusion" provisions of the policy, since the injured claimants were not Peacock's employees.[12]

### III.

The above and foregoing analysis establishes that Peacock is entitled to summary judgment on the issue of coverage with regard to the policy as a matter of law. It is also undisputed that Peacock exhausted its own insurance policy limits in reaching the underlying settlement with the injured parties, with each of its two carriers paying policy limits of One Million Dollars ($1,000,000.00), for a total settlement on behalf of Peacock of Two Million Dollars ($2,000,000.00) (Quinn depo. at 121-23; See also, Settlement Documents attached as

---

[12] The "employee exclusion" of the policy further provides that "this exclusion does not apply to liability assumed by the insured under an 'insured contract'". It therefore would pose no impediment to application of the indemnification provisions of the subcontract agreement between Peacock and South Texas Masonry, paragraphs 6.3 and 6.4 thereof.

---

*Peacock Construction v. Hartford, et al.*; Cross-Mot. for Partial Summ/Jdmt -- p. 38 of 45 pgs.

Exhibit "D" to "Defendant Hartford Casualty Insurance Company and Hartford Lloyd's Insurance Company's Supplemental Response to Plaintiff, Peacock Construction Company, Inc.'s Amended Motion to Remand"). Texas recognizes the law of "equitable subrogation" in favor of excess insurers who have been forced to pay in similar circumstances. *See, American Centennial Insurance Co. v. Canal Insurance Co.*, 843 S.W.2d 480, 485 (Tex. 1982) (Hecht, J. concurring); *Nat'l Union Fire Insurance Co. v. Insurance Company of North America*, 955 S.W.2d 120, 132-34 (Tex. App. -- Houston [14th Dist.] 1997, pet. denied) (claims under the *Stowers* doctrine). It is clear that the subcontract agreement, in the last sentence of paragraph 6.1, establishes that the liability insurance to be provided by South Texas Masonry "will be considered as primary". Yet, Michael Sean Quinn has stated in his report that the Hartford policy "by its very terms" would be considered "excess" with regard to other insurance available to Peacock (Quinn Expert Report at 15). However, when asked to identify an express term in the policy to that effect, he was unable to do so -- and, in fact, confessed "just withdraw that one" and "I am no longer satisfied with the view that I thought I had right several days ago is, in fact, right" (Quinn depo. at 130). Indeed, by its very terms, the coverage provided under the policy for an "additional insured" is primary to other available insurance except where there is fire, extended coverage, builder's risk, installation risk, and equivalent coverage -- none of which apply here (Exhibit 2, Hartford Lloyd's Motion to Dismiss, Business Liability Coverage Form, p. 15 of 21 -- Paragraph E(7) -- "Other Insurance -- Primary Additional Insured", (a) -- "Primary Insurance" -- "This insurance is primary. We will not seek contributions from other

---

*Peacock Construction v. Hartford, et al.*; Cross-Mot. for Partial Summ/Jdmt -- p. 39 of 45 pgs.

insurance available to the person or organization with whom you agree to include in WHO IS AN INSURED, except when b. applies".) *See, Travelers Indemnity, supra* at 30-31.

Quinn also argued that the policy would only pay if Peacock became legally obligated to pay damages, which purportedly never happened because of the underlying settlement -- entered into without Hartford Lloyd's consent (Quinn Expert Report at 14-15; Quinn depo. at 119-21). However, he acknowledged that by denying coverage before the settlement was entered into -- Hartford Lloyd's could no longer raise this issue with regard to a reasonable settlement -- such as one where liability was obvious (Quinn depo. at 120, 124-26, 132-33). The record is also clear that Hartford Lloyd's had the opportunity to participate in the mediation process that resulted in the settlement (Quinn depo. at 133-35; Bartram depo. Ex. 2, Bates 00643-44, entries for 1/26/04; 2/10/04; 2/17/04; 2/19/04 and 2/20/04; Bates 01076-78). This is in comportment with Texas law, which recognizes that where an insurer declines coverage to an "additional insured" -- and that insured thereafter enters into a settlement agreement absent evidence of fraud or illegality -- the insurer may not then question the liability of the insured or the amount of the settlement. *ATOFINA Petrochemicals, Inc. v. Evanston Insurance Co.*, 104 S.W.3d 247, 250-52 (Tex. App. -- Beaumont 2003, pet. granted). Hartford Lloyd's has not argued the fraud or illegality in the underlying settlement between Peacock and its insurers, and the injured parties. There is therefore no basis for Hartford Lloyd's to argue that the underlying settlement was unreasonable as a matter of law. Because of its own anticipatory breach of the insurance policy in relation to its additional insured, Peacock,

Hartford Lloyd's cannot now rely on other provisions of the policy requiring that it participate in, and approve, any settlement agreement in an attempt to obviate its obligations herein.

### PRAYER

**WHEREFORE, PREMISES CONSIDERED,** for the above and foregoing reasons, plaintiff Peacock Construction Company, Inc. prays that this Honorable Court grant Peacock's Partial Motion for Summary Judgment on the Issue of Coverage in its entirety, and deny Defendant Hartford Lloyd's 12(B)(6) Motion to Dismiss or Alternatively for Summary Judgment in its entirety. Peacock further prays for an Order from this Honorable Court as follows:

   a. that Peacock, its subrogees, and their assignees, have and recover from Hartford Lloyd's Insurance Company the full amount of coverage authorized per occurrence under the policy, One Million Dollars ($1,000,000.00);

   b. that Peacock, its subrogees, and their assignees, have and recover from Hartford Lloyd's Insurance Company statutory damages to which they are entitled under the Texas Insurance Code due to Hartford Lloyd's wrongful denial of coverage;

   c. that Peacock, and its subrogees, have and recover their expenses and attorney's fees incurred in the underlying litigation, as contractual damages under the policy, the amounts of which are to be determined at a subsequent evidentiary hearing;

   d. that Peacock, its subrogees, and their assignees, have and recover their attorney's fees and expenses incurred in pursuit of their claims and causes of action against Hartford Lloyd's in the present lawsuit, the amounts of which are to be determined at a subsequent evidentiary hearing;

   e. that the Court, at a subsequent hearing, determine if Peacock, its subrogees, and their assignees are entitled to recover extra contractual damages against Hartford Lloyd's under the common law of Texas;

---

f. that Hartford Lloyd's take nothing by virtue of its Counterclaim for Declaratory Judgment filed against Peacock;

G. that Peacock, its subrogees, and their assignees have such other and further relief, at law or in equity, to which they may show themselves justly entitled.

Respectfully submitted,

**LAW OFFICE OF VICTOR M. CARRERA, P.C.**
1 Paseo Del Prado 103B
Edinburg, TX 78539
-----------
Tel.: 956/661-8100
Fax: 956/661-8104

Victor M. Carrera
Federal I.D. No. 2190
State Bar of Texas No. 03871300

**COUNSEL FOR PLAINTIFF PEACOCK CONSTRUCTION COMPANY, INC.**

Ruben R. Peña
Federal I.D. No. 1216
State Bar of Texas No. 15740900
**LAW OFFICE OF RUBEN R. PEÑA**
222 West Harrison
Harlingen, TX 78550
Tel.: (956) 412-8200
Fax: (956) 412-8282

**ATTORNEY-IN-CHARGE FOR PLAINTIFF PEACOCK CONSTRUCTION COMPANY, INC.**

---

*Peacock Construction v. Hartford, et al.*; Cross-Mot. for Partial Summ/Jdmt -- p. 42 of 45 pgs.

# VERIFICATION

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF HIDALGO | § |

BEFORE ME, the undersigned authority, on this day personally appeared VICTOR M. CARRERA, who being by me duly sworn, on his oath deposed as follows:

"My name is VICTOR M. CARRERA, and I am over eighteen years of age and have never been convicted of a felony or a crime involving moral turpitude. I am a licensed attorney in the State of Texas and am one of the attorneys representing the plaintiff, Peacock Construction Company, Inc., in the above-styled and numbered cause. I am fully qualified and competent in all respects to make this Verification, and am fully authorized to do so on behalf of Peacock Construction Company, Inc. All statements of fact set forth herein are true and correct based on my personal knowledge. I have prepared and read the above and foregoing pleading, and the transcripts of the depositions of Bert Bartram, Nancy Kaechler and Michael Sean Quinn, and the transcript of the hearing on Plaintiff's Motion to Remand dated December 16, 2004, are true and correct copies of the original instruments.

FURTHER AFFIANT SAYETH NOT."

_____
VICTOR M. CARRERA

SUBSCRIBED AND SWORN TO BEFORE ME by the said VICTOR M. CARRERA, affiant, to which witness my hand and seal of office on this the 18th day of April, 2005



Roxanna S. Crowe
_____
Notary Public, in and for the State of Texas

ROXANNA S. CROWE
Notary Public, State of Texas
My Commission Expires
7-21-2005

_____
*Peacock Construction v. Hartford, et al.*; Cross-Mot. for Partial Summ/Jdmt -- p. 43 of 45 pgs.

## AVERMENT OF CONFERENCE WITH OPPOSING COUNSEL

The above and foregoing Motion, being dispositive in nature, it is exempted from the requirement of conference with opposing counsel with regard to its disposition. LR 7.1.D of the Local Rules of the United States District Court for the Southern District of Texas.

_____
Victor M. Carrera

## REQUEST FOR ORAL ARGUMENT

Pursuant to LR 7.5.A of the Local Rules of the United States District Court for the Southern District of Texas, Plaintiff Peacock Construction Company, Inc., requests oral argument of the above and foregoing Motion for Partial Summary Judgment on the Issue of Coverage, and Response in Opposition to Defendant's 12(B)(6) Motion to Dismiss or Alternatively for Summary Judgment.

_____
Victor M. Carrera

---

*Peacock Construction v. Hartford, et al.*; Cross-Mot. for Partial Summ/Jdmt -- p. 44 of 45 pgs.

## CERTIFICATE OF SERVICE

On April 18, 2005, copies of "**PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY ON THE ISSUE OF COVERAGE, AND RESPONSE IN OPPOSITION TO DEFENDANT'S 12(B)(6) MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT (*WITH AUTHORITIES*)**" were sent by U.S. *certified* mail, return receipt requested, to opposing counsel, as follows:

Mr. F. Edward Barker
**BARKER, LEON, FANCHER
& MATTHYS, L.L.P.**
Tower II, Suite 1200
555 N. Carancahua St.
Corpus Christi, TX 78478

Mr. Trey Martinez
**MARTINEZ, MARTINEZ & BARRERA, L.L.P.**
1201 E. Van Buren
Brownsville, TX 78520
**(w/o exhibits)**

Victor M. Carrera

---

*Peacock Construction v. Hartford, et al.*; Cross-Mot. for Partial Summ/Jdmt -- p. 45 of 45 pgs.