## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| PEACOCK CONSTRUCTION COMPANY, INC. | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. B-04-111 |
| | § | |
| HARTFORD LLOYD'S INSURANCE COMPANY | § | |

## AFFIDAVIT OF WILLIAM T. PEACOCK, JR.

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF CAMERON | § |

BEFORE ME, the undersigned authority, on this day personally appeared WILLIAM T. PEACOCK, JR., who being by me duly sworn, on his oath deposed as follows:

"My name is WILLIAM T. PEACOCK, JR. I am over eighteen years of age and have never been convicted of a felony or crime involving moral turpitude. I am fully competent and qualified to make this Affidavit, and I am fully authorized to do so on behalf of Peacock Construction Company, Inc. (hereinafter "Peacock Construction"). I have personal knowledge of the matters set forth herein, and the same are true and correct.

I am the president and sixty percent owner of Peacock Construction. During 2001, Peacock Construction, as general contractor, entered into an agreement with Las Dunas, Inc. to build the Las Dunas Condominium project on South Padre Island, Texas. As part of that project, Peacock Construction entered into subcontract agreements with various subcontractors, including one with South Texas Masonry for the provision of masonry and stucco services. I personally negotiated with Baldemar Salazar of South Texas Masonry, and presented him with the subcontract agreement attached hereto as Exhibit "A", which he read

Page 1 of 3

and signed in my presence. (I also signed the subcontract agreement on behalf of Peacock Construction.) Peacock Construction had engaged South Texas Masonry as a subcontractor on at least one previous project, and Baldemar Salazar was aware of Peacock Construction's policies *vis-a-vis* its subcontractors.

All subcontractors on the Las Dunas project, including South Texas Masonry, were presented with subcontract agreement forms which were attached to transmittal documents identical to those attached hereto as Exhibit "B", which contained additional instructions with which all subcontractors were to comply before commencing work on the Las Dunas project. Subcontractors were instructed to read all articles of the subcontract agreements thoroughly, and to return the signed subcontract agreements for my signature. Additionally, the transmittal documents required that all paperwork, including Certificates of Liability Insurance designating Peacock Construction as an "additional insured" under the subcontractor's general liability insurance policies, were to be presented to Peacock Construction prior to their starting any work on the Las Dunas project. The sample Certificate of Liability insurance submitted with the transmittal documents specifically provided that "THE INSURANCE CERTIFICATE FURNISHED TO US BY YOUR AGENT MUST MEET OR SURPASS THE LIMITS AS NOTED ON THE SAMPLE. ALL WORDING SHALL APPLY". The Certificate of Liability insurance was also to note a "WAIVER OF SUBROGATION AND ADDITIONAL INSURED IN FAVOR OF CERTIFICATE HOLDER ON GENERAL LIABILITY". Compliance by subcontractors with the terms of the transmittal documents are an essential part of the subcontract agreements between Peacock Construction and its subcontractors, including South Texas Masonry. Had South Texas Masonry not presented a "Certificate of Liability Insurance" in compliance with the sample

Page 2 of 3

form provided, it would not have been allowed to work on the Las Dunas project.

The subcontract agreement between Peacock Construction and South Texas Masonry further provides, within paragraph 1.1 thereof, that "The Contract Documents" include "the Drawings, the Specifications, all Addenda issued prior to and all Modifications issued after execution of the Agreement between the Owner and Contractor and agreed upon by the parties to this Subcontract. These form the Subcontract, and are a part of the Subcontract as if attached to this Agreement or repeated herein". A true and correct copy of the contract between the owner, Las Dunas, Inc., and the contractor, Peacock Construction, for the Las Dunas Condominium project is attached hereto as Exhibit "C". The specifications for the Las Dunas Condominium project are contained within the Project Manual, a true and correct copy of which is attached hereto as Exhibit "D". The Project Manual, and the specifications therein regarding masonry and stucco services, were presented to Baldemar Salazar of South Texas Masonry, who reviewed them prior to submitting a bit for consideration as a subcontractor on the project. A copy of the Project Manual was further available at the job site at all times for review by all subcontractors working on the project, including South Texas Masonry.

AFFIANT FURTHER SAYETH NOT."

WILLIAM T. PEACOCK, JR.

SUBSCRIBED AND SWORN TO BEFORE ME by the said WILLIAM T. PEACOCK, JR., affiant, to which witness my hand and seal of office on this the 12 day of April, 2005.

NORA ELIA ZAMORA
Notary Public, State of Texas
My Commission Expires
6-25-2005

Notary Public, in and for the State of Texas

Page 3 of 3

# EXHIBIT

# "A"

## TO THE AFFIDAVIT
## OF
## WILLIAM T. PEACOCK, JR.

# SUBCONTRACT AGREEMENT

This agreement made as of the 10th day of January in the year 2002:

BETWEEN the Contractor: **PEACOCK CONSTRUCTION COMPANY, INC.**
P.O. Box 530098
Harlingen, Texas 78553

and the Subcontractor: **SOUTH TEXAS MASONRY**
805 E. Business 83
Pharr, Texas 78577

The Project: **LAS DUNAS CONDOMINIUMS**
4212 Gulf Boulevard
South Padre Island, Texas

The Owner: **LAS DUNAS INC.**
4212 Gulf Boulevard
South Padre Island, Texas

The Architect: **LABUNSKI ASSOCIATES**
1514 S. 77 Sunshine Strip Ste. 24
Harlingen, Texas 78550

---

The Contractor and Subcontractor agree as set forth below:

## ARTICLE 1 - The Contract Documents

1.1 The Contract Documents for this Subcontract consist of this Agreement and any Exhibits attached hereto, the Drawings, the specifications, all Addenda issued prior to and all Modifications issued after execution of the Agreement between the Owner and Contractor and agreed upon by the parties to this Subcontract. These form the Subcontract, and are a part of the Subcontract as if attached to this Agreement or repeated herein.

## ARTICLE 2 - The Work

2.1 The Subcontractor shall perform all the Work required by the Contract document for:
**MASONRY**
**STUCCO**
Note: **Delete all EIFS (except at mouldings as shown on plans)**
**Price includes Surewall/ Plaster Only**

## ARTICLE 3 - The Contract Sum

3.1 The Contractor shall pay the Subcontractor in current funds for the performance of the Work, subject to additions and deductions, the Contract sum of: **ONE MILLION SIX HUNDRED TWENTY-SEVEN DOLLARS AND 00/100---($1,000,627.00)**
3.2 The Contract sum is determined as follows: **Per Revised Quotes Dated 12/10/01**


EXHIBIT
A

## ARTICLE 4 - Progress Payments

4.1  The Contractor shall pay the Subcontractor monthly progress payments less any stated retainage. **10%**

4.2  Applications for monthly progress payments shall be in writing, shall state the estimated percentage of the Work in this Subcontract that has been satisfactorily completed and shall be submitted to the ***CONTRACTOR FOR APPROVAL ON OR BEFORE THE 25th DAY OF EACH MONTH.***

4.2.1  Draw Requests to Contractor shall be on an approved Draw Request Form with a complete cost breakdown satisfactory to Contractor and Owner. *NO DRAW REQUESTS WILL BE SUBMITTED FOR PAYMENT WITHOUT THE BREAKDOWN.*

4.3  Progress payments will be made to the Subcontractor within 7 days of receipt of funds from Owner to General Contractor.

4.4  No payment received by the Subcontractor shall be used to satisfy or secure any indebtedness other than one owed by the Subcontractor to a person furnishing labor or materials for use in performing Subcontractor's Work.

4.5  The Contractor shall have the right at all times to contact the Subcontractor's subcontractors and suppliers to ensure that the same are being paid by the Subcontractor for labor or materials furnished for use in performing the Subcontractor's Work.  The Contractor shall also have the right to issue joint checks to the Subcontractor and their Subcontractors and Suppliers.

4.6  When required by the Contractor, and as a prerequisite for payment, the Subcontractor shall provide, in a form satisfactory to the Owner and the Contractor, partial lien or claim waivers and affidavits from the Subcontractor and its subcontractors and suppliers for the completed Subcontractor's Work.  Such waivers may be made conditional upon payment.

4.7  *IN ORDER TO BE PAID FOR STORED MATERIAL,* Subcontractor must furnish to Contractor invoices and property insurance covering stored material at storage location. *THE INVOICES AND INSURANCE CERTIFICATES MUST ACCOMPANY THE MONTHLY APPLICATION FOR PAYMENT.* Only completely fabricated items will be considered as stored material  (no components).  All materials stored by Subcontractor at the jobsite shall be the responsibility of the Subcontractor and shall be insured by same.  Joint checks may be required for payment.

4.8  **Retainage 10%.**

## ARTICLE 5 - Final Payment

5.1  Final payment, constituting the entire unpaid balance of the Contract Sum, shall be due when the Work described in this Subcontract is fully completed and performed and is satisfactory to the Architect, and shall be payable approximately 30 days after substantial completion of the Project, or at such time as the retainage is paid to the General Contractor.

5.2  Before issuance of the final payment, the Subcontractor, if required, shall submit evidence satisfactory to the Contractor that all payrolls, bills for materials and equipment, and all known indebtedness connected with the Subcontractor's Work have been satisfied.

## ARTICLE 6 - Insurance

6.1  Prior to starting work, the Subcontractor shall obtain any insurance, including Worker's Compensation and General Liability, required by the Contract Documents, from a responsible insurer, and shall furnish satisfactory evidence to the Contractor that the Subcontractor has complied with these requirements.  Subcontractor's Insurance will be considered as Primary.

6.2  In the event the Subcontractor fails to obtain or maintain any insurance coverage required under this Agreement, the Contractor may purchase such coverage and charge the expense thereof to the Subcontractor.

6.3  Subcontractor agrees to indemnify, defend, and hold harmless the Contractor (or Owner or subcontractor, their affiliated entities, and employees and agents) from and against any and all losses, claims, suits, actions, demands, damages, fines, penalties, costs (including any and all related court costs and attorney's fees), liabilities or causes of action for bodily injury, death or property damage (including claims or causes of action for bodily injury or death to employees of the subcontractor who may or not be acting in the course and scope of their employment at the time of their bodily injury or death which occurs in connection with or involves in any manner subcontractor's or subcontractor's agents' employees', invitees', performance of work or service under this contract, regardless of whether or not such claims or alleged acts or omissions are caused in whole or in part (or are alleged to be caused in whole or in part) by any negligence on the part of the Contractor.

6.4  It is the specific intent of the parties to this contract that the subcontractor is agreeing to indemnify the Contractor for the effects of the General Contractor's its agents' and employees' own negligence or other wrongful conduct.

## ARTICLE 7 - Warranty

7.1  The Subcontractor warrants its work against all deficiencies and defects in materials and/or workmanship and as called for in the Contract Documents.  If no guarantee or warranty is required of the Subcontractor in the Contract Documents, then the Subcontractor shall guarantee or warranty its work as described above for the period of one year from the date(s) of substantial completion of all or a designated portion of the Subcontractor's work or acceptance or use by the Contractor or Owner of designated equipment, whichever is sooner.

## ARTICLE 8 - Notice to Cure

8.1  If the Subcontractor refuses or fails to supply enough properly skilled workers, proper materials, or maintain the Schedule of Work, or it fails to make prompt payment for its workers, sub-contractors or suppliers, disregards laws, ordinances, rules, regulations or orders of any public authority having jurisdiction, or otherwise is guilty of a material breach

of a provision of this Agreement, and fails within three (3) working days after receipt of written notice to correct such default with diligence and promptness, then the Contractor, without prejudice to any rights or remedies, shall have the right to any or all of the following remedies:

   (a) supply such number of workers and quantity or materials, equipment and other facilities as the Contractor deems necessary for the completion of the Subcontractor's Work, or any part thereof which the Subcontractor has failed to complete or perform after notice, and charge the cost thereof to the Subcontractor, who shall be liable for the payment of same including reasonable overhead, profit and attorney's fees;

   (b) contract with one or more additional contractors to perform such part of the Subcontractor's Work as the Contractor shall determine will provide the most expeditious completion of the total Work and charge the cost thereof to the Subcontractor;

   (c) withhold payment of any monies due the Subcontractor pending corrective action to the extent required by and to the satisfaction of the Contractor and;

   (d) in the event of an emergency affecting the safety of persons or property, the Contractor may proceed as above without notice.

## ARTICLE 9 - Miscellaneous

9.1   Clean-up - At all times keep the building and premises free from debris and unsafe conditions resulting from the Subcontractor's Work. If the Subcontractor fails to remove their debris, the Contractor will do the clean up at the expense of the Subcontractor.

9.2   Pre-Construction Meeting - This is a mandatory meeting for all Subcontractors and major suppliers.

9.3   Job Progress Meetings - To be scheduled on a monthly basis. Attendance of the meetings is mandatory and shall be a prerequisite for approval of monthly draws.

9.4   Safety - Subcontractor is responsible for the safety of his/her personnel while on the jobsite. All OSHA regulations for safety to be strictly followed. (If discrepancies are found by supervisory management of Peacock Construction Co., Inc. or their consultants, written notice shall be given to cure. The subcontractor must immediately remove the hazard and has 3 calendar days to cure. If a subcontractor flagrantly disregards warnings and does not attempt cure, then they will be deemed in breach of contract. Necessary procedures to cure pertaining to breach of contract are in Article 8.) Any penalties due to violations shall be borne solely by the subcontractor. Safety meetings to be held regularly at the jobsite and attendance is mandatory.

   This agreement is entered into as of the day and year first written above.

CONTRACTOR:                                          SUBCONTRACTOR:

_____                    _____
PEACOCK CONSTRUCTION CO., INC.                      SOUTH TEXAS MASONRY
William T. Peacock – President                      Baldemar Salazar

# EXHIBIT

# "B"

## TO THE AFFIDAVIT
## OF
## WILLIAM T. PEACOCK, JR.



DATE:_____

DEAR SUBCONTRACTOR:

Attached are two Originals of your Subcontract Agreement with our company on the Above Mentioned Project. Please read all articles and attachments thoroughly and return them to be signed by Mr. Peacock. Also note that a list of items are requested to be returned along with the signed Subcontracts. All paperwork MUST BE RECEIVED BY OUR OFFICE *PRIOR* TO STARTING ANY WORK!!

Such as:

1) Worker's Compensation and General Liability insurance certificates. (Proof of insurance) If you do not have worker's compensation insurance we require that you fill out the attached TWCC-83 form, otherwise dispose of said form.

2) Please inform us if your company is incorporated. Furnish us with either your social security or federal tax ID number, also include your correct mailing address and phone number on the form enclosed.

3) As per plans and specifications you are requested to furnish us with EIGHT (8) submittals/ shop drawings/ color sample brochures/ etc. for the review and approval of the Architect. Required delivery date of your items submitted will be based upon Architect's return of submittals.

4) All draw requests are due in our office ON OR BEFORE THE 25th OF EACH MONTH. NO EXCEPTIONS!! They should be done on the attached Subcontractor's Application for Payment AGC form 610 and G 703-1983. (Make copies of this as needed) We require a breakdown of your monthly draw amount. Please breakdown labor and materials. If you do not include a breakdown with your subcontract, your *CHECKS WILL NOT BE RELEASED.*

GENERAL CONTRACTORS

EXHIBIT
B

5) Any draw request that includes stored materials must be accompanied by invoices for such material and evidence of insurance coverage for stored items, if stored at your location and not on the jobsite.

6) After you receive payment on your first draw request from our company, you must furnish our office with your supplier release forms stating prior months bills have been paid. This is to be done on a monthly basis.

7) Prior to completion of the project you must submit four copies of all warranties, guarantees, operation & maintenance manuals, start-up & testing reports for the contract closeout manuals. As-built drawings are required from all mechanical subcontractor's noting any changes done throughout the project. **Final retainage will not be paid until all items are received!!!**

8) We also require the name, address and phone number of the **SUPPLIER YOU WILL USE FOR THIS PROJECT!!**

**WE MUST RECEIVE BOTH COPIES OF THE SIGNED SUBCONTRACTS WITHIN 10 BUSINESS DAYS OR THEY WILL BECOME _NULL AND VOID._**

**ANY DRAWS NOT SUBMITTED IN THE SPECIFIED MANNER AND WITH MULTIPLE ERRORS WILL BE REJECTED NO QUESTIONS ASKED!**

THE INSURANCE CERTIFICATE FURNISHED TO US BY YOUR AGENT MUST MEET OR SURPASS THE LIMITS AS NOTED ON THIS SAMPLE. ALL WORDING SHALL APPLY.

# ACORD. CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YY)**
05/02/2002

| PRODUCER | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. |
|---|---|
| ANY AGENT USA<br>SAMPLE OF CERTIFICATE | |

**INSURERS AFFORDING COVERAGE**

| INSURED | |
|---|---|
| PEACOCK CONSTRUCTION COMPANY<br>ATTN: MISSY PEACOCK<br>P. O. BOX 530098<br>HARLINGEN      TX    78553<br>956-423-6733 | INSURER A: COMMERCIAL GENERAL LIABILITY INSURANCE COMPANY |
| | INSURER B: BUSINESS AUTOMOBILE POLICY |
| | INSURER C: COMMERCIAL UMBRELLA INSURANCE COMPANY |
| | INSURER D: WORKERS' COMPENSATION INSURANCE COMPANY |
| | INSURER E: |

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY**<br>[X] COMMERCIAL GENERAL LIABILITY<br>[ ] CLAIMS MADE [X] OCCUR<br><br><br>**GEN'L AGGREGATE LIMIT APPLIES PER:**<br>[ ] POLICY [X] PRO-JECT [ ] LOC | XXXXXXXXXXX | | | EACH OCCURRENCE | $ 1,000,000.00 |
| | | | | | FIRE DAMAGE (Any one fire) | $ 100,000.00 |
| | | | | | MED EXP (Any one person) | $ 5,000.00 |
| | | | | | PERSONAL & ADV INJURY | $ 1,000,000.00 |
| | | | | | GENERAL AGGREGATE | $ 1,000,000.00 |
| | | | | | PRODUCTS - COMP/OP AGG | $ 1,000,000.00 |
| B | **AUTOMOBILE LIABILITY**<br>[ ] ANY AUTO<br>[ ] ALL OWNED AUTOS<br>[X] SCHEDULED AUTOS<br>[X] HIRED AUTOS<br>[X] NON-OWNED AUTOS | XXXXXXXXXX | | | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000.00 |
| | | | | | BODILY INJURY (Per person) | $ |
| | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | **GARAGE LIABILITY**<br>[ ] ANY AUTO | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | | | | OTHER THAN   EA ACC<br>AUTO ONLY:       AGG | $<br>$ |
| C | **EXCESS LIABILITY**<br>[X] OCCUR [ ] CLAIMS MADE<br><br>[X] DEDUCTIBLE<br>[X] RETENTION  $ 10,000. | XXXXXX UMBRELLA FORM | | | EACH OCCURRENCE | $ 1,000,000.00 |
| | | | | | AGGREGATE | $ 1,000,000.00 |
| | | | | | | $ |
| | | | | | | $ |
| D | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** | XXXXXXXXXXXX | | | [ ] WC STATU-TORY LIMITS [X] OTH-ER | |
| | | | | | E.L. EACH ACCIDENT | $ 1,000,000.00 |
| | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000.00 |
| | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000.00 |
| | **OTHER** | | | | | |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/EXCLUSIONS ADDED BY ENDORSEMENT/SPECIAL PROVISIONS

PROJECT NAME: XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
WAIVER OF SUBROGATION AND ADDITIONAL INSURED IN FAVOR OF          FAX: 956-425-5683 AND MAIL THE ORGINAL.
CERTIFICATE HOLDER ON GENERAL LIABILITY.
WAIVER OF SUBROGATION ON WORKERS' COMPENSATION.

01137

| CERTIFICATE HOLDER | [X] ADDITIONAL INSURED; INSURER LETTER: A | CANCELLATION |
|---|---|---|
| PEACOCK CONSTRUCTION COMPANY, INC.<br>ATTN: MISSY PEACOCK<br>P. O. BOX 530098<br>HARLINGEN      TX    78553<br>956-423-6733<br>FAX: 956-425-5683 | | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL __30__ DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES.<br>**AUTHORIZED REPRESENTATIVE** |

ACORD 25-S (7/97)                                                              © ACORD CORPORATION 1988

## TEXAS WORKERS' COMPENSATION COMMISSION
### Southfield Building, 4000 South IH-35
### Austin, Texas 78704

are not certain whether all parties meet the requirements for entering into this agreement, you may wish to consult an attorney.

Workers' Compensation Act, Texas Labor Code, Section 406.141(2) defines "independent contractor" as follows: (2) "Independent contractor" means a person who is to perform work or provide a service for the benefit of another and who: (A) is paid by the job, not by the hour or some other time-measured basis; (B) is free to hire as ilpers as he desires and to determine what each helper will be paid; and (C) is free to work for other contractors, or to send helpers to work for other contractors, while ontract to the hiring employer.

### CHECK ☐ BOX OF STATEMENT THAT APPLIES

| JOINT AGREEMENT TO AFFIRM INDEPENDENT RELATIONSHIP FOR CERTAIN BUILDING AND CONSTRUCTION WORKERS | ☐ AGREEMENT TO ESTABLISH EMPLOYER-EMPLOYEE RELATIONSHIP FOR CERTAIN BUILDING AND CONSTRUCTION WORKERS |
|---|---|
| *Notice of Declaration* | *Notice of Agreement* |

designed Hiring Contractor and the undersigned Independent Contractor declare that the Independent Contractor meets the qualifications of an dent Contractor under Texas Workers' Compensation Act, Texas Labor ection 406.141, that the Independent Contractor is not an employee of the Contractor, and that:

the Independent Contractor and the Independent Contractor's employees 'will not be entitled to workers' compensation coverage from the Hiring ontractor, and

the Hiring Contractor's workers' compensation insurance carrier shall not require premiums to be paid by the Hiring Contractor for coverage of the Independent Contractor or the Independent Contractor's employees, helpers, or subcontractors.

ECLARATION TAKES EFFECT UPON RECEIPT BY THE TEXAS WORKERS' NSATION COMMISSION. THIS DECLARATION APPLIES TO ALL HIRING MENTS EXECUTED BY THE HIRING CONTRACTOR AND THE NDENT CONTRACTOR DURING THE YEAR AFTER THIS DECLARATION IS UNLESS A SUBSEQUENT HIRING AGREEMENT IS MADE TO WHICH THE RATION DOES NOT APPLY. IN THE EVENT THAT A HIRING AGREEMENT UCH THIS DECLARATION DOES NOT APPLY IS MADE, THE HIRING ACTOR AND INDEPENDENT CONTRACTOR SHALL SO NOTIFY THE TEXAS RS' COMPENSATION COMMISSION AND THE HIRING CONTRACTOR'S RS' COMPENSATION INSURANCE CARRIER (IF ANY) IN WRITING WITHIN YS AFTER THE NON-APPLYING AGREEMENT IS MADE. ONCE THIS MENT IS SIGNED, THE SUBCONTRACTOR AND THE SUBCONTRACTOR'S YEES SHALL NOT BE ENTITLED TO WORKERS' COMPENSATION AGE FROM THE HIRING CONTRACTOR UNLESS A SUBSEQUENT WRITTEN MENT IS EXECUTED, AND FILED ACCORDING TO COMMISSION RULES, SSLY STATING THAT THIS AGREEMENT DOES NOT APPLY.

The undersigned Hiring Contractor and the undersigned Independent Contractor hereby agree that the Hiring Contractor ☐ will withhold ☐ will not withhold the cost of workers' compensation insurance coverage from the Independent Contractor's contract price and that the Hiring Contractor will purchase workers' compensation insurance coverage for the Independent Contractor and the Independent Contractor's employees. Once this agreement is signed, for the purpose of providing workers' compensation insurance coverage, the Hiring Contractor will be the employer of the Independent Contractor and the Independent Contractor's employees. This agreement makes the Hiring Contractor the employer of the Independent Contractor and the Independent Contractor's employees only for the purposes of workers' compensation laws of Texas and for no other purpose.

TERM (DATES) OF AGREEMENT:    FROM: _____

TO: _____

LOCATION OF EACH AFFECTED JOB SITE (OR STATE WHETHER THIS IS A BLANKET AGREEMENT):

_____

_____

_____

ESTIMATED NUMBER OF EMPLOYEES AFFECTED: _____

THIS AGREEMENT SHALL TAKE EFFECT NO SOONER THAN THE DATE IT IS SIGNED.

### Hiring Contractor's Affirmation

Hiring Contractor's workers' compensation carrier change the effective period of coverage, it is advisable for the Hiring Contractor this form with the new insurance carrier.

1–74–1901518–9
Federal Tax I.D. Number

| ire of Hiring Contractor | Date |
|---|---|

COCK CONSTRUCTION CO., INC.
l Name of the Hiring Contractor

P. O. BOX 530098
Address (Street)

HARLINGEN, TEXAS 78553
Address (City, State, Zip)

or SS# IF SOLE PROPRIETOR

### Independent Contractor's Affirmation

Federal Tax I.D. Number

| ire of Independent Contractor | Date |
|---|---|

l Name of the Independent Contractor

Address (Street)

Address (City, State, Zip)

opies of this form must be completed: This agreement must be filed by the Hiring Contractor with both the Texas Workers' Compensation Commission and the workers' nsation insurance carrier of the Hiring Contractor within 10 days of the date of execution. The original must be filed with the Commission. The agreement must be filed RSONAL DELIVERY OR REGISTERED OR CERTIFIED MAIL. Both the Hiring Contractor and the Independent Contractor must also retain a copy of the agreement.

PEACOCK CONSTRUCTION CO., INC.
TEXAS MUTUAL INSURANCE CO.

## MONTHLY DRAW REQUEST

FROM: _____

_____

PROJECT: _____

PERIOD _____, 20____, TO _____, 20____.

STATEMENT OF CONTRACT ACCOUNT:

1. ORIGINAL CONTRACT AMOUNT                                    $_____

2. APPROVED CHANGE ORDER #'S _____                        $_____
   (As per attached breakdown) (Net)

3. ADJUSTED CONTRACT AMOUNT                                    $_____

4. VALUE OF WORK COMPLETED TO DATE:                            $_____
   (As per attached breakdown)

5. VALUE OF APPROVED CHANGE ORDERS COMPLETED:                  $_____
   (As per attached breakdown)

6. MATERIALS STORED ON SITE:                                   $_____
   (As per attached breakdown)

7                              TOTAL TO DATE                   $_____

8. LESS AMOUNT RETAINED (_____%)                          ( $_____ )

9. TOTAL LESS RETAINAGE                                        $_____

10. TOTAL PREVIOUSLY CERTIFIED (DEDUCT)                        $_____

11. AMOUNT DUE THIS REQUEST                                    $_____


CERTIFICATE OF THE SUBCONTRACTOR:

   I hereby certify that the work performed and the materials supplied to date, as shown on the above represent the actual value of accomplishment under the terms of the Contract (and all authorized changes thereto) between the undersigned and _____ relating to the above referenced project.

   I also certify that payments, less applicable retention, have been made through the period covered by previous payments received from the contractor, to (1) all my subcontractors (sub-subcontractors) and (2) for all materials and labor used in or in connection with the performance of this Contract. I further certify I have complied with Federal State and local tax laws, including Social Security laws and Unemployment Compensation laws and Workmen's Compensation laws insofa as applicable to the performance of this Contract.


Date_____                    _____

Subscribed and sworn before me this _____ day of      Subcontractor
_____, 20_____                  By:_____

Notary Public: _____         Title: _____
My Commission Expires: _____-

AGC ORDER NO. 610

# CONTINUATION SHEET

AIA DOCUMENT G702, APPLICATION AND CERTIFICATE FOR PAYMENT, containing
Contractor's signed Certification is attached.
In tabulations below, amounts are stated to the nearest dollar.
Use Column I on Contracts where variable retainage for line items may apply.

*AIA DOCUMENT G703*   (Instructions on reverse side)   PAGE   OF   PAGES

APPLICATION NUMBER:
APPLICATION DATE:
PERIOD TO:
ARCHITECT'S PROJECT NO:

| A | B | C | D | E | F | G | | H | I |
|---|---|---|---|---|---|---|---|---|---|
| ITEM NO. | DESCRIPTION OF WORK | SCHEDULED VALUE | WORK COMPLETED | | MATERIALS PRESENTLY STORED (NOT IN D OR E) | TOTAL COMPLETED AND STORED TO DATE (D+E+F) | (%) (G÷C) | BALANCE TO FINISH (C–G) | RETAINAGE |
| | | | FROM PREVIOUS APPLICATION (D+E) | THIS PERIOD | | | | | |
| | | | | | | | | | |

AIA DOCUMENT G703 • APPLICATION AND CERTIFICATE FOR PAYMENT • MAY 1983 EDITION • AIA® • © 1983
THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006