# EXHIBIT "D"

## TO THE AFFIDAVIT
## OF
## WILLIAM T. PEACOCK, JR.



**★LABUNSKI★
ASSOCIATES
ARCHITECTS &
CONSULTANTS**

3301 S. Expressway 83, Ste. A3    956/ 428-4334
Harlingen, Texas 78550    Fax 956/ 423-0582

**PROJECT MANUAL SET #**

# LAS DUNAS
# LUXURY CONDOMINIUMS

### *4212 GULF BLVD.*
### *SOUTH PADRE ISLAND, TEXAS*

### *LAA Project No. 00028*

• • • • • • • • •

### *MARCH 13, 2001*





*All rights reserved.*

*No part of this document may be reproduced or utilized in any form without prior written authorization.
from Labunski Associates Architects.*

**COPYRIGHT © 2001
LABUNSKI ASSOCIATES ARCHITECTS**



**EXHIBIT**

**D**

# LAS DUNAS

## Luxury Condominiums

**4212 Gulf Blvd.**
**South Padre Island, Texas**

**LAA Project No. 00028**

**TABLE OF CONTENTS**

Table of Contents
Advertisement for Bids
Instructions to Invited Bidders
Bid Proposal Form
General Conditions of the Contract for Construction (AIA A201-1987)
Supplementary General Conditions

**Division 1 - General Requirements**

Section 01010    - Summary of Work
Section 01011    - General Stipulations
Section 01020    - Allowances
Section 01030    - Special Procedures
Section 01070    - Abbreviations and Standards
Section 01100    - Alternate Bids
Section 01200    - Project Meetings
Section 01300    - Submittals
Section 01320    - Construction Schedules
Section 01400    - Contractor Duties for Quality Control
Section 01410    - Testing Lab Services
Section 01500    - Temporary Facilities
Section 01503    - Insurances and Bonds
Section 01600    - Material and Equipment
Section 01700    - Contract Closeout
Section 01701    - Cleaning

**Division 2 - Site Work**

Section 02100    - Site Preparations
Section 02200    - Earthwork
Section 02210    - Grading, Rough and Finish
Section 02221    - Trenching, Backfilling and Compacting
Section 02280    - Soil Treatment for Termite Control
Section 02362    - Drilled Concrete Piers
Section 02441    - Lawn and Planting Irrigation System
Section 02480    - Landscaping
Section 02510    - Concrete Curbs, Walks and Paving
Section 02518    - Concrete Block Paving
Section 02580    - Road and Parking Appurtenances

COPYRIGHT • 2001
LABUNSKI ASSOCIATES ARCHITECTS

**Division 3 - Concrete**

Section 03100 - Concrete Formwork
Section 03200 - Concrete Reinforcement
Section 03310 - Concrete Materials
Section 03320 - Concrete Topping
Section 03345 - Concrete Finishes
Section 03369 - Concrete Fill, Toppings & Grout
Section 03370 - Concrete Curing and Treatment
Section 03400 - Precast Structural Concrete
Section 03541 - Gypsum Underlayment

**Division 4 - Masonry**

Section 04100 - Mortar
Section 04150 - Masonry Accessories
Section 04200 - Unit Masonry

**Division 5 - Metals**

Section 05120 - Structural Steel
Section 05400 - Cold Formed Metal Framing
Section 05500 - Metal Fabrications
Section 05700 - Aluminum Handrailing and Gates
Section 05712 - Manufactured Steel Stairs

**Division 6 - Wood and Plastics**

Section 06100 - Rough Carpentry
Section 06175 - Metal-Plate-Connected Wood Trusses
Section 06200 - Finish Carpentry
Section 06240 - Plastic Laminate and Solid Synthetic Surfacing
Section 06400 - Architectural Woodwork and Wood Casework

**Division 7 - Thermal and Moisture Protection**

Section 07100 - Waterproofing and Dampproofing
Section 07110 - Membrane Waterproofing
Section 07200 - Insulation
Section 07240 - Exterior Wall Insulated Finish System (EIFS)
Section 07270 - Fire Safing, Miscellaneous Seals
Section 07410 - Metal Standing Seam Roofing
Section 07460 - Soffit Panels
Section 07510 - Membrane Roofing (Modified Bitumen)
Section 07600 - Flashing and Sheet Metal
Section 07900 - Joint Sealants

COPYRIGHT • 2001

## Division 8 - Doors and Windows

| | |
|---|---|
| Section 08100 | - Hollow Metal Work |
| Section 08211 | - Wood Doors and Mirrored Doors |
| Section 08370 | - Exterior Sliding Glass Doors |
| Section 08400 | - Aluminum Storefront and Entrances |
| Section 08503 | - Vinyl Double Hung Windows |
| Section 08710 | - Finish Hardware |
| Section 08800 | - Glass and Glazing |

## Division 9 - Finishes

| | |
|---|---|
| Section 09200 | - Lath and Plaster |
| Section 09250 | - Gypsum Wallboard and Framing |
| Section 09310 | - Ceramic Tile |
| Section 09682 | - Carpeting |
| Section 09900 | - Painting |

## Division 10 - Specialties

| | |
|---|---|
| Section 10000 | - Building Specialties |
| Section 10400 | - Identifying Devices |
| Section 10800 | - Toilet and Bath Accessories |

## Division 11 - Equipment

| | |
|---|---|
| Section 11450 | - Residential Appliances |

## Division 12 - Furnishings

| | |
|---|---|
| Section 12390 | - Premanufactured Residential Casework Cabinets |

## Division 13 - Special Construction

| | |
|---|---|
| Section 13151 | - Outdoor Pools and Decks |

## Division 14 - Conveying Systems

| | |
|---|---|
| Section 14210 | - Electric Passenger Elevators |

TC-3

COPYRIGHT • 2001
LABUNSKI ASSOCIATES ARCHITECTS

**Division 15  -  Mechanical**

| | |
|---|---|
| Section 15010 | -  General Mechanical Provisions |
| Section 15060 | -  Pipe and Fittings |
| Section 15094 | -  Hangers, Anchors, Supports, and Sleeves |
| Section 15100 | -  Valves |
| Section 15180 | -  Mechanical Insulation |
| Section 15220 | -  Domestic Water Supply |
| Section 15250 | -  Domestic Water Booster System |
| Section 15300 | -  Fire Protection System |
| Section 15301 | -  Soil, Waste, and Vent System |
| Section 15450 | -  Plumbing Fixtures and Trim |
| Section 15776 | -  Heating, Ventilating, Air Conditioning Systems |
| Section 15829 | -  Exhaust Fans |
| Section 15870 | -  Air Distribution System |
| Section 15900 | -  HVAC Controls |
| Section 15920 | -  HVAC System Testing, Adjusting, and Balancing |

**Division 16  -  Electrical**

| | |
|---|---|
| Section 16010 | -  General Electrical Provisions |
| Section 16110 | -  Raceways |
| Section 16120 | -  Conductors |
| Section 16140 | -  Wiring Devices |
| Section 16160 | -  Panel Boards |
| Section 16170 | -  Disconnects |
| Section 16420 | -  Service Entrance |
| Section 16450 | -  Grounding |
| Section 16500 | -  Light Fixtures |
| Section 16610 | -  Emergency Electrical Systems |
| Section 16760 | -  Intercommunication, Fire Alarm, Security, and Energy Management Control Systems |
| Section 16900 | -  HVAC Control Wiring |

**END OF TABLE OF CONTENTS**

COPYRIGHT • 2001
LABUNSKI ASSOCIATES ARCHITECTS

## SECTION AB  -  ADVERTISEMENT FOR INVITED BIDS

Sealed bids for the construction of the **Las Dunas Luxury Condominiums** to be located at 4212 Gulf Blvd., South Padre Island, Texas, will be received by the Owner before **4:00 p.m.** on **June 26, 2001**, at the office of Labunski Associates Architects located at 1514 S. 77 Sunshine Strip, Harlingen, Texas.

Bids will be received from **INVITED BIDDERS** in accordance with the Instructions to Bidders and the Bid Proposal Form.  Only a bona fide sealed bid(s) will be considered at opening time.  All bids received after the stipulated time for bid opening shall be returned to the bidder unopened.

The invited bidders selected by the Owner are as follows:


**BFW Construction Co., Inc.**
1111 N. General Bruce Drive
P. O. Box 628 [78503]
Temple, Texas 76504
Tel: 254-778-8941
Fax: 254-778-4450

**Faulkner Construction Company**
P. O. Box 531968
Harlingen, Texas 78553
Tel: 956-440-1600
Fax: 956-440-0134

**Moorhouse Construction Company**
5826 Bear Lane
Corpus Christi, Texas 78405
Tel: 361-883-5993
Fax: 361-883-7417

**Peterson Construction, Inc.**
808 E. Minnesota Road
P. O. Box 4562
McAllen, Texas 78502
Tel: 956-631-8197
Fax: 956-631-0605

**D. Wilson Construction, Inc.**
1209 Pecan
P. O. Box 3455 (78502-3455)
McAllen, Texas 78501
Tel: 956-686-9573
Fax: 956-686-3270

**Terry Ray Construction, Inc.**
1900 S. Price Road
Brownsville, Texas 78521
Tel: 956-548-2000
Fax: 956-548-2075


Copies of the drawings, specifications, and contract documents for the proposed work shall be on file and may be inspected at the office of:

### LABUNSKI ASSOCIATES ARCHITECTS
1514 S. 77 Sunshine Strip. Suite 24
Harlingen, Texas   78550
Telephone: 956-428-4334
Fax: 956-423-0582

Additional copies of the plans and specifications will be on file in the plan rooms of the following organizations:

| AGC, Inc. | 3-1/2 Miles West Expressway 83; Harlingen 78550 | 956-423-4091 |
| | Post Office Box 391;  Harlingen  78551 | |
| AGC, Inc. | 1045 E. Roosevelt Brownsville 78520 | 956-546-1639 |
| AGC, Inc. | 1309 East Highway McAllen  78501 | 956-686-0222 |

AB-1

COPYRIGHT © 2001
LABUNSKI ASSOCIATES ARCHITECTS

| AGC, Inc. | 10806 Gulfdale<br>San Antonio  78216 | 210-349-4921 |
| ABC, Inc. | 116 Jason Plaza<br>Victoria  77901 | 512-572-0299 |
| Dodge Plan Room | 7433 Leopard<br>Corpus Christi, Texas 78409 | 800-605-2199 |
| Builders' Exchange<br>of Texas, Inc. | 4047 Naco Perrin, Ste. 100<br>San Antonio  78217 | 210-564-6900 |

A maximum of five (5) copies of the above documents will be issued to the **invited** bidders from the office of the Architect in accordance with the Instructions to Bidders upon the deposit of **$250.00** for each set of documents. Copies of the plans and specifications will only be issued in their complete form.  Deposits of all plan holders will be returned in full if complete documents are returned in good condition within ten (10) days after the bid opening.  Subcontractors and suppliers may examine the documents at the office of the Architect, one of the invited bidders, or one of the plan rooms listed above.

Attention of Bidders is particularly called to the fact that the Contractor must ensure that employees and applicants for employment are not discriminated against because of their race, color, religion, sex, familial status, handicap or national origin.

The Owner reserves the right to reject any and all bids, to waive irregularities, formalities, to require financial statements and references, and to accept the bid which is most advantageous to the Owner.

**END OF SECTION AB  -  ADVERTISEMENT FOR INVITED BIDS**

**AB-2**

COPYRIGHT © 2001
LABUNSKI ASSOCIATES ARCHITECTS

g.    **Project Contract**

A single, lump-sum contract covering all of the work shall be awarded to the successful General Contractor. The Contractor shall be fully responsible for including in his bid, except as may be otherwise stipulated, all of the cost for providing all of the labor, materials, equipment, time, services, coordination, and supervision necessary to properly and expeditiously implement and construct all of the work, complete and in place, in resolute accord with the agreement and with the scope of the requirements indicated or described by the drawings, specifications, or applicable alternate bid, addendum, or change order as prepared by Labunski Associates Architects, AIA, 1514 S. 77 Sunshine Strip, Suite 24, Harlingen, Texas 78550.

h.    **Project Time**

Time is of the essence. The completed project must be delivered to the Owner on or before the project completion date stipulated by the bidder on the Bid Proposal Form except as such date as may be extended by delays approved by the Architect in accordance with the terms of the contract documents governing the construction of such project as well as the requirements hereinafter presented in Article IX of the Instructions to Bidders. Failure to complete such project within the time prescribed will subject the bidder to whom the contract is awarded (hereinafter called "Contractor") to liability for liquidated damages and applicable penalties.

# PROJECT SCHEDULE

**SUBSTANTIAL COMPLETION OF PROJECT:    JULY 1, 2002**
(including Certificate of Occupancy and ability of Owner to convey ownership of individual condominium apartments to buyers, provided that a construction contract is awarded no later than July 1, 2001)

**LIQUIDATED DAMAGES** of $5,000.00 per calendar day will be assessed after July 1, 2002 unless the contract Substantial Completion date is extended by Change Order.

**A CASH BONUS** of $100,000 for early finish will be paid to the Contractor by the Owner, if Substantial Completion is achieved on or before June 1, 2002.

i.    **Bid Documents**

Drawings, specifications, and other bidding documents may be obtained at the place indicated on the Advertisement for Bids. Bidders shall comply with all conditions stipulated in such bidding documents.

## ARTICLE II - FORM OF PROPOSAL

a.    The Owner invites bids from qualified Contractors on the form enclosed herein for the above-referenced project for all new materials, equipment, and labor required to accomplish the work contemplated by the plans and specifications and as may be required to fulfill the intent of the drawings and specifications.

b.    The Owner may consider informal any bid not prepared and submitted in accordance with the provisions herein and may waive any formalities or reject any and all bids. Any bid may be withdrawn prior to the above-scheduled time for the opening of bids or authorized postponement thereof. Any bid received after the time and date specified shall not be considered. No bidder may withdraw a bid within thirty (30) days following the actual date of the opening thereof.

COPYRIGHT © 2001
LABUNSKI ASSOCIATES ARCHITECTS

d.    All bid bonds shall comply with the provisions of Article VIII below.

## ARTICLE IV - QUALIFICATIONS OF BIDDER

a.    The Owner may make such investigations as he deems necessary to determine the ability of the bidder to perform the work, and the bidder shall furnish to the Owner all such information and data for this purpose as the Owner may request. The Owner reserves the right to reject any bid if the evidence submitted by, or investigation of such bidder fails to satisfy the Owner that such bidder is properly qualified to carry out the obligations of the contract and to complete the work contemplated herein. Each bidder must complete and submit in duplicate AIA Document A305, Contractor's Qualification Statement, 1986 Edition (sample bound herewith) along with the bid.

b.    The bidder is specifically advised that any person, firm, or other party to whom it is proposed to award a subcontract under this contract must be acceptable to the Owner and to the Architect.

## ARTICLE V - EXAMINATION OF CONTRACT DOCUMENTS AND SITE

a.    Each bidder, before submitting his proposal, shall fully examine and acquaint himself with the contract documents and the site of the proposed project. He shall make such investigations as he may deem necessary to fully inform himself of the existing conditions, facilities, difficulties, restrictions, and requirements incident to completion of the project under the terms of the contract.

b.    Failure of the bidder to acquaint himself adequately with the site and such conditions, facilities, difficulties, restrictions, and requirements shall not relieve him of his obligation to perform the entire contract at the price set forth in his proposal. Bidders shall be responsible for verifying all dimensions which may affect the work.

c.    Each bidder must inform himself of the conditions relating to the construction of the project and the employment labor thereon. Failure to do so shall not relieve a successful bidder of his obligation to furnish all material and labor necessary to carry out the provisions of the contract. Insofar as possible, the Contractor, in carrying out his work, must employ such methods and/or means as will not cause any interruption of or interference with the work of any other Contractor. Also it shall be the responsibility of the Contractor to repair any damages caused by construction in a prompt manner. This includes repair work which may have to occur during the night, weekends, and/or holidays. The Contractor is to take full responsibility for the prompt repair of damage to adjacent properties. The Owner may, at his option, repair such damages and bill the General Contractor a fair amount for the repairs in the event the General Contractor should fail to comply with the provisions mentioned above.

d.    Substitution requests shall be submitted in writing and received by the Architect at least seven (7) working days prior to the bid date. Approved substitutions will be issued by addendum.

e.    In order to permit competition consistent with the Owner's interest, the Architect shall consider written requests for approval of products similar to those specified.

f.    Contractors are cautioned that the Architect reserves the right to disapprove the use of any material not considered the equal of that indicated or specified. The Contractor who bids using an unapproved material as the basis of his bid shall do so at his own risk.

## ARTICLE VI - ADDENDA

a.    Changes in or interpretations of the contract documents will be considered as binding only when authorized and issued by the Architect as written addenda. Verbal directions to alter or otherwise clarify the bid documents, including those instructions as may be transmitted by telephone, shall likewise not be binding unless confirmed by written addenda as authorized by the Architect and issued within ten (10) calendar days after the date established for receipt of the project bids.

IB-4

COPYRIGHT© 2001
LABUNSKI ASSOCIATES ARCHITECTS

b.  Provide a maintenance guarantee for a period of not less than one (1) year following completion and final acceptance of the project.

c.  The contract shall be awarded contingent upon compliance with the following requirements and acceptance by the Owner of the required bonds. All required bonds shall be issued either:

1.  Only by companies holding certificates of authority as acceptable sureties on federal bonds and as acceptable reinsuring companies and which are furthermore authorized to do business in the state of Texas. Such companies shall be included in the current Department of the Treasury fiscal service listing of certificate holders as published in the Federal Register and such bonds shall be issued within three (3) business days following the award of the bid, and the execution of a contract pursuant to such bid shall be contingent upon such bonds being accepted by the Owner as being in compliance with this paragraph; or

2.  If bonds are to be issued by companies not holding certificates of authority as provided in c.1. above, then in accordance with Subsection B of Article 7.19-1, Vernon's Texas Insurance Code, the Contractor shall furnish to the Owner information in addition to bid bonds, performance bonds, and payment bonds required hereby. The bid bonds shall have such information as hereinafter follows attached to the bid bond at the time it is submitted to the Owner. Performance and payment bonds required hereunder shall be issued within three (3) business days following the award of the bid and the execution of a contract pursuant to such bid award shall be contingent upon such bonds being approved by the Owner as being in compliance with the following requirements. The Contractor or such surety company shall also, in addition to such bid bonds, performance bonds, and payment bonds submitted within the time limits described hereinabove, furnish the following:

a)  The name and corporate address of the bonding company.

b)  The registered agent of the corporate surety in Cameron County, Texas to whom any requisite notices may be delivered and on whom service of process may be had in matters arising out of the suretyship evidenced by such bonds.

c)  A statement from the State Board of Insurance of Texas reciting the amount of the allowed capital and surplus of such surety company as of the date of the last annual statutory financial statement.

d)  A statement from the surety company stating that if any bond furnished hereunder is in an amount in excess of ten percent (10%) of the surety company's capital and surplus, that the surety company has reinsured the portion of the risk that exceeds ten percent (10%) of the surety company's capital and surplus with one or more reinsurers who are duly authorized to do business in the state of Texas.

e)  If the surety company is going to execute a bond in excess of ten percent (10%) of the surety company's capital and surplus, then the surety company shall in addition to the above set forth requirements, furnish the following additional information:

1)  The name of the reinsurance company.

2)  A copy of the reinsurance contract, certified by the bonding company as a true and correct copy of the original, that will reinsure any project of the Owner, which will constitute written certification that the surety company has reinsured that portion of the surety company's risk that exceeds ten percent (10%) of the surety company's capital and surplus.

IB-6

COPYRIGHT © 2001
LABUNSKI ASSOCIATES ARCHITECTS

Failure of suppliers substituted for specified products shall be the responsibility of the Contractor. No extensions of time shall be allowed for delays connected with substituted products or suppliers.

6.  The time extensions for changes in the work will depend upon the extent, if any, by which the changes cause delay in the completion of the various elements of construction.

7.  Information and data furnished or referred to below is furnished for Contractor's information:

    a)  Physical conditions indicated on the drawings and in the specifications are the result of site investigations or surveys.

    b)  Weather Conditions

        Information in the tables to follow was compiled from the 1980 Climatological Data records of the Department of Commerce, National Oceanic and Atmospheric Administration Primary National Weather Service Station at Brownsville, Texas. For the purpose of this contract "unusual inclement weather" will be interpreted as those days in excess of the number of days shown in the final column under Precipitation on which rainfall exceeds 0.01 inch total for a maximum of thirty-four (34) days per twelve (12) month period and in the final column under Temperature on which the temperature was below 32°F total for a maximum of one (1) day per twelve (12) month period. Claims for delays due to unusual inclement weather will be considered only after accumulated conditions exceed the above maximums.

    c)  Brownsville National Oceanic and Atmospheric Administration weather report data will be used to verify actual rainfall and temperature during the duration of the project.

# P R E C I P I T A T I O N

| Month | *Normal (inches) | Maximum of Record (inches) 37 | Minimum of Record (inches) 37 | 24-Hour Maximum (inches) 37 | Average Number of Days 0.01 Inch or More 34 |
|---|---|---|---|---|---|
| January | 1.25 | 5.11 | trace | 2.87 | 7 |
| February | 1.55 | 10.25 | 0 | 4.27 | 6 |
| March | .50 | 6.46 | 0 | 2.73 | 4 |
| April | 1.57 | 10.35 | 0 | 9.17 | 4 |
| May | 2.15 | 9.12 | trace | 7.17 | 5 |
| June | 2.70 | 13.80 | trace | 7.52 | 6 |
| July | 1.51 | 9.43 | trace | 3.71 | 5 |
| August | 2.83 | 16.58 | 0 | 7.82 | 7 |
| September | 5.24 | 30.57 | .07 | 12.09 | 10 |
| October | 3.54 | 17.12 | trace | 6.67 | 7 |
| November | 1.44 | 7.69 | 0 | 4.08 | 6 |
| December | 1.16 | 6.95 | 0 | 3.89 | 6 |

\*   Normals and averages are computed from data from 1951 - 1980. Maximums, minimums, and extremes are computed from records during the period 1878 - 1991.

    Maximums for contracts less than or greater than 12 months shall be calculated on the basis of fractions of 12 month increments, i.e., 12 months = 34 days, therefore 6 months = 34/12 x 6 = 17 days.

IB-8

COPYRIGHT © 2001
LABUNSKI ASSOCIATES ARCHITECTS

## ARTICLE XI - LAWS AND REGULATIONS

The bidder's attention is directed to the fact that all applicable federal laws, municipal ordinances, and the rules and regulations of all authorities having jurisdiction over construction of the project shall apply to the contract throughout, and they will be deemed to be included in the contract same as though herein written out in full.

## ARTICLE XII - POWER OF ATTORNEY

a.    Attorneys-in-fact who sign documents must file with each document a certified and effectively dated copy of their power of attorney.

b.    Officers or representatives of corporations who sign documents (including forms of proposals) shall attach a corporate resolution allowing such action to said documents.

## ARTICLE XIII - NOTICE OF SPECIAL CONDITIONS

Attention is particularly called to those parts of the contract documents and specifications which deal with the following:

a.    Inspection and testing of materials.

b.    Bonding requirements.

c.    Insurance requirements.

d.    Alternate bids.

e.    Listed allowances.

f.    Prebid meeting at 4:00 p.m. on June 19, 2001, at the job site.

## ARTICLE XIV - EQUAL OPPORTUNITY CLAUSE

All Contractors and subcontractors shall be equal opportunity employers.

Attention of Bidders is particularly called to the fact that the Contractor must ensure that employees and applicants for employment are not discriminated against because of their race, color, religion, sex, familial status, handicap, or national origin.


**END OF SECTION IB - INSTRUCTIONS TO BIDDERS**

COPYRIGHT © 2001
LABUNSKI ASSOCIATES ARCHITECTS

**g.   Bid Plan Proposal**

1.   Base Bid

To construct and complete the indicated project items in accordance with all of the requirements as described and indicated on the contract, the bidder agrees to perform the work for those sums and associated construction time periods as the bidder shall list on the following tabulation form of required bid proposal items.

2.   **Allowances**

The base bid amount includes all allowances as set forth in Section 01020 - Allowances of the project specifications.

3.   **Alternate Bids**

The Owner invites the indicated separate alternate bid(s) and cautions the bidder to complete all prices for the following alternates. Failure to submit alternate prices will render the bid proposal informal and may cause its rejection. Refer to Section 01100 - Alternate Bids for the description of the project requirements of the alternates.

**h.   Contracts, Bonds, Insurance Certificates**

If awarded this contract, the undersigned will execute a satisfactory construction contract, performance bond, labor and material payment bonds, and insurance certificates with the Owner for the entire work as per the contract documents within ten (10) calendar days after notice of award of contract. Enclosed is cash, certified check, or bid bond payable to the Owner for not less than five percent (5%) of the largest amount for which a contract can be awarded under this proposal in the amount of $ _____ in the event the construction contract (when offered by the Owner) and the bonds and proof of insurance coverage are not executed within the time period set forth above.

**i.   Bidder(**_____**) Submits Bids as Follows:**

                                 name

**BASE BID**

_____**Dollars**

$ _____

The undersigned agrees to complete the base bid project in accordance with the following project schedule:

P-2

**Name of Bidder (fill in name)** _____

COPYRIGHT ● 2001
LABUNSKI ASSOCIATES ARCHITECTS

| **Subcontractor** | | **City** |
|---|---|---|
| Landscaping | _____ | _____ |
| Concrete Labor | _____ | _____ |
| Concrete Material | _____ | _____ |
| Masonry | _____ | _____ |
| Structural Steel | _____ | _____ |
| Millwork | _____ | _____ |
| Roofing | _____ | _____ |
| Hollow Metal Work | _____ | _____ |
| Doors & Hardware | _____ | _____ |
| Glass and Aluminum | _____ | _____ |
| Windows | _____ | _____ |
| Painting | _____ | _____ |
| Drywall & Framing | _____ | _____ |
| Ceramic Tile | _____ | _____ |
| Carpet & Vinyl | _____ | _____ |
| Elevator | _____ | _____ |
| Plaster, EIFS | _____ | _____ |
| Plumbing | _____ | _____ |
| HVAC | _____ | _____ |
| Electrical | _____ | _____ |
| Fire Alarm System | _____ | _____ |
| Security System | _____ | _____ |

P-4

**Name of Bidder** (fill in name) _____

COPYRIGHT • 2001
LABUNSKI ASSOCIATES ARCHITECTS

By    _____
                              (Signature)

Name    _____

Title    _____

Date    _____

If bidder is a corporation, attach corporate resolution allowing signature.

**END OF SECTION P - BID PROPOSAL FORM**

Required Attachments/Enclosures:    ____    Bid Bond
                                     ____    Corporate Resolution
                                     ____    Project Manager Resume'/Qualification Statement
                                     ____    Project Superintendent Resume'/Qualification Statement

**P-6**

**Name of Bidder** (fill in name)    _____

COPYRIGHT ● 2001
LABUNSKI ASSOCIATES ARCHITECTS

# T H E    A M E R I C A N    I N S T I T U T E    O F    A R C H I T E C T S



*AIA Document A201*

# General Conditions of the Contract for Construction

*THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES; CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS MODIFICATION*

## 1987 EDITION
## TABLE OF ARTICLES

1. GENERAL PROVISIONS

2. OWNER

3. CONTRACTOR

4. ADMINISTRATION OF THE CONTRACT

5. SUBCONTRACTORS

6. CONSTRUCTION BY OWNER OR BY SEPARATE CONTRACTORS

7. CHANGES IN THE WORK

8. TIME

9. PAYMENTS AND COMPLETION

10. PROTECTION OF PERSONS AND PROPERTY

11. INSURANCE AND BONDS

12. UNCOVERING AND CORRECTION OF WORK

13. MISCELLANEOUS PROVISIONS

14. TERMINATION OR SUSPENSION OF THE CONTRACT

This document has been approved and endorsed by the Associated General Contractors of America.

Copyright 1911, 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1966, 1967, 1970, 1976, ©1987 by The American Institute of Architects, 1735 New York Avenue, N.W., Washington, D.C., 20006. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the United States and will be subject to legal prosecutions.

 **CAUTION: You should use an original AIA document which has this caution printed in red.** An original assures that changes will not be obscured as may occur when documents are reproduced.

**CONTRACTOR** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**
Contractor, **Definition of** . . . . . . . . . . . . . . . . . . . . . **3.1**, 6.1.2
Contractor's Bid . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1.1.1
**Contractor's Construction Schedule** . . . . . . . . . . . **3.10**, 6.1.3
Contractor's Employees . . . . . . . 3.3.2, 3.4.2, 3.8.1, 3.9, 3.18, 4.2.3,
    4.2.6, 8.1.2, 10.2, 10.3, 11.1.1, 14.2.1.1
**Contractor's Liability Insurance** . . . . . . . . . . . . . . . . . . . . **11.1**
Contractor's Relationship with Separate Contractors
    and Owner's Forces . . . . . . 2.2.6, 3.12.5, 3.14.2, 4.2.4, 6, 12.2.5
Contractor's Relationship with Subcontractors . . . . . . . 1.2.4, 3.3.2,
    3.18.1, 3.18.2, 5.2, 5.3, 5.4, 9.6.2, 11.3.7, 11.3.8, 14.2.1.2
Contractor's Relationship with the Architect . . . . 1.1.2, 3.2.1, 3.2.2,
    3.3.3, 3.5.1, 3.7.3, 3.11, 3.12.8 3.16, 3.18, 4.2.3, 4.2.4, 4.2.6,
    4.2.12, 5.2, 6.2.2, 7.3.4, 9.8.2, 11.3.7, 12.1, 13.5
Contractor's Representations . . 1.2.2, 3.5.1, 3.12.7, 6.2.2, 8.2.1, 9.3.3
Contractor's Responsibility for Those
    Performing the Work . . . . . . . . . . . . . . . . 3.3.2, 3.18, 4.2.3, 10
Contractor's Review of Contract Documents . . . . . . 1.2.2, 3.2, 3.7.3
Contractor's Right to Stop the Work. . . . . . . . . . . . . . . . . . . 9.7
Contractor's Right to Terminate the Contract . . . . . . . . . . . . 14.1
Contractor's Submittals . . . . . 3.10, 3.11, 3.12, 4.2.7, 5.2.1, 5.2.3,
    7.3.6, 9.2, 9.3.1, 9.8.2, 9.9.1, 9.10.2,
    9.10.3, 10.1.2, 11.4.2, 11.4.3
Contractor's Superintendent . . . . . . . . . . . . . . . . 3.9, 10.2.6
Contractor's Supervision and Construction Procedures. . . . . 1.2.4,
    3.3, 3.4, 4.2.3, 8.2.2, 8.2.3, 10
Contractual Liability Insurance . . . . . . . . . . . . . . 11.1.1.7, 11.2.1
Coordination and Correlation . . . . . . . . . . . . . . 1.2.2, 1.2.4, 3.3.1,
    3.10, 3.12.7, 6.1.3, 6.2.1
Copies Furnished of Drawings and Specifications . . . 1.3, 2.2.5, 3.11
Correction of Work . . . . . . . . . . . . . . . . . . . . 2.3, 2.4, 4.2.1, 9.8.2,
    9.9.1, 12.1.2, 12.2, 13.7.1.3
Cost, Definition of . . . . . . . . . . . . . . . . . . . . . . . . 7.3.6, 14.3.5
Costs . . . . 2.4, 3.2.1, 3.7.4, 3.8.2, 3.15.2, 4.3.6, 4.3.7, 4.3.8.1, 5.2.3,
    6.1.1, 6.2.3, 6.3, 7.3.3.3, 7.3.6, 7.3.7, 9.7, 9.8.2, 9.10.2, 11.3.1.2,
    11.3.1.3, 11.3.4, 11.3.9, 12.1, 12.2.1, 12.2.4, 12.2.5, 13.5, 14
**Cutting and Patching** . . . . . . . . . . . . . . . . . . . . . **3.14**, 6.2.6
Damage to Construction of Owner or Separate Contractors . 3.14.2,
    6.2.4, 9.5.1.5, 10.2.1.2, 10.2.5, 10.3, 11.1, 11.3, 12.2.5
Damage to the Work . . . . . 3.14.2, 9.9.1, 10.2.1.2, 10.2.5, 10.3, 11.3
Damages, Claims for . . 3.18, 4.3.9, 6.1.1, 6.2.5, 8.3.2, 9.5.1.2, 10.1.4
Damages for Delay . . . . . . . . . . . . . . . . . . . 6.1.1, 8.3.3, 9.5.1.6, 9.7
Date of Commencement of the Work, Definition of . . . . . . . . 8.1.2
Date of Substantial Completion, Definition of. . . . . . . . . . . . 8.1.3
Day, Definition of . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.1.4
Decisions of the Architect . . . . . 4.2.6, 4.2.7, 4.2.11, 4.2.12, 4.2.13,
    4.3.2, 4.3.6, 4.4.1, 4.4.4, 4.5, 6.3, 7.3.6, 7.3.8, 8.1.3, 8.3.1, 9.2,
    9.4, 9.5.1, 9.8.2, 9.9.1, 10.1.2, 13.5.2, 14.2.2, 14.2.4
**Decisions to Withhold Certification** . . . . . . . . . **9.5**, 9.7, 14.1.1.3
Defective or Nonconforming Work, Acceptance,
    Rejection and Correction of . . . . . . . . . . . 2.3, 2.4, 3.5.1, 4.2.1,
    4.2.6, 4.3.5, 9.5.2, 9.8.2, 9.9.1, 10.2.5, 12, 13.7.1.3
Defective Work, Definition of . . . . . . . . . . . . . . . . . . . . 3.5.1
Defective Work, Definition of . . . . . . . . . . . . . . . . . . . . 3.5.1
Definitions . . . . . . 1.1, 2.1.1, 3.1, 3.5.1, 3.12.1.1, 3.12.2, 3.12.3, 4.1.1,
    4.3.1, 5.1, 6.1.2, 7.2.1, 7.3.1, 7.3.6, 8.1, 9.1, 9.8.1
**Delays and Extensions of Time** . . . . . . . . 4.3.1, 4.3.8.1, 4.3.8.2,
    6.1.1, 6.2.3, 7.2.1, 7.3.1, 7.3.4, 7.3.5, 7.3.8,
    7.3.9, 8.1.1, **8.3**, 10.3.1, 14.1.1.4
Disputes . . . . . . . . . 4.1.4, 4.3, 4.4, 4.5, 6.2.5, 6.3, 7.3.8, 9.3.1.2
Documents and Samples at the Site . . . . . . . . . . . . . . . . . . 3.11
Drawings, Definition of . . . . . . . . . . . . . . . . . . . . . . . . . 1.1.5
Drawings and Specifications, Use and Ownership of . . . 1.1.1, 1.3,
    2.2.5, 3.11, 5.3
Duty to Review Contract Documents and Field Conditions . . . 3.2
Effective Date of Insurance . . . . . . . . . . . . . . . . . . 8.2.2, 11.1.2

Emergencies . . . . . . . . . . . . . . . . . . . . . . . . 4.3.7, **10.3**
Employees, Contractor's . . . . . . . . . 3.3.2, 3.4.2, 3.8.1, 3.9, 3.18.1,
    3.18.2, 4.2.3, 4.2.6, 8.1.2, 10.2, 10.3, 11.1.1, 14.2.1.1
Equipment, Labor, Materials and . . . . . . 1.1.3, 1.1.6, 3.4, 3.5.1,
    3.8.2, 3.12.3, 3.12.7, 3.12.11, 3.13, 3.15.1, 4.2.7,
    6.2.1, 7.3.6, 9.3.2, 9.3.3, 11.3, 12.2.4, 14
Execution and Progress of the Work . . . . . . 1.1.3, 1.2.3, 3.2, 3.4.1,
    3.5.1, 4.2.2, 4.2.3, 4.3.4, 4.3.8, 6.2.2, 7.1.3,
    7.3.9, 8.2, 8.3, 9.5, 9.9.1, 10.2, 14.2, 14.3
**Execution, Correlation and Intent of the**
    **Contract Documents** . . . . . . . . . . . . . . . . . . . . . . **1.2**, 3.7.1
Extensions of Time . . . . . . . . 4.3.1, 4.3.8, 7.2.1.3, 8.3, 10.3.1
Failure of Payment by Contractor . . . . . . . . . . . 9.5.1.3, 14.2.1.2
Failure of Payment by Owner . . . . . . . . . . . . 4.3.7, 9.7, 14.1.3
Faulty Work (See Defective or Nonconforming Work)
**Final Completion and Final Payment** . . . . . . . 4.2.1, 4.2.9, 4.3.2,
    4.3.5, **9.10**, 11.1.2, 11.1.3, 11.3.5, 12.3.1, 13.7
Financial Arrangements, Owner's . . . . . . . . . . . . . . . . . . . 2.2.1
Fire and Extended Coverage Insurance . . . . . . . . . . . . . . . 11.3

**GENERAL PROVISIONS** . . . . . . . . . . . . . . . . . . . . . . . . **1**
**Governing Law** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13.1**
Guarantees (See Warranty and Warranties)
Hazardous Materials . . . . . . . . . . . . . . . . . . . . . 10.1, 10.2.4
Identification of Contract Documents . . . . . . . . . . . . . . . . 1.2.1
Identification of Subcontractors and Suppliers . . . . . . . . . . 5.2.1
**Indemnification** . . . . . . . 3.17, **3.18**, 9.10.2, 10.1.4, 11.3.1.2, 11.3.7
**Information and Services Required of the Owner** . . . . 2.1.2, **2.2**,
    4.3.4, 6.1.3, 6.1.4, 6.2.6, 9.3.2, 9.6.1, 9.6.4, 9.8.3, 9.9.2,
    9.10.3, 10.1.4, 11.2, 11.3, 13.5.1, 13.5.2
**Injury or Damage to Person or Property** . . . . . . . . . . . . **4.3.9**
Inspections . . . . . . . . . . . . . . . . . . 3.3.3, 3.3.4, 3.7.1, 4.2.2,
    4.2.6, 4.2.9, 4.3.6, 9.4.2, 9.8.2, 9.9.2, 9.10.1, 13.5
Instructions to Bidders . . . . . . . . . . . . . . . . . . . . . . . . . 1.1.1
Instructions to the Contractor . . . . 3.8.1, 4.2.8, 5.2.1, 7, 12.1, 13.5.2
Insurance . . . . . . . 4.3.9, 6.1.1, 7.3.6.4, 9.3.2, 9.8.2, 9.9.1, 9.10.2, 11
**Insurance, Boiler and Machinery** . . . . . . . . . . . . . . . . **11.3.2**
**Insurance, Contractor's Liability** . . . . . . . . . . . . . . . . . **11.1**
Insurance, Effective Date of . . . . . . . . . . . . . . . . . 8.2.2, 11.1.2
**Insurance, Loss of Use** . . . . . . . . . . . . . . . . . . . . . . . **11.3.3**
**Insurance, Owner's Liability** . . . . . . . . . . . . . . . . . . . . **11.2**
**Insurance, Property** . . . . . . . . . . . . . . . . . . . . 10.2.5, **11.3**
Insurance, Stored Materials . . . . . . . . . . . . . . . . 9.3.2, 11.3.1.4

**INSURANCE AND BONDS** . . . . . . . . . . . . . . . . . . . . . . **11**
Insurance Companies, Consent to Partial Occupancy . . 9.9.1, 11.3.11
Insurance Companies, Settlement with . . . . . . . . . . . . . . . 11.3.10
Intent of the Contract Documents . . . . . . . . . . . . . 1.2.3, 3.12.4,
    4.2.6, 4.2.7, 4.2.12, 4.2.13, 7.4
**Interest** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13.6**
**Interpretation** . . . . . . . 1.2.5, 1.4, **1.5**, 4.1.1, 4.3.1, 5.1, 6.1.2, 8.1.4
Interpretations, Written . . . . . . . . . . . . . . 4.2.11, 4.2.12, 4.3.7
Joinder and Consolidation of Claims Required . . . . . . . . . . . 4.5.6
**Judgment on Final Award** . . . . . . . . . . . . . 4.5.1, 4.5.4.1, **4.5.7**
**Labor and Materials**, Equipment . . . 1.1.3, 1.1.6, **3.4**, 3.5.1, 3.8.2,
    3.12.2, 3.12.3, 3.12.7, 3.12.11, 3.13, 3.15.1,
    4.2.7, 6.2.1, 7.3.6, 9.3.2, 9.3.3, 12.2.4, 14
Labor Disputes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8.3.1
Laws and Regulations . . . . . . 1.3, 3.6, 3.7, 3.13, 4.1.1, 4.5.5, 4.5.7,
    9.9.1, 10.2.2, 11.1, 11.3, 13.1, 13.4, 13.5.1, 13.5.2, 13.6
Liens . . . . . . . . . . . . . 2.1.2, 4.3.2, 4.3.5.1, 8.2.2, 9.3.3, 9.10.2
**Limitation on Consolidation or Joinder** . . . . . . . . . . . . **4.5.5**
Limitations, Statutes of . . . . . . . . . . . . . . 4.5.4.2, 12.2.6, 13.7
Limitations of Authority . . . . . . . . . . . . . . 3.3.1, 4.1.2, 4.2.1,
    4.2.3, 4.2.7, 4.2.10, 5.2.2, 5.2.4, 7.4, 11.3.10

Rules and Notices for Arbitration . . . . . . . . . . . . . . . . . . . . . **4.5.2**
**Safety of Persons and Property** . . . . . . . . . . . . . . . . . . . . . **10.2**
**Safety Precautions and Programs** . . . . . . . . . . 4.2.3, 4.2.7, **10.1**
Samples, Definition of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.12.3
**Samples, Shop Drawings, Product Data and** . . . 3.11, **3.12**, 4.2.7
**Samples at the Site, Documents and** . . . . . . . . . . . . . . . . . **3.11**
**Schedule of Values** . . . . . . . . . . . . . . . . . . . . . . . . . . . **9.2**, 9.3.1
Schedules, Construction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.10
Separate Contracts and Contractors . . . . . . . 1.1.4, 3.14.2, 4.2.4,
                                           4.5.5, 6, 11.3.7, 12.1.2, 12.2.5
Shop Drawings, Definition of . . . . . . . . . . . . . . . . . . . . . . . . . 3.12.1
**Shop Drawings, Product Data and Samples** . . . . 3.11, **3.12**, 4.2.7
**Site, Use of** . . . . . . . . . . . . . . . . . . . . . . . . . . . **3.13**, 6.1.1, 6.2.1
Site Inspections . . . 1.2.2, 3.3.4, 4.2.2, 4.2.9, 4.3.6, 9.8.2, 9.10.1, 13.5
Site Visits, Architect's . . . . . . . . . . . . . . . . 4.2.2, 4.2.5, 4.2.9, 4.3.6,
                                           9.4.2, 9.5.1, 9.8.2, 9.9.2, 9.10.1, 13.5
Special Inspections and Testing . . . . . . . . . 4.2.6, 12.2.1, 13.5
**Specifications,** Definition of the . . . . . . . . . . . . . . . . . . . . . . **1.1.6**
**Specifications, The** . . . . . . . . 1.1.1, **1.1.6**, 1.1.7, 1.2.4, 1.3, 3.11
Statutes of Limitations . . . . . . . . . . . . . . . . . . . 4.5.4.2, 12.2.6, 13.7
Stopping the Work . . . . . . . . . . . . 2.3, 4.3.7, 9.7, 10.1.2, 10.3, 14.1
Stored Materials . . . . . . . . . . 6.2.1, 9.3.2, 10.2.1.2, 11.3.1.4, 12.2.4
Subcontractor, Definition of . . . . . . . . . . . . . . . . . . . . . . . . . . 5.1.1
**SUBCONTRACTORS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
Subcontractors, Work by . . . . . . . . . . . . . . . . 1.2.4, 3.3.2, 3.12.1,
                                                          4.2.3, 5.3, 5.4
**Subcontractual Relations** . . . . . . . . . . . . . 5.3, 5.4, 9.3.1.2, 9.6.2,
             9.6.3, 9.6.4, 10.2.1, 11.3.7, 11.3.8, 14.1.1, 14.2.1.2, 14.3.2
Submittals . . . . . . . . . . 1.3, 3.2.3, 3.10, 3.11, 3.12, 4.2.7, 5.2.1, 5.2.3,
             7.3.6, 9.2, 9.3.1, 9.8.2, 9.9.1, 9.10.2, 9.10.3, 10.1.2, 11.1.3
**Subrogation, Waivers of** . . . . . . . . . . . . . . . 6.1.1, 11.3.5, **11.3.7**
**Substantial Completion** . . . . . . . . . 4.2.9, 4.3.5.2, 8.1.1, 8.1.3,
                         8.2.3, **9.8**, 9.9.1, 12.2.1, 12.2.2, 13.7
Substantial Completion, Definition of . . . . . . . . . . . . . . . . . . 9.8.1
Substitution of Subcontractors . . . . . . . . . . . . . . . . . . 5.2.3, 5.2.4
Substitution of the Architect . . . . . . . . . . . . . . . . . . . . . . . . . 4.1.3
Substitutions of Materials . . . . . . . . . . . . . . . . . . . . . . . . . . . 3.5.1
Sub-subcontractor, Definition of . . . . . . . . . . . . . . . . . . . . . . 5.1.2
Subsurface Conditions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.3.6
**Successors and Assigns** . . . . . . . . . . . . . . . . . . . . . . . . . **13.2**
**Superintendent** . . . . . . . . . . . . . . . . . . . . . . . . . **3.9**, 10.2.6
**Supervision and Construction Procedures** . . . . . 1.2.4, **3.3**, 3.4,
             4.2.3, 4.3.4, 6.1.3, 6.2.4, 7.1.3, 7.3.4, 8.2, 8.3.1, 10, 12, 14
Surety . . . . . . . . . . . . . 4.4.1, 4.4.4, 5.4.1.2, 9.10.2, 9.10.3, 14.2.2
Surety, Consent of . . . . . . . . . . . . . . . . . . . . 9.9.1, 9.10.2, 9.10.3
Surveys . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2.2.2, 3.18.3

**Suspension by the Owner for Convenience** . . . . . . . . . . . . **14.3**
Suspension of the Work . . . . . . . . . . . . 4.3.7, 5.4.2, 14.1.1.4, 14.3
Suspension or Termination of the Contract . . . . . . 4.3.7, 5.4.1.1, 14
**Taxes** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3.6**, 7.3.6.4
**Termination by the Contractor** . . . . . . . . . . . . . . . . . . . . . **14.1**
**Termination by the Owner for Cause** . . . . . . . . . . . . 5.4.1.1, **14.2**
Termination of the Architect . . . . . . . . . . . . . . . . . . . . . . . . . 4.1.3
Termination of the Contractor . . . . . . . . . . . . . . . . . . . . . . . . 14.2.2
**TERMINATION OR SUSPENSION OF THE CONTRACT** . . . . . . **14**
**Tests and Inspections** . . . . . 3.3.3, 4.2.6, 4.2.9, 9.4.2, 12.2.1, **13.5**
**TIME** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**
**Time, Delays and Extensions of** . . . . . . . . . . . . 4.3.8, 7.2.1, **8.3**
Time Limits, Specific . . . . . . . . . 2.1.2, 2.2.1, 2.4, 3.10, 3.11, 3.15.1,
             4.2.1, 4.2.11, 4.3, 4.4, 4.5, 5.3, 5.4, 7.3.5, 7.3.9, 8.2, 9.2, 9.3.1,
             9.3.3, 9.4.1, 9.6.1, 9.7, 9.8.2, 9.10.2, 11.1.3, 11.3.6, 11.3.10,
                         11.3.11, 12.2.2, 12.2.4, 12.2.6, 13.7, 14
**Time Limits on Claims** . . . . . . . . . 4.3.2, **4.3.3**, 4.3.6, 4.3.9, 4.4, 4.5
Title to Work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.3.2, 9.3.3
**UNCOVERING AND CORRECTION OF WORK** . . . . . . . . . . . . **12**
**Uncovering of Work** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12.1**
Unforeseen Conditions . . . . . . . . . . . . . . . . . . . . 4.3.6, 8.3.1, 10.1
Unit Prices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7.1.4, 7.3.3.2
Use of Documents . . . . . . . . . . . . . . . . . . . 1.1.1, 1.3, 2.2.5, 3.12.7, 5.3
**Use of Site** . . . . . . . . . . . . . . . . . . . . . . . . . **3.13**, 6.1.1, 6.2.1
**Values, Schedule of** . . . . . . . . . . . . . . . . . . . . . . . . . **9.2**, 9.3.1
**Waiver of Claims: Final Payment** . . . . . . . . . . **4.3.5**, 4.5.1, 9.10.3
Waiver of Claims by the Architect . . . . . . . . . . . . . . . . . . . . . 13.4.2
Waiver of Claims by the Contractor . . . . . . . . 9.10.4, 11.3.7, 13.4.2
Waiver of Claims by the Owner . . . . . . . . . . 4.3.5, 4.5.1, 9.9.3,
                         9.10.3, 11.3.3, 11.3.5, 11.3.7, 13.4.2
Waiver of Liens . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9.10.2
Waivers of Subrogation . . . . . . . . . . . . . . . . . . . 6.1.1, 11.3.5, 11.3.7
**Warranty** and Warranties . . . . . . . . . . . . . . . . . . . . . **3.5**, 4.2.9,
             4.3.5.3, 9.3.3, 9.8.2, 9.9.1, 12.2.2, 13.7.1.3
Weather Delays . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.3.8.2
**When Arbitration May Be Demanded** . . . . . . . . . . . . . . . . **4.5.4**
Work, Definition of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1.1.3
**Written Consent** . . . . . . . . . . . . . 1.3.1, 3.12.8, 3.14.2, 4.1.2, 4.3.4,
             4.5.5, 9.3.2, 9.8.2, 9.9.1, 9.10.2, 9.10.3, 10.1.2, 10.1.3,
                         11.3.1, 11.3.1.4, 11.3.11, 13.2, 13.4.2
Written Interpretations . . . . . . . . . . . . . . . . . . 4.2.11, 4.2.12, 4.3.7
**Written Notice** . . . . . . . . . . 2.3, 2.4, 3.9, 3.12.8, 3.12.9, 4.3, 4.4.4,
             4.5, 5.2.1, 5.3, 5.4.1.1, 8.2.2, 9.4.1, 9.5.1, 9.7, 9.10, 10.1.2,
                         10.2.6, 11.1.3, 11.3, 12.2.2, 12.2.4, **13.3**, 13.5.2, 14
Written Orders . . . . . . . . . . . . . . . . . . . . . 2.3, 3.9, 4.3.7,
             7, 8.2.2, 11.3.9, 12.1, 12.2, 13.5.2, 14.3.1

Work without the specific written consent of the Owner and Architect. The Contractor, Subcontractors, Sub-subcontractors and material or equipment suppliers are granted a limited license to use and reproduce applicable portions of the Drawings, Specifications and other documents prepared by the Architect appropriate to and for use in the execution of their Work under the Contract Documents. All copies made under this license shall bear the statutory copyright notice, if any, shown on the Drawings, Specifications and other documents prepared by the Architect. Submittal or distribution to meet official regulatory requirements or for other purposes in connection with this Project is not to be construed as publication in derogation of the Architect's copyright or other reserved rights.

## 1.4 CAPITALIZATION

**1.4.1** Terms capitalized in these General Conditions include those which are (1) specifically defined, (2) the titles of numbered articles and identified references to Paragraphs, Subparagraphs and Clauses in the document or (3) the titles of other documents published by the American Institute of Architects.

## 1.5 INTERPRETATION

**1.5.1** In the interest of brevity the Contract Documents frequently omit modifying words such as "all" and "any" and articles such as "the" and "an," but the fact that a modifier or an article is absent from one statement and appears in another is not intended to affect the interpretation of either statement.

## ARTICLE 2

## OWNER

### 2.1 DEFINITION

**2.1.1** The Owner is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The term "Owner" means the Owner or the Owner's authorized representative.

**2.1.2** The Owner upon reasonable written request shall furnish to the Contractor in writing information which is necessary and relevant for the Contractor to evaluate, give notice of or enforce mechanic's lien rights. Such information shall include a correct statement of the record legal title to the property on which the Project is located, usually referred to as the site, and the Owner's interest therein at the time of execution of the Agreement and, within five days after any change, information of such change in title, recorded or unrecorded.

### 2.2 INFORMATION AND SERVICES REQUIRED OF THE OWNER

**2.2.1** The Owner shall, at the request of the Contractor, prior to execution of the Agreement and promptly from time to time thereafter, furnish to the Contractor reasonable evidence that financial arrangements have been made to fulfill the Owner's obligations under the Contract. *[Note: Unless such reasonable evidence were furnished on request prior to the execution of the Agreement, the prospective contractor would not be required to execute the Agreement or to commence the Work.]*

**2.2.2** The Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a legal description of the site.

**2.2.3** Except for permits and fees which are the responsibility of the Contractor under the Contract Documents, the Owner shall secure and pay for necessary approvals, easements, assess-

ments and charges required for construction, use or occupancy of permanent structures or for permanent changes in existing facilities.

**2.2.4** Information or services under the Owner's control shall be furnished by the Owner with reasonable promptness to avoid delay in orderly progress of the Work.

**2.2.5** Unless otherwise provided in the Contract Documents, the Contractor will be furnished, free of charge, such copies of Drawings and Project Manuals as are reasonably necessary for execution of the Work.

**2.2.6** The foregoing are in addition to other duties and responsibilities of the Owner enumerated herein and especially those in respect to Article 6 (Construction by Owner or by Separate Contractors), Article 9 (Payments and Completion) and Article 11 (Insurance and Bonds).

### 2.3 OWNER'S RIGHT TO STOP THE WORK

**2.3.1** If the Contractor fails to correct Work which is not in accordance with the requirements of the Contract Documents as required by Paragraph 12.2 or persistently fails to carry out Work in accordance with the Contract Documents, the Owner, by written order signed personally or by an agent specifically so empowered by the Owner in writing, may order the Contractor to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, the right of the Owner to stop the Work shall not give rise to a duty on the part of the Owner to exercise this right for the benefit of the Contractor or any other person or entity, except to the extent required by Subparagraph 6.1.3.

### 2.4 OWNER'S RIGHT TO CARRY OUT THE WORK

**2.4.1** If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents and fails within a seven-day period after receipt of written notice from the Owner to commence and continue correction of such default or neglect with diligence and promptness, the Owner may after such seven-day period give the Contractor a second written notice to correct such deficiencies within a second seven-day period. If the Contractor within such second seven-day period after receipt of such second notice fails to commence and continue to correct any deficiencies, the Owner may, without prejudice to other remedies the Owner may have, correct such deficiencies. In such case an appropriate Change Order shall be issued deducting from payments then or thereafter due the Contractor the cost of correcting such deficiencies, including compensation for the Architect's additional services and expenses made necessary by such default, neglect or failure. Such action by the Owner and amounts charged to the Contractor are both subject to prior approval of the Architect. If payments then or thereafter due the Contractor are not sufficient to cover such amounts, the Contractor shall pay the difference to the Owner.

## ARTICLE 3

## CONTRACTOR

### 3.1 DEFINITION

**3.1.1** The Contractor is the person or entity identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. The term "Contractor" means the Contractor or the Contractor's authorized representative.

.3 Contractor's costs for unloading and handling at the site, labor, installation costs, overhead, profit and other expenses contemplated for stated allowance amounts shall be included in the Contract Sum and not in the allowances;

.4 whenever costs are more than or less than allowances, the Contract Sum shall be adjusted accordingly by Change Order. The amount of the Change Order shall reflect (1) the difference between actual costs and the allowances under Clause 3.8.2.2 and (2) changes in Contractor's costs under Clause 3.8.2.3.

### 3.9   SUPERINTENDENT

**3.9.1** The Contractor shall employ a competent superintendent and necessary assistants who shall be in attendance at the Project site during performance of the Work. The superintendent shall represent the Contractor, and communications given to the superintendent shall be as binding as if given to the Contractor. Important communications shall be confirmed in writing. Other communications shall be similarly confirmed on written request in each case.

### 3.10   CONTRACTOR'S CONSTRUCTION SCHEDULES

**3.10.1** The Contractor, promptly after being awarded the Contract, shall prepare and submit for the Owner's and Architect's information a Contractor's construction schedule for the Work. The schedule shall not exceed time limits current under the Contract Documents, shall be revised at appropriate intervals as required by the conditions of the Work and Project, shall be related to the entire Project to the extent required by the Contract Documents, and shall provide for expeditious and practicable execution of the Work.

**3.10.2** The Contractor shall prepare and keep current, for the Architect's approval, a schedule of submittals which is coordinated with the Contractor's construction schedule and allows the Architect reasonable time to review submittals.

**3.10.3** The Contractor shall conform to the most recent schedules.

### 3.11   DOCUMENTS AND SAMPLES AT THE SITE

**3.11.1** The Contractor shall maintain at the site for the Owner one record copy of the Drawings, Specifications, addenda, Change Orders and other Modifications, in good order and marked currently to record changes and selections made during construction, and in addition approved Shop Drawings, Product Data, Samples and similar required submittals. These shall be available to the Architect and shall be delivered to the Architect for submittal to the Owner upon completion of the Work.

### 3.12   SHOP DRAWINGS, PRODUCT DATA AND SAMPLES

**3.12.1** Shop Drawings are drawings, diagrams, schedules and other data specially prepared for the Work by the Contractor or a Subcontractor, Sub-subcontractor, manufacturer, supplier or distributor to illustrate some portion of the Work.

**3.12.2** Product Data are illustrations, standard schedules, performance charts, instructions, brochures, diagrams and other information furnished by the Contractor to illustrate materials or equipment for some portion of the Work.

**3.12.3** Samples are physical examples which illustrate materials, equipment or workmanship and establish standards by which the Work will be judged.

**3.12.4** Shop Drawings, Product Data, Samples and similar submittals are not Contract Documents. The purpose of their submittal is to demonstrate for those portions of the Work for

which submittals are required the way the Contractor proposes to conform to the information given and the design concept expressed in the Contract Documents. Review by the Architect is subject to the limitations of Subparagraph 4.2.7.

**3.12.5** The Contractor shall review, approve and submit to the Architect Shop Drawings, Product Data, Samples and similar submittals required by the Contract Documents with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of the Owner or of separate contractors. Submittals made by the Contractor which are not required by the Contract Documents may be returned without action.

**3.12.6** The Contractor shall perform no portion of the Work requiring submittal and review of Shop Drawings, Product Data, Samples or similar submittals until the respective submittal has been approved by the Architect. Such Work shall be in accordance with approved submittals.

**3.12.7** By approving and submitting Shop Drawings, Product Data, Samples and similar submittals, the Contractor represents that the Contractor has determined and verified materials, field measurements and field construction criteria related thereto, or will do so, and has checked and coordinated the information contained within such submittals with the requirements of the Work and of the Contract Documents.

**3.12.8** The Contractor shall not be relieved of responsibility for deviations from requirements of the Contract Documents by the Architect's approval of Shop Drawings, Product Data, Samples or similar submittals unless the Contractor has specifically informed the Architect in writing of such deviation at the time of submittal and the Architect has given written approval to the specific deviation. The Contractor shall not be relieved of responsibility for errors or omissions in Shop Drawings, Product Data, Samples or similar submittals by the Architect's approval thereof.

**3.12.9** The Contractor shall direct specific attention, in writing or on resubmitted Shop Drawings, Product Data, Samples or similar submittals, to revisions other than those requested by the Architect on previous submittals.

**3.12.10** Informational submittals upon which the Architect is not expected to take responsive action may be so identified in the Contract Documents.

**3.12.11** When professional certification of performance criteria of materials, systems or equipment is required by the Contract Documents, the Architect shall be entitled to rely upon the accuracy and completeness of such calculations and certifications.

### 3.13   USE OF SITE

**3.13.1** The Contractor shall confine operations at the site to areas permitted by law, ordinances, permits and the Contract Documents and shall not unreasonably encumber the site with materials or equipment.

### 3.14   CUTTING AND PATCHING

**3.14.1** The Contractor shall be responsible for cutting, fitting or patching required to complete the Work or to make its parts fit together properly.

**3.14.2** The Contractor shall not damage or endanger a portion of the Work or fully or partially completed construction of the Owner or separate contractors by cutting, patching or otherwise altering such construction, or by excavation. The Contractor shall not cut or otherwise alter such construction by the

tractor, Subcontractors, or their agents or employees, or of any other persons performing portions of the Work.

**4.2.4 Communications Facilitating Contract Administration.** Except as otherwise provided in the Contract Documents or when direct communications have been specially authorized, the Owner and Contractor shall endeavor to communicate through the Architect. Communications by and with the Architect's consultants shall be through the Architect. Communications by and with Subcontractors and material suppliers shall be through the Contractor. Communications by and with separate contractors shall be through the Owner.

**4.2.5** Based on the Architect's observations and evaluations of the Contractor's Applications for Payment, the Architect will review and certify the amounts due the Contractor and will issue Certificates for Payment in such amounts.

**4.2.6** The Architect will have authority to reject Work which does not conform to the Contract Documents. Whenever the Architect considers it necessary or advisable for implementation of the intent of the Contract Documents, the Architect will have authority to require additional inspection or testing of the Work in accordance with Subparagraphs 13.5.2 and 13.5.3, whether or not such Work is fabricated, installed or completed. However, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Architect to the Contractor, Subcontractors, material and equipment suppliers, their agents or employees, or other persons performing portions of the Work.

**4.2.7** The Architect will review and approve or take other appropriate action upon the Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Architect's action will be taken with such reasonable promptness as to cause no delay in the Work or in the activities of the Owner, Contractor or separate contractors, while allowing sufficient time in the Architect's professional judgment to permit adequate review. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities, or for substantiating instructions for installation or performance of equipment or systems, all of which remain the responsibility of the Contractor as required by the Contract Documents. The Architect's review of the Contractor's submittals shall not relieve the Contractor of the obligations under Paragraphs 3.3, 3.5 and 3.12. The Architect's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Architect, of any construction means, methods, techniques, sequences or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component.

**4.2.8** The Architect will prepare Change Orders and Construction Change Directives, and may authorize minor changes in the Work as provided in Paragraph 7.4.

**4.2.9** The Architect will conduct inspections to determine the date or dates of Substantial Completion and the date of final completion, will receive and forward to the Owner for the Owner's review and records written warranties and related documents required by the Contract and assembled by the Contractor, and will issue a final Certificate for Payment upon compliance with the requirements of the Contract Documents.

**4.2.10** If the Owner and Architect agree, the Architect will provide one or more project representatives to assist in carrying out the Architect's responsibilities at the site. The duties, responsibilities and limitations of authority of such project representatives shall be as set forth in an exhibit to be incorporated in the Contract Documents.

**4.2.11** The Architect will interpret and decide matters concerning performance under and requirements of the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests will be made with reasonable promptness and within any time limits agreed upon. If no agreement is made concerning the time within which interpretations required of the Architect shall be furnished in compliance with this Paragraph 4.2, then delay shall not be recognized on account of failure by the Architect to furnish such interpretations until 15 days after written request is made for them.

**4.2.12** Interpretations and decisions of the Architect will be consistent with the intent of and reasonably inferable from the Contract Documents and will be in writing or in the form of drawings. When making such interpretations and decisions, the Architect will endeavor to secure faithful performance by both Owner and Contractor, will not show partiality to either and will not be liable for results of interpretations or decisions so rendered in good faith.

**4.2.13** The Architect's decisions on matters relating to aesthetic effect will be final if consistent with the intent expressed in the Contract Documents.

**4.3    CLAIMS AND DISPUTES**

**4.3.1 Definition.** A Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. Claims must be made by written notice. The responsibility to substantiate Claims shall rest with the party making the Claim.

**4.3.2 Decision of Architect.** Claims, including those alleging an error or omission by the Architect, shall be referred initially to the Architect for action as provided in Paragraph 4.4. A decision by the Architect, as provided in Subparagraph 4.4.4, shall be required as a condition precedent to arbitration or litigation of a Claim between the Contractor and Owner as to all such matters arising prior to the date final payment is due, regardless of (1) whether such matters relate to execution and progress of the Work or (2) the extent to which the Work has been completed. The decision by the Architect in response to a Claim shall not be a condition precedent to arbitration or litigation in the event (1) the position of Architect is vacant, (2) the Architect has not received evidence or has failed to render a decision within agreed time limits, (3) the Architect has failed to take action required under Subparagraph 4.4.4 within 30 days after the Claim is made, (4) 45 days have passed after the Claim has been referred to the Architect or (5) the Claim relates to a mechanic's lien.

**4.3.3 Time Limits on Claims.** Claims by either party must be made within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later. Claims must be made by written notice. An additional Claim made after the initial Claim has been implemented by Change Order will not be considered unless submitted in a timely manner.

**4.5.2 Rules and Notices for Arbitration.** Claims between the Owner and Contractor not resolved under Paragraph 4.4 shall, if subject to arbitration under Subparagraph 4.5.1, be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect, unless the parties mutually agree otherwise. Notice of demand for arbitration shall be filed in writing with the other party to the Agreement between the Owner and Contractor and with the American Arbitration Association, and a copy shall be filed with the Architect.

**4.5.3 Contract Performance During Arbitration.** During arbitration proceedings, the Owner and Contractor shall comply with Subparagraph 4.3.4.

**4.5.4 When Arbitration May Be Demanded.** Demand for arbitration of any Claim may not be made until the earlier of (1) the date on which the Architect has rendered a final written decision on the Claim, (2) the tenth day after the parties have presented evidence to the Architect or have been given reasonable opportunity to do so, if the Architect has not rendered a final written decision by that date, or (3) any of the five events described in Subparagraph 4.3.2.

**4.5.4.1** When a written decision of the Architect states that (1) the decision is final but subject to arbitration and (2) a demand for arbitration of a Claim covered by such decision must be made within 30 days after the date on which the party making the demand receives the final written decision, then failure to demand arbitration within said 30 days' period shall result in the Architect's decision becoming final and binding upon the Owner and Contractor. If the Architect renders a decision after arbitration proceedings have been initiated, such decision may be entered as evidence, but shall not supersede arbitration proceedings unless the decision is acceptable to all parties concerned.

**4.5.4.2** A demand for arbitration shall be made within the time limits specified in Subparagraphs 4.5.1 and 4.5.4 and Clause 4.5.4.1 as applicable, and in other cases within a reasonable time after the Claim has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such Claim would be barred by the applicable statute of limitations as determined pursuant to Paragraph 13.7.

**4.5.5 Limitation on Consolidation or Joinder.** No arbitration arising out of or relating to the Contract Documents shall include, by consolidation or joinder or in any other manner, the Architect, the Architect's employees or consultants, except by written consent containing specific reference to the Agreement and signed by the Architect, Owner, Contractor and any other person or entity sought to be joined. No arbitration shall include, by consolidation or joinder or in any other manner, parties other than the Owner, Contractor, a separate contractor as described in Article 6 and other persons substantially involved in a common question of fact or law whose presence is required if complete relief is to be accorded in arbitration. No person or entity other than the Owner, Contractor or a separate contractor as described in Article 6 shall be included as an original third party or additional third party to an arbitration whose interest or responsibility is insubstantial. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of a dispute not described therein or with a person or entity not named or described therein. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

**4.5.6 Claims and Timely Assertion of Claims.** A party who files a notice of demand for arbitration must assert in the demand all Claims then known to that party on which arbitration is permitted to be demanded. When a party fails to include a Claim through oversight, inadvertence or excusable neglect, or when a Claim has matured or been acquired subsequently, the arbitrator or arbitrators may permit amendment.

**4.5.7 Judgment on Final Award.** The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

# ARTICLE 5

# SUBCONTRACTORS

## 5.1    DEFINITIONS

**5.1.1** A Subcontractor is a person or entity who has a direct contract with the Contractor to perform a portion of the Work at the site. The term "Subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Subcontractor or an authorized representative of the Subcontractor. The term "Subcontractor" does not include a separate contractor or subcontractors of a separate contractor.

**5.1.2** A Sub-subcontractor is a person or entity who has a direct or indirect contract with a Subcontractor to perform a portion of the Work at the site. The term "Sub-subcontractor" is referred to throughout the Contract Documents as if singular in number and means a Sub-subcontractor or an authorized representative of the Sub-subcontractor.

## 5.2    AWARD OF SUBCONTRACTS AND OTHER CONTRACTS FOR PORTIONS OF THE WORK

**5.2.1** Unless otherwise stated in the Contract Documents or the bidding requirements, the Contractor, as soon as practicable after award of the Contract, shall furnish in writing to the Owner through the Architect the names of persons or entities (including those who are to furnish materials or equipment fabricated to a special design) proposed for each principal portion of the Work. The Architect will promptly reply to the Contractor in writing stating whether or not the Owner or the Architect, after due investigation, has reasonable objection to any such proposed person or entity. Failure of the Owner or Architect to reply promptly shall constitute notice of no reasonable objection.

**5.2.2** The Contractor shall not contract with a proposed person or entity to whom the Owner or Architect has made reasonable and timely objection. The Contractor shall not be required to contract with anyone to whom the Contractor has made reasonable objection.

**5.2.3** If the Owner or Architect has reasonable objection to a person or entity proposed by the Contractor, the Contractor shall propose another to whom the Owner or Architect has no reasonable objection. The Contract Sum shall be increased or decreased by the difference in cost occasioned by such change and an appropriate Change Order shall be issued. However, no increase in the Contract Sum shall be allowed for such change unless the Contractor has acted promptly and responsively in submitting names as required.

**5.2.4** The Contractor shall not change a Subcontractor, person or entity previously selected if the Owner or Architect makes reasonable objection to such change.

**AIA DOCUMENT A201** • GENERAL CONDITIONS OF THE CONTRACT FOR CONSTRUCTION • FOURTEENTH EDITION
AIA® • 1987 THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE, N.W., WASHINGTON, D.C. 20006

**A201-1987    13**

## ARTICLE 7

## CHANGES IN THE WORK

### 7.1 CHANGES

**7.1.1** Changes in the Work may be accomplished after execution of the Contract, and without invalidating the Contract, by Change Order, Construction Change Directive or order for a minor change in the Work, subject to the limitations stated in this Article 7 and elsewhere in the Contract Documents.

**7.1.2** A Change Order shall be based upon agreement among the Owner, Contractor and Architect; a Construction Change Directive requires agreement by the Owner and Architect and may or may not be agreed to by the Contractor; an order for a minor change in the Work may be issued by the Architect alone.

**7.1.3** Changes in the Work shall be performed under applicable provisions of the Contract Documents, and the Contractor shall proceed promptly, unless otherwise provided in the Change Order, Construction Change Directive or order for a minor change in the Work.

**7.1.4** If unit prices are stated in the Contract Documents or subsequently agreed upon, and if quantities originally contemplated are so changed in a proposed Change Order or Construction Change Directive that application of such unit prices to quantities of Work proposed will cause substantial inequity to the Owner or Contractor, the applicable unit prices shall be equitably adjusted.

### 7.2 CHANGE ORDERS

**7.2.1** A Change Order is a written instrument prepared by the Architect and signed by the Owner, Contractor and Architect, stating their agreement upon all of the following:

.1 a change in the Work;

.2 the amount of the adjustment in the Contract Sum, if any;

.3 the extent of the adjustment in the Contract Time, if any.

**7.2.2** Methods used in determining adjustments to the Contract Sum may include those listed in Subparagraph 7.3.3.

### 7.3 CONSTRUCTION CHANGE DIRECTIVES

**7.3.1** A Construction Change Directive is a written order prepared by the Architect and signed by the Owner and Architect, directing a change in the Work and stating a proposed basis for adjustment, if any, in the Contract Sum or Contract Time, or both. The Owner may by Construction Change Directive, without invalidating the Contract, order changes in the Work within the general scope of the Contract consisting of additions, deletions or other revisions, the Contract Sum and Contract Time being adjusted accordingly.

**7.3.2** A Construction Change Directive shall be used in the absence of total agreement on the terms of a Change Order.

**7.3.3** If the Construction Change Directive provides for an adjustment to the Contract Sum, the adjustment shall be based on one of the following methods:

.1 mutual acceptance of a lump sum properly itemized and supported by sufficient substantiating data to permit evaluation;

.2 unit prices stated in the Contract Documents or subsequently agreed upon;

.3 cost to be determined in a manner agreed upon by the parties and a mutually acceptable fixed or percentage fee; or

.4 as provided in Subparagraph 7.3.6.

**7.3.4** Upon receipt of a Construction Change Directive, the Contractor shall promptly proceed with the change in the Work involved and advise the Architect of the Contractor's agreement or disagreement with the method, if any, provided in the Construction Change Directive for determining the proposed adjustment in the Contract Sum or Contract Time.

**7.3.5** A Construction Change Directive signed by the Contractor indicates the agreement of the Contractor therewith, including adjustment in Contract Sum and Contract Time or the method for determining them. Such agreement shall be effective immediately and shall be recorded as a Change Order.

**7.3.6** If the Contractor does not respond promptly or disagrees with the method for adjustment in the Contract Sum, the method and the adjustment shall be determined by the Architect on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including, in case of an increase in the Contract Sum, a reasonable allowance for overhead and profit. In such case, and also under Clause 7.3.3.3, the Contractor shall keep and present, in such form as the Architect may prescribe, an itemized accounting together with appropriate supporting data. Unless otherwise provided in the Contract Documents, costs for the purposes of this Subparagraph 7.3.6 shall be limited to the following:

.1 costs of labor, including social security, old age and unemployment insurance, fringe benefits required by agreement or custom, and workers' or workmen's compensation insurance;

.2 costs of materials, supplies and equipment, including cost of transportation, whether incorporated or consumed;

.3 rental costs of machinery and equipment, exclusive of hand tools, whether rented from the Contractor or others;

.4 costs of premiums for all bonds and insurance, permit fees, and sales, use or similar taxes related to the Work; and

.5 additional costs of supervision and field office personnel directly attributable to the change.

**7.3.7** Pending final determination of cost to the Owner, amounts not in dispute may be included in Applications for Payment. The amount of credit to be allowed by the Contractor to the Owner for a deletion or change which results in a net decrease in the Contract Sum shall be actual net cost as confirmed by the Architect. When both additions and credits covering related Work or substitutions are involved in a change, the allowance for overhead and profit shall be figured on the basis of net increase, if any, with respect to that change.

**7.3.8** If the Owner and Contractor do not agree with the adjustment in Contract Time or the method for determining it, the adjustment or the method shall be referred to the Architect for determination.

**7.3.9** When the Owner and Contractor agree with the determination made by the Architect concerning the adjustments in the Contract Sum and Contract Time, or otherwise reach agreement upon the adjustments, such agreement shall be effective immediately and shall be recorded by preparation and execution of an appropriate Change Order.

Owner a Certificate for Payment, with a copy to the Contractor, for such amount as the Architect determines is properly due, or notify the Contractor and Owner in writing of the Architect's reasons for withholding certification in whole or in part as provided in Subparagraph 9.5.1.

**9.4.2** The issuance of a Certificate for Payment will constitute a representation by the Architect to the Owner, based on the Architect's observations at the site and the data comprising the Application for Payment, that the Work has progressed to the point indicated and that, to the best of the Architect's knowledge, information and belief, quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests and inspections, to minor deviations from the Contract Documents correctable prior to completion and to specific qualifications expressed by the Architect. The issuance of a Certificate for Payment will further constitute a representation that the Contractor is entitled to payment in the amount certified. However, the issuance of a Certificate for Payment will not be a representation that the Architect has (1) made exhaustive or continuous on-site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment or (4) made examination to ascertain how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

**9.5    DECISIONS TO WITHHOLD CERTIFICATION**

**9.5.1** The Architect may decide not to certify payment and may withhold a Certificate for Payment in whole or in part, to the extent reasonably necessary to protect the Owner, if in the Architect's opinion the representations to the Owner required by Subparagraph 9.4.2 cannot be made. If the Architect is unable to certify payment in the amount of the Application, the Architect will notify the Contractor and Owner as provided in Subparagraph 9.4.1. If the Contractor and Architect cannot agree on a revised amount, the Architect will promptly issue a Certificate for Payment for the amount for which the Architect is able to make such representations to the Owner. The Architect may also decide not to certify payment or, because of subsequently discovered evidence or subsequent observations, may nullify the whole or a part of a Certificate for Payment previously issued, to such extent as may be necessary in the Architect's opinion to protect the Owner from loss because of:

.1  defective Work not remedied;

.2  third party claims filed or reasonable evidence indicating probable filing of such claims;

.3  failure of the Contractor to make payments properly to Subcontractors or for labor, materials or equipment;

.4  reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Sum;

.5  damage to the Owner or another contractor;

.6  reasonable evidence that the Work will not be completed within the Contract Time, and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay; or

.7  persistent failure to carry out the Work in accordance with the Contract Documents.

**9.5.2** When the above reasons for withholding certification are removed, certification will be made for amounts previously withheld.

**9.6    PROGRESS PAYMENTS**

**9.6.1** After the Architect has issued a Certificate for Payment, the Owner shall make payment in the manner and within the time provided in the Contract Documents, and shall so notify the Architect.

**9.6.2** The Contractor shall promptly pay each Subcontractor, upon receipt of payment from the Owner, out of the amount paid to the Contractor on account of such Subcontractor's portion of the Work, the amount to which said Subcontractor is entitled, reflecting percentages actually retained from payments to the Contractor on account of such Subcontractor's portion of the Work. The Contractor shall, by appropriate agreement with each Subcontractor, require each Subcontractor to make payments to Sub-subcontractors in similar manner.

**9.6.3** The Architect will, on request, furnish to a Subcontractor, if practicable, information regarding percentages of completion or amounts applied for by the Contractor and action taken thereon by the Architect and Owner on account of portions of the Work done by such Subcontractor.

**9.6.4** Neither the Owner nor Architect shall have an obligation to pay or to see to the payment of money to a Subcontractor except as may otherwise be required by law.

**9.6.5** Payment to material suppliers shall be treated in a manner similar to that provided in Subparagraphs 9.6.2, 9.6.3 and 9.6.4.

**9.6.6** A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the Contract Documents.

**9.7    FAILURE OF PAYMENT**

**9.7.1** If the Architect does not issue a Certificate for Payment, through no fault of the Contractor, within seven days after receipt of the Contractor's Application for Payment, or if the Owner does not pay the Contractor within seven days after the date established in the Contract Documents the amount certified by the Architect or awarded by arbitration, then the Contractor may, upon seven additional days' written notice to the Owner and Architect, stop the Work until payment of the amount owing has been received. The Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shut-down, delay and start-up, which shall be accomplished as provided in Article 7.

**9.8    SUBSTANTIAL COMPLETION**

**9.8.1** Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so the Owner can occupy or utilize the Work for its intended use.

**9.8.2** When the Contractor considers that the Work, or a portion thereof which the Owner agrees to accept separately, is substantially complete, the Contractor shall prepare and submit to the Architect a comprehensive list of items to be completed or corrected. The Contractor shall proceed promptly to complete and correct items on the list. Failure to include an item on such list does not alter the responsibility of the Contractor to complete all Work in accordance with the Contract Documents. Upon receipt of the Contractor's list, the Architect will make an inspection to determine whether the Work or desig-

## ARTICLE 10

### PROTECTION OF PERSONS AND PROPERTY

**10.1   SAFETY PRECAUTIONS AND PROGRAMS**

**10.1.1** The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract.

**10.1.2** In the event the Contractor encounters on the site material reasonably believed to be asbestos or polychlorinated biphenyl (PCB) which has not been rendered harmless, the Contractor shall immediately stop Work in the area affected and report the condition to the Owner and Architect in writing. The Work in the affected area shall not thereafter be resumed except by written agreement of the Owner and Contractor if in fact the material is asbestos or polychlorinated biphenyl (PCB) and has not been rendered harmless. The Work in the affected area shall be resumed in the absence of asbestos or polychlorinated biphenyl (PCB), or when it has been rendered harmless, by written agreement of the Owner and Contractor, or in accordance with final determination by the Architect on which arbitration has not been demanded, or by arbitration under Article 4.

**10.1.3** The Contractor shall not be required pursuant to Article 7 to perform without consent any Work relating to asbestos or polychlorinated biphenyl (PCB).

**10.1.4** To the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Contractor, Architect, Architect's consultants and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact the material is asbestos or polychlorinated biphenyl (PCB) and has not been rendered harmless, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting therefrom, but only to the extent caused in whole or in part by negligent acts or omissions of the Owner, anyone directly or indirectly employed by the Owner or anyone for whose acts the Owner may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Subparagraph 10.1.4.

**10.2   SAFETY OF PERSONS AND PROPERTY**

**10.2.1** The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to:

.1 employees on the Work and other persons who may be affected thereby;

.2 the Work and materials and equipment to be incorporated therein, whether in storage on or off the site, under care, custody or control of the Contractor or the Contractor's Subcontractors or Sub-subcontractors; and

.3 other property at the site or adjacent thereto, such as trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.

**10.2.2** The Contractor shall give notices and comply with applicable laws, ordinances, rules, regulations and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury or loss.

**10.2.3** The Contractor shall erect and maintain, as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent sites and utilities.

**10.2.4** When use or storage of explosives or other hazardous materials or equipment or unusual methods are necessary for execution of the Work, the Contractor shall exercise utmost care and carry on such activities under supervision of properly qualified personnel.

**10.2.5** The Contractor shall promptly remedy damage and loss (other than damage or loss insured under property insurance required by the Contract Documents) to property referred to in Clauses 10.2.1.2 and 10.2.1.3 caused in whole or in part by the Contractor, a Subcontractor, a Sub-subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable and for which the Contractor is responsible under Clauses 10.2.1.2 and 10.2.1.3, except damage or loss attributable to acts or omissions of the Owner or Architect or anyone directly or indirectly employed by either of them, or by anyone for whose acts either of them may be liable, and not attributable to the fault or negligence of the Contractor. The foregoing obligations of the Contractor are in addition to the Contractor's obligations under Paragraph 3.18.

**10.2.6** The Contractor shall designate a responsible member of the Contractor's organization at the site whose duty shall be the prevention of accidents. This person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner and Architect.

**10.2.7** The Contractor shall not load or permit any part of the construction or site to be loaded so as to endanger its safety.

**10.3   EMERGENCIES**

**10.3.1** In an emergency affecting safety of persons or property, the Contractor shall act, at the Contractor's discretion, to prevent threatened damage, injury or loss. Additional compensation or extension of time claimed by the Contractor on account of an emergency shall be determined as provided in Paragraph 4.3 and Article 7.

## ARTICLE 11

### INSURANCE AND BONDS

**11.1   CONTRACTOR'S LIABILITY INSURANCE**

**11.1.1** The Contractor shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located such insurance as will protect the Contractor from claims set forth below which may arise out of or result from the Contractor's operations under the Contract and for which the Contractor may be legally liable, whether such operations be by the Contractor or by a Subcontractor or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable:

.1 claims under workers' or workmen's compensation, disability benefit and other similar employee benefit acts which are applicable to the Work to be performed;

**11.3.5** If during the Project construction period the Owner insures properties, real or personal or both, adjoining or adjacent to the site by property insurance under policies separate from those insuring the Project, or if after final payment property insurance is to be provided on the completed Project through a policy or policies other than those insuring the Project during the construction period, the Owner shall waive all rights in accordance with the terms of Subparagraph 11.3.7 for damages caused by fire or other perils covered by this separate property insurance. All separate policies shall provide this waiver of subrogation by endorsement or otherwise.

**11.3.6** Before an exposure to loss may occur, the Owner shall file with the Contractor a copy of each policy that includes insurance coverages required by this Paragraph 11.3. Each policy shall contain all generally applicable conditions, definitions, exclusions and endorsements related to this Project. Each policy shall contain a provision that the policy will not be cancelled or allowed to expire until at least 30 days' prior written notice has been given to the Contractor.

**11.3.7 Waivers of Subrogation.** The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, sub-subcontractors, agents and employees, each of the other, and (2) the Architect, Architect's consultants, separate contractors described in Article 6, if any, and any of their subcontractors, sub-subcontractors, agents and employees, for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Paragraph 11.3 or other property insurance applicable to the Work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Contractor, as appropriate, shall require of the Architect, Architect's consultants, separate contractors described in Article 6, if any, and the subcontractors, sub-subcontractors, agents and employees of any of them, by appropriate agreements, written where legally required for validity, similar waivers each in favor of other parties enumerated herein. The policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

**11.3.8** A loss insured under Owner's property insurance shall be adjusted by the Owner as fiduciary and made payable to the Owner as fiduciary for the insureds, as their interests may appear, subject to requirements of any applicable mortgagee clause and of Subparagraph 11.3.10. The Contractor shall pay Subcontractors their just shares of insurance proceeds received by the Contractor, and by appropriate agreements, written where legally required for validity, shall require Subcontractors to make payments to their Sub-subcontractors in similar manner.

**11.3.9** If required in writing by a party in interest, the Owner as fiduciary shall, upon occurrence of an insured loss, give bond for proper performance of the Owner's duties. The cost of required bonds shall be charged against proceeds received as fiduciary. The Owner shall deposit in a separate account proceeds so received, which the Owner shall distribute in accordance with such agreement as the parties in interest may reach, or in accordance with an arbitration award in which case the procedure shall be as provided in Paragraph 4.5. If after such loss no other special agreement is made, replacement of damaged property shall be covered by appropriate Change Order.

**11.3.10** The Owner as fiduciary shall have power to adjust and settle a loss with insurers unless one of the parties in interest shall object in writing within five days after occurrence of loss to the Owner's exercise of this power; if such objection be made, arbitrators shall be chosen as provided in Paragraph 4.5. The Owner as fiduciary shall, in that case, make settlement with insurers in accordance with directions of such arbitrators. If distribution of insurance proceeds by arbitration is required, the arbitrators will direct such distribution.

**11.3.11** Partial occupancy or use in accordance with Paragraph 9.9 shall not commence until the insurance company or companies providing property insurance have consented to such partial occupancy or use by endorsement or otherwise. The Owner and the Contractor shall take reasonable steps to obtain consent of the insurance company or companies and shall, without mutual written consent, take no action with respect to partial occupancy or use that would cause cancellation, lapse or reduction of insurance.

**11.4    PERFORMANCE BOND AND PAYMENT BOND**

**11.4.1** The Owner shall have the right to require the Contractor to furnish bonds covering faithful performance of the Contract and payment of obligations arising thereunder as stipulated in bidding requirements or specifically required in the Contract Documents on the date of execution of the Contract.

**11.4.2** Upon the request of any person or entity appearing to be a potential beneficiary of bonds covering payment of obligations arising under the Contract, the Contractor shall promptly furnish a copy of the bonds or shall permit a copy to be made.

## ARTICLE 12

## UNCOVERING AND CORRECTION OF WORK

**12.1    UNCOVERING OF WORK**

**12.1.1** If a portion of the Work is covered contrary to the Architect's request or to requirements specifically expressed in the Contract Documents, it must, if required in writing by the Architect, be uncovered for the Architect's observation and be replaced at the Contractor's expense without change in the Contract Time.

**12.1.2** If a portion of the Work has been covered which the Architect has not specifically requested to observe prior to its being covered, the Architect may request to see such Work and it shall be uncovered by the Contractor. If such Work is in accordance with the Contract Documents, costs of uncovering and replacement shall, by appropriate Change Order, be charged to the Owner. If such Work is not in accordance with the Contract Documents, the Contractor shall pay such costs unless the condition was caused by the Owner or a separate contractor in which event the Owner shall be responsible for payment of such costs.

**12.2    CORRECTION OF WORK**

**12.2.1** The Contractor shall promptly correct Work rejected by the Architect or failing to conform to the requirements of the Contract Documents, whether observed before or after Substantial Completion and whether or not fabricated, installed or completed. The Contractor shall bear costs of correcting such rejected Work, including additional testing and inspections and compensation for the Architect's services and expenses made necessary thereby.

**12.2.2** If, within one year after the date of Substantial Completion of the Work or designated portion thereof, or after the date

The Owner shall bear such costs except as provided in Sub-paragraph 13.5.3.

**13.5.3** If such procedures for testing, inspection or approval under Subparagraphs 13.5.1 and 13.5.2 reveal failure of the portions of the Work to comply with requirements established by the Contract Documents, the Contractor shall bear all costs made necessary by such failure including those of repeated procedures and compensation for the Architect's services and expenses.

**13.5.4** Required certificates of testing, inspection or approval shall, unless otherwise required by the Contract Documents, be secured by the Contractor and promptly delivered to the Architect.

**13.5.5** If the Architect is to observe tests, inspections or approvals required by the Contract Documents, the Architect will do so promptly and, where practicable, at the normal place of testing.

**13.5.6** Tests or inspections conducted pursuant to the Contract Documents shall be made promptly to avoid unreasonable delay in the Work.

**13.6   INTEREST**

**13.6.1** Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

**13.7   COMMENCEMENT OF STATUTORY LIMITATION PERIOD**

**13.7.1** As between the Owner and Contractor:

.1  **Before Substantial Completion.** As to acts or failures to act occurring prior to the relevant date of Substantial Completion, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than such date of Substantial Completion;

.2  **Between Substantial Completion and Final Certificate for Payment.** As to acts or failures to act occurring subsequent to the relevant date of Substantial Completion and prior to issuance of the final Certificate for Payment, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the date of issuance of the final Certificate for Payment; and

.3  **After Final Certificate for Payment.** As to acts or failures to act occurring after the relevant date of issuance of the final Certificate for Payment, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than the date of any act or failure to act by the Contractor pursuant to any warranty provided under Paragraph 3.5, the date of any correction of the Work or failure to correct the Work by the Contractor under Paragraph 12.2, or the date of actual commission of any other act or failure to perform any duty or obligation by the Contractor or Owner, whichever occurs last.

## ARTICLE 14

## TERMINATION OR SUSPENSION OF THE CONTRACT

**14.1   TERMINATION BY THE CONTRACTOR**

**14.1.1** The Contractor may terminate the Contract if the Work is stopped for a period of 30 days through no act or fault of the Contractor or a Subcontractor, Sub-subcontractor or their agents or employees or any other persons performing portions of the Work under contract with the Contractor, for any of the following reasons:

.1  issuance of an order of a court or other public authority having jurisdiction;

.2  an act of government, such as a declaration of national emergency, making material unavailable;

.3  because the Architect has not issued a Certificate for Payment and has not notified the Contractor of the reason for withholding certification as provided in Subparagraph 9.4.1, or because the Owner has not made payment on a Certificate for Payment within the time stated in the Contract Documents;

.4  if repeated suspensions, delays or interruptions by the Owner as described in Paragraph 14.3 constitute in the aggregate more than 100 percent of the total number of days scheduled for completion, or 120 days in any 365-day period, whichever is less; or

.5  the Owner has failed to furnish to the Contractor promptly, upon the Contractor's request, reasonable evidence as required by Subparagraph 2.2.1.

**14.1.2** If one of the above reasons exists, the Contractor may, upon seven additional days' written notice to the Owner and Architect, terminate the Contract and recover from the Owner payment for Work executed and for proven loss with respect to materials, equipment, tools, and construction equipment and machinery, including reasonable overhead, profit and damages.

**14.1.3** If the Work is stopped for a period of 60 days through no act or fault of the Contractor or a Subcontractor or their agents or employees or any other persons performing portions of the Work under contract with the Contractor because the Owner has persistently failed to fulfill the Owner's obligations under the Contract Documents with respect to matters important to the progress of the Work, the Contractor may, upon seven additional days' written notice to the Owner and the Architect, terminate the Contract and recover from the Owner as provided in Subparagraph 14.1.2.

**14.2   TERMINATION BY THE OWNER FOR CAUSE**

**14.2.1** The Owner may terminate the Contract if the Contractor:

.1  persistently or repeatedly refuses or fails to supply enough properly skilled workers or proper materials;

.2  fails to make payment to Subcontractors for materials or labor in accordance with the respective agreements between the Contractor and the Subcontractors;

.3  persistently disregards laws, ordinances, or rules, regulations or orders of a public authority having jurisdiction; or

.4  otherwise is guilty of substantial breach of a provision of the Contract Documents.

**14.2.2** When any of the above reasons exist, the Owner, upon certification by the Architect that sufficient cause exists to jus-