```
 1    05-E-75729 EB
 2
              IN THE UNITED STATES DISTRICT COURT
 3               SOUTHERN DISTRICT OF TEXAS
                    BROWNSVILLE DIVISION
 4

      PEACOCK CONSTRUCTION COMPANY, INC. *
 5              Plaintiff                *
      VS.                                * CIVIL ACTION
 6                                       * NO. B-04-111
      HARTFORD LLOYD'S INSURANCE COMPANY,*
 7              Defendant
 8
                  CAUSE NO. 2002-11-4371-G
 9
      PEACOCK CONSTRUCTION         * 404TH JUDICIAL DISTRICT COURT
10    COMPANY, INC.                *
       Third-Party Plaintiffs*
11                                 *
      VS.                          *
12                                 *
      MCQUEARY HENRY BOWLES &      *
13    TROY, LLP, AND SOUTH         *
      TEXAS MASONRY, ET AL         *
14     Third-Party/                *
       Cross-Defendants            * CAMERON COUNTY, TEXAS
15
      ****************************************************
16                      ORAL DEPOSITION OF
                          BERT BARTRAM
17                          3-7-05
      ****************************************************
18
19    ORAL DEPOSITION of BERT BARTRAM, produced as a witness
      at the instance of the Plaintiff, Peacock Construction
20    Company, Inc., and duly sworn, was taken in the
      above-styled and numbered cause on the 7th of March,
21    2005, from 9:35 a.m. until 12:34 p.m., before Edith A.
      Boggs, CSR in and for the State of Texas, reported by
22    machine shorthand, at the offices of Hartford Lloyd's
      Insurance Company, 785 Greens Parkway, Suite 200,
23    Houston, Texas, pursuant to the Texas Rules of Civil
      Procedure and the provisions stated on the record or
24    attached hereto.
25
```

Peacock Construction Company v. Hartford Lloyd's Insurance Company                                                                                    Bert Bartram

Page 15

```
21:37:18  1      MR. CARRERA: You've identified that by
21:37:20  2   Bates number. Is there a date on there?
21:37:23  3      MR. BARKER: Yeah. The date is May 10th,
21:37:25  4   2004 and it starts with, "Spoke with Ed Barker," yada,
          5   yada, yada.
21:37:32  6      MR. CARRERA: Is there a title to that
21:37:36  7   document?
21:37:36  8      MR. BARKER: There is not. It's titled the
21:37:39  9   same as what you've got in front of you, Victor. No,
21:37:42 10   there's no particular title to it. Just called notes.
21:37:47 11      MR. CARRERA: Web search help glossary?
21:37:50 12      MR. BARKER: Right. And here are the
21:37:52 13   other -- I will provide these to you.
21:37:55 14      MR. CARRERA: The ones you say are not
         15   relevant?
21:37:57 16      MR. BARKER: The ones that are not relevant.
21:38:11 17      MR. CARRERA: For the record, Mr. Barker has
21:38:13 18   provided me with documentation bearing Bates numbers
21:38:19 19   00906 through 00912, which based on their content are
21:38:23 20   not related to this litigation. I would ask that -- I
21:38:32 21   believe we are set for hearing perhaps not next week but
21:38:36 22   the week afterward -- it may be next week.
21:38:39 23      MR. BARKER: It's either the 15th or 16th.
21:38:42 24      MR. CARRERA: -- that you bring that
21:38:43 25   document to show the magistrate and he can rule on the
```

Page 16

```
21:38:46  1   privilege.
21:38:47  2      MR. BARKER: Be happy to.
21:39:07  3      Lastly, I have informed Mr. Carrera that
21:39:11  4   Mr. Bartram has some folks that have -- higher-ups at
21:39:18  5   home office in Hartford that are due here shortly before
21:39:23  6   noon, and I apologize for my being late but I couldn't
21:39:27  7   help it, but Mr. Bartram has to be out of here at
21:39:29  8   approximately 11:00 o'clock, and if we're not through
21:39:31  9   with his deposition at that time, you and I will discuss
21:39:33 10   it and we'll see if we can make additional arrangements
21:39:37 11   for additional time, if necessary.
21:39:38 12      MR. CARRERA: I will do what I can to
21:39:41 13   accommodate you, Mr. Barker. As you understand, I
21:39:45 14   understand it's not your fault but you were here more
21:39:49 15   than half an hour late.
21:39:51 16      MR. BARKER: Sure. I understand. And with
21:39:53 17   that given, we'll go from there.
21:39:55 18      MR. CARRERA: You have produced some -- I
21:39:58 19   believe you said there were some 600 pages?
21:40:00 20      MR. BARKER: Yeah. I didn't get those until
21:40:03 21   Friday. I received them through Fed Ex from home
21:40:07 22   office, and they had just received them from, I think,
21:40:10 23   their warehouse in Chicago but I'm not positive.
21:40:25 24      MR. CARRERA: Okay. There is one set of
21:40:27 25   documents approximately 25 or 26 pages. My
```

Page 17

```
21:40:31  1   understanding is these are the underwriting file?
21:40:35  2      MR. BARKER: The entire underwriting file.
21:40:37  3      MR. CARRERA: And then there is a roughly
21:40:39  4   three to four inch stack of documents commencing with
21:40:43  5   Bates number 00639 and ending with Bates number 01276.
21:40:55  6   And my understanding is that this is the claims file?
21:40:58  7      MR. BARKER: That's my understanding as
21:40:59  8   well, it's the entire claims file.
21:41:07  9      MR. CARRERA: Okay. With the exception of
21:41:09 10   that one page you have removed.
21:41:11 11      MR. BARKER: Exactly.
21:41:13 12      MR. CARRERA: Do you have additional copies
21:41:15 13   of these or are these your originals?
21:41:17 14      MR. BARKER: No. We have additional copies.
21:41:19 15   Those are for you or to attach to the deposition, if you
         16   wish.
21:41:26 17      MR. CARRERA: Okay. I think that perhaps
21:41:27 18   they are a little too thick to attach to the deposition
21:41:31 19   but I will mark them as exhibits and we can get a copy
21:41:36 20   to counsel for McQueary, Mr. Lyde.
21:41:42 21      MR. BARKER: That's fine.
21:41:43 22      MR. CARRERA: We'll mark the underwriting
21:41:45 23   file as Exhibit 1.
         24      (BARTRAM Exh. No. 1
         25       was marked for identification.)
```

Page 18

```
21:41:54  1      MR. CARRERA: We'll mark the claims file as
21:42:01  2   Exhibit 2.
          3      (BARTRAM Exh. No. 2
          4       was marked for identification.)
```

3 (Pages 15 to 18)

### Page 23

```
21:48:50  1    Q. But I'm trying to find out did you have any
21:48:55  2  responsibility for making the final decision which
21:48:57  3  resulted in the rejection?
21:48:58  4    A. The recommendation was made to me, and I approved
21:49:01  5  the recommendation.
21:49:04  6    Q. And that recommendation was made to you by whom?
21:49:07  7    A. Nancy Kaechler.
21:49:08  8    Q. And I think we're getting a little ahead of
21:49:12  9  ourselves but Nancy Kaechler is the author of I guess
21:49:16 10  what we call the rejection letter?
21:49:18 11    A. Or disclaimer letter, yes.
21:49:28 12    Q. And what is Ms. Kaechler's position within The
21:49:34 13  Hartford Companies?
21:49:34 14    A. She's a consultant.
21:49:36 15    Q. When you say she is a consultant, is she not an
21:49:39 16  employee of The Hartford Companies?
21:49:40 17    A. Yes, she is. Her title is consultant.
21:49:45 18    Q. And in the hierarchy here, is she below you? Are
21:49:51 19  you her superior as far as --
21:49:54 20    A. She reports to me.
21:49:55 21    Q. Is there anybody between you and her?
21:49:58 22    A. At the time of this process, there was not, no.
21:50:11 23    Q. Did you get an opportunity to review the notice
21:50:15 24  that was sent for the deposition of a company
21:50:18 25  representative of Hartford Lloyd's Insurance Company?
```

### Page 24

```
21:50:20  1    A. Yes, I did.
21:50:21  2    Q. And based on correspondence that I received from
21:50:25  3  Mr. Barker, it is my understanding that you do not have
21:50:37  4  any knowledge or responsibility with regard to
21:50:40  5  underwriting issues related to the policy at issue?
21:50:45  6    A. That's correct.
21:50:45  7    Q. And for purposes of the record, we're talking
21:50:49  8  about a policy that was issued to South Texas Masonry
21:50:52  9  designated a Hartford Business Spectrum Insurance Policy
21:50:56 10  and the number is 46 SBA NS1014. On some documents I've
21:51:10 11  seen an additional lettering SC added to that policy.
21:51:14 12  Does that have any significance?
21:51:21 13    A. None that I'm aware of.
21:51:23 14       MR. BARKER: And on the record, Mr. Carrera,
21:51:27 15  for whatever it's worth, we're still looking for a
21:51:32 16  person and attempting to supply a person to you that
21:51:35 17  would be knowledgeable of the underwriting information
21:51:38 18  you seek.
21:51:38 19    Q. (BY MR. CARRERA) There were three items on which
21:51:40 20  Mr. Barker said you would not be testifying; number one,
21:51:44 21  the issuance of that policy, number two, the
21:51:47 22  relationship between Hartford Lloyd's Insurance Company
21:51:52 23  and McQueary Henry Bowles & Troy, as agent in the
21:51:55 24  issuance of the aforementioned policy, and also the
21:51:57 25  issuance of certificates of insurance by McQueary Henry
```

### Page 25

```
21:52:00  1  Bowles & Troy regarding the aforementioned policy which
21:52:02  2  erroneously designated the underwriter as Hartford
21:52:02  3  Casualty Insurance Company.
21:52:02  4       Let me just test your knowledge a bit. Prior to
21:52:05  5  this litigation, had you ever heard of McQueary Henry
21:52:13  6  Bowles & Troy?
21:52:13  7    A. Yes.
21:52:13  8    Q. What is your understanding of what they do?
21:52:15  9    A. They write insurance policies.
21:52:17 10    Q. Do they do it for companies other than Hartford,
21:52:20 11  to your knowledge?
21:52:21 12    A. I don't know that.
21:52:29 13    Q. Do you know if McQueary Henry Bowles & Troy is a
21:52:37 14  designated recording agent for The Hartford Company?
21:52:42 15    A. I do not know that.
21:52:56 16    Q. Okay. Do you have any knowledge as to the
21:52:59 17  identities of the individual underwriters for Hartford
21:53:04 18  Lloyd's Insurance Company?
21:53:04 19    A. I do not.
21:53:09 20    Q. Do you know an individual by the name of Michael
21:53:11 21  Steven Wilder?
21:53:12 22    A. I do not.
21:53:30 23    Q. Is there anybody in this building here in
21:53:38 24  Houston, Texas where The Hartford Companies are located,
21:53:43 25  to your knowledge, who would have any information to
```

### Page 26

```
21:53:48  1  respond to underwriting issues with regard to the policy
21:53:52  2  which is at issue here?
21:53:53  3    A. Not that I'm aware of.
21:53:59  4    Q. Is there anybody here in this building who has
21:54:03  5  knowledge as to the identity of the individual
21:54:07  6  underwriters for Hartford Lloyd's Insurance Company?
21:54:12  7    A. Not that I'm aware of.
21:54:16  8    Q. You have been identified as a person
21:54:18  9  knowledgeable with regards to the -- I guess the claims
21:54:30 10  aspect of this policy and how it relates to the accident
21:54:35 11  which occurred in October of 2002 and the decision to
21:54:43 12  reject a tender of defense of Peacock in this case. You
21:54:51 13  do have knowledge of that?
21:54:52 14    A. Yes, sir.
21:55:08 15    Q. When did you first become aware of a claim being
21:55:15 16  made in this case and the demand that Hartford Lloyd's
21:55:22 17  Insurance Company provide a defense and indemnification
21:55:26 18  to Peacock Construction Company?
21:55:27 19    A. I believe I became aware when a claim handler and
21:55:31 20  his supervisor brought it to my attention for transfer
21:55:35 21  to the unit -- claims unit that I oversaw.
21:55:40 22    Q. And who would that claim handler be?
21:55:44 23    A. Greg Dixon.
          24    Q. Okay.
          25       (BARTRAM Exh. No. 3
```

Peacock Construction Company v. Hartford Lloyd's Insurance Company                                                              Bert Bartram

### Page 31

22:02:58  1   after Mr. Dixon's letter. What would have been done
22:03:05  2   during that time period to investigate this matter?
22:03:12  3      A. There are several documents that would need to be
22:03:15  4   collected in order to properly analyze the tender and
22:03:20  5   determine whether or not the tender would be accepted or
22:03:23  6   rejected. Those documents would include the insurance
22:03:29  7   policy and they would also include the contract on which
22:03:35  8   the tender was based, which I believe in this case was a
22:03:41  9   subcontract between Peacock and South Texas Masonry. We
22:03:48 10   would also need to collect the litigation that was at
22:03:53 11   issue.
22:03:56 12      Q. When you say litigation at issue, you're talking
22:03:59 13   about the first lawsuit where the -- I guess the injured
22:04:05 14   parties and the beneficiary of the dead person are suing
22:04:09 15   Peacock Construction?
22:04:09 16      A. I'm talking about the lawsuit that was sent to
22:04:12 17   us. I don't know whether it's the first lawsuit or what
22:04:14 18   number it may be.
22:04:16 19      Q. Okay. The underlying lawsuit on which Peacock
22:04:20 20   was seeking indemnification?
22:04:21 21      A. I'm sorry?
22:04:22 22      Q. The underlying lawsuit on which Peacock was
22:04:27 23   seeking indemnification and a defense?
22:04:29 24      A. I'd have to see the lawsuit to properly answer
22:04:32 25   that. I know there were a number of lawsuits in this

### Page 32

22:04:36  1   matter. So, I can't distinguish between those numbers
22:04:46  2   for purposes of answering this question.
22:04:53  3      Q. The policy we're talking about, we're not going
22:05:04  4   to attach to this but we can mark it as Exhibit 5.
          5        (BARTRAM Exh. No. 5
22:05:21  6         was marked for identification.)
22:05:22  7      Q. (BY MR. CARRERA) We've got plenty of copies
22:05:24  8   floating around. Is that the policy we're talking
22:05:26  9   about?
22:05:45 10      A. What you've presented to me is a policy issued by
22:05:58 11   Hartford Lloyd's Insurance Company. The main insured
22:06:02 12   listed on the policy is South Texas Masonry. It appears
22:06:05 13   that the process date of the policy was January the 7th
22:06:13 14   of 2002 and the policy period was from December 1st of
22:06:19 15   2001 to December 1st of 2002.
22:06:23 16      Q. And so, that policy would be in effect on the
22:06:25 17   date of the accident underlying litigation, which I'm
22:06:34 18   asking you to assume would have been October the 23rd of
22:06:37 19   2002?
22:06:38 20      A. That's correct.
22:06:40 21      Q. Now, you said you looked at the policy and the
22:06:53 22   pleadings in the underlying litigation. Anything else
22:06:55 23   that would be part of the investigation that was
22:07:04 24   conducted with regard to this claim?
22:07:06 25      A. There would be contact with our insured, yes,

### Page 33

22:07:11  1   just to get our insured's understanding of the facts of
22:07:15  2   the loss.
22:07:17  3      Q. And would there be -- would that be documented
22:07:30  4   within the file, the 600 page or so file called the
22:07:36  5   claim file that's Exhibit 2?
22:07:37  6      A. Yes. I'm confident that there's documentation
22:07:43  7   that reflects contact with our insured.
22:07:45  8      Q. And by insured, you mean South Texas Masonry?
22:07:49  9      A. Our name insured on the policy, yes.
22:07:52 10      Q. Any other documents that would be analyzed in
22:07:57 11   making an investigation?
22:08:01 12      A. Those would be the initial documents that would
22:08:05 13   be requested and identified to address the tender of
22:08:14 14   defense.
22:08:15 15      Q. Did you yourself have any responsibility for this
22:08:17 16   investigation?
22:08:17 17      A. I did not.
22:08:18 18      Q. Would that have been entirely Ms. Kaechler or
22:08:22 19   would she have been assisted by somebody else?
22:08:25 20      A. Or Mr. Dixon.
22:08:33 21      Q. I thought Mr. Dixon had virtually no
22:08:37 22   responsibility other than taking in the original claim.
22:08:40 23      A. I believe as the original claim was received,
22:08:44 24   there was little to no indication of the severity of the
22:08:47 25   claim, and it was only after Mr. Dixon contacted our

### Page 34

22:08:50  1   insured that he learned of the severity of the claim.
22:08:56  2      Q. Okay.
22:08:58  3      A. So, to the extent of that contact and what he
22:09:01  4   learned in his conversation, he did conduct a
22:09:06  5   preliminary investigation.
22:09:17  6      Q. As far as procuring documents, that would have
22:09:19  7   been Ms. Kaechler's responsibility?
22:09:22  8      A. I believe so.
22:09:34  9      Q. Would Ms. Kaechler have obtained project
22:09:43 10   documents related to the subcontract agreement between
22:09:54 11   Peacock and South Texas Masonry?
22:09:57 12      A. What do you mean by project documents?
22:10:00 13      Q. Let me represent to you that this accident
22:10:02 14   happened at a project called Las Dunas Condominiums on
22:10:10 15   South Padre Island, Texas. And I think that you have
22:10:13 16   indicated that one of the documents that would have been
22:10:17 17   reviewed would be the subcontract between Peacock
22:10:25 18   Construction Company and South Texas Masonry to see what
22:10:29 19   it called for, I guess?
22:10:32 20      A. Yes, sir.
22:10:35 21      Q. Would that have been limited just to the
22:10:37 22   subcontract or would any project document related to
22:10:43 23   solicitation of services be included within that?
22:10:50 24      A. What would not be included -- I don't want to not
22:10:54 25   answer your question but what would not be included

Esquire Deposition Services                 (713) 524-4951 Fax                 (713) 524-4600

### Page 39

```
22:18:49  1   Q.  Does that indicate that documents have been
22:18:55  2   requested prior to that date?
22:19:01  3      A.  Does it indicate that Ms. Kaechler has sought
22:19:05  4   documentation from Peacock?
22:19:07  5   Q.  Yes.
22:19:07  6           MR. BARKER: I'm going to object to form. I
22:19:09  7   think the document speaks for itself. You can go ahead
22:19:12  8   and answer it, Bert, but I'm making an objection for the
22:19:15  9   record.
22:19:15 10      A.  I know that the document does acknowledge receipt
22:19:20 11   of the pleading and I am presuming that the party that
22:19:35 12   tendered the defense and indemnification of the claim,
22:19:40 13   in this case Peacock, is the party that sent the
22:19:45 14   pleading.
22:19:48 15      Q.  (BY MR. CARRERA) Okay.
22:19:49 16      A.  I have no idea they're sending anything other
22:19:55 17   than what is represented in this correspondence.
         18           (BARTRAM Exh. No. 8
22:20:09 19           was marked for identification.)
22:20:09 20      Q.  (BY MR. CARRERA) Could the pleading have been
22:20:11 21   provided by McQueary Henry Bowles & Troy? Let me just
22:20:17 22   show you what's marked as Bartram Exhibit 8.
22:20:20 23      A.  Could it have been, is that your question?
22:20:23 24      Q.  Yes.
22:20:24 25      A.  It could have been, yes.
```

### Page 40

```
22:20:25  1   Q.  What is a general liability loss notice as
22:21:02  2   referenced in Bartram Exhibit 8?
22:21:09  3      A.  General liability loss notice, or more to the
22:21:13  4   point, a loss notice is a notice that The Hartford would
22:21:16  5   receive from the agent of a claim.
22:21:20  6      Q.  Would that -- could that possibly include
22:21:26  7   underlying pleadings?
22:21:27  8      A.  It could very possibly include underlying
         9   pleadings.
22:21:30 10      Q.  And that's dated just before Mr. Dixon's letter,
22:21:33 11   is it not?
22:21:33 12      A.  I'm sorry?
22:21:35 13      Q.  It's dated a couple of -- Exhibit 8 is dated a
22:21:38 14   couple of days before Mr. Dixon's letter, Bartram
22:21:43 15   Exhibit 3?
22:21:43 16      A.  Yes. Mr. Dixon's letter is dated February the
22:21:47 17   13th. The correspondence from McQueary Henry Bowles &
22:21:52 18   Troy is dated February the 11th, 2003.
22:21:59 19      Q.  I've digressed a bit --
22:22:05 20      A.  I'd --
22:22:06 21      Q.  Go ahead.
22:22:07 22      A.  I'd only indicate what you have presented to me
22:22:10 23   is a facsimile transmission that indicates three pages
22:22:15 24   but all I have is the cover sheet.
22:22:20 25      Q.  Let me --
```

### Page 41

```
22:22:20  1   A.  It's Exhibit No. 8, I believe.
22:22:35  2      Q.  To be fair to you, I'm going to try to locate
22:22:39  3   those additional two pages. I'm going to represent to
22:23:13  4   you that I am giving it to you in the order they were
22:23:20  5   produced. This bears Bates number 13 as they were
22:23:29  6   produced by McQueary Henry Bowles & Troy but 14 would be
22:23:36  7   Ms. Kaechler's letter.
         8           (BARTRAM Exh. No. 9
22:23:45  9           was marked for identification.)
22:23:45 10      Q.  (BY MR. CARRERA) Let me show you Bartram Exhibit
22:23:48 11   9. Would that be possibly the notice talked about here?
22:23:53 12      A.  Possibly. It's a general liability notice of
22:23:57 13   occurrence. This notice is dated February the 11th,
22:24:10 14   2003. It indicates that it is one of two, and I'm
22:24:13 15   presuming that means one of two pages.
22:24:32 16      Q.  Would -- if we assume that Bartram Exhibits 8 and
22:24:42 17   9 were sent together with possibly a missing page with
22:24:50 18   the claim number, would those be contained within the
22:24:53 19   claim file?
22:24:54 20      A.  Well, if we presume that they were sent, then I
22:24:57 21   would presume that they were in the claim file, yes.
22:25:08 22          MR. BARKER: Makes sense to me.
22:25:11 23      Q.  (BY MR. CARRERA) We're all being presumptuous
22:25:14 24   here. Let's clarify it this way, if you got these
22:25:18 25   documents, they are in the claim file, fair enough?
```

### Page 42

```
22:25:20  1   A.  Yes, fair enough.
22:25:27  2      Q.  Are you aware of any telephonic requests that
22:25:35  3   were made by Ms. Kaechler of Peacock Construction
22:25:39  4   Company to provide any documentation with regard to this
22:25:43  5   claim?
22:25:43  6      A.  I'm not.
22:25:49  7      Q.  If such requests had been made, would they be
22:25:54  8   documented within the claim file?
22:25:55  9      A.  They may or they may not.
22:26:00 10      Q.  Okay. There is a file number YBG LP 40689. Is
22:26:07 11   there any significance to that or is that just the order
22:26:10 12   it came in and it was assigned that?
22:26:13 13      A.  It's simply the order that it came in, it would
22:26:17 14   be assigned that number. It's a sequential assignment
22:26:21 15   number.
22:26:29 16      Q.  This procedure that we've been discussing whereby
22:26:33 17   Ms. Kaechler obtained documents as part of her
22:26:37 18   investigation, including a copy of the policy, a copy of
22:26:40 19   the subcontract, a copy of the pleadings, et cetera, is
22:26:48 20   that the same procedure that applies irrespective of
22:26:51 21   which company -- which Hartford company does the
22:26:56 22   underwriting of a policy?
22:26:57 23      A.  Yes.
22:27:01 24      Q.  Now, during the time that this file was assigned
22:27:09 25   to Ms. Kaechler, did she have any contact with you prior
```

Page 47

| | |
|---|---|
| 22:34:14 1 | A. Yes. |
| 22:34:15 2 | Q. Now, this letter says that there are basically |
| 22:34:18 3 | three things that were looked at in order to come to |
| 22:34:20 4 | this determination that there was no coverage; number |
| 22:34:23 5 | one, the pleadings in the underlying lawsuit, the second |
| 22:34:30 6 | amended petition and petition in intervention, number |
| 22:34:35 7 | two, the policy of insurance and, number three, the |
| 22:34:37 8 | subcontract between Peacock Construction Company and |
| 22:34:42 9 | South Texas Masonry, correct? |
| 22:34:46 10 | A. Are you asking if the letter states those are the |
| 22:34:51 11 | three things that were reviewed? |
| 22:34:51 12 | Q. It says that was what was reviewed? The second |
| 22:35:03 13 | paragraph on the first page. |
| 22:35:04 14 | A. That's correct. |
| 22:35:05 15 | Q. Doesn't indicate anything else was looked at, |
| 22:35:07 16 | correct? |
| 22:35:07 17 | A. It does not indicate that anything else was |
| 22:35:10 18 | looked at. |
| 22:35:23 19 | Q. If we look at Page 2 -- strike that. |
| 22:35:26 20 | If anything else had been looked at, would it |
| 22:35:29 21 | have been referenced in this letter? |
| 22:35:31 22 | A. Possibly. |
| 22:35:41 23 | Q. Let's look at Page 2 of the letter. The first |
| 22:35:54 24 | paragraph basically just deals with the fact of the |
| 22:35:58 25 | underlying lawsuit. It contains no analysis as to why a |

Page 48

| | |
|---|---|
| 22:36:04 1 | determination was made to accept or reject this -- or to |
| 22:36:11 2 | reject this tender, correct? |
| 22:36:12 3 | A. Correct. |
| 22:36:12 4 | Q. The second paragraph identifies a policy and its |
| 22:36:16 5 | effective dates, its liability limits and that the terms |
| 22:36:27 6 | of coverage are principally governed by a certain |
| 22:36:30 7 | business liability form. Let me read that last |
| 22:36:33 8 | sentence. It says, "The terms of this coverage is |
| 22:36:37 9 | principally governed by the language of business |
| 22:36:42 10 | liability form SS 00 08 03 00." Did I read that |
| 22:36:43 11 | correctly? |
| 22:36:43 12 | A. Yes. |
| 22:36:45 13 | Q. Now, is that a form that is contained within the |
| 22:36:51 14 | policy itself or is that a generic form that applies to |
| 22:36:54 15 | this type of policy? |
| 22:36:55 16 | A. That is a form that is part of the policy at |
| 22:36:57 17 | issue. |
| 22:36:57 18 | Q. So, it would be contained within Exhibit 5? |
| 22:37:04 19 | A. Yes. |
| 22:37:09 20 | Q. And it says, "We direct your attention to the |
| 22:37:11 21 | business liability coverage form SS 00 08 03 00, that |
| 22:37:16 22 | states, in pertinent part as follows: Coverages, number |
| 22:37:20 23 | one, business liability. We will pay those sums that |
| 22:37:25 24 | the insured becomes legally obligated to pay as damages |
| 22:37:27 25 | because of bodily injury to which this insurance |

Page 49

| | |
|---|---|
| 22:37:31 1 | applies. We will have the right and duty to defend the |
| 22:37:36 2 | insured against any suit seeking those damages. |
| 22:37:39 3 | However, we will have no duty to defend the insured |
| 22:37:40 4 | against any suit seeking damages for bodily injury to |
| 22:37:40 5 | which this insurance does not apply." Did I read that |
| 22:37:46 6 | correctly? |
| 22:37:46 7 | A. Yes. |
| 22:37:47 8 | Q. It continues, "We now refer you to Section G, |
| 22:37:51 9 | liability and medical expenses definitions. This |
| 22:37:55 10 | section defines those terms found within the policy that |
| 22:37:58 11 | are in quotes and are critical to this analysis. The |
| 22:38:03 12 | following defined terms apply to this analysis: |
| 22:38:09 13 | Liability and medical expenses definitions. Bodily |
| 22:38:10 14 | injury means bodily injury, sickness or disease |
| 22:38:12 15 | sustained by a person, including mental anguish or death |
| 22:38:14 16 | resulting from any of these at any time." Did I read |
| 22:38:17 17 | that correctly? |
| 22:38:17 18 | A. Yes. |
| 22:38:20 19 | Q. Continuing to Page 3 of the letter, "We now |
| 22:38:25 20 | direct your attention to who is an insured section of |
| 22:38:29 21 | the policy. This section sets forth the requirements |
| 22:38:31 22 | that must be met in order to be considered for coverage |
| 22:38:34 23 | as an additional insured under this policy. This |
| 22:38:37 24 | section reads, in pertinent part, as follows: |
| 22:38:41 25 | Additional insureds by contract, agreement or permit. |

Page 50

| | |
|---|---|
| 22:38:43 1 | Any person or organization with whom you agreed, because |
| 2 | of a written contract or agreement or persons, to |
| 3 | provide insurance such as is afforded under this |
| 4 | business liability insurance coverage form, but only |
| 5 | with respect to your operations, your work or facilities |
| 22:39:04 6 | owned or used by you." Did I read that correctly? |
| 22:39:05 7 | A. Not entirely, no. |
| 22:39:07 8 | Q. What did I miss? |
| 22:39:08 9 | A. You misread the second -- third sentence on Page |
| 22:39:13 10 | 3, which actually reads, "Additional insureds by |
| 22:39:16 11 | contract or agreement or permit." |
| 22:39:18 12 | Q. Okay. |
| 22:39:19 13 | A. You substituted persons. |
| 22:39:21 14 | Q. I'm sorry. |
| 22:39:22 15 | A. That's okay. |
| 22:39:24 16 | Q. And with that correction, did I read that |
| 22:39:28 17 | properly? |
| 22:39:29 18 | A. Yes, sir. |
| 22:39:36 19 | Q. The next paragraph, I guess, begins your |
| 22:39:41 20 | analysis. It says, "In undertaking work for Peacock, |
| 22:39:46 21 | South Texas Masonry entered into a subcontract agreement |
| 22:39:49 22 | with Peacock. There is a section in this agreement |
| 22:39:52 23 | titled insurance. Under this section, the |
| 22:39:56 24 | subcontractor, South Texas Masonry, shall obtain any |
| 25 | insurance, including worker's compensation and general |

Page 55

22:47:57  1  of operations on this sample of Bartram Exhibit 11,
22:48:02  2  which is also the third page of Bartram Exhibit 7?
22:48:05  3      A. Yes.
22:48:09  4      Q. It says policy number TBD. What does that mean?
22:48:15  5      A. You'd have to ask the agent. They are the ones
22:48:17  6  that produced it.
22:48:26  7      Q. Could it mean to be determined?
22:48:28  8      A. I'm sure it could.
22:48:35  9      Q. In any event, it's for a project -- I think it's
22:48:41 10  Las Dunas but it's misspelled as Las Donas Condominium
22:48:47 11  project on South Padre Island, Texas?
22:48:50 12      A. Yes, sir.
22:48:51 13      Q. As part of the investigation in this case, did
22:49:01 14  Ms. Kaechler request copies of certificates of insurance
22:49:05 15  that had been issued by McQueary Henry Bowles & Troy to
22:49:11 16  South Texas Masonry?
22:49:12 17      A. I'm confident that Ms. Kaechler asked for any
22:49:16 18  documents that would support the tender that was made.
22:49:20 19  That may include or may not include the documents that
22:49:24 20  I'm looking at now.
22:49:26 21      Q. Let me represent to you that Exhibit 12 was
22:49:32 22  produced by Hartford Lloyd's Insurance Company in its
22:49:37 23  initial disclosures in this case.
22:49:39 24      A. Page 1 of 2 pages?
22:49:41 25      Q. Yes.

Page 56

22:49:42  1      A. Okay.
22:49:43  2      Q. And would that have been -- let me -- if this had
22:49:52  3  been obtained as part of the investigation, would it be
22:49:54  4  in the investigation file?
22:49:55  5      A. Yes.
          6          (BARTRAM Exh. No. 13
22:50:21  7           was marked for identification.)
22:50:25  8      Q. (BY MR. CARRERA) And I may have asked you this
22:50:29  9  but do you recall seeing that document before?
22:50:30 10      A. I have no immediate recollection but if it was in
22:50:35 11  the claim file, I'm sure I saw it.
22:50:37 12      Q. Let me show you what's been marked as Bartram
22:50:40 13  Exhibit 13, which is a certificate request form, which I
22:50:47 14  believe was produced by McQueary Henry Bowles & Troy
22:50:56 15  related to the certificate with the immediately
22:51:00 16  preceding exhibit number. Have you seen that document
22:51:13 17  before?
22:51:13 18      A. I have no immediate recollection of it, no.
22:51:19 19      Q. In any event, this talks about the issuance of a
22:51:23 20  general liability policy and also workers' compensation
22:51:28 21  policy to South Texas Masonry for Las Dunas Condominium
22:51:34 22  Project on South Padre Island?
22:51:45 23      A. It says certificate request form. It appears to
22:51:51 24  have been generated by an entity identified as PBS,
22:52:05 25  Universal City, Texas. I have no knowledge who that may

Page 57

22:52:10  1  be.
22:52:10  2      Q. It talks about certificate holder and refers to
22:52:14  3  project as Las Dunas Condominium Project on South Padre
22:52:20  4  Island, do you agree with that?
22:52:24  5      A. Yes.
22:52:26  6      Q. And in the lower portion, it talks about
22:52:34  7  certificate holder needs to be added as an additional
22:52:38  8  insured and GL is circled?
22:52:40  9      A. Yes.
22:52:41 10      Q. And GL, I believe, stands for general liability?
22:52:44 11      A. Yes.
22:52:46 12      Q. Let's go back to Ms. Kaechler's letter. Who
22:52:53 13  makes the determination as to whether an entity is an
22:53:03 14  additional insured if -- well, let me back up.
22:53:06 15          If the subcontract was specific in saying within
22:53:31 16  the insurance section that Peacock would be named as an
22:53:34 17  additional insured under the general liability policy,
22:53:36 18  would there have been coverage in this case?
22:53:38 19      A. We would need to look at that designation, need
22:53:42 20  to look at the language and review it and analyze it,
22:53:45 21  and not only that but also the contract with South Texas
22:53:53 22  and McQueary Henry Bowles & Troy.
22:53:57 23      Q. Let's conclude Ms. Kaechler's letter. There's
22:54:01 24  three paragraphs remaining. Let's talk about the third
22:54:04 25  paragraph from the bottom on Page 3. It says,

Page 58

22:54:07  1  "Additionally, the indemnity provision in the contract
22:54:10  2  was reviewed. The contract language is not valid as set
22:54:13  3  forth in the State of Texas and is not conspicuous.
22:54:18  4  Therefore, no coverage is afforded to Peacock based on
22:54:23  5  the contract." Did I read that correctly?
22:54:24  6      A. Yes.
22:54:25  7      Q. Now, I believe within the subcontract agreement,
22:54:28  8  Bartram 6, within Article 6 called insurance, that
22:54:36  9  reference is to paragraph 6.3?
22:54:50 10      A. The paragraph in Ms. Kaechler's letter referring
22:54:57 11  to the indemnity provision?
22:55:02 12      Q. Yes, sir.
22:55:02 13      A. Yes, I believe it does.
22:55:07 14      Q. Now, she makes two points; number one, the
22:55:11 15  contract language is not valid as set forth in the State
22:55:15 16  of Texas. Why is it not valid, if you can tell us?
22:55:19 17      A. I believe there's case law that supports that
22:55:23 18  conclusion.
22:55:26 19      Q. Can you, off the top of your head, tell us why
22:55:30 20  it's -- what case law we're talking about or would that
22:55:34 21  be contained within the claim file?
22:55:35 22      A. It may or may not be within the claim file. I
22:55:43 23  know there is case law in Texas but I cannot give you
22:55:46 24  the specific cite but there is case law in Texas that
22:55:50 25  requires that in order to be enforceable, the language

**Page 63**

23:14:45  1  insurance considered one way or the other or how do you
23:14:50  2  all go about doing that?
23:14:52  3      A. You know, the documents as we have outlined them
23:14:56  4  are the principal course of analysis. There may be
23:14:59  5  something through our review of those documents that
23:15:02  6  causes us to look further, may, in fact, cause us to
23:15:05  7  review a certificate of insurance but, you know, in
23:15:09  8  considering any certificate of insurance, one has to
23:15:12  9  recognize the -- I guess the language in the top right
23:15:16 10  of the form, of the certificate.
23:15:18 11      Q. Are you referring to the language that says that
23:15:21 12  the certificate is issued as a matter of information
23:15:25 13  only and confers no rights upon the certificate holder.
23:15:32 14  The certificate does not amend, extend or alter the
23:15:36 15  coverage afforded by the policies?
23:15:37 16      A. Yes, sir.
23:15:38 17      Q. Okay. That's recognized by you all within the
23:15:42 18  insurance industry and by Hartford?
23:15:44 19      A. The language is recognized?
23:15:47 20      Q. Yes.
23:15:48 21      A. Yes, sir, it is.
23:15:49 22      Q. I think that's all the questions I have for you.
23:15:52 23  Thank you very much.
23:15:53 24      A. Thank you.
23:15:59 25          MR. BARKER: I'll withhold mine until time

**Page 64**

23:16:01  1  of trial.
          2              FURTHER EXAMINATION
23:16:03  3      Q. (BY MR. CARRERA) With regard to the language in
23:16:06  4  the certificates that you discussed, was that considered
23:16:15  5  in the determination to disclaim -- to issue the
23:16:27  6  disclaimer letter by Ms. Kaechler?
23:16:29  7      A. Was it an element of consideration?
23:16:31  8      Q. Yes.
23:16:32  9      A. It may have been or it may not have been.
23:16:41 10      Q. And are you aware of any policies issued by any
23:16:45 11  Hartford company to South Texas Masonry with effective
23:16:51 12  dates between December the 1st, 2001 and December the
23:16:55 13  1st, 2002 other than the policy that has been identified
23:16:59 14  as Bartram Exhibit 5?
23:17:01 15      A. I am not aware, no.
23:17:12 16      Q. Are you aware of a letter that was sent to
23:17:20 17  Ms. Kaechler by Mr. Ruben Pena, who was Peacock's then
23:17:30 18  attorney, advising her that the subcontract agreement
23:17:56 19  included the documents which form the first three pages
23:18:08 20  at least of Bartram Exhibit 7?
23:18:13 21      A. I'm sorry, it took you so long to say that
23:18:16 22  statement, I forgot the first part of it.
23:18:18 23          MR. CARRERA: Let's mark this.
          24          (BARTRAM Exb. No. 14
23:18:27 25          was marked for identification.)

**Page 65**

23:18:27  1      A. Would you mind restating the question?
23:18:29  2      Q. (BY MR. CARRERA) I wouldn't mind at all.
23:18:31  3      Are you aware of a letter sent by Ruben Pena on
23:18:36  4  behalf of Peacock to Ms. Nancy Kaechler dated February
23:18:41  5  24, 2004 wherein he advised her that the subcontract
23:18:44  6  agreement between Peacock and South Texas Masonry
23:18:49  7  included the documentation which is the first three
23:18:56  8  pages of Exhibit 7? And I'll show you Bartram Exhibit
23:19:05  9  14.
23:20:35 10      A. Yes, I believe I recall this correspondence.
23:20:49 11      Q. And let me represent to you that I've just
23:20:52 12  located that within the claims file which bears Bates
23:20:59 13  stamp numbers 01051 through 01061. And my question was
23:21:07 14  are you aware of any response by Ms. Kaechler to that
23:21:11 15  letter?
23:21:13 16      A. If there is a response, it would be in the claims
23:21:16 17  file.
23:21:17 18      Q. And I have just found within the claims file a
23:21:34 19  letter from Ms. Kaechler to Mr. Pena dated February 26,
23:21:41 20  2004. I've not seen this before and it is not signed.
23:21:47 21  And it bears Bates number 01062 and 01063 and ask you to
23:21:52 22  verify that, please.
23:22:04 23      A. Yes. It's a two page correspondence generated by
23:22:09 24  Ms. Kaechler.
23:22:13 25      Q. It is not signed, correct?

**Page 66**

23:22:15  1      A. Correct.
23:22:16  2      Q. Would that indicate it was not sent?
23:22:20  3      A. That would not indicate that it was not sent. It
23:22:22  4  would simply indicate that it's a copy of
          5  correspondence.
23:22:25  6      Q. To your knowledge, was this letter ever sent?
23:22:28  7      A. I have no idea.
23:22:30  8      Q. Let me take a minute to read this, please.
23:23:14  9      Let me give you the opportunity to read this,
23:23:17 10  please, so that we can discuss it.
23:23:19 11      A. (Witness complies.)
23:23:53 12      Q. And for the record, the claims file has a fax
23:24:01 13  copy of Mr. Pena's letter which bears Bates numbers
23:24:08 14  01064 through 01074.
23:24:32 15      A. Okay. Thank you.
23:24:52 16      Q. Would Ms. Kaechler be the individual who would
23:24:55 17  know if that letter was ever sent or not?
23:24:57 18      A. Yes, she would.
23:24:59 19          MR. BARKER: Once again, what is the Bates
23:25:01 20  stamp number on that, sir?
23:25:03 21          MR. CARRERA: 01062 and 01063. I'll give
23:25:08 22  you a chance to look at it. If you can get a copy made,
23:25:11 23  we'll attach that as a separate exhibit.
23:25:14 24          MR. BARKER: Sure.
23:25:29 25          (Off the record.)

Page 71

```
23:35:32  1   determination by a fact finder. I might substitute your
23:35:40  2   term facts for investigation.
23:35:42  3       Q. Okay.
23:35:43  4       A. I think our better understanding of the loss
23:35:47  5   through investigation suggested this is how it occurred.
23:35:53  6       Q. Okay.
23:35:54  7       A. And that's presuming there may or may not be a
23:35:57  8   dispute as to the facts of the loss.
23:36:07  9       Q. Well, based on her investigation, what she's
23:36:10 10   saying is this accident was caused by Peacock's sole
23:36:14 11   negligence, so, it couldn't have arisen out of South
23:36:19 12   Texas Masonry's work or operations or facilities, is
23:36:22 13   that a fair statement?
23:36:22 14       A. That's a fair statement.
23:36:24 15       Q. Okay. Is that what she meant, do you think?
23:36:26 16       A. You'd have to ask her. That's how I read it.
23:36:33 17       Q. Okay. She has an additional reason at the bottom
23:36:35 18   of the first page. It says, "The Hartford does not
23:36:38 19   believe the certificate of insurance will qualify as a
23:36:42 20   contract or agreement or permit as required by the
23:36:44 21   policy language. The certificate of insurance states,
23:36:48 22   quote, this certificate does not amend, extend or alter
         23   the coverage afforded by the policies below, closed
23:36:51 24   quote. Also, Peacock and South Texas Masonry are not
23:36:56 25   signatories to the certificate and have not come to an
```

Page 72

```
23:36:59  1   agreement to provide insurance in writing as required by
23:37:02  2   The Hartford's policy." I take it then that she's
23:37:08  3   referencing that language from the upper right-hand
23:37:11  4   corner of the certificates we've been looking at?
23:37:14  5       A. The certificates generated by the agent?
23:37:17  6       Q. Yes.
23:37:18  7       A. Yes.
23:37:19  8       Q. And her take on it is the certificate, even
23:37:26  9   though one of them mentions Peacock as being an
23:37:30 10   additional insured, it does not confer any substantive
23:37:34 11   rights whatsoever?
23:37:34 12       A. That's correct.
23:37:55 13       Q. Do you know what she means by both Peacock and
23:37:59 14   South Texas Masonry are not signatories, what
23:38:03 15   significance that would be if they had signed the
23:38:06 16   certificate?
23:38:06 17       A. Well, the subcontract, as I recall, is between
23:38:10 18   Peacock and South Texas Masonry.
23:38:12 19       Q. Correct.
23:38:14 20       A. Neither South Texas nor Peacock Construction had
23:38:22 21   signed the certificate of liability insurance. So, it's
23:38:25 22   not clear to me that they are parties to this
23:38:28 23   certificate and that -- and, again, I have one of two
23:38:35 24   pages of this certificate but based on the exhibit
23:38:38 25   that's been presented to me, there's no suggestion that
```

Page 73

```
23:38:43  1   South Texas Masonry or Peacock Construction ever saw
23:38:46  2   this --
23:38:48  3       Q. Would --
23:38:50  4       A. -- or ever agreed to the terms of it.
23:38:54  5       Q. You're familiar with these types of forms,
23:38:57  6   certificate of liability insurance?
23:38:59  7       A. I have seen them before, yes.
23:39:00  8       Q. Is the signature page a signature page for the
23:39:03  9   parties?
23:39:03 10       A. I don't know what the second page of this might
23:39:05 11   be.
23:39:13 12       Q. Okay. She also continues, "Peacock and South
23:39:19 13   Texas Masonry have not come to an agreement to provide
23:39:21 14   insurance in writing as required by The Hartford's
23:39:24 15   policy." There is a provision within the subcontract
23:39:28 16   agreement for the provision of insurance, correct?
23:39:32 17       A. There is a provision within the subcontract
23:39:35 18   agreement that I believe stipulates that South Texas
23:39:41 19   Masonry purchased general liability and workers'
23:39:44 20   compensation coverage, which they did. I know of no
23:39:48 21   provision within the subcontract agreement that
23:39:52 22   stipulates that South Texas Masonry is to provide a
23:39:57 23   general liability or workers' compensation coverage for
23:40:03 24   Peacock Construction.
23:40:04 25       Q. There is a provision paragraph 6.3 of that
```

Page 74

```
23:40:09  1   subcontract agreement that calls for indemnification by
23:40:14  2   South Texas Masonry of Peacock for any injury to South
23:40:20  3   Texas employees which may be caused even by the sole
23:40:26  4   negligence of Peacock?
23:40:27  5       A. Okay. That's separate from Peacock being an
23:40:31  6   insured under the policy; is that correct? I'm not
23:40:34  7   supposed to ask questions, I know.
23:40:43  8       Q. Is that what your understanding is? Because it's
23:40:45  9   within a category that's designated insurance under the
23:40:50 10   subcontract agreement. Is it Hartford Lloyd's Insurance
23:40:54 11   Company's position that even though it's contained
23:40:59 12   within, I guess, a cluster of four paragraphs under the
23:41:04 13   heading insurance, that that indemnification language of
23:41:09 14   paragraph 6.3 would not be a requirement to obtain
23:41:14 15   insurance to indemnify Peacock against its own
23:41:29 16   negligence even if it resulted in injuries to South
23:41:29 17   Texas employees?
23:41:29 18       A. The indemnification paragraph to which you refer,
23:41:31 19   from my reading, would not provide additional insured
23:41:35 20   status to Peacock.
23:41:44 21       Q. So, I take it what Ms. Kaechler is saying here is
23:41:49 22   that there has to be a specific agreement in writing to
23:41:53 23   provide insurance in order for any provisions of the
23:41:58 24   policy to kick in with regard to Peacock?
23:42:07 25       A. In order for there to be additional insured
```

Peacock Construction Company v. Hartford Lloyd's Insurance Company                                                                                                    Bert Bartram

### Page 79

| | | |
|---|---|---|
| 23:55:03 | 1 | Ms. Kaechler and myself. |
| 23:55:16 | 2 | Q. Okay. And you've just anticipated my next |
| 23:55:22 | 3 | question, which was who is on the committee. |
| 23:56:07 | 4 | I see some correspondence dated August 27, 2003, |
| 23:56:16 | 5 | Bates number 01214, from Cary Toland, who was another |
| 23:56:19 | 6 | attorney for Peacock Construction Company, to |
| 23:56:23 | 7 | Ms. Kaechler, sending her a copy of the third amended |
| 23:56:26 | 8 | petition. And also Bates number 01213, which appears to |
| 23:56:54 | 9 | be a letter from Ms. Kaechler in response to that |
| 23:56:58 | 10 | previous one. Have you had an opportunity to review |
| 23:57:12 | 11 | those? |
| 23:57:12 | 12 | A. Yes, I have. |
| 23:57:13 | 13 | Q. And she tells him that basically there's no |
| 23:57:17 | 14 | change in Hartford's position? |
| 23:57:19 | 15 | A. Yes. |
| 23:57:21 | 16 | Q. Again, this letter from Ms. Kaechler does not |
| 23:57:24 | 17 | appear to be signed. Do you have any knowledge whether |
| 23:57:28 | 18 | it was sent or not? |
| 23:57:31 | 19 | A. I can only presume it was sent. |
| 23:59:37 | 20 | Q. Mr. Bartram, to your knowledge, have The Hartford |
| 23:59:42 | 21 | Companies ever denied a claim where the issuing agent |
| 23:59:46 | 22 | was McQueary Henry Bowles & Troy prior to this |
| 23:59:52 | 23 | situation? |
| 23:59:53 | 24 | A. I have no immediate knowledge of that. |
| 00:04:01 | 25 | Q. Let me show you what is a document out of the |

### Page 80

| | | |
|---|---|---|
| 00:04:10 | 1 | claim file bearing Bates number 01137, which I believe |
| 00:04:16 | 2 | is a clearer copy of what we marked as Exhibit 2 -- |
| 00:04:20 | 3 | excuse me -- Bartram Exhibit 11 to your deposition and |
| 00:04:25 | 4 | ask you to confirm that, please. |
| 00:04:53 | 5 | A. It appears to be a clearer copy. It has a |
| 00:04:57 | 6 | different fax date at the top but -- |
| 00:04:59 | 7 | Q. Sure. It appears to be the same document other |
| 00:05:05 | 8 | than Exhibit 2 on the top of the one that's been |
| 00:05:09 | 9 | identified Bartram Exhibit 11, right? |
| 00:05:13 | 10 | A. Yes, I believe so. |
| 00:05:14 | 11 | Q. Let me represent to you that that follows a copy |
| 00:05:17 | 12 | of the subcontract agreement that we've been referring |
| 00:05:21 | 13 | to, Bartram Exhibit -- which is an exhibit to your |
| 00:05:44 | 14 | deposition -- Bartram Exhibit 6. And that's Bates |
| 00:05:51 | 15 | numbers 01133 through 01136. I'm interested in the |
| 00:06:03 | 16 | language at the top of that and if you'd look at Bartram |
| 00:06:08 | 17 | Exhibit 11, it says, "The insurance certificate |
| 00:06:10 | 18 | furnished to us by your agent must meet or surpass the |
| 00:06:17 | 19 | limits as noted on this sample. All wording shall |
| 00:06:22 | 20 | apply." |
| 00:06:22 | 21 | A. I don't know who "us" is. |
| 00:06:23 | 22 | Q. Let me ask you to assume that's Peacock. |
| 00:06:27 | 23 | A. Okay. |
| 00:06:28 | 24 | Q. Would Hartford Lloyd's Insurance Company consider |
| 00:06:32 | 25 | that language to be part of a binding contract in this |

### Page 81

| | | |
|---|---|---|
| 00:06:39 | 1 | case between Peacock Construction and South Texas |
| 00:06:42 | 2 | Masonry? |
| 00:06:44 | 3 | A. Perhaps. I'd need to take a look at the contract |
| 00:06:49 | 4 | and see if there were -- there's some specific reference |
| 00:06:56 | 5 | to this document within that signed contract. |
| 00:07:18 | 6 | Q. You would not consider it to be of any |
| 00:07:23 | 7 | significance in relation to the subcontract agreement |
| 00:07:26 | 8 | between South Texas Masonry and Peacock that we've been |
| 00:07:29 | 9 | talking about? |
| 00:07:30 | 10 | A. Well, frankly, it seems to reiterate the language |
| 00:07:35 | 11 | of the subcontract in that it is indicating that the |
| 00:07:42 | 12 | certificate must meet or surpass the limits as noted on |
| 00:07:47 | 13 | this sample. Well, if recollection serves me correctly, |
| 00:07:55 | 14 | the subcontract calls for the same limits of liability |
| 00:07:59 | 15 | coverage that are reflected in the certificate. So, it |
| 00:08:02 | 16 | seems to be a restatement of the subcontract. |
| 00:08:08 | 17 | Q. But where it calls for the issuance of a |
| 00:08:27 | 18 | certificate where the certificate holder is an |
| 00:08:30 | 19 | additional insured, you would not consider that as |
| 00:08:34 | 20 | creating an obligation on the part of South Texas |
| 00:08:38 | 21 | Masonry to obtain a policy that requires that Peacock be |
| 00:08:46 | 22 | designated an additional insured? |
| 00:08:50 | 23 | A. I don't believe I would because the language of |
| 00:08:53 | 24 | the certificate also indicates that the certificate is |
| 00:08:56 | 25 | issued as a matter of information only and confers no |

### Page 82

| | | |
|---|---|---|
| 00:08:59 | 1 | rights upon the certificate holder and that the |
| 00:09:03 | 2 | certificate does not amend, extend or alter the coverage |
| 00:09:08 | 3 | afforded by the policies below. |
| 00:09:15 | 4 | Q. Well -- |
| 00:09:15 | 5 | A. And it's certainly part of the wording that it |
| 00:09:19 | 6 | seems to me is suggested to apply by this typewritten |
| 00:09:30 | 7 | note at the top of Bartram Exhibit 11. |
| 00:09:33 | 8 | Q. I'm not talking about the insurance policy for |
| 00:09:36 | 9 | the contract. |
| 00:09:37 | 10 | A. Nor am I. |
| 00:09:38 | 11 | Q. You're talking about the subcontract agreement? |
| 00:09:40 | 12 | A. Actually, I'm talking about the language on the |
| 00:09:42 | 13 | certificate that you presented to me as Bartram Exhibit |
| 00:09:46 | 14 | 11. |
| 00:09:46 | 15 | Q. Okay. What it says is the certificate does not |
| 00:09:49 | 16 | amend, extend or alter the coverage afforded by the |
| 00:09:53 | 17 | policies below. My question is, is it Hartford Lloyd's |
| 00:10:02 | 18 | Insurance Company's position that even though Peacock is |
| 00:10:09 | 19 | asking that a certificate be issued that must meet or |
| 00:10:20 | 20 | surpass the limits as noted on the sample and that all |
| 00:10:25 | 21 | wording shall apply, that does not create an additional |
| 00:10:37 | 22 | obligation on the part of South Texas to obtain a policy |
| 00:10:40 | 23 | of general liability insurance in which Peacock would be |
| 00:10:43 | 24 | an additional insured? |
| 00:10:46 | 25 | A. No, it doesn't. In fact, it seems to me to be |

19 (Pages 79 to 82)

Peacock Construction Company v. Hartford Lloyd's Insurance Company                                              Bert Bartram

### Page 87

| Time | Line | Text |
|---|---|---|
| 00:20:33 | 1 | insured would not be an impediment to the consideration |
| 00:20:39 | 2 | at least of coverage? |
| 00:20:41 | 3 | A. Certainly. |
| 00:20:48 | 4 | Q. Is it a fair statement then to say that |
| 00:21:00 | 5 | irrespective of the contracts between South Texas |
| 00:21:02 | 6 | Masonry and Peacock specifically calling for additional |
| 00:21:07 | 7 | insured status for Peacock, had there been an |
| 00:21:13 | 8 | appropriate indemnification provision within that |
| 00:21:21 | 9 | subcontract, according to Hartford Lloyd's, then there |
| 00:21:26 | 10 | might be coverage? |
| 00:21:28 | 11 | A. There might be a duty to indemnify. |
| 00:21:33 | 12 | Q. Okay. |
| 00:21:35 | 13 | A. It's distinct from providing them status as an |
| 00:21:44 | 14 | insured. |
| 00:21:44 | 15 | Q. But the end result would be the same, that there |
| 00:21:48 | 16 | would be coverage? |
| 00:21:49 | 17 | A. Perhaps. |
| 00:22:04 | 18 | Q. And as I understand, Hartford Lloyd's position is |
| 00:22:09 | 19 | that even if there was -- or there might be an |
| 00:22:16 | 20 | appropriate indemnification provision which might |
| 00:22:24 | 21 | require that coverage be provided, there may be other |
| 00:22:29 | 22 | policy exclusions which would preclude coverage? |
| 00:22:34 | 23 | A. There may be and, as importantly, there may be |
| 00:22:37 | 24 | facts that would preclude the duty to indemnify. You |
| 00:22:44 | 25 | keep mentioning preclude coverage. |

### Page 88

| Time | Line | Text |
|---|---|---|
| 00:22:47 | 1 | Q. Okay. |
| 00:22:47 | 2 | A. And I keep correcting you by saying preclude the |
| 00:22:52 | 3 | duty to indemnify because they are two completely |
| 00:22:56 | 4 | distinct issues. |
| 00:22:57 | 5 | Q. Enlighten me, please. How are they completely |
| 00:23:00 | 6 | distinct? |
| 00:23:01 | 7 | A. If South Texas Masonry had a duty to indemnify |
| 00:23:09 | 8 | Peacock Construction, that would not make Peacock an |
| 00:23:11 | 9 | insured under the contract. |
| 00:23:12 | 10 | Q. I understand that. |
| 00:23:13 | 11 | A. That's the distinction right there. |
| 00:23:15 | 12 | Q. When I talk about coverage, that presupposes that |
| 00:23:20 | 13 | Peacock would be an additional insured but Peacock would |
| 00:23:27 | 14 | benefit from that because of the indemnification? |
| 00:23:29 | 15 | A. Actually, South Texas Masonry would benefit from |
| 00:23:33 | 16 | that. |
| 00:23:34 | 17 | Q. Okay. |
| 00:23:34 | 18 | A. Because the insurance contract would provide |
| 00:23:38 | 19 | coverage to their duty to indemnify. |
| 00:24:04 | 20 | Q. So, the duty to indemnify is independent of any |
| 00:24:10 | 21 | duty to provide coverage to an additional insured? |
| 00:24:13 | 22 | A. That's correct. |
| 00:24:22 | 23 | Q. Mr. Bartram -- |
| 00:24:25 | 24 | A. Yes, sir. |
| 00:24:26 | 25 | Q. -- I can't think of anything else to ask you |

### Page 89

| Time | Line | Text |
|---|---|---|
| 00:24:27 | 1 | right now. I know that five minutes after you walk out |
| 00:24:30 | 2 | the door, I'm going to think of things I forgot but I |
| 00:24:34 | 3 | don't have any further questions, and I want to thank |
| 00:24:36 | 4 | you for meeting with us this morning. |
| 00:24:38 | 5 | A. Thank you. |
| 00:24:39 | 6 | MR. BARKER: I'll save mine until time of |
| 00:24:41 | 7 | trial. |
| 00:24:43 | 8 | MR. LYDE: No questions at this time. |
|  | 9 | (Whereupon at 12:24 p.m. the |
|  | 10 | deposition was concluded.) |

### Page 90

```
 1
 2
 3
 4        BERT BARTRAM
 5
 6   THE STATE OF _____
 7   COUNTY OF _____
 8
 9   Before me, _____, on this day personally
10   appeared BERT BARTRAM, known to me (or proved to me
11   under oath or through _____) (description of
12   identity card or other document) to be the person whose
13   name is subscribed to the foregoing instrument and
14   acknowledged to me that they executed the same for the
15   purposes and consideration therein expressed.
16
17   Given under my hand and seal of office this _____ day
18   of _____, _____.
19
20   NOTARY PUBLIC IN AND FOR
21   THE STATE OF _____
22
23
24
25
```

21 (Pages 87 to 90)