Peacock Construction Company v. Hartford Lloyd's Insurance Company                                Nancy Kaechler

Page 1

1  05-E-75729 EB
2
        IN THE UNITED STATES DISTRICT COURT
3          SOUTHERN DISTRICT OF TEXAS
              BROWNSVILLE DIVISION
4
   PEACOCK CONSTRUCTION COMPANY, INC. *
5          Plaintiff                  *
   VS.                                * CIVIL ACTION
6                                     * NO. B-04-111
   HARTFORD LLOYD'S INSURANCE COMPANY,*
7          Defendant
8
            CAUSE NO. 2002-11-4371-G
9
   PEACOCK CONSTRUCTION     * 404TH JUDICIAL DISTRICT COURT
10 COMPANY, INC.            *
    Third-Party Plaintiffs* 
11                          *
   VS.                      *
12                          *
   MCQUEARY HENRY BOWLES &  *
13 TROY, LLP, AND SOUTH     *
   TEXAS MASONRY, ET AL     *
14  Third-Party/            *
    Cross-Defendants        * CAMERON COUNTY, TEXAS
15
   ****************************************************
16              ORAL DEPOSITION OF
                 NANCY KAECHLER
17                   3-7-05
   ****************************************************
18
19 ORAL DEPOSITION of NANCY KAECHLER, produced as a witness
   at the instance of the Plaintiff, Peacock Construction
20 Company, Inc., and duly sworn, was taken in the
   above-styled and numbered cause on the 7th of March,
21 2005, from 1:10 p.m. until 3:19 p.m., before Edith A.
   Boggs, CSR in and for the State of Texas, reported by
22 machine shorthand, at the offices of Hartford Lloyd's
   Insurance Company, 785 Greens Parkway, Suite 200,
23 Houston, Texas, pursuant to the Texas Rules of Civil
   Procedure and the provisions stated on the record or
24 attached hereto.
25

### Page 6

```
01:13:10  1    A.  I worked for Farmers Insurance.
01:13:13  2    Q.  What years was that, ma'am?
01:13:17  3    A.  From 1986 to 1990.  Then I worked for Members
01:13:24  4  Insurance from 1990 to 1991.  Then I worked for CNA from
01:13:34  5  1991 to 1996.  Then Ranger Insurance from 1996 to 1999.
01:13:44  6  And then Hartford from 1999 to current day.
01:13:49  7    Q.  And what was your undergraduate degree in, ma'am?
01:13:53  8    A.  Chemistry, bachelor of science.
01:14:02  9    Q.  Do you have any legal training or education?
01:14:06 10    A.  I'm not a lawyer, if that's what you're asking,
01:14:08 11  no.
01:14:11 12    Q.  Have you taken any law courses or law related
01:14:15 13  courses?
01:14:18 14    A.  I'm not sure I can answer that.  We have a lot
01:14:25 15  of -- we have to take continuing education classes and
01:14:29 16  often they involve legal issues.
01:14:33 17    Q.  And that's provided by the insurance industry?
01:14:35 18    A.  Yes.
01:14:40 19    Q.  From '81 to '86, what did you do?
01:14:43 20    A.  I worked for Baker Sand Control in the technical
01:14:49 21  service lab.  I worked as a chemist.
01:14:55 22    Q.  Let's talk about your career in the insurance
01:15:01 23  industry or insurance business.  What training -- what
01:15:08 24  positions did you hold with Farmers from 1986 to '90?
01:15:12 25    A.  I started out as a property adjustor handling
```

### Page 7

```
01:15:16  1  homeowner claims.  Then I got into their management
01:15:20  2  training program.  From there, I handled all claims,
01:15:24  3  such as liability, auto appraisal and, you know, just
01:15:33  4  everything that they -- all the claims that they
01:15:38  5  provide, as well as supervision.
01:15:40  6        At Members Insurance, I handled auto claims.
01:15:49  7  They were the comprehensive claims.
01:15:54  8        Then at CNA, I handled commercial liability and
01:16:05  9  auto claims, litigated and nonlitigated.
01:16:08 10        At Ranger, it was also commercial liability and
01:16:13 11  auto claims, litigated mostly, some nonlitigated.
01:16:20 12        And Hartford, I handle commercial liability and
01:16:25 13  auto claims, litigated and nonlitigated.
01:16:29 14    Q.  Did you receive any kind of specific training
01:16:34 15  to -- as you started out as an adjustor with Farmers,
01:16:42 16  any kind of training with regard to the insurance
01:16:44 17  industry?
01:16:45 18    A.  Farmers has training in-house that they do
01:16:48 19  provide for their adjustors and it involves various --
01:16:56 20  the various -- for example, the property aspect, they
01:17:01 21  have their home office in Los Angeles and you would go
01:17:05 22  there and have training there.  They had training for
01:17:09 23  liability.  They had training for auto.
01:17:14 24    Q.  Any of the other companies you work for, Member,
01:17:19 25  CNA, Ranger or Hartford, provide any type of training to
```

### Page 8

```
01:17:22  1  you?
01:17:22  2    A.  Hartford does have training that they have
01:17:26  3  provided.  I don't know that it's training.  I can't say
01:17:29  4  that it's training.  So, I'd have to say no.  The other
01:17:37  5  companies I have hired on with experience.
01:17:39  6    Q.  And you say you have to have continuing
01:17:40  7  education.  What does that entail?
01:17:42  8    A.  For an adjustor's license, you must have 30 hours
01:17:48  9  of continuing education every two years for your license
01:17:53 10  renewal, and that can involve accredited courses.  They
01:18:00 11  must be accredited through the State of Texas Department
01:18:06 12  of Insurance and they have to also involve four hours
01:18:14 13  of -- it was considered consumer protection.  It's now
01:18:18 14  called ethics.  And they have two hours of consumer
01:18:21 15  protection.
01:18:21 16    Q.  And so, you do have an adjustor's license, is
01:18:24 17  that --
01:18:24 18    A.  Yes.
01:18:25 19    Q.  And you've had that since when?
01:18:26 20    A.  Since 1987.  I believe the first year is a
01:18:32 21  trainee's license.
01:18:32 22    Q.  And it's been maintained continuously since then?
01:18:35 23    A.  Yes.
01:18:36 24    Q.  Is there any other type of license that you hold
01:18:39 25  in the insurance business?
```

### Page 9

```
01:18:39  1    A.  No.
01:18:42  2    Q.  What is the difference between an adjustor and a
01:18:45  3  consultant, which is the position you hold now?
01:18:47  4    A.  I think a lot of it depends on the company you
01:18:51  5  work for as to the designation.
01:18:54  6    Q.  Okay.
01:18:54  7    A.  A consultant handles the more -- I guess the more
01:19:02  8  difficult claims, usually coverage issues, that sort of
01:19:08  9  thing.
01:19:08 10    Q.  At Hartford, have you always been a consultant?
01:19:12 11    A.  I believe I have, yes.
01:19:35 12    Q.  Ms. Kaechler, as I told you, we're here about an
01:19:39 13  insurance coverage issue with regard to a policy that
01:19:42 14  was issued by Hartford Lloyd's Insurance Company to
01:19:46 15  South Texas Masonry and whether it provided any coverage
01:19:48 16  or indemnification to Peacock Construction Company as a
01:19:52 17  result of that incident that I talked to you about where
01:19:55 18  one individual was killed and two others were injured.
01:19:58 19  Okay?
01:19:58 20    A.  (Witness indicated by nodding her head
01:19:59 21  affirmatively.)
01:20:01 22    Q.  I take it you've given a deposition before?
01:20:03 23    A.  I have.
01:20:05 24    Q.  I understand you're not feeling well, and so, I'm
01:20:08 25  going to try to be as brief as I can.
```

## Page 14

```
01:26:29   1   other people also?
01:26:32   2       A. No. It has the notes -- has the initials of the
01:26:36   3   person who put them in there.
01:26:41   4       Q. Okay. So, let me see. For example, yours has
01:26:47   5   your full name, Nancy J. Kaechler, input by Nancy J.
01:26:53   6   Kaechler. So, that will be something you put in there
01:26:55   7   and the time?
01:26:56   8       A. Not always.
01:26:57   9       Q. Okay.
01:26:57  10       A. Right here, for example -- and I think it may be
01:27:00  11   the system -- our system has changed and we went from
01:27:04  12   one computer system to another, and the older notes
01:27:06  13   don't have our names but rather have initials. And my
01:27:09  14   initials are NJK.
01:27:14  15       Q. Okay. Is it a fair statement, though, that you
01:27:16  16   were the primary individual involved in this file?
01:27:18  17       A. I would say so. I'm the handler.
01:27:21  18       Q. You were the handler, that's what they called it?
01:27:25  19       A. Claim handler. It was my file.
01:27:29  20       Q. What responsibility did Mr. Bert Bartram have
01:27:32  21   with regard to this claim?
01:27:33  22       A. As my supervisor, he was the one I reviewed any
01:27:38  23   coverage questions with. Before any decisions were
01:27:41  24   made, I would have talked to him. And, you know, as my
01:27:49  25   supervisor, he's the person I review things with.
```

## Page 15

```
01:27:51   1       Q. Is there anybody below you that you reviewed this
01:27:54   2   file with?
01:27:57   3       A. No, I don't believe so.
01:27:58   4       Q. There's a reference in that Exhibit 2 to a claims
01:28:04   5   committee.
01:28:04   6       A. Right.
01:28:06   7       Q. Do you recall any individuals on that claims
01:28:08   8   committee other than Mr. Bartram?
01:28:10   9       A. I don't believe so. I believe it was me and
01:28:13  10   Mr. Bartram.
01:28:21  11       Q. Okay. Do you recall specifically what documents
01:28:25  12   you reviewed in reaching a determination in this case
01:28:32  13   that there would not be any coverage afforded to
01:28:43  14   Peacock?
01:28:43  15       A. I couldn't say specifically after all this time
01:28:46  16   what I reviewed. Normally what I review is what is
01:28:50  17   presented.
01:29:08  18       Q. Let me show you a document that's been marked as
01:29:12  19   Bartram Exhibit 4, which is a letter dated April 3 of
01:29:17  20   2003 from you to Peacock Construction Company. And I
01:29:22  21   want to ask you to take the time to review this.
01:29:25  22       A. Okay. (Witness complies.) Okay.
01:30:48  23       Q. Let's go through that. I've got an extra copy,
01:30:50  24   so, you can keep that with you.
01:30:52  25       A. Okay.
```

## Page 16

```
01:30:53   1       Q. The first page talks about some of the items you
01:31:03   2   reviewed, one being the pleadings in the underlying
01:31:06   3   lawsuit, plaintiffs' second amended original petition
01:31:10   4   for injunction and damages and also a petition in
01:31:13   5   intervention.
01:31:13   6       A. Okay.
01:31:16   7       Q. It also indicates that these pleadings had been
01:31:21   8   tendered to Hartford by First Mercury Insurance Company
01:31:25   9   on behalf of Peacock Construction Company, correct?
01:31:27  10       A. Right.
01:31:29  11       Q. And I think it -- the last sentence of the first
01:31:36  12   paragraph says, "Peacock Construction Company, Inc. is
01:31:38  13   seeking additional insured status under South Texas
01:31:44  14   Masonry's policy."
01:31:45  15       A. Yes.
01:31:45  16       Q. Was that something that First Mercury had
01:31:52  17   requested?
01:31:53  18       A. I believe. I believe that they were -- had
01:31:56  19   presented this claim, tendered it for additional insured
01:32:00  20   status.
01:32:11  21       Q. Let me show you Bartram Exhibit 10. That is a
01:32:27  22   First Mercury letter.
01:32:34  23       A. Okay.
01:32:37  24       Q. Is that the letter you recall seeing?
01:32:39  25       A. I recall seeing two letters, and I believe they
```

## Page 17

```
01:32:42   1   were very similar. I couldn't say if this was the first
01:32:45   2   one or not but I assume it is.
01:32:48   3       Q. Two letters from First Mercury?
01:32:50   4       A. Yes, I believe they sent two letters.
01:33:14   5       Q. In the third paragraph of this letter of January
01:33:17   6   28, 2003 First Mercury states that, "It is also our
01:33:22   7   belief that your company is obligated to have our
01:33:27   8   policyholder named as an additional insured under any
01:33:28   9   and all commercial general liability policies held by
01:33:29  10   your company on the date of loss. As an additional
01:33:34  11   insured under said policy (or policies), our
01:33:36  12   policyholder is entitled to defense and indemnification
01:33:39  13   by your insurance carrier for the claims presented."
01:33:41  14       A. Correct.
01:33:41  15       Q. And that's what you're talking about where they
01:33:44  16   are claiming that Peacock is an additional insured?
01:33:47  17       A. Yes.
01:33:50  18       Q. Okay. Back to your letter of April 3, 2003,
01:33:54  19   Bartram Exhibit 4, you reviewed the policy of insurance
01:34:02  20   and a subcontract agreement between Peacock and South
01:34:07  21   Texas Masonry --
01:34:08  22       A. Correct.
01:34:08  23       Q. -- in addition to the pleadings we've talked
01:34:10  24   about earlier, the second amended original petition and
01:34:12  25   the petition in intervention; is that correct?
```

Page 22

```
01:40:12  1   A. Yes.
01:40:12  2   Q. And in the policy and in your letter where it
01:40:17  3   references to you, that, of course, is South Texas
01:40:21  4   Masonry?
01:40:21  5   A. Yes.
01:40:26  6   Q. Let's continue with your letter on Page 3.
01:40:33  7   Fourth paragraph, it says, "In undertaking work for
01:40:38  8   Peacock, South Texas Masonry entered into a subcontract
01:40:41  9   agreement with Peacock. There is a section in this
01:40:47 10   agreement titled insurance. Under this section, the
01:40:49 11   subcontractor, South Texas Masonry, shall obtain any
01:40:53 12   insurance, including worker's compensation and general
01:40:57 13   liability, required by the contract documents, from a
01:41:01 14   responsible insurer, and shall furnish satisfactory
01:41:04 15   evidence to the contractor, Peacock. However, there is
01:41:07 16   no stipulation within the subcontract that Peacock is to
01:41:10 17   be named as an additional insured on South Texas
01:41:14 18   Masonry's policy of insurance."
01:41:15 19       "Based on the policy language and the contract,
01:41:17 20   Peacock will not qualify as an additional insured under
01:41:22 21   South Texas Masonry's policy as additional insured
01:41:24 22   status is not specified in the contract. Therefore, The
01:41:29 23   Hartford will not respond to Peacock's tender." Did I
01:41:33 24   read those paragraphs correctly?
01:41:34 25   A. Yes.
```

Page 23

```
01:41:34  1   Q. Now, the contract you're talking about is what's
01:41:37  2   been identified as Bartram Exhibit 7, correct? Excuse
01:41:42  3   me.
01:41:43  4   A. No.
01:41:43  5   Q. I'm sorry.
01:41:44  6   A. Right here.
01:41:45  7   Q. Bartram Exhibit 6. I apologize.
01:41:49  8   A. Yes, that is true.
01:41:55  9   Q. And as I understand this portion of your letter,
01:41:55 10   you are saying that because the subcontract agreements
01:41:59 11   between South Texas Masonry and Peacock does not
01:42:03 12   specifically state that Peacock is to be named as an
01:42:07 13   additional insured under the general liability insurance
01:42:11 14   policy, that Peacock would not qualify as an additional
01:42:15 15   insured?
01:42:16 16   A. That is correct.
01:42:48 17   Q. Let's continue with your letter, Page 3. It
01:42:55 18   says, "Based on the policy language and the contract" --
01:42:57 19   excuse me. We've already talked about that.
01:43:00 20       It says, "Additionally, the indemnity provision
01:43:03 21   in the contract was reviewed. The contract language is
01:43:06 22   not valid as set forth in the State of Texas and is not
01:43:10 23   conspicuous. Therefore, no coverage is afforded to
01:43:13 24   Peacock based on the contract." Did I read that
01:43:16 25   correctly?
```

Page 24

```
01:43:16  1   A. Yes.
01:43:17  2   Q. Again, you're talking about Exhibit No. --
01:43:21  3   A. 6.
01:43:22  4   Q. -- 6, which is the specific indemnity provision
01:43:27  5   that you reviewed?
01:43:36  6   A. I think there was indemnity within the insurance,
01:43:39  7   that would be 6.3.
01:43:41  8   Q. 6.3?
01:43:42  9   A. (Witness indicated by nodding her head
01:43:43 10   affirmatively.)
01:43:47 11   Q. And let me see if my understanding is correct
01:43:51 12   from my discussion this morning with Mr. Bartram, is
01:43:56 13   that there are two ways that Peacock could obtain
01:44:04 14   coverage under the underlying policy, number one, if it
01:44:07 15   was a specifically named additional insured?
01:44:10 16   A. Correct.
01:44:11 17   Q. And number two, even if it was not specifically
01:44:18 18   named as an additional insured, if there was an
01:44:20 19   obligation that in Hartford Lloyd's opinion was a valid
01:44:25 20   indemnification agreement in favor of Peacock?
01:44:31 21   A. Well, I think that is true. And you have to also
01:44:34 22   take into account the pleadings as to how that all
01:44:41 23   relates to the coverage as well and if -- in other
01:44:46 24   words, just because Peacock is either named as an
01:44:49 25   additional insured or is --
```

Page 25

```
01:44:54  1   Q. An indemnity?
01:44:57  2   A. -- an indemnity per the contract, that doesn't
01:45:01  3   automatically mean they will be covered for everything.
01:45:04  4   Q. I understand that. And I think what he said is
01:45:07  5   those are two ways and if neither is present, the
01:45:11  6   analysis stops there.
01:45:12  7   A. Yes. Correct.
01:45:21  8   Q. And, in fact, I think that's what you're saying
01:45:23  9   in your letter, number one, Peacock is not an additional
01:45:27 10   insured because the subcontract agreement does not call
01:45:30 11   for Peacock to be an additional insured and, number two,
01:45:35 12   Peacock cannot rely on the indemnity provision because
01:45:38 13   the indemnity provision is invalid and not conspicuous?
01:45:44 14   A. Yes.
01:45:44 15   Q. And you continue in your letter. You say, "This
01:45:47 16   correspondence is not intended, nor shall it be
01:45:50 17   construed as, an exhaustive listing of policy terms,
01:45:51 18   conditions or exclusions which might preclude coverage
01:45:55 19   under The Hartford policy. The Hartford reserves the
01:45:58 20   right to supplement this disclaimer later should facts
01:46:03 21   or circumstances, not currently known, indicate the
01:46:07 22   applicability of additional grounds. The Hartford
         23   further reserves the right to file a declaratory
01:46:08 24   judgment action if it is necessary."
01:46:11 25       And you conclude with, "Should you have any
```

### Page 30

01:58:55  1   policy is refuted by the language of the certificate,
01:58:58  2   which means this certificate is issued as a matter of
01:59:02  3   information only, confers no rights upon the certificate
01:59:03  4   holder. The certificate does not amend, extend or alter
01:59:05  5   the coverage afforded by the policies below. Further to
01:59:08  6   this analysis, there is no Hartford policy identifying
01:59:12  7   the certificate. This secures that this certificate,
          8   which is represented as having been produced by the
          9   agent on 1-15-02, does not identify a policy number of
         10   coverage accepted over six weeks earlier and renewed
         11   from prior insurance. NJK's coverage position of
01:59:28 12   denying Peacock's tender of defense and indemnity is
01:59:31 13   affirmed. Did I read that correctly?
01:59:33 14        A. Yes, I believe so.
01:59:39 15        Q. So, it appears that with regard to the items on
01:59:49 16   Bartram Exhibit 7, those were received some 11 months
01:59:56 17   later or almost 11 months later?
01:59:58 18        A. Right, from Mr. Pena.
01:59:59 19        Q. Right. Let me show you what has been marked as
02:00:05 20   Bartram Exhibit 15, which is an unsigned letter over
02:00:08 21   your name. Would that letter have gone out?
02:00:10 22        A. Yes. This would have been a copy put in the
02:00:12 23   file.
02:00:14 24        Q. Okay.
02:00:14 25        A. I historically don't sign copies for the file.

### Page 31

02:00:17  1        Q. Let's go back to your first letter, the one of
02:00:29  2   April 3rd, 2003.
02:00:30  3        A. Okay.
02:00:31  4        Q. Other than the reasons that you stated therein,
02:00:35  5   have you come to a determination of any other provisions
02:00:41  6   of the policy which would deny coverage to Peacock or
02:00:47  7   indemnification to Peacock?
02:00:48  8        A. I can't recall specifically.
02:01:08  9        Q. Let me show you that letter dated February 26,
02:01:12 10   2004, which is Bartram Exhibit 15, and have you take the
02:01:15 11   time to read through it.
02:01:17 12        A. (Witness complies.) Okay.
02:02:02 13        Q. And I think that the long and the short of it is
02:02:11 14   you're telling Mr. Pena, "I stand by my original letter
02:02:16 15   of April 3rd, 2003 for the reasons in denying coverage"?
02:02:22 16        A. Yes.
02:02:22 17        Q. And that, furthermore, you direct him to policy
02:02:29 18   language that says, "Any person or organization with
02:02:33 19   whom you agreed, because of a written contract or
02:02:36 20   agreement or permit, to provide insurance such as is
02:02:39 21   afforded under this business liability coverage form,
02:02:40 22   but only with respect to your operations, your work or
02:02:44 23   facilities owned or used by you," that based on your
02:02:48 24   investigation that the accident was as a result of
02:02:52 25   Peacock's sole negligence and, therefore, did not arise

### Page 32

02:02:54  1   out of your work, meaning South Texas Masonry's work?
02:02:57  2        A. That's correct.
02:02:58  3        Q. And you further advised him that, in your
02:03:03  4   opinion, the certificates of insurance -- the
02:03:05  5   certificate of insurance did not, even though indicated
02:03:12  6   that Peacock was an additional insured, that because of
02:03:16  7   disclaimer language at the top right corner that it
02:03:18  8   would not provide coverage beyond what the policy did?
02:03:22  9        A. That is correct.
02:03:25 10        Q. Now, in your original letter, you talked about
02:03:32 11   contract documents on Page 3, the fourth paragraph,
02:03:45 12   second sentence. When you talk about the subcontractor
02:03:48 13   agreement it says, "Under this section, the
02:03:50 14   subcontractor, South Texas Masonry, shall obtain any
02:03:54 15   insurance, including worker's compensation and general
02:03:56 16   liability, required by the contract documents, from a
02:03:59 17   responsible insurer, and shall furnish satisfactory
02:04:02 18   evidence to the contractor, Peacock."
02:04:05 19        A. Correct.
02:04:05 20        Q. Did I read that correctly?
02:04:06 21        A. Yes.
02:04:07 22        Q. And Mr. Pena, I believe, advised you that the
02:04:10 23   documents shown on Bartram Exhibit 7 were part of the
02:04:14 24   contract or the subcontract agreement between South
02:04:18 25   Texas Masonry and Peacock, correct?

### Page 33

02:04:19  1        A. Yes.
02:04:20  2        Q. And among those was a sample, and we've got a
02:04:25  3   clearer copy as Bartram Exhibit 11 and I think we've
02:04:28  4   even got a -- one in the file itself --
02:04:34  5        A. Okay.
02:04:34  6        Q. -- that indicates that the form that was sent by
02:04:43  7   Peacock to South Texas Masonry required that the
02:04:45  8   certificate be issued in such a manner that Peacock was
02:04:50  9   named as an additional insured. And I'm talking about
02:04:56 10   the section called description of operations down at the
02:05:00 11   bottom.
02:05:02 12        A. Yes, it does state that.
02:05:06 13        Q. And it also talks about at the top that, "The
02:05:14 14   insurance certificate furnished to us by your agent must
02:05:17 15   meet or surpass the limits noted on the sample."
02:05:20 16        A. Right.
02:05:20 17        Q. "And all wording shall apply." Do you see that?
02:05:23 18        A. Yes.
02:05:25 19        Q. And it is your position or the position of
02:05:31 20   Hartford Lloyd's Insurance Company that -- strike that.
02:05:39 21        Is it your position that the documents shown on
02:05:42 22   Bartram Exhibit 7 are not contract documents?
02:05:48 23        A. I don't know how to answer that. They may have
02:05:54 24   been attached to the documents but as -- to the contract
02:05:59 25   but as far as requiring insurance or providing insurance

## Page 38

```
02:14:10  1   an additional insured?
02:14:12  2       A. What we're stating is they do not provide the
02:14:16  3   basis for coverage.
02:14:18  4       Q. You are not denying that they are contract
02:14:25  5   documents?
02:14:25  6       A. I can't agree or disagree on that. I can't say
02:14:29  7   one way or the other.
02:14:40  8       Q. Okay. What was the basis in your letter to
02:14:45  9   Mr. Pena of February the 28th of 2004 to state that the
02:14:55 10   injuries complained of and the death complained of in
02:14:58 11   the underlying litigation did not arise out of the -- I
02:15:05 12   guess the work of South Texas Masonry?
02:15:09 13       A. Based on, one, the pleadings which stated that
02:15:17 14   the employees were leaving work and were not working at
02:15:20 15   the time when the accident occurred. The other is the
02:15:25 16   information as provided by Mr. -- I believe it was
02:15:31 17   Baltimar --
02:15:32 18       Q. Baltimar Guitierrez with South Texas Masonry?
02:15:39 19       A. Yes, with our insured, who explained how he
02:15:43 20   understood the accident to have occurred.
02:15:47 21       Q. I think it's Salazar.
02:15:50 22       A. I think it's Salazar, yes.
02:15:51 23       Q. Is there -- strike that.
02:16:00 24          So, it's your position that had they been
02:16:04 25   actually working rather than leaving work, it would have
```

## Page 39

```
02:16:12  1   been considered that it was part of South Texas
02:16:22  2   Masonry's business or --
02:16:24  3       A. It really needs to be -- I think there needs to
02:16:27  4   be more of a nexus than just being there. As we
02:16:32  5   understand the way this accident occurred, it was truly
02:16:37  6   Peacock's sole negligence. It is against public policy
02:16:43  7   in Texas to indemnify another party for their sole
02:16:47  8   negligence. So, that really -- the accident truly
02:16:51  9   appeared to be their sole negligence but the fact that
02:16:57 10   our insured -- it needs to be -- there needs to be some
02:17:02 11   negligence that is being imputed on Peacock as a result
02:17:08 12   of something South Texas did to reach the additional
02:17:15 13   insured status, in other words, our insured has to have
02:17:23 14   some negligence so that we then have the duty to the
02:17:29 15   other party.
02:17:30 16       Q. Let me see if I understand that. And I'm going
02:17:34 17   to try to break it down. You mentioned something like
02:17:37 18   it's against public policy in Texas --
02:17:40 19       A. That's my understanding.
02:17:41 20       Q. -- to indemnify a party based solely on their own
02:17:47 21   negligence?
02:17:48 22       A. I didn't say to indemnify them. Let me state
02:17:52 23   that it's my understanding it's against public policy
02:17:56 24   for contracts to agree to indemnify for other -- for
02:18:02 25   another party's sole negligence.
```

## Page 40

```
02:18:03  1       Q. Is there a case that you can refer us to?
02:18:06  2       A. No, I cannot but it's my understanding that it's
02:18:13  3   Peacock's sole negligence and really did not involve any
02:18:17  4   negligence on the part of South Texas Masonry.
02:18:33  5       Q. Is it your position then that even though --
02:18:37  6   strike that.
02:18:38  7          I understand that based on your original letter
02:18:44  8   to Peacock that with regard to the indemnification
02:19:00  9   provision you said the contract language is not valid as
02:19:03 10   set forth in the State of Texas and is not conspicuous.
02:19:10 11   Is it invalid because it's not conspicuous or are you
02:19:14 12   saying two things in there, it's invalid for some legal
02:19:19 13   reason and, in addition, it's not conspicuous?
02:19:23 14       A. I believe that the contract appeared to be overly
02:19:25 15   broad with respect to the indemnity and it was not
02:19:29 16   conspicuous as required.
02:19:31 17       Q. And it should be conspicuous to whom?
02:19:34 18       A. To South Texas Masonry.
02:19:37 19       Q. And why did you feel it wasn't conspicuous in a
02:19:41 20   four page contract?
02:19:42 21       A. It was not set apart by bold type or a different
02:19:47 22   font to make it stand out.
02:19:49 23       Q. Any other reason?
02:19:51 24       A. Not that I recall.
02:20:01 25       Q. Did you have any problems identifying
```

## Page 41

```
02:20:04  1   indemnification provisions?
02:20:06  2       A. No.
02:20:07  3       Q. And there are two. There's paragraph 6.3 and 6.4
02:20:11  4   that relate to indemnification?
02:20:17  5       A. Yes.
02:20:23  6       Q. Leaving the conspicuousness aside, you still feel
02:20:27  7   it's overly broad and would be invalid even if it were
02:20:32  8   conspicuous?
02:20:33  9       A. That is correct.
02:20:33 10       Q. And it's both your position and that of Hartford
02:20:38 11   Lloyd's Insurance Company, correct?
02:20:40 12       A. That is correct.
02:20:44 13       Q. Let me read part of paragraph 6.3. Let me read
02:20:54 14   the whole thing just to be sure that we're not missing
02:20:58 15   anything. It says, "Subcontractor agrees to indemnify,
02:21:05 16   defend and hold harmless the contractor, or owner or
02:21:07 17   subcontractor, their affiliated entities and employees
02:21:10 18   and agents, from and against any and all losses, claims,
02:21:13 19   suits, actions, demands, damages, fines, penalties,
02:21:16 20   costs, including any and all related court costs and
02:21:21 21   attorneys' fees, liabilities or causes of action for
02:21:25 22   bodily injury, death or property damage, including
02:21:26 23   claims or causes of action for bodily injury or death to
02:21:28 24   employees of the subcontractor who may or not be acting
02:21:31 25   in the course and scope of their employment at the time
```

Page 46

```
02:35:04  1  or the other -- or another whether coverage would be
02:35:07  2  denied to Peacock even if it qualified as an additional
02:35:11  3  insured because of the operation of the workers'
02:35:14  4  compensation laws of Texas; is that correct? You have
02:35:17  5  no opinion one way or the other?
02:35:18  6     A. I don't know the answer, so, I don't have an
02:35:25  7  opinion. It would make sense that they would but I
02:35:27  8  can't -- I can't say that. I don't know.
02:35:30  9     Q. Okay. When you say it would make sense that it
02:35:33 10  would, why would you say that?
02:35:34 11     A. Simply because I don't think that Peacock could
02:35:37 12  be entitled to more coverage than the named insured, and
02:35:43 13  if there's no coverage for the named insured, then there
02:35:47 14  would be no coverage for the additional insured but we
02:35:50 15  did not analyze it with respect to that.
02:35:54 16     Q. Is that a standard for analysis, that an
02:36:01 17  additional insured can never have more coverage under a
02:36:05 18  policy than the named insured?
02:36:07 19     A. Yes. If there is no coverage or the named
02:36:12 20  insured has limitations, then the additional insured
02:36:16 21  will also have limitations because the named insured
02:36:21 22  secured the coverage and paid for it.
02:37:04 23     Q. Ms. Kaechler, I'm going to review the documents
02:37:08 24  but for now I'm going to pass you as a witness.
02:37:12 25        MR. LYDE: No questions.
```

Page 47

```
02:37:14  1        MR. BARKER: No questions.
02:37:15  2        MR. CARRERA: Let's take a ten minute break.
02:37:17  3  I think I'm almost done but I want to make sure.
02:51:47  4        (Short recess.)
02:51:48  5     Q. (BY MR. CARRERA) Ms. Kaechler, I want you to
02:51:51  6  look through Bartram Exhibit 1, which is considered the
02:51:56  7  underwriting file on this policy. And there are perhaps
02:52:00  8  a half dozen or more certificates of insurance there.
02:52:03  9     A. Yes.
02:52:04 10     Q. And I tagged some of them, not all of them,
02:52:09 11  wherein the certificate holder is designated as an
02:52:13 12  additional insured. You can see I tagged them in the --
02:52:23 13  paperclipped them up at the top.
02:52:25 14     A. Yes. Here's one that is for the Las Dunas
02:52:31 15  Condominiums. Isn't that the same one?
02:52:34 16     Q. That is correct.
02:52:35 17     A. And this one does not -- in fact, it's the same
02:52:39 18  policy number. Now, this one does not require
02:52:42 19  additional insured status.
02:52:43 20     Q. I understand that but if you look at the ones I
02:52:46 21  paperclipped, there's a bunch of them that do.
02:52:48 22     A. Yes.
02:52:49 23     Q. Is it your position that -- and these are all
02:52:56 24  based on that same form. It's called Acord certificate
02:53:00 25  of liability insurance?
```

Page 48

```
02:53:00  1     A. Uh-huh.
02:53:04  2     Q. Is it your position that these certificates of
02:53:06  3  insurance, even though they -- they are issued to
02:53:11  4  different certificate holders designating them as
02:53:15  5  additional insureds under this policy, that they would
02:53:17  6  be of no force and effect?
02:53:22  7     A. It's our position in the claims that this does
02:53:26  8  not add them as an additional insured.
02:53:32  9     Q. Are you aware of any correspondence that was ever
02:53:36 10  sent by Hartford Lloyd's Insurance Company to either
02:53:43 11  Peacock or to South Texas Masonry that told them that a
02:53:51 12  certificate of insurance that designated a company as an
02:53:57 13  additional insured under the policy we're here on,
02:54:03 14  Bartram Exhibit 5, ever told them those certificates
02:54:07 15  were invalid to confer additional insured status?
02:54:11 16     A. Hartford did not, although they have it on this
02:54:14 17  certificate of insurance. It states it's issued as a
02:54:17 18  matter of information only and confers no rights upon
02:54:21 19  the certificate holder. This certificate does not
02:54:23 20  amend, extend or alter the coverage afforded by the
02:54:26 21  policies below.
02:54:26 22        MR. CARRERA: Let me object to the
02:54:29 23  responsiveness of that last portion of the answer.
02:54:31 24     Q. (BY MR. CARRERA) My question merely is, are you
02:54:33 25  aware of any correspondence that has ever been sent by
```

Page 49

```
02:54:36  1  Hartford Lloyd's Insurance Company to any certificate
02:54:40  2  holder named as an additional insured under this policy
02:54:45  3  Bartram 5 notifying them that despite the certificate
02:54:50  4  that they do not hold additional insured status?
02:54:53  5     A. No, I'm not aware of any.
02:55:17  6     Q. And, likewise, are you aware of any
02:55:22  7  correspondence sent to South Texas Masonry by Hartford
02:55:27  8  Lloyd's Insurance Company telling them at any time this
02:55:29  9  insurance policy was in effect either from December
02:55:34 10  19 -- from December, 2001 to December, 2002 or from
02:55:38 11  December, 2002 to December, 2003 -- that advised South
02:55:43 12  Texas Masonry that the certificates of insurance that
02:55:46 13  were issued naming additional parties as additional
02:55:50 14  insureds were invalid?
02:55:51 15     A. There's nothing that I know of.
02:55:55 16     Q. And, likewise, during the time period December,
02:56:00 17  2001 through December, 2002, are you aware of any
02:56:06 18  correspondence sent by Hartford Lloyd's Insurance
02:56:11 19  Company to Peacock advising Peacock that despite the
02:56:16 20  language of the certificate issued by McQueary Henry
02:56:22 21  Bowles & Troy that they did not qualify as an additional
02:56:26 22  insured to the contracts?
02:56:29 23     A. No. I know of nothing that was sent within that
02:56:30 24  time frame.
02:56:31 25     Q. Now, what is your understanding with regard to
```

### Page 54

```
03:04:49  1    Q. I'm talking about Page 4 and Page 5. Does the
03:05:09  2  policy equate an insured and an additional insured the
03:05:14  3  same?
03:05:16  4    A. Yeah, it could. In some instances, they could be
03:05:21  5  considered the same.
03:05:23  6    Q. And that's why you feel that the additional
03:05:25  7  insured cannot have more coverage than the insured?
03:05:30  8    A. Correct.
03:05:30  9    Q. Such as subpart D here, the workers' compensation
03:05:38 10  exclusions?
03:05:38 11    A. Correct.
03:05:38 12    Q. How about subpart E, employer's liability, which
03:05:42 13  excludes any injury to an employee of the insured?
03:05:45 14    A. Correct.
03:05:45 15    Q. If you'll continue to the next page, just before
03:05:49 16  subparagraph F --
03:05:53 17    A. Okay.
03:05:55 18    Q. -- there's -- the last paragraph -- the last
03:05:59 19  portion of paragraph E, it says, "This exclusion does
03:06:02 20  not apply to liability assumed by the insured under an
03:06:06 21  insured contract." Do you see that?
03:06:07 22    A. True. Yes.
03:06:08 23    Q. What is an insured contract?
03:06:10 24    A. I believe it's defined.
03:06:23 25    Q. I'm looking at Page 11 of 21.
```

### Page 55

```
03:06:30  1    A. Under the definitions on Page 19 of 21, it says,
03:06:36  2  "An insured contract means a contract for a lease of
03:06:41  3  premises and a side track agreement, an easement or
03:06:46  4  license, any obligation as required by ordinance to
03:06:51  5  indemnify a municipality, an elevator maintenance or
03:06:57  6  agreement, that part of any other contract or agreement
03:06:59  7  pertaining to your business, including an
03:07:01  8  indemnification of municipality in connection with work
03:07:05  9  performed for municipality under which you assume the
03:07:08 10  liability of another party to pay for bodily injury or
03:07:13 11  property damage to a third person or organization."
03:07:17 12    Q. Okay. Let's talk about that paragraph F.
03:07:22 13    A. Okay.
03:07:22 14    Q. In fact, they talk about indemnification of a
03:07:28 15  municipality.
03:07:28 16    A. Uh-huh.
03:07:29 17    Q. But it talks about any other contract or
03:07:31 18  agreement in which -- I suppose the assured agrees to
03:07:36 19  indemnify someone for bodily injury?
03:07:39 20    A. Correct. Uh-huh.
03:07:40 21    Q. So, in some instances, at least with regard to
03:07:43 22  the employee exclusion, the general liability policy can
03:07:49 23  provide coverage beyond that which is available to the
03:07:54 24  insured?
03:07:55 25    A. Right.
```

### Page 56

```
03:07:55  1    Q. On Page 11 it talks about the additional
03:08:31  2  insureds.
03:08:31  3    A. Yes.
03:08:41  4    Q. Let me see if I understand this correctly,
03:08:44  5  particularly subpart F and F3. F says additional
03:08:50  6  insureds by contract, agreement or permit. It says,
           7  "Any person or organization with whom you agreed,
           8  because of a written contract or agreement or permit, to
           9  provide insurance such as is afforded under this
          10  business liability insurance coverage form, but only
          11  with respect to your operations, your work or facilities
03:08:53 12  owned or used by you."
03:09:06 13    A. Correct.
03:09:07 14    Q. And then you say, "However, coverage under this
03:09:10 15  provision does not apply to any" -- subpart 3 -- "to any
03:09:15 16  other person or organization shown in the declaration as
03:09:19 17  an additional insured." Let me see if I understand this
03:09:25 18  correctly. The declarations page can show additional
03:09:30 19  insureds?
03:09:30 20    A. Correct.
03:09:31 21    Q. But that's not an additional insured by contract,
03:09:35 22  agreement or permit?
03:09:36 23    A. That is correct, yes.
03:09:38 24    Q. So, there's additional insureds and there's
03:09:44 25  additional insureds, isn't there?
```

### Page 57

```
03:09:45  1    A. (Witness indicated by nodding her head
03:09:45  2  affirmatively.)
03:09:48  3    Q. There are no additional insureds shown in the
03:09:53  4  declarations page of the contract, Exhibit 5, is it?
03:09:57  5    A. Yes.
03:09:59  6    Q. Is that correct?
03:10:00  7    A. There are no additional insureds.
03:10:05  8    Q. Now, clearly, an additional insured who was shown
03:10:10  9  in the declarations page could not have any coverage
03:10:20 10  beyond that of South Texas Masonry?
03:10:22 11    A. Yes, that is true. That is our belief.
03:10:29 12    Q. But an additional insured by contract, agreement
03:10:32 13  or permit could under certain circumstances have more
03:10:37 14  insurance than South Texas Masonry?
03:10:41 15    A. I don't think so.
03:10:42 16    Q. I thought we already said with regard to employee
03:10:45 17  liability?
03:10:46 18    A. Well, with respect to the certain exclusions may
03:10:50 19  not apply and I guess, yes, in that instance, they could
03:10:55 20  have. If it was an insured contract, they could have
03:10:59 21  coverage --
03:11:00 22    Q. Okay.
03:11:01 23    A. -- for that with respect to that.
03:11:22 24    Q. So, when you in your letter said -- your letter
03:11:29 25  of April, 2003 said that Peacock did not qualify as an
```

Page 62

| Time | Line | Text |
|---|---|---|
| 03:19:04 | 1 | Q. Okay. |
| 03:19:05 | 2 | A. -- it was produced for litigation but -- |
| 03:19:09 | 3 | Q. Since McQueary Henry Bowles & Troy is based in |
| 03:19:15 | 4 | San Antonio, is that more likely why the policy would be |
| 03:19:21 | 5 | located in the San Antonio office? |
| 03:19:23 | 6 | A. That I couldn't answer. I don't know. |
| 03:19:26 | 7 | Q. Okay. Thank you very much, ma'am. |
| 03:19:28 | 8 | MR. LYDE: That's it. |
| 03:19:29 | 9 | MR. BARKER: I'm done. |
|  | 10 | (Whereupon at 3:19 p.m. the |
|  | 11 | deposition was concluded.) |

Page 63

```
 4      NANCY KAECHLER
 6   THE STATE OF _____
 7   COUNTY OF _____
 9   Before me, _____, on this day personally
10   appeared NANCY KAECHLER, known to me (or proved to me
11   under oath or through _____) (description of
12   identity card or other document) to be the person whose
13   name is subscribed to the foregoing instrument and
14   acknowledged to me that they executed the same for the
15   purposes and consideration therein expressed.
17   Given under my hand and seal of office this _____ day
18   of _____, _____.
20   NOTARY PUBLIC IN AND FOR
21   THE STATE OF _____
```

Page 64

ERRATA SHEET

| Correction | Page | Line |
|---|---|---|
| | | |

Page 65

CAUSE NO. 2002-11-4371-G

PEACOCK CONSTRUCTION     * 404TH JUDICIAL DISTRICT COURT
COMPANY, INC.            *
Third-Party Plaintiffs   *
                         *
VS.                      *
                         *
MCQUEARY HENRY BOWLES &  *
TROY, LLP, AND SOUTH     *
TEXAS MASONRY, ET AL     *
Third-Party/             *
Cross-Defendants         * CAMERON COUNTY, TEXAS

TAXABLE COSTS:
PAID BY: Victor M. Carrera, Esquire
TBA NUMBER: 00071900
JOB NUMBER: 05-E-75729
REPORTER'S CERTIFICATION
TO THE DEPOSITION OF NANCY KAECHLER
TAKEN ON 3-7-05

I, Edith A. Boggs, Certified Shorthand Reporter in and for the State of Texas, hereby certify that the examination of NANCY KAECHLER was correctly reported in machine shorthand by me at the time and place set forth in said caption and has been transcribed from machine shorthand into typewriting under my supervision in the foregoing transcript and that said transcript contains a true record of the proceedings had at said time and place, after said witness was duly sworn/affirmed by me.

I further certify that I am neither attorney nor counsel for, related to, nor employed by any of the parties to the action in which this testimony was taken. Further I am not a relative or employee of any attorney of record in this cause, nor do I have a financial interest in the action.

I further certify that charges for the preparation of the foregoing completed deposition and any copies of exhibits are $_____, charged to attorney for the Plaintiff.

I further certify that the deposition transcript was delivered on the _____ day of _____, 2005, to _____ for examination and signature and

Client#: 9447      SOUTHTEX

# ACORD. CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YY) 08/30/02

**PRODUCER**
McQuary Henry Bowles Troy SA
16607 Blanco Road
Suite 904
San Antonio, TX 78232

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

**INSURERS AFFORDING COVERAGE**

**INSURED**
South Texas Masonry
Baldemar Salazar
805 E. Business 83
Pharr, TX 78577

INSURER A: Hartford Casualty Insurance Co.
INSURER B:
INSURER C:
INSURER D:
INSURER E:

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE | POLICY EXPIRATION DATE | LIMITS | |
|---|---|---|---|---|---|---|
| A | GENERAL LIABILITY<br>X COMMERCIAL GENERAL LIABILITY<br>☐ CLAIMS MADE ☒ OCCUR | 46SBAWS1014 | 12/01/01 | 12/01/02 | EACH OCCURRENCE<br>FIRE DAMAGE (Any one fire)<br>MED EXP (Any one person)<br>PERSONAL & ADV INJURY<br>GENERAL AGGREGATE<br>PRODUCTS - COMP/OP AGG | $1,000,000<br>$300,000<br>$10,000<br>$1,000,000<br>$2,000,000<br>$2,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER:<br>☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | |
| | AUTOMOBILE LIABILITY<br>☐ ANY AUTO<br>☐ ALL OWNED AUTOS<br>☐ SCHEDULED AUTOS<br>☐ HIRED AUTOS<br>☐ NON-OWNED AUTOS | | | | COMBINED SINGLE LIMIT (Ea accident)<br>BODILY INJURY (Per person)<br>BODILY INJURY (Per accident)<br>PROPERTY DAMAGE (Per accident) | $<br>$<br>$<br>$ |
| | GARAGE LIABILITY<br>☐ ANY AUTO | | | | AUTO ONLY - EA ACCIDENT<br>OTHER THAN EA ACC<br>AUTO ONLY: AGG | $<br>$<br>$ |
| | EXCESS LIABILITY<br>☐ OCCUR ☐ CLAIMS MADE<br>☐ DEDUCTIBLE<br>☐ RETENTION $ | | | | EACH OCCURRENCE<br>AGGREGATE | $<br>$<br>$<br>$<br>$ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY | | | | WC STATU-TORY LIMITS ☐ OTH-ER ☐<br>E.L. EACH ACCIDENT<br>E.L. DISEASE - EA EMPLOYEE<br>E.L. DISEASE - POLICY LIMIT | $<br>$<br>$ |
| | OTHER | | | | | |

**DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/EXCLUSIONS ADDED BY ENDORSEMENT/SPECIAL PROVISIONS**
Re: Las Dunas Condominiums
4212 Gulf Blvd.
South Padre Island, TX

— Kaechler 1
BB 3-7-05

**CERTIFICATE HOLDER**
Peacock Construction Company, Inc.
Attn: Belia Cisneros
P.O. Box 530096
Harlingen, TX 78553

**CANCELLATION**
SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL 10 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES.

**AUTHORIZED REPRESENTATIVE** [signature]

ACORD 25-S (7/97) 1 of 2   #M36221   MRM   © ACORD CORPORATION 1988

SAGIFAX 1/23/02 5:01PM HILB, ROGAL & HAMILTON 9/0/NYO P.1/ "E A PAGE 1

# ACORD. CERTIFICATE OF LIABILITY INSURANCE

DATE(MM/DD/YY) 01/23/02

**PRODUCER**
Hilb, Rogal & Hamilton Company
121 W Pecan
P O Box 3785
McAllen, TX 78502

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

**INSURERS AFFORDING COVERAGE**

**INSURED**
Firecheck Of Texas, Inc.
P O Box 720222
McAllen, TX 78504

INSURER A: Hartford Casualty Ins Co
INSURER B: Highlands Lloyds
INSURER C: Western Heritage Ins. Company
INSURER D: Highlands Underwriters Ins Co
INSURER E:

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|
| A | GENERAL LIABILITY<br>X COMMERCIAL GENERAL LIABILITY<br>☐ CLAIMS MADE  X OCCUR | 44UUNQR8410W | 03/31/01 | 03/31/02 | EACH OCCURRENCE | $1,000,000 |
| | | | | | FIRE DAMAGE (Any one fire) | $300,000 |
| | | | | | MED EXP (Any one person) | $5,000 |
| | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | | | | | GENERAL AGGREGATE | $2,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER:<br>☐ POLICY ☐ PROJECT ☐ LOC | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| B | AUTOMOBILE LIABILITY<br>X ANY AUTO<br>☐ ALL OWNED AUTOS<br>☐ SCHEDULED AUTOS<br>X HIRED AUTOS<br>X NON-OWNED AUTOS | BLA202352 | 03/31/01 | 03/31/02 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | | | | | BODILY INJURY (Per person) | $ |
| | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | GARAGE LIABILITY<br>☐ ANY AUTO | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | | | | OTHER THAN AUTO ONLY  EA ACC / AGG | $ / $ |
| C | EXCESS LIABILITY<br>X OCCUR ☐ CLAIMS MADE | WXS1000102 | 06/15/01 | 03/31/02 | EACH OCCURRENCE | $1,000,000 |
| | | | | | AGGREGATE | $1,000,000 |
| | ☐ DEDUCTIBLE<br>☐ RETENTION $ | | | | | $ / $ / $ |
| D | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY | BWC801156 | 03/31/01 | 03/31/02 | WC STATU-TORY LIMITS / OTHER | |
| | | | | | E.L. EACH ACCIDENT | $500,000 |
| | | | | | E.L. DISEASE - EA EMPLOYEE | $500,000 |
| | | | | | E.L. DISEASE - POLICY LIMIT | $500,000 |
| | OTHER | | | | | |

**DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/EXCLUSIONS ADDED BY ENDORSEMENT/SPECIAL PROVISIONS**
Las Dunas Condominiums
Special broad form general liability endorsement provides additional insured coverage for those required by contract permit or agreement. Ten days notice of cancellation for non-payment of premium applies.

**CERTIFICATE HOLDER** | ADDITIONAL INSURED; INSURER LETTER

Peacock Construction
P O Box 530098
Harlingen, TX 78553

**CANCELLATION**
SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL 30 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES.

**AUTHORIZED REPRESENTATIVE**
C. Don Bowman

ACORD 25-S (7/97) 1 of 2  #11024                MSL    © ACORD CORPORATION 1988


Kaechler 2
DDB 3-7-05