IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

| | | |
|---|---|---|
| PEACOCK CONSTRUCTION CO. | § | CASE NO. CA B-04-111 |
| | § | |
| VERSUS | § | BROWNSVILLE, TEXAS |
| | § | DECEMBER 16, 2004 |
| HARTFORD CASUALTY INS. CO. | § | 1:58 P.M. TO 2:38 P.M. |

MOTION TO REMAND

BEFORE THE HON. FELIX RECIO, UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff(s):          SEE NEXT PAGE

For the Defendant(s):          SEE NEXT PAGE

Interpreter:                   (None present)

Court Recorder:                Rosy D'Venturi

PREPARED BY:

JUDICIAL TRANSCRIBERS OF TEXAS, INC.
P.O. Box 925675
Houston, Texas 77292
(713) 697-4718 (office) ♦ (713) 697-4722 (fax)
www.judicialtranscribers.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**APPEARANCES:**

**For the Plaintiff(s):**                    **RUBEN PEÑA**
                                            **222 W. Harrison**
                                            **Harlingen, Texas 78550**

                                                    **-and-**

                                            **VICTOR CARRERA**
                                            **1 Paseo Del Prado, Bldg. 101**
                                            **Edinburg, Texas 78539**

**For the Defendant(s):**                    **F. EDWARD BARKER**
                                            **555 N. Carancahua**
                                            **Corpus Christ, Texas 78478**

**Also Present:**

**Court Clerk:**                             **Bertha Vasquez**

1       **THE COURT:** All right. For the record, this is

2   Civil Action No. B-04-111. This case is assigned to Judge

3   Tagle and assigned to me, the magistrate's court, for handling

4   prior to trial. Would the parties please make announcements

5   for the record?

6       **MR. CARRERA:** Your Honor, Victor Carrera for

7   Peacock Construction Company, the plaintiff.

8       **MR. PEÑA:** Ruben Peña, as well, Your Honor.

9       **MR. BARKER:** Your Honor, Ed Barker for the

10   defendant. Mr. Trey Martinez, my local counsel, was unable to

11   be here, but he would ordinarily.

12       **THE COURT:** Very well.

13       **MR. CARRERA:** And, I believe, Your Honor, that the

14   parties have agreed that the entire case may be disposed of

15   before the magistrate.

16       **MR. BARKER:** Yes, we have.

17       **THE COURT:** Well, you all want to enter into a 636,

18   is that correct?

19       **MR. BARKER:** I suppose. If a 636 means that we

20   want the entire case disposed of by you, yes, that's fine.

21       **THE COURT:** All right.

22       **MR. CARRERA:** And I believe we may have already

23   filed one.

24       **MR. BARKER:** Well, I think we did. I think that

25   was at the last hearing, Judge, that we all agreed on the

4

1    record.

2            **THE COURT:**  Oh, is that right.  I have not seen

3    that.  That's why I was going to say that maybe we should sign

4    those.

5            **MR. BARKER:**  Oh, I thought it had been signed.

6    And, I know we agreed on the record to --

7            **THE COURT:**  Okay.  Well, there's nothing in the

8    record and nothing in the docket control sheets here that

9    would indicate that that has heard.

10           **MR. CARRERA:**  We'd be happy to file one, Your

11   Honor.

12           **THE COURT:**  Okay.  Let me --

13       **(Conversation off the record)**

14           **THE COURT:**  Very well.  Then, in that case, let us

15   proceed.  I believe that the pending motions before the Court

16   is the motion to remand.  And I understand that this is an

17   amended pleading.  Is that correct?

18           **MR. CARRERA:**  Yes, Your Honor.  The amended

19   pleading merely corrected a typographical error as to the

20   actual date on which, in our position, the improper removal

21   occurred.  I think the original motion said July the 12th, but

22   that actually occurred on July the 11th.  So, that was the

23   purpose of that amended motion to remand was to clarify that.

24   In any event, it is of a non-substantive matter, Your Honor.

25           **THE COURT:**  Okay.  Mr. Carrera, this being your

1    motion, we'll give you the floor.  And I think it might be

2    appropriate if you were to, again, for purposes of the record,

3    to give just a brief synopsis of the history of the case.

4              **MR. CARRERA:**  May it please the Court, Your Honor,

5    this case was originally filed in the 404th Judicial District

6    Court of Cameron County, Texas.  At that point, Peacock was a

7    defendant in that case, and had filed a third party action

8    against Hartford Casualty Insurance Company and others, in

9    that state court proceeding, Your Honor.

10             There was a severance that occurred whereby

11   the claim against Hartford Casualty Insurance Company was

12   severed and made a separate cause of action, again, within the

13   state court system there in Cameron County.

14             Subsequent to that severance and before the

15   removal, Hartford Lloyd's Insurance Company, which had not

16   been sued by Peacock, entered into the state court action

17   through a pleading that said 'we're voluntarily becoming a

18   defendant and we are filing a counterclaim against Peacock',

19   again, within the state court action.

20             That happened, according to the record, on

21   June the 30th of 2004, and it was the next day that Hartford

22   Lloyd's and Hartford Casualty removed this case to federal

23   court.

24             Peacock's position is very simple, Your

25   Honor.  Hartford Lloyd's Insurance Company had never been sued

1    by Peacock, was not a party to that state court action.   By

2    voluntarily appearing in that state court action, they

3    submitted themselves to the jurisdiction of the state court

4    and are waived from attempting to remove the case to federal

5    court.   It's akin to lack of subject matter jurisdiction.

6    It's called lack of removal jurisdiction, Your Honor.

7

8              We have cited case law both from the Fifth

9    Circuit and various district courts that say where a party

10   voluntarily invokes a jurisdiction of a state court that they

11   no longer can remove a case to federal court.   And that is

12   within our motion.   It includes authorities, Your Honor.

13              Indeed, the filing of a voluntary

14   counterclaim as opposed to a compulsory counterclaim has been

15   said numerous times to constitute a waiver of the right to

16   removal.

17              Your Honor, the removal statute strictly is

18   construed against removal.   This is a clear case where waiver

19   has occurred where a non-party voluntarily goes into court,

20   subjects itself to the jurisdiction of a state court, actually

21   seeks affirmative relief from another party in the state court

22   and, therefore, it estopped from removing to federal court.

23   There is no 30-day limit on moving to remand, and that's a

24   choice, because the federal court does not have jurisdiction.

25   The waiver has occurred before the time of the removal.   It's

1    akin to -- it's been held to be akin to lack of subject matter

2    jurisdiction, so there is no time limit, Your Honor.

3            **THE COURT:**  What is your -- did you cite a case in

4    support of that proposition?

5            **MR. CARRERA:**  Which exact proposition, Your Honor?

6            **THE COURT:**  On the 30-day.

7            **MR. CARRERA:**  Your Honor, the 1447(c), it says, if

8    at any time before final judgment it appears the district

9    court lacks subject matter jurisdiction, the case should be

10   remanded.  There's several cases that equate this removal

11   jurisdiction, the subject matter jurisdiction, and we have

12   cited those.

13           **THE COURT:**  Oh, okay.  I see.  Okay.

14           **MR. CARRERA:**  The only defense that I have seen by

15   Hartford Lloyd's Insurance Company is that it should have been

16   the party that was sued by Peacock.  And, therefore, when it

17   comes in, even though it's not a party, and invokes the

18   jurisdiction of the state court, it's really filing a

19   compulsory counterclaim to Peacock's third party action.

20           Well, Your Honor, that would have been an

21   argument for Hartford, Hartford Casualty Insurance Company

22   could have made, but not Hartford Lloyd's Insurance Company.

23   Hartford Lloyd's was not a party.  By coming in there without

24   even having been sued, they waived their right to remove.

25           And, Your Honor, we have, Peacock has now

1  sued or is attempting to sue Hartford Lloyd's Insurance

2  Company in the 404th Judicial District Court.  I personally

3  believe that severance should never have taken place, but that

4  was before I was personally involved in this litigation, Your

5  Honor.

6            I'd like to show the Court live pleadings

7  where we are attempting to do, Your Honor.

8            **THE COURT:**  All right.

9            **MR. CARRERA:**  If I could mark these as Exhibit #1

10  and #2.

11            **THE COURT:**  Any objections?

12            **MR. BARKER:**  No, Your Honor.

13            **MR. CARRERA:**  You have seen these.  It's the motion

14  and the pleadings.

15            **THE COURT:**  Will be admitted without opposition.

16            Mr. Carrera, let me get -- I want to make

17  sure that I understand the factual or the sequence of events

18  from a factual point of view.  The original lawsuit was

19  between the individuals that were hurt or that had died in the

20  accident, when that rebar fell on them at the port.

21            **MR. CARRERA:**  That's correct.  It was a crane

22  collapse (indiscernible).

23            **THE COURT:**  So, you had three individuals or the

24  estate of the individuals suing Peacock, I guess, the

25  subcontractor that was supposed to insure Peacock through

1    their own insurance company. And, therefore, that's how

2    Hartford --

3              MR. CARRERA: Hartford Lloyd's.

4              THE COURT: Well, Hartford Casualty first came into

5    this. Did you bring in -- did Peacock bring in Hartford after

6    they had refused to pay under the insurance agreement?

7              MR. CARRERA: Yes, Hartford Casualty.

8              THE COURT: Hartford Casualty.

9              MR. CARRERA: There's two Hartford's here, and we

10   need to be clear about that.

11             THE COURT: Yes.

12             MR. CARRERA: And my firm represented the original

13   plaintiffs, Your Honor, or some of them, in that original

14   lawsuit that sued Peacock, which was two individuals plus the

15   estate of another individual. Peacock had a subcontract

16   agreement with an entity known as South Texas Masonry.

17             THE COURT: That's right. Okay.

18             MR. CARRERA: And South Texas Masonry was obligated

19   to purchase liability insurance coverage in which Peacock

20   would be an additional insurer to protect Peacock against its

21   own negligence, even if that negligence resulted·in injury to

22   an employee of South Texas Masonry.

23                  Now, these individuals were contract

24   employees of South Texas Masonry. They were actually the

25   employees of a Manpower-type of outfit out of San Antonio.

But Peacock was their contractual employer.  I mean, South Texas Masonry.

South Texas Masonry used an insurance agency called McCray, Henry, Boles and Troy out of San Antonio to obtain a Hartford policy.  The certificate of insurance said that the underwriter was Hartford Casualty Insurance Company.  And that's where the confusion comes in because the actual policy itself was issued by Hartford Lloyd's Insurance Company.

But, the source of the confusion apparently was that a certificate of insurance was issued with Hartford Casualty.

**THE COURT:**  Okay.  So, then Peacock, at some point, brings in Hartford Casualty.

**MR. CARRERA:**  Peacock brought in Hartford Casualty, South Texas Masonry and McCray, Henry, Boles and Troy.

**THE COURT:**  All right.  Now, how is it that Hartford Casualty got severed in that suit?

**MR. CARRERA:**  How is it?  There was, I guess, an understanding between Mr. Barker and Mr. Peña that there was going to be a motion to sever.  And, that was before I got involved.  There was a motion to sever filed that was granted with regard to Peacock's claim against Hartford Casualty Insurance Company.  That claim, Peacock against Hartford Casualty, was made the subject of a separate lawsuit in the

1    404th Judicial District Court.

2    **MR. BARKER:** Your Honor, with the Court's consent,

3    I think I can answer the Court's question.

4    **THE COURT:** All right.

5    **MR. BARKER:** What occurred was that there is, as

6    the Court well knows, in the State of Texas an issue of where

7    you cannot bring insurance issues within the same lawsuit as

8    liability issues, if that's the case. You need to reserve the

9    issues involved in the insurance coverage until a time, in a

10   separate cause, after the liability issue has been determined.

11   And so, Mr. Peña and I both recognized the laws of the State

12   of Texas and severed it out on that basis. But that was the

13   reason to do that, to have the coverage issue set aside.

14   **THE COURT:** All right. Now, is that severance then

15   what gives rise to the notice to remove, because when the

16   severance occurred, is that when the --

17   **MR. CARRERA:** The 30-day window?

18   **THE COURT:** -- the 30-day window came into

19   existence.

20   **MR. CARRERA:** That is correct, Your Honor. And it

21   was within -- that was, I believe, on June the 10th of 2004

22   that the severance order came into effect, Your Honor. Within

23   that window, on June the 30th, Hartford Lloyd's makes an

24   appearance in that severed lawsuit in the 404th Judicial

25   District Court, and says 'we're voluntarily appearing' -- they

1    even used those words -- we're voluntarily appearing and we're

2    filing -- we were a defendant in a counterclaim, saying you

3    sued the wrong defendant and we're coming in here and we're

4    suing you back, Peacock.

5            **THE COURT:**  And it was done within that 30-day

6    window?

7            **MR. CARRERA:**  Within that 30-day window.

8            **THE COURT:**  There's no question in your mind about

9    those dates?

10           **MR. CARRERA:**  There is no question in my mind about

11   those dates.

12           **THE COURT:**  Now, prior to that time, Hartford

13   Lloyd's had not -- because they weren't in the lawsuit -- they

14   didn't participate in any discovery, they didn't participate

15   in anything, is that correct?

16           **MR. CARRERA:**  That's correct.  Or none that I'm

17   aware of, Your Honor.

18           **THE COURT:**  All right.  Okay, go ahead.

19           **MR. CARRERA:**  So, it's within that window with the

20   knowledge that the time to remove has already accrued some 20

21   days earlier, that Hartford Lloyd's appears voluntarily in the

22   state court action and actually files a claim for relief

23   against Peacock.  Peacock has never sued Hartford Lloyd's.

24   Now, Hartford Lloyd's has sued Peacock.  Hartford Lloyd's has

25   sued Peacock in the state district court.  They have invoked

1    the jurisdiction of the state district court.  And they are

2    estopped from removing the case to federal court.

3         **THE COURT:**  When you say they have sued, you're

4    making reference to the compulsory counterclaim.

5         **MR. CARRERA:**  We don't believe that -- well,

6    earlier, Hartford Casualty had filed a counterclaim against

7    Peacock.

8         **THE COURT:**  Okay.

9         **MR. CARRERA:**  Even before the removal date, before

10   June the 10th, I believe.

11        **THE COURT:**  That was Hartford Casualty.

12        **MR. CARRERA:**  Hartford Casualty, Your Honor.

13        **THE COURT:**  Okay.

14        **MR. CARRERA:**  That is a true compulsory

15   counterclaim, Your Honor.  And that would not waive any rights

16   to removal.  It is the fact that Hartford Lloyd's, which has

17   not been sued, comes voluntarily into the state court that

18   calls it a counterclaim, but it's actually a plaintiff because

19   it is suing Peacock.  And they have invoked the jurisdiction

20   of the state district court and nobody moved or attempted to

21   remove the case until the next day.  So, they are estopped

22   from doing that.  There is no removal jurisdiction, and this

23   Court should remand it to the 404th Judicial District Court.

24              And, our position, Your Honor, is that I

25   think the severance was improper because the issues that

1    remain with regard to the insurance agent and South Texas

2    Masonry should all include common issues of fact and law and

3    they all should be part of the same lawsuit, Your Honor.  But

4    they are, of course, Texas corporations and they would not

5    have the right to remove it to federal court.  And that's why

6    we have, are in the process of suing Hartford Lloyd's

7    Insurance Company in the 404th Judicial District Court, Your

8    Honor.

9            **THE COURT:**  All right.  Let me ask you a couple of

10   questions, based on what you've said and the facts that you've

11   put forth to the Court this afternoon.

12           **MR. CARRERA:**  Yes, sir.

13           **THE COURT:**  How do you reconcile that with this

14   Bailey versus FDIC, and then there's a string of cases,

15   Tedford versus Lambert, and one that's out of this

16   jurisdiction of Theiss versus Brownsville Independent School

17   District [sp.ph.], that all seem to stand for the proposition

18   that there has to be, it has to be clear and unequivocal that

19   the waiver has occurred, number one.  But, number two, there

20   has to be some kind of substantial action on the part of, in

21   this case it would be Lloyd's, of participating in the state

22   court action.  That the mere filing of the motions and the

23   counterclaims and the motions for summary judgment and all of

24   those is not sufficient grounds to effectuate a waiver of the

25   removal right.

1    MR. CARRERA:  Very simply, Your Honor.  The mere

2    filing of a compulsory counterclaim would not --

3    THE COURT:  But I believe these cases stand for the

4    proposition that even that type of a motion is not sufficient.

5    That there has to be more, a substantial involvement.

6    MR. CARRERA:  A compulsory counterclaim is not

7    enough, Your Honor.  I agree with you there.  This is not a

8    compulsory counterclaim.  This is an actual attempt by a non-

9    party to come in here, become a party, and sue another party.

10   That is substantial action.  They have chosen the forum, Your

11   Honor.  It's no different than if a plaintiff goes in there,

12   files and sues in state court, and then says, oh, I want to

13   remove it later on.

14   THE COURT:  So, your position is that because it

15   was voluntarily, they had not been sued, that in doing so, by

16   joining they have waived it.

17   MR. CARRERA:  Yes, sir.

18   THE COURT:  Because of the voluntary nature of

19   their actions.

20   MR. CARRERA:  Yes.  I mean, because it's not a

21   compulsory counterclaim.  It is a voluntary counterclaim.  And

22   we have cited many cases, Your Honor, where a non-compulsory

23   counterclaim is considered a voluntary submission of the state

24   court, and that waives the removal right.

25   THE COURT:  Is there any doubt in your mind that

1    Hartford Lloyd's is a necessary party to this case in order to

2    settle it, since they are the insurer in the ultimate process?

3            **MR. CARRERA:**  They are a necessary party.  In fact,

4    Hartford Casualty --

5            **THE COURT:**  Then how else could they get into the

6    case without the filing?  And if the law requires them to file

7    those types of compulsory allegations and so forth, how else

8    would they do it?

9            **MR. CARRERA:**  Well, you know, I don't know why

10   anyone who hasn't been sued would want to get into court, Your

11   Honor.  What should have happened was Hartford Casualty should

12   have said, you've sued the wrong defendant.  Non-suit us.  And

13   that would have happened, Your Honor.  That's not what

14   occurred here.  Hartford voluntarily came in.  Hartford

15   Casualty Insurance Company should not be a party to this

16   lawsuit, plain and simple.  That case should have been

17   dismissed once it was determined that there was an error as to

18   who was the actual underwriter of the policy.  And, that's

19   what we are attempting to do, to sue them, Hartford Lloyd's

20   Insurance Company, in the 404th Judicial District Court and not

21   sue Hartford Casualty.

22           **THE COURT:**  Just so that I make sure that I

23   understand your argument completely.  You're saying that the

24   fact that it was a voluntary joinder, as it were, that the

25   fact that it was voluntary, that fact waives the removal right

1   for Hartford Lloyd's.  Is that correct?

2      **MR. CARRERA:**  The fact that they joined voluntarily

3   and asked the state district court for affirmative relief

4   through the filing of a non-compulsory counterclaim.

5     **(Pause)**

6      **THE COURT:**  Through a non-compulsory.

7      **MR. CARRERA:**  That's correct, Your Honor.  It's a

8   voluntary counterclaim.  If it's even considered a

9   counterclaim.  In all actuality, it s a direct claim.

10     **THE COURT:**  Okay.  All right.  That's your position

11  before the Court?

12     **MR. CARRERA:**  Thank you, Your Honor.

13     **THE COURT:**  All right.  The 636 is in the file, by

14  the way.

15     **MR. BARKER:**  Oh, good.  Thank you.

16     **THE COURT:**  I appreciate that.  Thank you.

17     I believe you have the floor then.

18     **MR. BARKER:**  May it please the Court.

19     **THE COURT:**  Mr. Barker, is that correct?

20     **MR. BARKER:**  Yes, sir.

21     Judge, I have a couple of disagreements with

22  Mr. Carrera, as far as the facts go.  There was some issue,

23  and I'll address these quickly and then I'll move to our

24  original position.  There is some issue as to when the 30 days

25  began to run for the removal.  Mr. Carrera told you twice, I

1    believe, that we had filed in the severed action in the state

2    district court the answer of Hartford Lloyd's, excuse me,

3    Hartford Casualty and that the date after that we had filed,

4    what I considered to be a compulsory counterclaim by Hartford

5    Lloyd's, and then removed it.  So, there wasn't like a long

6    string of time between the addition of Hartford Lloyd's and

7    the removal.  It was like a day.  And I think he and I would

8    agree on that, because he has mentioned that a couple of

9    times.  And is in reality what occurred.

10              The second thing is that he has introduced

11   Exhibits #1 and #2 to the Court, and these are pleadings that

12   he wishes to file in the state district court in the 404th

13   Judicial Court presided over by Judge Limas.  Judge Limas has

14   held in abeyance any rulings on that pending this Court's

15   determination, since this court has all the jurisdiction at

16   this moment.

17              The Court will notice, and I think Mr.

18   Carrera said so a moment ago, that in those pleadings they are

19   withdrawing their claims against Hartford Casualty, which

20   simply bolsters the argument that I have, is that it became

21   really clear through looking at what records I could look at

22   before any filings took place that their complaint of Peacock

23   Construction Company was going to be against the issuer of a

24   policy.  And the issuer of the policy that I had was Hartford

25   Lloyd's.

19

1          The fact that they made the mistake of

2     Hartford Casualty did not mitigate against them coming back

3     and filing against Hartford Lloyd's.  Sooner or later they

4     would have found out about it, and why string them along.

5     Let's be honest, get up front, and just go in and say,

6     Hartford Lloyd's is the policy holder.

7          And I did that with Mr. Peña when he was in

8     charge.  I told Mr. Peña that this was Hartford Lloyd's.  And,

9     you know, I sent him a copy of the policy, and we discussed

10    that.

11         But, this lawsuit was against Hartford

12    Casualty.  And Ruben is one of my dearest friends, and he just

13    simply, I think, was looking at the documents, but he was in

14    the process of working a settlement, and I don't disparage Mr.

15    Peña at all.  He just knew that it was Hartford Lloyd's.

16         So, we have a second thing that I would say

17    is that Mr. Carrera was talking to you about a written

18    agreement or a contractual agreement between Peacock

19    Construction Company and South Texas Masonry that required

20    Peacock to be an additional insured.  And I think that's true,

21    but I do not believe, and I have not seen any contract between

22    South Texas Masonry and Peacock Construction Company, any

23    written contract at all, that sets forth any terms or

24    requirements of the quality or the type of insurance that

25    Peacock Construction was to be covered by.

1    So, our position in this case is that, yes,

2    Peacock Construction Company is an additional insured with

3    South Texas Masonry only as to the quality and the terms of

4    the contract.  They don't get a better position in South Texas

5    Masonry.  They are equivalent with South Texas Masonry.

6    And, indeed, the plaintiffs could not have

7    sued South Texas Masonry because South Texas Masonry were

8    their employers.  And the Worker's Comp bar would prohibit

9    that.  And, within the policy there's language that would

10    exclude any lawsuits being brought by any of the employees of

11    the insured.  If they are an additional insured, that covers

12    Peacock.

13    So, knowing that this was the thrust of the

14    case, and knowing that the issuer was who they were really

15    looking for, we submitted Hartford voluntarily, as Mr. Carrera

16    said, and I think I used the term 'we voluntarily became a

17    defendant' is what he told you on June 30th, 2004.  Filed an

18    answer.  We filed what I considered to be a compulsory

19    counterclaim seeking merely a declaratory judgment.  As the

20    Court asked, we did not participate in any discovery.  We

21    didn't participate in any court hearings.  We didn't

22    participate in anything.  And no affirmative action was taken

23    by us whatsoever in that 24-hours after we filed those

24    pleadings and then removed it here.

25    So, it's purely a defensive action.  And it

1    was taken so that we could bring the entire focus of the case

2    into this court, where it really deserved to be.  Now, that

3    has shown to be the correct action, as I said, by virtue of

4    the filings by Mr. Carrera since then.  He's abandoned

5    Hartford Casualty, and he's told you today that Hartford

6    Lloyd's is a necessary party, and, indeed, is the only focus

7    of this case.

8                   A definition, and I think I've got it in my

9    response, for a compulsory counterclaim is any claim within

10   the jurisdiction of the Court, not subject of a pending

11   action, and that wasn't at that time, which at the time of

12   filing the pleading the pleader, that's us, has against any

13   opposing party, we're asking for a declaratory judgment, if it

14   arises out of the transaction or occurrence as a subject

15   matter of the opposing party's claim, and does not require

16   adjudication in the presence of third parties of whom the

17   Court cannot acquire a jurisdiction.  We fit right in that

18   definition.  So, that's a compulsory counterclaim.

19                  As the Court has noted, Bailey, Miami Herald

20   case and the long line of cases that come out of the Fifth

21   Circuit in this regard, clearly say those are defensive

22   pleadings, they do not waive your right to jurisdiction in

23   this court, and that this Court should retain jurisdiction.

24   And that's, basically, our position.  Thank you, sir.

25                  **THE COURT:**  Thank you.

22

1         **MR. PEÑA:**  May it please the Court, Judge?

2         **THE COURT:**  Yes, sir, please.

3         **MR. PEÑA:**  Since my good or bad name --

4         **MR. BARKER:**  It was a good name.

5         **THE COURT:**  Ruben, you are a good friend of this

6    Court, as well, so there is no disparaging remarks here for

7    you.

8         **MR. PEÑA:**  I didn't take any as such, Your Honor.

9              Just to point out a couple of things, Judge.

10   And, basically, what Mr. Barker has said is correct.  He did

11   call me.  He said, Mr. Peña, you sued the wrong defendant.  He

12   sent me the information.  And, as the Court realizes, this was

13   a multi-faceted lawsuit.  I mean, I am Peacock's personal

14   attorney.  I don't represent any insurance companies.  I don't

15   represent any of the other parties.  I was there trying to

16   make sure that Peacock was going to be protected from the

17   demands that were being made by the original plaintiffs, the

18   deceased families' estates.

19              And when Mr. Barker sent that information to

20   me, we were looking at it and, of course, what he requested

21   that I voluntarily dismiss the casualty company and

22   substitute.  Prior to us doing that, he did it on his own.

23   And when he did ask that the case be severed, of course, he

24   didn't tell me he was also going to remove it.

25              But, the key here, though, is exactly the

1    point that he really made, Judge, and I think it's really

2    worth the Court focusing what Mr. Barker said, what we wanted

3    -- what Hartford wanted to do was have the Court really focus

4    on the issues.  Well, if the Court -- if we really want to do

5    that then we don't have all the parties, because the agent who

6    wrote this insurance policy, who is also a defendant, and

7    would destroy diversity, of course, is not here.  And there is

8    a great disagreement as to what was asked and what was done

9    both between Texas Masonry and the agent, which is Henry

10   Boles, and Hartford.

11            So, in order for this case, really, the facts

12   to be developed and eventually brought forth either to the

13   Court or to a jury, however it goes out, the other party that

14   really needs to be here is going to be the agent.  And,

15   because that would destroy jurisdiction, of course, this case

16   ought to be remanded.

17            And that's the only thing I wanted to --

18            **THE COURT:**  So, is he going to be brought in?

19            **MR. PEÑA:**  He is in the case, Judge.

20            **THE COURT**  But not in this removal.

21            **MR. PEÑA:**  But not in this case.

22            **THE COURT:**  Are you going to bring him into this --

23            **MR. PEÑA:**  Well, if we were to be given -- I'll

24   leave that to Mr. Carrera.  If we would be given leave of

25   Court to do that, we would do that.  But it would be an action

1    or we would be doing, we'd be back in the same boat, because

2    then it would destroy the diversity and we'd be back in state

3    court.  I mean, we would be doing actions that would

4    judicially make no sense, Judge.

5                    And so I think that's what really we're

6    getting to, is both Mr. Carrera's argument and the other

7    argument, which is without the agent we're really never going

8    to get to -- because they're going to be here.  I mean,

9    they're going to be testifying, they're going to be involved

10   in this case because they are a real critical part, an

11   essential part, because Hartford Lloyd's really didn't do

12   anything.  All they did was issue an insurance policy, and

13   that's their whole role.  The central focus is going to be

14   between Peacock, South Texas Masonry and Henry Boles, which is

15   the agent, and who really needs to be involved in this

16   particular case.

17                    **MR. BARKER:**  May I respond, Judge?

18                    **THE COURT:**  Mr. Barker, how do you respond to that?

19   That's a very good point.

20                    **MR. BARKER:**  I respond simply by this.  This is

21   purely -- in this court, is purely a coverage issue.  There is

22   not any factual disputes at all.  The agent is not necessary

23   for being in here for the coverage dispute.  The agent doesn't

24   offer anything for anybody as far as coverage goes.  The only

25   coverage issues are going to be what does the contract say.

1   That's it.  It's a question of law.  That was agreed by Mr.

2   Carrera and I, as I recall it, back when we first came because

3   we set trial for this before the bench, as a bench trial.  I

4   waived jury.  Mr. Carrera waived jury.  We knew that it was

5   going to be a bench trial in March of next year.

6           And the agents are a factual question of, you

7   know, what did you do, why did you do it, did you make a

8   mistake, did you not give the right policy.  That's what the

9   allegations are if you'll look in Exhibits #1 and #2.  There

10  are allegations against the agent for the agent's negligence.

11  The agent's negligence has nothing whatsoever to do with the

12  contract between Peacock and Hartford Lloyd's.  That's

13  coverage.  So, they're not necessary here.  They may be

14  necessary in the state district court, but not here.

15      **(Pause)**

16      **THE COURT:**  Okay.  Anything else?  Mr. Carrera, do

17  you want to add anything else?

18      **MR. CARRERA:**  Just one thing, Your Honor, is that,

19  again, the removal statutes are strictly construed against

20  removal, in that even though it is called a counterclaim what

21  Hartford Lloyd's filed is a claim for declaratory judgment,

22  which is an affirmative attempt to invoke the jurisdiction of

23  the state district court when it was not a party, and they

24  have waived the removal rights.

25      **THE COURT:**  Ruben, would you -- Mr. Peña, excuse me

1    -- would you -- frankly, I had not even thought about the

2    agent coming in to this particular action.  And I want to make

3    sure that I fully understand what you're telling me.

4            **MR. PEÑA:**  Yes, sir.

5            **THE COURT:**  Are you saying that he is a necessary

6    party and that if we proceed in federal court that you're

7    actually going to join him as a defendant with Lloyd's,

8    Hartford Lloyd's.  Is that what you're saying?

9            **MR. PEÑA:**  It would be my intention, Judge.

10   However, Mr. Carrera is lead counsel.  I am assisting him in

11   this case because, quite, frankly, the way this thing has

12   evolved, because -- and I assume there's no problem in

13   mentioning it here, Judge -- is because the settlement has

14   been arrived at between the original plaintiffs, Peacock, and

15   the various insureds that did settle, then those -- Peacock

16   was assigned or rather Peacock assigned its interest over to

17   the plaintiffs, and so they are proceeding.  But I am still

18   very much involved in the proceeding.  It would be my

19   intention to do that, but, you know, I would defer to Mr.

20   Carrera because he --

21           **THE COURT:**  Mr. Carrera, what is your position?

22           **MR. CARRERA:**  Well, we intended to do that in the

23   state district court, Your Honor, with the pleadings that are

24   properly before the Court as evidence, Your Honor.

25                   And, our position is that --

1      **THE COURT:**  Is this what this represents?

2      **MR. CARRERA:**  Yes, that both Hartford Lloyd's,

3   McCray, Henry, Boles and Troy, and South Texas Masonry,

4   because of common questions of fact, and perhaps common

5   questions of law, should all proceed in the same proceeding.

6   If we were to join them here in federal court, as Mr. Peña

7   says, that would destroy diversity.

8           So, our position is, for judicial economy, as

9   well as, you know, the, I guess, the benefit to all the

10  parties, this case should be remanded, and then perhaps the

11  cause of action against casualty can be non-suited and we can

12  proceed against Hartford Lloyd's and the other defendants.

13     **MR. BARKER:**  Your Honor, I think this is a smoke

14  screen, and I'd say that with all due respect, and both of

15  these gentlemen are friends of mine and I'm not trying to

16  disparage either one.

17          What I see is that I look at the assignments

18  that Mr. Carrera has provided me, and I have since provided a

19  report by electronic filing in the form of exhibits to a

20  supplemental motion for supplement response.  All of the

21  assignments talk about are assignments of Peacock's case

22  against Hartford Lloyd's.  His first assignments were against

23  Hartford Casualty.  Now, in September of this year, when he

24  finds that Hartford Lloyd's is the actual issuer who he

25  intended to sue the first place, he goes out and gets

1    reassignments or amendments, or as he calls them, addendums to

2    assignments.  And they are all against Hartford Lloyd's.

3    There's not a single mention in any of these assignments of

4    any claim against any agent.

5                    Now, I remind the Court that this is purely a

6    coverage issue.  There are no real fact questions in here.

7    It's simply a construing of the contract.  I think that the

8    facts are all going to be pretty much agreed to in that there

9    were two employees of South Texas Masonry that were injured on

10   the job that Peacock Construction Company ran.  Now, one was

11   killed and one was severely injured.  And the question then

12   comes in, as what insurance coverage is it.  That's all there

13   is.

14                    So, the fact that the agent isn't here is

15   really immaterial for any issues that are before this Court.

16           THE COURT:  Did they have -- so, you're relying on

17   the four corners of the contract as it were, and any parol

18   evidence would be excluded because the contract is clear and

19   unambiguous.  Is that the position?

20           MR. BARKER:  I think that's exactly correct.

21           THE COURT:  Is that Rule 73 or 72?

22           MR. BARKER:  I'd have to look it up, Judge.  I'd be

23   speculating if I were to tell you yes or no.

24                    But I believe that that's exactly correct.

25   The insurance coverage is construed from the four corners of

1    the contract, if I'm recalling coverage law in Texas.  And

2    that the only parol evidence that would come in, if there were

3    any, would be whether or not it was in someway fraudulently

4    obtained.  And I don't know of any claim of that whatsoever.

5         **THE COURT:**  Okay.  Here's what I'd like to do.  I'd

6    like to take some time to look at these pleadings that you've

7    filed with the 404th, and then issue an opinion on this as

8    quickly as possible.  So, I'm going to hold off on making any

9    rulings today.  I was quite prepared to do that until this

10   issue came up.

11        So, Mr. Peña, you've thrown a wrench into

12   this, and that's good.  That's good.

13        **MR. PEÑA:**  I certainly didn't intend to, Judge.

14        **THE COURT:**  No, but I appreciate you doing that

15   because this way we can address all of the issues and make

16   sure we're covering everything.

17        **MR. PEÑA:**  And, in fairness to all the parties

18   here, Judge, and what Mr. Barker has said is really correct in

19   regards to his client alone, the four corners.

20        **THE COURT:**  Right.

21        **MR. PEÑA:**  However, the intentions, which would

22   repeat, South Texas Masonry and the agent are all intertwined

23   with what ended up being issues, because I really don't think

24   we're going to have --

25        **THE COURT:**  But, those questions would survive in

1    the suit that you have pending against those other anyway.

2              **MR. PEÑA:**  In the 404th, Judge.  Yeah, they could

3    all be resolved over there.

4              **THE COURT:**  Those will survive.  If we construe

5    this as being merely a coverage question, then I see what your

6    argument is.  But, I think that even if you didn't address

7    those in this case, those are still alive in the other one.

8              **MR. CARRERA:**  And, Your Honor, I think we would

9    have to proceed with discovery along parallel tracks.

10             **MR. BARKER:**  I don't see how we proceed with

11   discovery at all, other than if counsel wishes to look at

12   Hartford Lloyd's correspondence files, perhaps with the agent,

13   that's fine.  See what, in fact, was ordered.  Or whether

14   there was anything else.  But, I don't see that there is any

15   discovery in this case at all.  I think what we really have is

16   just a question of construction after we look at the facts.

17                  Now, the claims of negligence that they have

18   over in the 404th survive over there.  There's nothing to keep

19   them from going forward if they -- that the South Texas agents

20   have their own insurance coverage, they have their own E&O

21   policies.  They've got all kinds of those things.  And they

22   can go forward and do all of that.  They don't need them here

23   for the coverage issue.

24             **THE COURT:**  Okay.  Has there been any discussion --

25   this is an aside.  But, has there been any discussion in terms

31

1    of mediation on this issue?

2             **MR. BARKER:**  Not yet, Judge.  I'm sure that if that

3    comes down to a point, that I wouldn't have any problem with

4    it.

5             **MR. CARRERA:**  We'd have no problem with that, Your

6    Honor.

7                      I did want to clarify one thing that Mr.

8    Barker said.  He said the assignment was only with regard to

9    -- Peacock's assignment was only with regard to the claim

10   against Hartford Casualty.  And then it was amended to

11   Hartford Lloyd's.  That assignment was with regard to claims

12   not only against Hartford Casualty, but against McCray, Henry,

13   Boles and Troy and South Texas Masonry.

14            **THE COURT:**  Oh, okay.  All right.

15            **MR. CARRERA:**  There was one document in there.  And

16   there was also, there was three individuals that were injured,

17   not two.  But that's not real --

18            **MR. BARKER:**  Well, you see, I wasn't in the

19   underlying case, so that's correct.

20            **THE COURT:**  All right.

21            **MR. BARKER:**  Well, one of the things that I'm going

22   to tell the Court in this case, however, I think the Court

23   could tell us, the three lawyers admire and respect each

24   other, so it's not a cat fight.  That's worthwhile.

25            **THE COURT:**  Okay.

1          MR. CARRERA:   (Too far away from microphone)

2     (Laughter)

3          THE COURT:  All right, gentlemen.  Well, I

4     appreciate your presentations very much, and it's very helpful

5     to the Court.  And we will issue an order on this probably in

6     January.

7          MR. BARKER:  That's fine, Judge.

8          THE COURT:  We're real close to the holidays.

9          MR. CARRERA:  May I be excused, Your Honor?

10          THE COURT:  Yes, sir.  Thank you very much.

11          MR. PEÑA:  Thank you, Your Honor.

12          THE COURT:  We'll be in recess.

13     (These proceedings concluded at 2:38 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25                    *  *  *  *  *