IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| PEACOCK CONSTRUCTION COMPANY, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. B-04-111 |
| | ) | |
| HARTFORD LLOYDS INSURANCE COMPANY, | ) | |
| Defendant. | ) | |

CAUSE NO. 2002-11-4371-G

| | | |
|---|---|---|
| PEACOCK CONSTRUCTION COMPANY, INC., ET AL., | ) | IN THE DISTRICT COURT |
| Third-Party Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CAMERON COUNTY, TEXAS |
| | ) | |
| McQUEARY HENRY BOWLES & TROY, L.L.P., AND SOUTH TEXAS MASONRY, ET AL., | ) | |
| Third-Party/Cross Defendants. | ) | 404TH JUDICIAL DISTRICT |

## <u>AFFIDAVIT OF MICHAEL SEAN QUINN</u>

**THE STATE OF TEXAS**      §
                            §
**COUNTY OF TRAVIS**        §

Before me, the undersigned authority, personally appeared Michael Sean Quinn, who is personally known to me, and first duly sworn according to law upon his oath deposed and said:

"My name is Michael Sean Quinn. I am 60 years of age, of sound mind, have never been convicted of a felony or any crime of moral turpitude, and am capable of making this affidavit.

*SOME HISTORY.* I had a deposition in this case on March 11, 2005. The deposition was taken, for the most part, by Victor M. Carrera, who represents Peacock Construction Company in the above captioned case. On its behalf, he moved for summary judgment on or about April 18, 2005. I am cited several times in Peacock's Motion for Summary Judgment or in the Brief in support thereof (the "Motion"). Attached to this Motion is an affidavit and the exhibits attached thereto which include my Expert Report and my then current resume.

*RESUME.* My resume has grown slightly since the time of the deposition. For a number of years, I have prepared the resume myself, with the assistance of secretaries. Every once in a while, I find dates, page numbers, &c. which are mistaken. There may still be a few such mistakes here and there in the relatively current resumes. They do not, however, contain any serious errors with regard to substance. At least there are none that I am aware of. (There may be an omission here or there which I cannot remember, but there aren't too many of those either, except for early testimony as to legal fees.) See Exhibit A.

*INTRODUCTION.* Virtually every substantive reference to me in Peacock's motion is erroneous in some way or other. These distortions are quite serious. One of them is not just erroneous and distorted. It is laughable. I shall take that one first.

1. *"For"* & *"With."* In my Expert Report, which Peacock has designated Exhibit 1.A to my deposition, I describe the "Subcontract Agreement" between Peacock and South Texas Masonry ("STM"). Part of my description pertains to Article 6, which is entitled "Insurance." Peacock has taken the position that Art. 6.1 and Art. 1.1 require STM to purchase liability insurance which would make Peacock an additional insured under the policy for virtually all types of coverage therein. I want to point out that this

- 2 -

simply isn't true. The language I use is to say that it is not required in the agreement that STM buy insurance *for* Peacock. The Motion appears to acknowledge that this assertion may be true but that does not entail that STM did not have an obligation to purchase insurance *with* Peacock, i.e. the Motion contends that STM was obligated to buy an insurance policy for itself in which Peacock would be an additional insured, and hence that STM was obligated to buy insurance for itself *with* Peacock.

The truth is, of course, that if *A* buys insurance for itself which must include someone else, *B*, as additional named insured, the policy of insurance will probably cost more. This is a factual pattern with which I have substantial experience. If *A* has to pay for it, then *A* has (in part) bought insurance *for B*. It is also true, of course, that they will be insured *with* one another, and that the coverage will run not only *to A* but also *to B*. The running of the policy, as it were, may be different because of other insurance clauses. It is not uncommon for the policy to be primary *for A* but excess *to, for,* or *with B*. The prepositional distinction which Peacock invents in its Motion is silly, sophistical, and – from the point of view of logic, language, and sound reason – shameful. *In* arguing for its alleged conclusion *in* the way it did, Peacock should be overcome *with* embarrassment, and these propositions need to be said *to* it. Hence my remarks.

2. *Peacock–Owner Contract.* Peacock appears to contend that its contract with the Owner of the property somehow contractually requires STM to buy insurance for Peacock of the sort Peacock envisions, and *for* which it argues, *to* which it aspires, and *toward* which its "reasoning" leads not at all. This language is to be found in Article 11 of Exhibit D to the Affidavit of Peacock, which is attached to the Motion. Nothing in Art. 11 entails, implies, suggests and/or even hints at the conclusion with which and for which Peacock has such undisciplined passion. Moreover, Art. 11 says nothing I have

- 3 -

seen about the obligations of subcontractors running to the contractor. It wouldn't bind them even if it did, of course, since it is a contract between the Contractor and the Owner. (Also, I have seen no evidence which suggests, by the way, that Ex. D was physically attached to the Subcontract.)

3. *Subcontract's Indemnity Clause.* The indemnity clause in the Subcontract is to be found in Art. 6, which is entitled "Insurance." Interestingly, in most half-way clear contracts, the indemnification sections bear their own title. This is true, for example, in the Contract between Peacock and Owner. It is to be found in Art. 3.18, which is entitled "Indemnification." Thus, there is a fundamental sense in which the way the indemnification clause is allocated in the Subcontract makes its position less than clear.

Thus, in this sense, the location of the physical language of the indemnify clause is inconspicuous. There is no customary, widely-used title. The contract is so short, however, that it is hard (at least for me) to describe any word or words, including sentences, which are part of it as inconspicuous. The contract is only four pages long. Hence, even though there is no customary title, it is not difficult, at least for some one like me who has seen many, many similar contracts over many years, to find the physical configuration which constitutes language. It does not follow, however, from the fact that the physical language and/or physical words are findable, that their meaning is easily determined, that the words are clear, that the ideas or propositions expressed by the words are conspicuous. (I made this distinction clearly in my deposition, although Peacock presents me as having asserted only that the physical language is not inconspicuous. See Michael Sean Quinn Deposition at 102.16-17 and 109.13-20. The motion is a severe distortion of what I actually said.)

One thing is perfectly clear about the indemnity clause in the Subcontract, however. There is nothing in that clause that requires that STM purchase liability insurance to cover whatever indemnify obligations the contract has created.

4. *Hartford Policy and Indemnity.* Insofar as the underlying accident is concerned, the Hartford policy insures STM by indicating that it "will pay on behalf of [STM] those sums which it becomes legally obligated to pay as damages because of bodily injury ... to which insurance applies. Hartford is only to liability for bodily injuries (including death) caused by accidents. Expected or intended injuries are excluded. Also excluded is liability for bodily injury where the liability resorts from contractual liability:

> This insurance does not apply to *bodily injury* for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. [§B.1.b.(1).]

So far, this exclusion applies to the indemnify agreements. There are, however, exceptions to this exclusion. Only one of them applies in this circumstance as Peacock itself recognizes. That exception is to be found in the following language:

> This exclusion does not apply to liability for damages because of ... *bodily injury* ... assumed in a contract or agreement that is an *insured contract*. [§B.1.b.(b).]

The exception to the exclusion applies only, however, if -- and only if -- it is justified by the meaning of the phrase *insured contract* given in the policy. The phrase *insured contract* contained in §G.10.f. of the applicable language is as follows: The phrase

> *Insured contract* means that part of any other contract agreement pertaining to your business ... under which you assume the liability of another party to pay for *bodily injury* ... to a third person or organization.

Notice that the word *assumption* occurs in the exclusion, while the word *assume* appears in the definition used in the exception. Thus, they are related.

When does $A$ <u>assume</u> the liability of $B$ running to $C$?  It does not happen when $A$ agrees to pay $B$ if (1) $B$ is found liable to $C$ <u>and</u> (2) $B$ pays $C$.  That is the classic indemnity agreement.  Instead, $A$ assumes the liability of $B$ to $C$ if (1) $A$ agrees to make payment on behalf of $B$ to $C$ if (1) $B$ is found (or otherwise determined probably) to be liable to $C$.  That is exactly what is to be found in the insuring agreement of the policy itself.  It is a *pay-on-behalf-of* policy.  However, that is <u>not</u> what is found in the indemnity agreement running from STM to Peacock which is to be found in the Subcontract.  Hence, the STM→Peacock indemnity promise found in the Subcontract is <u>not</u> included within the definition of *insured contract*, and so it is <u>not</u> to be found within the exception to the exclusion.  (I tried to explain this in my deposition, but Peacock didn't want to hear it and didn't ask me about it.)

    5.  *Art. 6.3: Its Meaning.*  Art. 6.3 is an obscure prose passage, and it is made even more so by the absence of a right-handed parenthesis to match the left-handed parenthesis which is found in its Line #5.  The best reading I can sort out of this long and confusing passage is as follows:

> Subcontractor agrees to indemnify ... Contractor ... from and against any and all ... liabilities or causes of action for bodily injury [or] death ... which occurs in connection with or involves <u>in any manner</u> [the] subcontractor ... or [the] subcontractor's ... employees' ... performance of work or service under this contract.  [Also included in the indemnity agreement are the acts and omissions of the indemnitee which] ... are caused in whole or in part (or are alleged to be [either] caused in whole or in part) by any negligence on the part of the Contractor.  [Underlining added.]

Obviously, this indemnity agreement applies <u>only when</u> there is an injury or death <u>connected</u> to the performance of the <u>subcontractor's actual</u> and explicitly assigned, agreed to, and promised job or <u>work</u> under the Subcontract.  The work of the subcontractor is set forth in Article 2.1 of the subcontract.  That article is entitled "The

Work," and it defines work required by the underlying contract for **masonry** and **stucco**. Nothing else is mentioned. In any case, the indemnity agreement applies only with respect to masonry and stucco labors. The other significant portion of Art. 6.3 is to be found in the last few lines of it. They have been quoted above. It is perfectly obvious that STM is not indemnifying Peacock for liabilities Peacock may have independent of and connected with either STM's work or Peacock's negligence. Curiously, in Art. 6.3, the indemnification is said to apply whether or not "any negligence" on the part of Peacock is involved or alleged.

6. *Art. 6.3: "Express Negligence Rule*." Fairly clearly, the indemnity language to be found in Art. 6.3 does not conform to Texas law. As a matter of linguistic fact, it does not equate, identify, restrict, or even extend indemnity to the negligence of Peacock. This follows from the use of the phrase "in any manner."

7. *Art. 6.4: Its Meaning*: Art. 6.4 reads in its entirety as follows:

> It is the specific intent of the parties to this contract that the subcontractor is agreeing to indemnify the Contractor for the effects of the General Contractor's[,] its agents', and [its] employees' own negligence or other wrongful conduct. [Underlining added.]

Thus, when simplified, Art. 6.4 reads as follows:

> The subcontractor indemnifies the contractor for negligence or other wrongful conduct for which the Contractor might be liable.

(Since the "translation" is mine, the underlining is not added to someone else's language.) Obviously, an entity can be liable not only for its own negligence but for the negligence of its employees, etc.

8. *Art. 6.4: "Express Negligence Rule."* Art. 6.4 may violate the Texas rule for the validity of indemnity agreements. Literal linguistic analysis or unraveling of Art. 6.4 demonstrates this. The problem is mostly to be found in the phrase "or other wrongful

conduct." (a) The most significant word here is "or." When two propositions are linked together by the word "or," if either one of them is true, while the other one is false, the compound sentence is true. Thus, Art. 6.4 would be satisfied when the Subcontractor provides the Contractor with indemnification for conduct other than negligent conduct. This means, of course, that the indemnity provision of Art. 6.4 is much broader than negligence. Indeed, it is satisfied when there is <u>no negligence</u> on the part of the Contractor, i.e. the indemnitee. In exactly that case, the indemnitee would be entitled to indemnification from the indemnitor even though there was <u>no negligence</u> on its part. It would also apply when the indemnitee was found both to be negligent and to be liable for <u>reasons other than the fact that it was negligent</u>. When both of those apply, there would be indemnification rights even though the right of indemnification was not based upon negligence but upon something conjoined to negligence. (b) There is another problem here. Nothing in Art. 6.4, taken by itself, requires that the indemnitor be negligent or liable for any reason whatsoever. In fact, the indemnity language of Art. 6.4 is universal and across-the-board. It is not even, by itself, restricted to the project governed by the contract.

The extensions of indemnity beyond the indemnitee's negligence does not figure in the *res judicata* reasoning of the Texas Supreme Court, for example, in *Atlantic Richfield* and the vagueness of the extension is obviously questionable on the same or analogous grounds to those which led to the "Express [mention of] Negligence Rule." Moreover, not even any negligence <u>at all</u> is required under Art. 6.3 and 6.4. As a linguistic rule the just mentioned rule is violated.

9. *Subcontractor's "Work."* It seems to be perfectly clear that the "Work" of STM in the Peacock Construction project was the installation of **masonry** and **stucco**. If

something didn't occur in connection with that, then it did not occur in connection with the work of STM. It is my understanding that what happened to cause the death and bodily injury in the underlying case was for two reasons not connected to STM's work. First, Peacock decided it needed to move rebar for its own reasons, and the moving was not at the request of STM or part of its immediate work-related needs. Second, those who were injured were finished with STM's actual work (i.e., the work mentioned in the contract) and were leaving the premises. They may have still been employed by STM, since they hadn't left the premises, but they were not actually doing STM's work at the time, at least as that word is defined in the relevant agreements. (Of course, they may have been entitled to worker's compensation under the circumstances, since they were at the job and had not left the job. Nevertheless, it is the contract which matters here and not employment customs.)

10. *Peacock's "Additional Insured" Status.* Peacock tries to suggest that Hartford has made a judicial admission to the effect that Peacock was for all purposes an additional insured. The quoted language in the motion does not support this view. Not even close! It is true that Peacock was probably an additional insured for some narrow purposes, on some occasions, but it certainly was not an additional insured across the board. An entity is an additional insured across the board in a policy only if it has the same coverage as the original named insured.

11. The relevant additional insured language of the policy is to be found in §C, which is entitled "Who Is An Insured[?]." Within this section, the precise language is to be found in §C.2.a. It reads, in relevant part, as follows:

> Each of the following is also an insured: any person or organization with whom you agreed, because of a written contract or agreement … to provide insurance such as is provided under this Business Liability Section Form, but only with respect to your operations [or] "your work" ….

Thus, an entity with whom STM contracts to provide insurance may receive insurance under the Hartford policy only with respect to STM's *operations* and only with respect to *STM's work.*

The phrase "your work" is defined in the policy as follows, in relevant part:

"Your work" means ... work or operations <u>performed by you</u> or on your behalf. [§G.22.a.. Underling added].

Thus, Peacock can be an additional insured under the Hartford policy only if its liability arises with respect to STM's operations or with respect to STM's work.

Of course, that is exactly what did not happen here. STM's <u>operations</u> had <u>concluded</u> for the day. No <u>work</u> was being <u>performed</u>. Its employees were leaving the premises. They were not involved in installing stucco or masonry. The using of the crane was not undertaken with respect to STM's work. It was undertaken with respect to the needs of Peacock, as I understand it.

*CONCLUSION.* Both my Expert Report and my deposition were presented to the Court. My views were seriously distorted by Peacock. I hope this affidavit straightens the matter out somewhat. Some of the points herein are independent of one another. They are not interdependent. Thus, it is possible to accept only one as decisive and leading to appropriate final judgment or dismissal. It should be pointed out, that a number of Peacock's citations to my deposition are actually to exhibits to the deposition, and not to the text of the deposition. This affidavit focuses on distortions with respect to the text of the deposition. It does not comment on exhibits to the deposition."

Further Affiant saith not.



Michael Sean Quinn

THE STATE OF TEXAS      §
                        §
COUNTY OF TRAVIS        §

SUBSCRIBED and SWORN TO before me on this the 5th day of May, 2005.



Notary Public, State of Texas

MICHAELLE A. PETERS
Notary Public, State of Texas
My Commission Expires
March 11, 2009

**Advertisement\***
(*Maybe, sometimes required by Rule7.05(b))

# Michael Sean Quinn
## The Law Firm of Michael Sean Quinn
2630 Exposition Blvd., Suite G-10
Austin, Texas  78703
**Telephone (512) 542-9243**
**Cell Phone: (512) 656-0503**
**Fax (512) 542-9249**
**E-Mail:  mquinn@msquinnlaw.com**

*Home Address:*
*3805 Kennelwood, Austin, Texas 78703-2010   Telephone: (512) 474-1616*

**PRINCIPAL PRACTICE & WORK AREAS:  An Unelaborated Outline. (Not certified by Texas Board of Legal Specialization. (Then again, that Board does not certify in all areas, e.g., insurance law, legal malpractice, breach of fiduciary duties by lawyers, and others.))**

<u>Insurance Law and Litigation:</u> expert witness in insurance cases of a variety of sorts, including bad faith; litigation and negotiation of insurance coverage disputes, litigation of insurance bad faith claims, coverage opinion work, bad faith counseling, reinsurance litigation and arbitration.  (Historical and current)

<u>Litigation:</u>  mass tort property damage product liability cases (subrogation), negligent inspection, employer-employee problems arising out of termination, such as misappropriate of trade secrets, violations of covenants not to compete, and wrongful discharge, business entity dissolution and attendant torts; general tort and business.  (Mostly historical)

<u>Law of Lawyering:</u> expert witness on lawyer conduct, counseling and litigation:  attorney malpractice (broadly conceived), attorney grievances, problems in legal ethics (e.g., conflicts), expert witness on legal fees.  (Current and mostly more recent history)

## EXPERIENCE: EMPLOYMENT

### After Law School:  Law Firms

| | |
|---|---|
| **THE LAW FIRM OF MICHAEL SEAN QUINN**<br>2630 Exposition Blvd., Suite G-10<br>Austin, Texas 78703 | 06/2004 |
| **JORDAN, QUINN & CARMONA**<br>1221 S. MoPac Expwy., Suite 300<br>Austin, Texas 78746 | 09/2002-05/2004 |
| **BELL, TURNEY, COOGAN & RICHARDS, L.L.P., OF COUNSEL ("EWYK"+)**<br>823 Congress Ave., Suite 706<br>Austin, Texas 78701<br>(+ Unrelated to Milton C. Regan Jr.'s 2004 book with the same title.) | 2001-2002 |
| **SHEINFELD, MALEY & KAY,** Shareholder<br>Of Counsel | 1999-2001<br>1997-1998 |
| **ZELLE & LARSON,** Partner<br>3000 One Main Place<br>1201 Main Street<br>Dallas, Texas  75202 | 1988-1995 |




| | | |
|---|---|---|
| ROBINS, ZELLE, LARSON & KAPLAN, Partner | | 1986-1988 |
| Associate | 1983-1986 | |

2700 Nations Bank Plaza
901 Main Street
Dallas, Texas 75202

| | |
|---|---|
| MEYERCORD, STEPHENS & BARTHOLOW (Dallas) | 1981-1983 |
| DURANT, MANKOFF, DAVIS, WOLENS & FRANCIS (Dallas) | 1980-1981 |

## After Law School:  Academic Appointments

| | | |
|---|---|---|
| Adjunct Lecturer | Law School<br>University of Houston<br>Course:  Life and Health Insurance | Spring 2003<br>Spring 2004 |
| Adjunct Lecturer | Department of Advertising<br>School of Communications<br>University of Texas at Austin<br>Course:  Advertising and Society | 2002 |
| Visiting Professor<br>(Part Time) | University of Texas--Law School<br>Austin, Texas  78705-3299<br>Professional Malpractice--Legal (Fall 1999)<br>Insurance Law (Spring 1999)<br>Contemporary Contract Theories (Spring 2001)<br>Texas Pretrial Procedure (Fall 2001)<br>Texas Trial and Appellate Procedure (Spring 2002) | 1998-2001 |
| Adjunct Faculty | St. Edward's University<br>Executive M.B.A. Program<br>Austin, Texas  78704<br>Business Law and Ethics (Spring 2001, Fall 2001)<br>Insurance and Risk Management (Summer 2001) | 2001 |
| Visiting Professor<br>(Full Time) | University of Texas--Law School<br>Austin, Texas 78705-3299<br>Insurance; Texas Pre-Trial Procedure;<br>Professional Responsibility (Legal Ethics);<br>Professional Malpractice | 1995-1997 |
| Adjunct Lecturer | Southern Methodist University--Law School<br>Dallas, Texas 75275<br>Texas Pretrial Procedure; Texas Trial and Appellate<br>Procedure; Jurisprudence; Insurance Law | 1984-1985<br>1990-1993 |
| Adjunct Lecturer | Southern Methodist University<br>Department of Philosophy<br>Dallas, Texas  75275<br>Jurisprudence (Philosophy of Law) | 1981-1991 |

## During Law School

I clerked at five law firms including Durant, Mankoff (Dallas), Akin, Gump (Dallas), Vinson & Elkins (Houston), and Quinn & Peebles (Kansas City).

**Before Law School**

| | | |
|---|---|---|
| Assistant Professor | Southern Methodist University Department of Philosophy Dallas, Texas 75275 | 1970-1977 |

I have also taught at the University of Texas--Dallas, the University of Maryland, Chatham College, and the University of Pittsburgh. In addition, I held the usual assortment of youthful jobs: waiter, store clerk, camp counselor, hod carrier, library assistant, typist, and the like.

# EXPERIENCE: TRIAL WORK

**1997-** : Insurance coverage; insurance bad faith, litigation and arbitration of insurance and reinsurance disputes; general litigation.
**1990-1995:** Insurance bad faith, insurance coverage, and murder cases.
**1985-1990:** Product liability and negligent inspection cases.
**1980-1990:** Employment law, business litigation, and divorce.

# EXPERIENCE: APPELLATE WORK

The appellate work I have handled involves a variety of issues in state and federal appellate courts, including the Texas Supreme Court and the Fifth Federal Circuit. Some of the issues involve insurance, insurance bad faith, criminal matters, family law matters, the conduct of lawyer's covenant not to compete and related matters, and a few other assorted issues.

# EXPERIENCE: EXPERT WITNESS ENGAGEMENTS: SEE APPENDIX ONE

Most of my expert witness testimony has been in the area of insurance* and the conduct of lawyers. Occasionally, I have testified on the value of attorneys' fees. *Adjuster License: All Lines: Texas #1305972.

# LAW AND LAW RELATED PUBLICATIONS: SEE APPENDIX TWO

# EDUCATION: COMPLETED

UNIVERSITY OF MISSOURI AT KANSAS CITY SCHOOL OF LAW, *J.D. 1980*
(started Law School at Southern Methodist University, Dallas, Texas)

UNIVERSITY OF PITTSBURGH, *Ph.D. 1972*
Major: Philosophy. Minor: Politics.

UNIVERSITY OF PITTSBURGH, *M.A. 1968*
Major: Philosophy.

UNIVERSITY OF TEXAS AT AUSTIN, *B.A. 1965*
Major: Philosophy. Minor: English.

# EDUCATION: COMPLETED CONTINUING EDUCATION (NOT INCLUDING CLE)

CPCU ["Chartered Property and Casualty Underwriting"] Program. Awarded 2001. This is a program in various insurance matters offered by the American Institute for Chartered Property Casualty Underwriters, the Insurance Institute of America, and the Insurance Institute for Applied Ethics. I have completed all of the ten courses towards the CPCU designation. They are as follows: Ethics, Insurance Perspectives and Insurance Contract Analysis, Personal Insurance and Risk Management, Commercial Property Insurance and Risk Management, Commercial Liability Insurance and Risk Management, Insurance Operations, The Legal Environment of Insurance, Management, Insurance Economics, Insurance Accounting, and Liability Adjusting. (This sequence of courses is counted as a

substantial part of the work towards a Master of Science in Insurance Management by Boston University and similarly towards an MBA by Walden University.)

AIC ["Associate in Claims"] Program.  Awarded 2001.  Property Loss Adjusting and Liability Claims Practice. (The program is offered by the same groups that offer the CPCU.) Plus:  Workers' Compensation and Managing Bodily Injury Claims (2003).

AU ["Associate in Underwriting"] Program.  Awarded 2001.General Principles of Underwriting and Property Underwriting, Advanced Underwriting Techniques and Liability Underwriting, plus CPCU courses.  (This program is offered by the same groups that offer the CPCU and the AIC.)

ASLI ["Associate in Surplus Lines Insurance"] Program.  Awarded 2002. Surplus Lines Insurance Principles, Surplus Lines Practices, plus CPCU courses.  (The program is offered by the same groups that ofer the CPCU.)

AFSB ["Associate in Fidelity and Surety Bonding."] Program.  Awarded 2002. Principles of Suretyship, Contract Surety Bonds, Commercial Crime Insurance, and Financial Institutions Bonds.

AMIM ["Associate in Marine Insurance Management"] Program.  Awarded 2002. Ocean Marine Insurance, Inland Marine Insurance.

AIS ["Associate in Insurance Services"] Program.  Awarded October 6, 2003.  Additional Course Work in Delivering [High Quality] Insurance Services.

Miscellaneous Courses:  Insurance Regulation.

## ACTIVITIES AND RECOGNITION

### After Law School

True Texas Legend in Insurance Law.  (Recognition from the Texas Bar CLE and the Insurance Law Section of the State Bar of Texas. Plaque and Award:  April 1, 2005.  [MSQ: Perhaps the date is significant, especially since no one else has ever gotten this.  What is the suggestion?]

Texas Super Lawyers [List]. LAW & POLITICS/TEXAS MONTHLY 90, 146 (October 2004). (Listed in the *Insurance Coverage* section.  There are a large number of ads in the publication.  They do not apply here, since none of them are mine.)

Member, Editorial Board, INSURANCE LITIGATION REPORTER (2001-04).

Distinguished Teaching Award (2001).  This was presented by the Texas Center for Legal Ethics and Professionalism.

Chair, Insurance Section, State Bar of Texas (2000-2001).  Member, Board of Directors (1998-2001).

Member, Editorial Board, BAD FAITH L. RPTR (2000-01).  (This entity was merged into the INSURANCE LITIGATION LAW REPORTER.

Co-Chair, Bad Faith Sub-Committee, American Bar Association, Section of Litigation Insurance, Coverage Litigation Committee (1997-99).

Member, Planning Committee for CLE Program: Texas Insurance Law Symposium, South Texas College of Law (1998-2000).

Chair or Co-Chair, Planning Committee:  Annual Insurance Law Institute, University of Texas School of Law (1996-2002).

Recipient, Outstanding Law Journal Article Award (1998).  This was presented by the Texas Bar Foundation.

Member Editorial Advisory Board, ENVIRONMENTAL CLAIMS JOURNAL (1996?-2000).

College of the State Bar of Texas (1991-2001).

**Law School**

Class Standing:  4th.  American Jurisprudence Awards for Highest Grade Received:  Torts I (SMU), Criminal Procedure, Creditor Remedies (tie), Land Use Planning, Constitutional Law II (Governmental Powers), Natural Resources, and Commercial Transactions (tie).  Law Review: Articles Editor, UMKC LAW REVIEW; Associate Book Review Editor, URBAN LAWYER

**Before Law School**

Post-doctoral research grants from the National Endowment for the Humanities and Southern Methodist University; was Andrew W. Mellon Fellow in graduate school for two years; elected Phi Kappa Phi as an undergraduate.

# APPENDIX ONE:  EXPERT WITNESS ENGAGEMENTS

**(T= Trial Testimony; H= In-court hearings; D= Deposition; A = Arbitration. I have not listed cases in which I was retained to testify but did not or cases in which I was retained to consult only.)**

H   *Franks v. Broadway*, No. 03-00-12378-CV (13th Judicial District, Navarro County, 2003) (Testified at a hearing on April 14, 2005.  My testimony concerned whether insurance policies were completely provided in discovery and whether those insurance policies provided coverage for an accident which involved the death of an infant.  As nearly as I could make out, a truck driven by Cleaster Broadway hit a bridge, and the bridge collapsed.  The principal defendant in the case was Schneider National Carrier.

D   *Peacock Construction Co., Inc. v. Hartford Lloyd's Co.*, No. B-04-111 (S.D. Tex. [Brownsville Division] 2004).  The deposition was given on March 11, 2005.  (Fundamental issues:  (1) Did a contractor-subcontractor agreement made the general contractor an insured under the subcontractor's policy?  (2) Was the indemnity agreement therein valid?  (3) Art. 21.21).

D   *LaQuinta v. Lexington Insurance Company, &c*, No. 02-12164-E (101st Dist. Ct., Dallas County, Texas) (D: February 14, 2005)  (Fine.  New Building = replace.  Bad Faith, Ac)

D   *Burney v. Odyssey Re (London) Ltd.,* No. CA:2-04CV-032-J (N.D. Tex., Amarillo Division) (D: December 9, 2004).  (Insurance:  bad faith-insurer's rights and duties when it eliminates a RRR and substitutes counsel.)  (Two insurers were defendants; the second one is Sphere Drake Insurance Company.)

T  D   *Burns v. Allstate Texas Lloyds [Insurance] Company*, No. 96-206616-04 (96th Dist. Court, Ft. Worth, Texas, 2003) (October 27, 2004).  (Some Issues:  water damage, mold losses, causation, insurer bad faith.)  (The first named defendant was Chad Lindt, an Allstate adjuster.)  (T:  November 16, 2004).

T H D   *1212 Westheimer Group, L.P. v. Western Heritage Insurance Company;* No. GN304030 (126th District Court, Travis County, Texas) (October 26, 2004).  (Some Issues:  Storm and/or rain loss versus "wear and tear," &c, usual bad faith issues.)  (H = Expert witness qualification hearing.  Judge Dietz ruled MSQ an expert qualified to testify in a first-party property case.) (January 6, 2005.)

D   *Pacific Motor Transport Company d/b/a Pacer Pacific Company v. Lockton Companies, Inc. et al.;* C.A. No. 2:03-CV-00362 (E.D. Tex. Marshall Division) (D: October 12, 2004) (Some Issues: truck accident -- agent-broker; MGA; claims procedures for self-handler with eventually liquidated fronting company; adjustment; MCS-90; &c.)

D   *Allen v. Midwest National Life Ins. Co. of Tennessee*, No. 03C434 H (C) (N. Okla. 2003).  (Deposition given September 27, 2004).  (Health insurance: denial for "Pre-Existing Condition," "Recission," & Bad Faith issues.)

T  D   *Swicegood v. The Medical Protective Company*, No. 3-95:CV-0335-D 9 (N.D. Tex. 1995) (D: August 17, 2004) (significance of sex acts exclusion in a medical malpractice case where a married, middle-aged, male M.D. seduced young adult female patient with assertions of love, pages of poetry, he wrote songs, and samples of prescription-level medications, and abandoned her).  (T:  September 15, 2004.)

D   *Ranger Ins. Co. & Scottsdale Ins. Co.*, No. 17-174271-98 (17th Dist. Ct., Tarrant County, Texas) (August 10, 2004 and August 23, 2004) (insurance and the "Revival Rally for Christ").

D   *Hammer Trucking, Inc. v. St. Paul Fire and Marine Insurance Company*, No. 00-12-741 (271st Judicial District, Wise County, Texas) (March 30, 2004) (insurance bad faith case arising out of the adjustment and litigation of a truck accident).

T   *Matteucci v. Safeco Ins.*, No. 01CC-003150, Division 6 (Circuit Court St. Louis County, State of Missouri) (March 11, 2004) (homeowner's insurance, fraud allegations, bad faith, including Missouri statutes).

D   *Phelps Dunbar v. Brittany Ins. Co.*, No. 02CV-3237 (U.S. Dist. Court, Southern District of Texas, Houston Division) (February 23, 2004) (legal malpractice, breach of fiduciary duties, fee statements-all in the context of a fee dispute between the law firm and small components of the "follow" component of the London Market:  arises out of BFI coverage litigation).

D     *Southern Farm Bureau v. Trinity*, No. 2003-49-4 (170th Judicial District, McLennan County, Texas) (February 11, 2004) (Stowers and Art. 21.21).

D     *Brown v. American Insurance Company of Texas,* No. 017-185548-00 (17th Judicial District, Tarrant County, Texas) (January 15, 2004) (health insurance cancellation and adjustment).

D     *Robert v. Travelers*, No. 3-02-CV2757M (U.S. Dist. Court, Northern District of Texas, Dallas Division) (January 5, 2004).  (UIM/Bad Faith.)

T   D     *Garza v. Medina,* No. C-405-02E(1) (275th Judicial District, Hidalgo County, Texas; Deposition: December 4, 2003; Trial Testimony: July 22-23, 2004).  (Issues: Father, daughter, lawyer, adultery, pregnancy, and contract for legal services: principal issue lawyer violation of fiduciary duty).

A   D     *ONEOK v. Federal Insurance Company*, Arbitration (October 24, 2003).  (Testimony concerning D&O insurance, adjusting such claims, attorneys' fee audits by insurer.) Arbitration Hearing (November 10-12, 2003).

H     *Hartford Fire Insurance Company v. University of Houston*, No. 730-1-2374-W (State Office of Administrative Hearings, Austin, Texas, October 14, 2003).  (Testimony concerned deductibles and claims handling in a general liability policy which was part of a Owner Controlled Insurance Program.)

T     *Nuevo Energy Co. v. Ranger Ins. Co.,* No. 2002-30174 (133rd District Court, Harris County, Texas) (October 6, 2003) (testify on reasonableness of attorneys' fees in a fee-shifting matter before the court only).

D     *Prince v. Zurich-American Insurance Company*, No. 2002-CVE-000617 D2 (111th District Court, Webb County, Texas) (September 16, 2003) (various forms of insurer bad faith in the context of UIM coverage).

H     *In re R&E Systems*, No. 02-13434-FRM (Bnkrptcy. Ct. W.D. Tex.) (July 31, 2003).  (Motion for sanctions against a lawyer for disputed creditor brought by debtor.)

D     *Breckenridge Enterprises, Inc. v. Philadelphia Life Insurance Company,* No. 3:01-CV-562-P consolidated with No. 02-CV-538 (U.S. District Court, Northern District of Texas, Dallas Division) (June 26, 2003) (unusual insurance case involving a variety of issues).

T   D     *Dairy Farmers v. Traveler,* No. 99-0637-CV-W-6 (U.S. District Court, Western District of Missouri), (Deposition: June 6, 2003; Trial Testimony: July 10, 2003) (administration of settlement involving several policies including at least one excess policy).

D     *Haynes v. Gronwaldt*, No. A-144,481-B (60th Judicial District Court, Jefferson County, Texas) (May 8, 2003) (attempt to invalidate Mobil Oil's worker's comp program over many years).

D     *RSR Corporation v. A.I.U. Insurance Company, et al.*, No. 93-0127; (71st District Court, Harrison County, Texas) (March 17, 2003 and March 25, 2003) (pollution exclusion, "hostile fires," excess policies, allocation and regulatory estoppel, statutory bad faith, &c.).

D     *Wedge Management, Inc. v. Tobey*, No. 98-09512; (345th District Court, Travis County, Texas) (March 7, 2003) (legal malpractice, breach of fiduciary duties, violations of legal ethics, &c.).

A   D     *Lone Star Corrugated Container Corporation v. CNA Insurance Company--Group Benefits*, No. 71 E 195 00360 02 (Before the American Arbitration Association, Dallas, Texas) (March 3, 2003) (non-subscriber policy:  interpretation, waiver, estoppel, etc.) (Arbitration testimony given on April 16, 2003 in Dallas, Texas.)

D     *Glover v. Fortis*, No. 2001-06943 (133rd District Court, Harris County, Texas)  (Issues:  good health clause in life insurance policy, misrepresentation clause, adjustment practice, intermediary performance) (February 13, 2003).

D     *Mercer v. Pittman & Fink,* No. GN102172 (98th District Court, Travis County, Texas) (Issues:  lawyer misconduct:  fee problems, pleading problems, etc.) (January 22, 2003).

T  D  *McMillin v. State Farm Lloyds,* No. GN 200297 (201st District Court, Travis County, Texas) (Issues: bad faith, homeowner's: property insurance: water damage and mold) (January 21, 2003 deposition; December 4, 2003 trial testimony).

H  *In re Friedman,* No. D0080015231, -2, & -3 (SBOT-6A Grievance Committee [Dallas], December 18, 2002) (testify before evidentiary panel).

D  *In re J. T. Thorpe Co.,* No. 02-41487-H5-11 (Bankr. Ct., S.D. Tex. 2002) (insurance coverage and related issues and a "pre-pak" Ch. 11 involving asbestos) (December 15, 2002).

D  *United Investors Realty Trust v. Hartford;* No. 3:01-CV-2083-BC (Northern District of Texas 2002) (December 12, 2002) (directors & officers insurance).

H  *In the Matter of the Marriage of Forage and Gallagher;* No. FM205428 (250th District Court, Travis County, Texas) (November 4, 2002) (attorney disqualification).

H  D  *Texas v. Farmers Group,* No. GV-202510 (261st District Court, Travis County, Texas) (2002) (Deposition taken October 17, 2002) (Temporary Injunction Hearing:  trade secrets, &c.).

D  *Dillard's, Inc. v. TIG Insurance Company, Inc., et al.,* No. CV-00-8538 (Circuit Court of Pulaski County, Arkansas) (October 11, 2002) (late notice issues, excess carrier behavior and structure of industry, interpretation issues, &c.).

D  *Consumers County Mutual Insurance Company v. Bichsel Trucking v. Bichsel Trucking,* No. 48-182953-00 (48th District Court, Tarrant County, Texas) (October 9, 2002)(truck insurance:  certificates of insurance, agent performance, Art. 21.02, and Art. 21.04, custom and practice in the industry, &c.)

T  D  *Stinson v. Winkelmann,* No. 2001-23155; (334th District Court, Harris County, Texas) (August 9, 2002 and August 20, 2002) (truck insurance: variety of problems including *Stowers,* &c.)

D  *National Union Fire Insurance Company of Pittsburgh, Pa. v. Keck, Mahin & Cate,* Nos. 94-018363 and 94-018363A; (80th District Court, Harris County, Texas) (July 2, 2002)(see Texas Supreme Court for the range of issues).

H  *Janice Copeland vs. Dallas Home for Jewish Aged, Inc.,* No. DV98-04690-G; (134th District Court, Dallas County, Texas) (May 20, 2002).  (This was a hearing regarding the relationship between *Stowers* and Art. 4590i, § 11.02(c).)

D  *Gulf Insurance Company v. Sonia Y. Jones v. Cowles & Thompson, P.C.,* No. 3:00-CV-0330-L (United States District Court for the Northern District of Texas, Dallas Division) (May 1 & May 8, 2002)(*Stowers,* legal malpractice, &c).

D  *Commonwealth Insurance Company v. Stone Container Corp.,* No. 99-C-8471 (United States District Court for the Northern District of Illinois, Eastern Division) (March 29, 2002)(agent liability, policy configuration, &c.)

D  *Clayton Williams Energy, Inc. v. Lexington Insurance Co.,* No. MO01CA017 (United States District Court for the Western District of Texas, Midland Division (March 20, 2002)(oil and gas insurance problems, adjustment practices, reservation of rights letters, &c.).

D  *Citizens 1st Bank, Tyler, Texas v. St. Paul Mercury Insurance Company v. James I. Perkins,* No. 6:01CV421 (United States District Court for the Eastern District of Texas, Tyler Division) (March 8, 2002)(D&O insurance problems, adjustment problems, &c.).

D  *American International Specialty Lines Insurance Company v. Res-Care, Inc.,* No. 3-00-CV-2201-R (N.D. Tex.) (February 7, 2002).

H  *de la Garza v. State Farm Fire & Casualty,* No. 96-01253-1 (County Court at Law #1, Nueces County, Texas) (November 1, 2001).  (Class action certification.)

H  *Bailey v. Kemper Insurance Company, et al.,* No. 2001-030 (4th District Court, Rusk County, Texas.) (September 4, 2001) (Class action certification.)

T *Caro v. Sharp*, No. 23,137 (335th District Court, Bastrop County, Texas) (August 30, 2001). (Title insurance)

D *Cabot Oil v. Ranger Insurance Company*, No. DC-00-266 (229th District Court, Starr County, Texas) (August 17, 2001). (oil and gas specialty insurance)

D *Stewart & Stevenson Services, Inc. v. Certain Underwriters at Lloyds of London*, No. 96-48409 (281st District Court, Harris County, Texas) (Deposition started on May 23, 2001 and completed on November 9, 2001.)

D *Travelers Indemnity Company of Connecticut v. Zurich Insurance Company*, No. 3-00-CV-0440M (N.D. Tex. 1999) (April 12, 2001).

D *Vera v. Holms*, No. 99-2049-E (148th District Court, Nueces County, Texas) (February 5, 2001)(legal malpractice).

D *Fraley, et al. v. Daniel, et al.*, No. cc-99-5823-c (County Court at Law No. 3, Dallas County, Texas) (January 22, 2001)(legal malpractice, &c.).

H *Dryer v. Mh/RFD, LLC*, No. GN-003513 (261st District Court, Travis County, Texas) (December 20, 2000). (This was a hearing regard a Motion to Disqualify the defendant's counsel.)

H *Palacios v. Sloan*, No. 349-4381 (349th District Court, Anderson County, Texas) (September 8, 2000). (This was a hearing regarding the relationship between *Stowers* and Art. 4590i, § 11.02(c).) (Perhaps this is better classified as a post-trial hearing.)

D *HealthSouth Corporation, et al. v. Moore, et al*; No. 348-172230-98 (348th District Court, Tarrant County, Texas) (May 23, 2000).

D *Cunningham Capital Corporation v. Doyle, Restrepo, Harvin & Robbins, L.L.P.*, Cause No. 97-00944, (250th District Court, Travis County, Texas) (date of deposition uncertain).

D *Butler v. H. R. Management Company*, No. 96-50493 (269th District Court, Harris County, Texas) (March 13, 2000).

D *Total Tool Rental, Inc. v. United Capitol Insurance Company*, Civil Action No. H-98-3968 (S.D. Tex., Houston Division) ( January 11, 2000).

D *St. Paul Fire & Marine Insurance Company and St. Paul Mercury Insurance Company v. Green Tree Financial Corp. - Texas*; Civil Action No. 3:94-CV-688-R (N.D. Tex., Dallas Division). (November 10, 1999).

D *Autobond Acceptance Corp. v. Progressive Northern Ins. Co.*, No. 98-11559 (281st District Court, Harris County, Texas) (August 31, 1999).

T D *Cathey v. Meyer*, No. 97-1786-3 (74th District Court, McLennan County, Texas) (June 7, 1999)(legal malpractice, &c.).

D *Walters, Benders & Strobehn, P.C. v. Paradigm Ins. Co.*, No. 98-CV-17957 (Circuit Court of Jackson County, MO, filed July 24, 1998) (February 9-10, 1999)(legal fees, &c.)

D *Frank v. Chubb Lloyds Ins. Co. of Texas*, No. 97-9244-B (44th Dist. Ct., Dallas County, Texas, filed October 10, 1997) (value of my attorneys' fees only).

D *Gatch vs. Holms*, Cause No. 98-549-G (319th District Court of Nueces County, Texas). (This deposition was given on January 20, 1999.)(legal malpractice, &c.)

T *United States of America v. Loe*, Cause No. 4:97-CR-71, (United States District Court for the Eastern District of Texas (Sherman Division)). (This testimony was given on November 2, 1998.)

T D *Fitzgerald v. State Farm Lloyds*, Cause No. 96-10131, in the 250th District Court of Travis County, Texas. (The deposition was given on October 21, 1998, and the trial testimony was given on November 11, 1998.)

D    *First Insurance Company of Hawaii v. Scottsdale Insurance Co.,* Cause No. 97-00831 SPK (D. Hawaii) (October 20, 1998.)

T    *Janik v. Amica Insurance,* Cause No. 395-CV-2594-D (N.D.Tex. (Dallas Division), August 26, 1998.

D    *Everett v. Lloyd's Underwriters,* Cause No. 342-152198-94 (342d District Court of Tarrant County, Texas).

D    *American National Insurance Co. v. Aetna Casualty and Surety Co.,* Cause No. 95-CV-0993, in the 122nd Judicial District Court of Galveston County. (Deposed twice)

D    *Certain Underwriters at Lloyd's v. Bristol-Myers Squibb Co.,* Cause No. A-0145,672-F, in the 58th Judicial District Court of Jefferson County, Texas (1994).

D    *Royal Indemnity Co. v. Thrift,* Civil Action No. SA. 96-CA-1326, in the United States District Court for the Western District of Texas (San Antonio Division).

D    *Bristol-Meyers Squibb Co. v. AIG Ins. Co.,* Cause No. A-0145672 (58th Judicial District Court for Jefferson County, Texas (1994).

T   D    *Grubbs Auto Park, v. Employers Insurance Company of Wausau,* Cause No. 96-15979-95 (96th Judicial District Court of Tarrant County, Texas (1996)).

D    *American National Fire Insurance Company v. Masters,* Cause No. 95-007672 (334th Judicial District Court of Harris County, Texas (1995)).

D    *State Farm Mutual Automobile Insurance Company v. Agee,* Class Action No. 96-01410 (98th Judicial district Court of Travis County, Texas (1996)).

D    *Robinson v. Blackwood,* Cause No. 95-03275 (126th Judicial District Court of Travis County, Texas (1996)).

T   D    *Antolek v. Price,* Cause No. 94-14499 (250th Judicial District Court of Travis County, Texas (1995)).

T   D    *Triton Energy Corp. v. Federal Insurance Company,* Cause No. 92-26185 (152nd Judicial District Court of Harris County, Texas (1993-4)). (quasi-trial testimony given)

D    *Acceleration National Insurance Company v. Amwest Savings Association,* Cause No. 3-93-CV-1473-T (United States Judicial District Court for the Northern District Court of Texas, Dallas Division (1994-5)).

T   D    *St. Paul Insurance Company v. City National Bank of Colorado City, Texas,* Cause N. 12, 482 (32nd Judicial District Court of Mitchell County, Texas (1994)).

D    *Hartman v. St. Paul Fire & Marine Insurance Company,* Cause No. 4:95-CV-921-IIA (N.D. of Tex., Fort Worth Division (1993)).

T   D    *Hartman v. St. Paul Fire & Marine Insurance Company,* Cause No. 3-93-CV-890-H (N.D. of Tex., Dallas Division (1993)).

D    *Rothrock v. Akin, Gump,* Cause No. 90-10237-A (14th Judicial District for Dallas County (1992)).

T   D     *Webster v. Insurance Corporation of America* (113th Judicial District Court of Harris County Texas (1992)).  This case is reported as *Ins. Corp. of Am. v. Wesbster*, 906 S.W.2d 77 (Tex. App.--Houston [1st Dist.] 1995, writ den'd).

T/A = 21

H   = 12

D   = 72

(or thereabouts)

# APPENDIX TWO
## LAW AND LAW RELATED PUBLICATIONS

Book Sections

- *The Eleven Commandments of Professional Responsibility: Gallifmaufry Secundum*, Book Two, THE ETHICS COURSE (5th Ed. 2004). (This is currently an electronic publicationBon a CDRom--only, but it will be included in a paper edition of the volume in due time. It came out in late 2004 or early 2005. The essay-outline is approximately 376 pages long, and it is a revision and update of the publication immediately below. Evan Koch was the co-author.)

- *The Eleven Commandments of Professional Responsibility: A Gallimaufry*, THE ETHICS COURSE (4th Ed. 2001). (This is a revision /extension of a piece which has been used in some CLE functions. It is approximately 150 pages long. It is partly an essay and partly an outline.)

Articles

- *"Damn Fools" - Looking Back at Stowers after 75 Years*, 6 J. TEXAS INS. LAW 2 (May 2005). (Vincent Morgan was the senior author, and I was the assisting author. The idea was his.)

- *Spitzer v. MarshMac*, 27 INS. LIT. RPTR. 277 (May 1, 2005). (Melissa Hamilton was the assisting author.)

- *Marsh & McLennan: Some More Brief History Before the Spitzer Scandal - Part B: Putnam, Trident, and Mercer*, 27 INS. LIT. RPTR. 197 (March 31, 2005). (Melissa Hamilton was the senior author, and I was the assisting author.)

- *Marsh & McClennan:  Some Brief History Before the Spitzer Scandal–Part A:  The Insurance Side of the Business*, 27 INS. LIT. RPTR. 125 (March 15, 2005). (Melissa Hamilton was the assisting author.)

- *Before the Marsh & McClennan Scandal and Its Times*, 27 INS. LITIG. RPTR. 5 (January 28, 2005).

- *Adjustment of Disability Claims and the Problem of Bad Faith*, 19 INS. LITIG. RPTR. 697 (December 3, 2004). (Evan Koch was the co-author of this article.)

- *Disability Insurance:  An Elementary and "Puristical" Introduction to Coverage Issues*, 26 INS. LITIG. RPTR. 69 (November 17, 2004) (Evan Koch is the assisting co-author of this rather lengthy piece. There will be another part published in the next issue.)

- *Extra Expenses and Business Interruption Coverages*, 26 INS. LITIG. RPTR. 97 (February 2004). (Pamella A. Hopper was the co-author.)

- *Legal Malpractice and Evidence from Experts*, 30 LITIGATION 40 (Fall 2003). (Olga Seelig was the co-author.)

- *Ensuing Loss Clauses in Texas Insurance Jurisprudence*, 4 J. TEXAS INS. LAW 8 (November 2003). (Olga Seelig was the co-author.)

- *The Analects for Lawyers:  Variations Upon Confucian Wisdom*, 34 TEXAS TECH L. REV. 933 (2003).

- *Insurance Bad Faith and the Attorney-Client Privilege*, 32 THE BRIEF [ABA] 37(Spring 2003).

- *Liability Insurance and Supplementary Payments*, 25 INS. LIT. RPTR 133 (February 2003). (Olga Seelig was a co-author.)

- *Terrorism and Insurance:  Some Tentative Thoughts*, 14 ENVT'L CLAIMS J. 19 (Winter 2002).

- *Insurance and Dangerous Political Perversity*, 24 INS. LIT. RPTR. 240 (May 2002). (This is an article-length critical study. It considers a book entitled ALLIANZ AND THE GERMAN INSURANCE BUSINESS FROM 1933-1945 written by Gerald D. Feldman, a Professor of History at the University of California. The book was published by Cambridge University Press in 2001.)

- *The Posnerian Re-formation of Insurance Law*, 23 INS. LITIG. RPTR. 662 (2002). (This was mainly a discussion of *Lockwood International v. Volm Bag*, 273 F.3d 741 (7th Cir. 2001)).

- *Insurance and Bankruptcy*, 36 TORT & INS. L. J. 1025 (Summer 2001). (Brian S. Martin was the co-author.)

- *Coverage B: Personal and Advertising Injury Liability--1998 Revisions*, 11 COVERAGE 47 (May/June 2001).

- *Directors' and Officers' Liability Insurance: Probable Directions in Texas Law*, 20 REV. OF LITIG. 381 (2001). (Andrea D. Levin was the co-author.)

- *Preparing for Adjuster Depositions in Bad Faith Cases: Anticipating the Plaintiff's Questions*, 16 BAD FAITH L. RPTR. 231 (December 2000). (John D. Moyer was the co-author.)

- *Preparing for Adjuster Depositions in Bad Faith Cases: The Plaintiff's Objectives*, 16 BAD FAITH L. RPTR. 183 (October-November 2000). (John D. Moyer was the co-author.)

- *The Defending Liability Insurer's Duty to Settle: A Meditation Upon Some First Principles*, 35 TORT & INS. L. J. 929 (Summer 2000).

- *Whom Does the Insurance Defense Lawyer Represent?*, 2 J. TEX. INS. L. 12 (Spring 2000).

- *The Malicious Prosecution Analogy*, 16 BAD FAITH L. RPTR. 61 (April 2000). William T. Barker replied in the same issue, *The Malicious Prosecution Analogy: Reply to Quinn*, 16 BAD FAITH L. RPTR. 72 (April 2000).

- *Insurance Bad Faith and Insurance Expertise*, 22 INS. LITIG. RPTR. 80 (February 15, 2000). (Some sections of this piece appear previously.)

- *Argument and Authority in Common Law Advocacy and Adjudication: An Irreducible Pluralism of Principles*, 74 CHICAGO-KENT L. REV. 655 (1999). This paper has been presented by invitation twice or three times to a seminar at the University of Texas Law School taught by Richard Markovits. The seminar is entitled "Legal Scholarship."

- *Fortuity, Insurance, and Y2K*, 18 REV. OF LITIG. 3 (Summer 1999).

- *"Occupying" Forces--Limitations on the Pollution Exclusion as Applied to On-Site Discharges*, 9 COVERAGE 27 (March/April 1999). (Robert A. Shults was the co-author.)

- *Reformation and the Insurance Contract,*, 1 J. TEX. INS. L. 47 (1999).

- *Insurer Bad Faith: Expertise & Appellate Review*, 20 INS. LITIG. RPTR. 774 (Oct. 15, 1998).

- *Depositions of Claims People*, 8 COVERAGE 21 (May/June 1998).

- *Insurance Law*, 51 SMU L. REV. 1131 (May-June 1998). (This is an 80+ page summary of developments in Texas insurance law during 1997-98. I was the senior author; Pamela D. Nielson, then a shareholder at SMK, was the junior author.)

- *A Liability Insurer's Duty to Settle: the Primary, the Excess and the Insured*, 20 INS. LITIG. RPTR. 343 (May 1, 1998).

- *The Ethical Habitat of Adjusters: Part 2. Principles, Problems, and Practicalities*, 10 ENVT'L CLAIMS J. 77 (Spring 1998)

- *Struggle, Confusion, and Diversity: Insurance Bad Faith in Texas--Recent Rapid Evolution*, 20 INS. LITIG. RPTR. 175 (March 15, 1998). This is a discussion of the *Simmons* case.

- *The Ethical Habitat of Adjusters: Part 1. Principles, Problems, and Practicalities*, 10 ENVT'L CLAIMS J. 91 (WINTER 1998)

- *Memory, Repression & Expertise: Civilly Actionable Sexual Misconduct in Texas and Individual Rights*, 3 TEXAS FORUM ON CIVIL RIGHTS & CIVIL LIBERTIES 1 (Winter 1997).

- *Balance, Tension, and Change: Insurance Jurisprudence and the Dynamics of the Common Law*, 19 INS. LITIG. RPTR. 849 (December 15, 1997).

- *Pouring, Spilling, Storing and Dripping*, 13 TEXAS TRIAL LAWYER 14-17 (September 15, 1997). This publication is an insert into the TEXAS LAWYER. (Robert A. Shults was the senior author.)

- <u>Arch-Angel Insurance Company v. Walter Raleigh</u>: *A Hypothetical Case on Recoupment of Defense Costs. Appellee's Brief*, 19 INS. LITIG. RPTR. 585 (September 15, 1997).

- *Moot Court Problem: <u>Arch-Angel v. Raleigh</u>*, 19 INS. LITIG. RPTR. 532-35 (September 1, l997). (Issue: May a liability insurer which has no duty to defend but pays defense expenses out of caution obtain restitution of those expenses?)

- *Insurer Bad Faith -- Sic et Non -- Texas Style*, 19 INS. LITIG. RPTR. 485 (August 15, 1997). This is a discussion of *Giles, Nicolau,* and *Williams.*

- *Reserving Rights Rightly*, 7 COVERAGE 23 (July/August 1997)

- *Cowan's Case: Bodily Injuries, Occurrences, and the Duty to Investigate*, 19 INS. LITIG. RPTR. 349 (July 1, 1997)

- *Liability Insurance Contracts: A Primer*, 34 TEX. J. BUS. LAW 2 (Spring 1997). (In 1998, the Texas Bar Foundation awarded this article the Outstanding Law Journal Article Award for 1997.)

- *The Duty to Defend: New Texas Developments*, 19 INS. LITIG. REPTR. 193 (May 1, 1997).

- *On the Assignability of Legal Malpractice Claims*, 37 S. TEX. L. REV. 1204 (1996).

- *Sweet and Sour Deals*, 12 BAD FAITH L. RPTR 163 (1996).

- *Vendor's Endorsements*, 18 INS. LITIG. RPTR 375 (1996).

- *Subrogation, Restitution and Indemnity*, 74 TEX. L. REV. 1361 (1996). (This essay starts as a review of Charles Mitchell's THE LAW OF SUBROGATION, published by Oxford University Press in 1994. The essay discusses the nature of subrogation, its relationship to restitution, and professional responsibility problems facing subrogation counsel.)

- *Punitive Damages and Liability Insurance*, 18 INS. LITIG. RPTR 121 (1996).

- *Post Employment Agreements Not to Compete: A Texas Odyssey*, 33 Tex. J. Bus. L. 7 (1996). (Andrea Levin was co-author. She was a law student at UT-Austin and now practices in Houston.)

- *Are Liability Carriers Second-Class Clients? No, but They May Be Soon -- A Call to Arms Against the RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS*, 6 COVERAGE 21 (1996). (The name of Professor Charles Silver appears first; I was the co-author.)

- *Scholarly Ethics: A Response*, 46 J. LEGAL EDUC. 110 (March 1996) (Response to article by Ronald K. L. Collins which is to be found at 45 J. LEGAL EDUC. 139 (1995).)

- *California Choice of Law, Insurance Contracts, and Environmental Litigation*, 8 ENVT'L CLAIMS J. 29 (1995/96).

- *Patrick's Case*, 5 TEX. J. OF WOMEN AND THE LAW 101 (1995). This paper has been presented by invitation a couple of times to Markovits's seminar at the University of Texas Law School. The seminar is entitled "Legal Scholarship."

- *Wrong Turns on the Three-Way Street: Dispelling Nonsense About Insurance Defense Lawyers*, 5 COVERAGE 1 (November/December 1995). (The name of Professor Charles Silver appears first, and I was the co-author. We responded to criticism in the next issue of the journal. *All Clients are Equal, but Some are More Equal Than Others: A Reply to Morgan and Wolfram*, 6 COVERAGE 47 (1996).)

- *Tort Liability and Reinsurance Contracts*, 8 ENVTL CLAIMS J. 67 (1995).  (Nicole Chaput, then an associate at what is now Cooper & Scully, was junior author.)

- *Common Law Insurance Bad Faith in Texas and the Duty to Defend*, 11 BAD FAITH L. RPTR 105 (1995).

- *Insurance Coverage Opinions*, 36 S. TEX. L. REV. 479 (April 1995).  (L. Kimberly Steele, an associate with Zelle & Larson, was junior author.)  This essay was reprinted at 44 DEFENSE LAW J. 591 (1995).  It was reprinted again in 8 NAT'L INS. L. REV. 79 (1996).

- *Review Essay on Stempel's INTERPRETATION OF INSURANCE CONTRACTS*, 7 ENVTL. CLAIMS J. 105-127 (1995).

- *The Advice of Counsel Defense*, 42 TEX. L. REV. 1487 (1994).  (This is a contribution to a faculty edited symposium on insurance bad faith law.)

- *The Unruly Judge*, 12 REV. OF LITIG. 1 (1992).  (Michelle Caldwell was junior author.  She clerked at Zelle & Larson at the time.)

- *Insurance Contracts and Semantic Analysis: The Case of the Limited Pollution Exclusion*, 4 ENVT'L CLAIMS J. 275 (1992)  (Caldwell was junior author.)  This paper has been presented by invitation a couple of time to Markovits's seminar on "Legal Scholarship."

- *Insurance, Ambiguity and the Sophisticated Insured*, 4 ENVT'L. CLAIMS J. 89 (1991) (Caldwell was junior author.)

- *Closing Arguments in Insurance Fraud Cases*, 28 TORT & INS. L. J. 744 (1988).

- *Bungled Inspections: A Polemic Against Insurer Liability (With Special Reference with Boilers)*, 4 TEXAS INS. L. RPTR 17 (1986).

- *Educating Alien Kids*, TEXAS OBSERVER 5 (September 17, 1982).

- *Critical Essay: DEMOCRACY AND DISTRUST*, 49 U. M. K. C. L. Rev. 377 (1981).  (This is a critical study of John Hart Ely's book entitled DEMOCRACY AND DISTRUST.)

- *One Dialogue on Constitutional Religion*, 14 CREIGHTON L. REV. 1249 (1981).  (Coauthored with Douglas Linder; I was a junior author and principal draftsman.)

- *Comment, The Jurisprudence of Similar Acts Evidence in the Eighth Circuit*, 48 UMKC L. REV. 342 (1980).

- *Effective Use Flexible and Conditional Zoning Devices - What They Can and What They Cannot Do For Cities*, Southwestern Legal Foundation, 1978 INSTITUTE ON PLANNING, ZONING AND EMINENT DOMAIN 167 (1979). (Robert H. Freilich was senior author; I was junior author and principal draftsman.)

- *Note, Seduction and Fraud An Honorable Marriage?*, 47 UMKC L. Rev. 464 (1979).

- *The Acceptance of Rules*, 31 DIALOGOS 103 (1978).

- *Practice Defining Rules*, 65 ETHICS 76 (1975).

- *Critical Essay: Nozick's ANARCHY, THE STATE, AND UTOPIA*, 5 HUMAN RIGHTS 119 (1975).  (Brian Lidji, then a graduate student in philosophy, now a Dallas lawyer, was the junior author, and I was principal draftsman.  HUMAN RIGHTS is a journal of the American Bar Association.).

## "Legal Beat" Column (1998-2001):

- *A Look at Invoking War Exclusions*, 7 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 22 (October 8, 2001).

- *Are Producers Always the Agents of Insurers?*, 7 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 52 (September 3, 2001).

- *Agents and Coverage Opinions*, 7 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 18 (August 8, 2001).

- *Ponzied Insurance Premiums*, 7 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 18 (June 18, 2001).

- *Article 21.55: Reason Prevails*, 7 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 22 (June 4, 2001).

- *Fiduciary Duties and Expert Testimony*, 7 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 23 (May 14, 2001).

- *Tortious Interference and Business Competition*, 7 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 18 (April 30, 2001).

- *Recent Court Decision Rocks WC System*, 7 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 24 (April 16, 2001).

- *Refining Workers' Comp*, 7 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 20 (April 2, 2001).

- *UM/UIM Developments*, 7 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 26 (March 19, 2001).

- *Paying for Holocaust Insurance Claims*, 7 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 22 (March 5, 2001).

- *Agent-Broker Malpractice*, 7 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 26 (February 19, 2001).

- *Good Samaritan Liability*, 7 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 25 (February 5, 2001).

- *Liability Insurers and Rights of Reimbursement*, 7 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 20 (January 22, 2001).

- *Who Owns A Customer?*, 7 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 26 (January 8, 2001).

- *Advertising Liability: Exploring the Often Misunderstood Coverage*, 6 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 20 (December 18, 2000).

- *Liability Coverage for Breaches of Contract,* 6 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 30 (November 20, 2000).

- *Legal Malpractice Insurance*, 6 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 36 (November 6, 2000).

- *Restraining the Departed? When Agents Divorce Their Insurance Company*, 6 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 28 (October 23, 2000).

- *An Agent's Nightmare Continues,* 6 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 38 (October 9, 2000).

- *An Agent's Nightmare*, 6 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 32 (September 25, 2000).

- *When Agents Go Bankrupt*, 6 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 28 (September 4, 2000).

- *It's a Dog's Life. . .And an Agent's Lot*, 6 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 26 (August 24, 2000).

- *Lying, Cheating and Stealing*, 6 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 24 (July 24, 2000).

- *Successor Liability for Renewal Commisions*, 6 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 30 (July 10, 2000).

- *Agents in the Claims Process*, 6 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 28 (June 26, 2000)

- *Agent Indemnification: How Not to Get Burned*, 6 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 30 (June 5, 2000).

- *Slavery & Insurance*, 6 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 54 (May 15, 2000). This article was reprinted as *Commentary: Examining Slave Insurance In a World 150 Years Removed*, 78 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF THE WEST 43 (July 24, 2000).

- *Negligent Misrepresentation--Part II*, 6 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 28 (April 24, 2000).

- *Negligent Misrepresentation--Part I*, 6 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 6 (April 10, 2000).

- *Imbetterment & Enworsement*, 6 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 28 (March 27, 2000).

- *Car Wrecks and Car Parts*, 6 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 26 (March 13, 2000). There is also a Very Short Case Note to be found on this topic at 16 BAD FAITH L. RPTR. 54 (March 2000).

- *Consumer Privacy and the Law*, 6 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 28 (February 28, 2000).

- *Wooge's Case: Ownership of Renewals*, 6 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 36 (February 7, 2000).

- *All Santa Wants for Christmas*, 5 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 12 (December 13, 1999).

- *Business Income Interruption Coverage*, 5 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 26 (November 22, 1999).

- *Defining Negligence, Misconduct*, 5 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 44 (November 8, 1999).

- *Processing Class Actions--Texas Style*, 5 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 24 (October 18, 1999).

- *A Class Action Litigation Primer*, 5 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 20 (October 4, 1999).

- *Stacking and Statutes*, 5 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 46 (September 20, 1999).

- *Insurance for Arson*, 5 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 58 (August 30, 1999).

- *Agents Get a Big Courtroom Stick*, 5 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 34 (August 9, 1999).

- *To Squeal or Not to Squeal?*, 5 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 36 (July 19, 1999).

- *Refining the Rules Surrounding Bad Faith*, 5 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 24 (June 28, 1999).

- *Premises Liability and the Insurance Agent - Part III*, 6 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 36 (May 17, 1999).

- *Premises Liability and the Insurance Agent - Part II*, 5 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 26 (April 26, 1999).

- *Premises Liability and the Insurance Agent - Part I*, 5 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 30 (April 5, 1999).

- *Expert Testimony and Insurance Brokerage Malpractice in Texas*, 5 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 26 (March 15, 1999).

- *Liability and Independent Contractors*, 5 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 28 (February 8, 1999).

- *Insurance Agents and Surety Bonds*, 5 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 60 (January 18, 1999).

- *Insurance Agents and Legal Agency,* 4 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 17 (November 30, 1998).

- *Liability and the Professions,* 4 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 44 (November 9, 1998).

- *Insurance Agents and Defense Lawyers*, 4 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 28 (October 19, 1998).

- *Surety Bonds and Insurance*, 4 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 40 (September 28, 1998).

- *The Stowers Doctrine--An Agent's Primer*, 4 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 13 (September 7, 1998).

- *Workplace Sex and the Innovative Agent*, 4 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 12 (August 17, 1998).

- *Leaky Pipes: Highest Courts Take On Slabs*, 4 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 34 (July 27, 1998).

- *The Business Pursuits Exclusion,* 4 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 22 (July 6, 1998).

- *Article 21.21 and Insurance Brokerage*, 4 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 38 (June 15, 1998).

- *Jones Against Clinton,* 4 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 18 (May 18, 1998).  This piece was reprinted with the title *Insurance Ramifications of Jones v. Clinton*, 76 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF THE WEST 22 (May 18, 1998).

- *Agent Liability and the Passage of Time--Part II,* 4 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 26 (May 4, 1998).

- *Agent Liability and the Passage of Time--Part I,* 4 INSURANCE JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 44 (April 13, 1998).

- *Dogs, Guns and Automobiles,* 4 INS. JOURNAL: THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 16 (March 23, 1998).

- *Insurance Bad Faith:  The Basic Tenets and More*, 4 INSURANCE JOURNAL:  THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 20 (March 2, 1998).

- *Insurance, Arson & the American Family,* 4 INSURANCE JOURNAL:  THE PROPERTY/CASUALTY MAGAZINE OF TEXAS 12 (February 9, 1998).

## Other Book Reviews

- *Ungentlemanly Acts*, 64 TEX. BAR J. 1078 (December 2001).  (Louise Barnett, UNGENTLEMANLY ACTS.) (New York:  Hill and Wang/Farrar, Straus & Giroux (2000).

- *Mentors in Inspiration*, 87 THE ABA JOURNAL 80 (April 2001).  (Amiram Elwork and Mark R. Siwik, SUCCESS BRIEFS FOR LAWYERS:  INSPIRATIONAL INSIGHTS ON HOW TO SUCCEED AT LAW AND LIFE) (The Vorkell Group, 2001).

- *Construction Defects and Liability Insurance,* 13 ENVT'L CLAIMS J. 133 (Autumn 2000).  (Patrick J. Wielinski, INSURANCE FOR DEFECTIVE CONSTRUCTION:  BEYOND BROAD FORM PROPERTY DAMAGE COVERAGE) (International Risk Management Institute, Inc., 2000).

- *Contexts Are (Almost) Everything:  A Bobo-esque Essaylike Review*, 12 ENVT'L CLAIMS J. 149 (Summer 2000).  (David Brooks, BOBOS IN PARADISE: THE NEW UPPER CLASS AND HOW THEY GOT THERE) (New York:  Simon & Schuster, 2000).

- *Environmental Responsibility:  The Once, Present, and Future Problem*, 12 ENVT'L CLAIMS J. 205 (Spring 2000).  (Richard N. L. Andrews, MANAGING THE ENVIRONMENT, MANAGING OURSELVES:  THE HISTORY OF AMERICAN ENVIRONMENTAL POLICY) (New Haven:  Yale University Press, 1999).

- *Loathing Lying Lawyers,* 12 ENVT'L CLAIMS J. 117 (Winter 2000).  (Arthur Isak Applbaum, ETHICS FOR ADVERSARIES:  THE MORALITY OF ROLES IN PUBLIC AND PROFESSIONAL LIFE  (Princeton University Press, Princeton, N.J. 1999).

- *Lead Poisoning Litigation*, 12 ENVT'L CLAIMS J. 77 (Autumn 1999).  (Paul J. Bottari and Michael L. Bulhosa, A COMPLETE GUIDE TO LEAD PAINT POISONING LITIGATION, (ABA:  TIPS, 1998).)

- *Reality Bites*, 15 TEXAS LAWYER 63 (January 31, 2000).  Reviewing Steven Keeva, TRANSFORMING PRACTICES: FINDING JOY AND SATISFACTION IN THE LEGAL LIFE (ABA Publication 1999).  (Keeva is a senior editor at THE ABA JOURNAL, and this book is published by the ABA.)

- *Promises, Contracts, Remorse and Regrets*, 11 ENVT'L CLAIMS J. 117 (Summer 1999).  (This essay reviews a volume of contract jurisprudence.  E. Allan Farnsworth, CHANGING YOUR MIND:  THE LAW OF REGRETTED DECISIONS (New Haven:  Yale University Press, 1998).)

- *Power, Sex, Money, and Fame*, 11 ENVT'L CLAIMS J. 111 (Spring 1999).  (This essay reviews a popular lawyer novel.  John Grisham, THE TESTAMENT (New York:  Doubleday, 1999).)

- *Lives Lawyers Lead*, 11 ENVT'L CLAIMS J. 2 (Winter 1999).  (This essay reviews two books:  Arthur L. Liman, LAWYER:  A LIFE OF COUNSEL AND CONTROVERSY (New York:  Public Affairs, 1998) and Cameron Stracher, DOUBLE BILLING:  A YOUNG LAWYER'S TALE OF GREED, SEX, LIES, AND THE PURSUIT OF A SWIVEL CHAIR (New York:  William Morrow & Company, Inc., 1998.  Both of these books are autobiographical studies of lawyers.)

- *Legal Fees and Legal Audits*, 11 ENVT'L CLAIMS J. 1 (Autumn 1998).  (This review discusses Macklin Fleming, LAWYERS, MONEY, AND SUCCESS:  THE CONSEQUENCES OF DOLLAR OBSESSION (Westport, Connecticut:  Quorum Books, 1998).)

- *Drunk Driving, Pollution, and Insurance,* 10 ENVT'L CLAIMS J. 173 (Summer 1998.)  (This review discusses David Lebedoff, CLEANING UP:  THE STORY BEHIND THE BIGGEST LEGAL BONANZA OF OUR TIME (New York:  Free Press, 1998.  It is an account of the *Exxon Valdez* oil spill.)

- *Book Review:* THE ECONOMICS OF A DISASTER: THE *EXXON VALDEZ* OIL SPILL, 29 JOURNAL OF MARITIME LAW AND COMMERCE 1 (January 1998). (Bruce M. Owen, David A. Argue, Harold F. Furchtgott-Roth, Gloria J. Hurdle & Gail Mosteller are the authors of this book which was published by Quorum Books in 1995).

- *Attorneys' Fees and Lawyers' Billings: A Tale of Emperors= Old Clothes,* 10 ENVT'L CLAIMS J. 131 (1997). (This review discusses William G. Ross, THE HONEST HOUR: THE ETHICS OF TIME-BASED BILLING BY ATTORNEYS (Durham, N.Carolina: Carolina Academic Press, 1996). )

- *Insurance and the Long View,* 9 ENVT'L CLAIMS J. 159 (1997). (This review discusses two books: Richard C.J. Sommerville, THE FORGIVING AIR: UNDERSTANDING ENVIRONMENTAL CHANGE (Berkeley: University of California Press, 1996) and John M. Barry, RISING TIDE: THE GREAT MISSISSIPPI FLOOD OF 1927 AND HOW IT CHANGED AMERICA (New York: Simon & Schuster, 1997).

- *Teratology, Toxicity, and Torts,* 9 ENVT'L CLAIMS J. 129 (1997). (This review discussed two books and a case: Michael D. Green, BENDECTIN AND BIRTH DEFECTS: THE CHALLENGES OF MASS TOXIC SUBSTANCES LITIGATION (1996); Marsha Angell, SCIENCE ON TRIAL: THE CLASH OF MEDICAL EVIDENCE AND THE LAW IN THE BREAST IMPLANT CASE (1996); *Hall v. Baxter Health Care Corp.,* 947 F. Supp. 1387 (D. Ore. 1996).)

- *The Paradoxical Perversity of Nearly Everything,* 9 ENVT'L CLAIMS J. 147 (1997). (This review discussed Edward Tenner, WHY THINGS BITE BACK: TECHNOLOGY AND THE REVENGE OF UNINTENDED CONSEQUENCES (New York: Knopf 1996).)

- *One Hell of a Book,* 9 ENVT'L CLAIMS J. 165 (1996). (This review discussed Jonathan Harr, A CIVIL ACTION (New York: Random House 1995).)

- *Forests, Philosophy, and Forensics,* 8 ENVT'L CLAIMS J. 139 (1996). (This review considered Alton Chase, IN A DARK WOOD: THE FIGHT OVER FORESTS AND THE RISING TYRANNY OF ECOLOGY (Boston: g14 Houghton Mifflin, 1995).)

- *Risk, Disease, and Democracy,* 8 ENVT'L CLAIMS J. 169 (Spring 1996) (This review considered Aaron Wildavsky, BUT IS IT TRUE? A CITIZEN'S GUIDE TO ENVIRONMENTAL HEALTH AND SAFETY ISSUES (Oxford University Press, 1995).)

- *Environmentalism, 'Environmental Justice,' and the Uses of History,* 8 ENVT'L CLAIMS J. 161 (Winter 1995/96). (A review of three books touching problems of, so-called, environmental justice. The review raises insurance issues.)

- *"Ecorealism": Principles, Problems, and Paradoxes,* a review of Easterbrook, A MOMENT ON THE EARTH: THE COMING AGE OF ENVIRONMENTAL OPTIMISM, 8 ENVT'L CLAIMS J. 169 (1995).

- *All Letter, Little Spirit* -- Two Reviews: Phillip K. Howard, THE DEATH OF COMMON SENSE (1995) and Mary Ann Glendon, A NATION UNDER LAWYERS (1995). DALLAS MORNING NEWS 8J (March 12, 1995).

- *Book Review:* Alan Dershowitz, THE BEST DEFENSE, DALLAS MORNING NEWS 14A (Friday, July 16, 1982).

- *Book Review:* Charles Fried, CONTRACT AS PROMISE, 35 Sw. L.J. 1125 (1982). (This journal is now called the SMU L.Rev.)

- *Book Review:* Bruce A. Ackerman, SOCIAL JUSTICE IN THE LIBERAL STATE, 3 LONE STAR REV. [Book Supplement from the Sunday DALLAS TIMES HERALD] 9 (December 1980).

- *Book Review:* Betnun, HOUSING FINANCE AGENCIES: COMPARISON BETWEEN STATES AND HUD, 12 URBAN LAWYER 400 (1980).

- *Book Review:* Strom, Ed., LAND USE AND ENVIRONMENTAL LAW REVIEW (1978), 12 URBAN LAWYER 210 (1980).

- *Book Review:* Altschuler, Womack & Pucher, THE URBAN TRANSPORTATION SYSTEM, 12 URBAN LAWYER 213 (1980).

- *Book Review:* Helliwell, Ed., URBAN STORM DRAINAGE, 11 URBAN LAWYER 774 (1979).

- *Book Review:* Weisbrod, Ed., PUBLIC INTEREST LAW, 11 URBAN LAWYER 192 (1979).

- *Background Analysis of Race Litigation,* 62 SOUTHWEST REV. 419 (Autumn 1977).  (This was a review of Richard Kluger, SIMPLE JUSTICE: THE HISTORY OF *BROWN V. BOARD OF EDUCATION* AND BLACK AMERICA'S STRUGGLE FOR EQUALITY.  New York: Alfred A. Knopf, 1977).

## Very Short Stuff - Title Sometimes Altered for Length Reduction

- *Duty to Defend/Business Pursuit Exclusion: Implications and Inferences Matter,* 27 INS. LITIG. RPTR. 225 (March 15, 2005).  (Texas law: *Allstate Ins. Co. v. Hallman,* ___ S.W.3d ___, 2005 WL 563110 (Tex. March 11, 2005).

- *Life Insurance Agents Do Not Have a Duty to Investigate Possible Changes in the Health of Applicants,* 27 INS. LITIG. RPTR. 221 (March 31, 2005) (Texas law: *Banner Life Ins. Co. v. Pacheco)*___ S.W.3d ___, 2005 WL 43438 (Tex. App.-Houston [14th Dist.] 2005).

- *Reasonable Expectations of Policyholders Even Unambiguous Policy Language Under Pennsylvania Law,* 27 INS. LITIG. RPTR. 185 (March 15, 2005).

- *Policyholder's Refusal to Take EUO May Defeat Coverage Even If Insurer Not Prejudiced,* 27 INS. LITIG. RPTR. 178 (March 15, 2005).

- *Texas Public Insurance Policy and Punitive Damages,* 27 INS. LITIG. RPTR. 113 (February 28, 2005) (the title focuses on the high publicity issue in the case.  There was also another issue concerning whether a policy limits settlement demand was made.).

- *Disability Insurance and the Definition of "Total Disability,"* 27 INS. LITIG. RPTR. 93 (February 28, 2005) (Minnesota law).

- *Disability Insurer Investigations of Claimants Required Notice,* 27 INS. LITIG. RPTR. 89 (February 28, 2005) (Colorado law).

- *Agents, Surety Vendors, and Statutory Bad Faith Damages,* 27 INS. LITIG. RPTR. 88 (February 28,2005).

- *Independent Adjuster Liability to an Insurer,* 27 INS. LITIG. RPTR. 87 (February 28, 2005).  (Texas Supreme Court).

- *"Like Kind and Quality":  Meaning Of,* 27 INS. LITIG. RPTR. 61 (January 28, 2005).  (*Republic Underwriting Ins. Co. v. Mex-Tex Inc.,* 150 S.W.3d 423 (Tex. 2004)

- *Texas Dwelling Policy, The "Ensuing Loss" Clause and Mold,* 27 INS. LITIG. RPTR. 58 (January 28, 2005).

- *Liability Insurers Utilizing Employees as Defense Counsel for Insureds,* 27 INS. LITIG. RPTR. 49 (January 28, 2005).

- *Dual Agents/"Broker-Agents" and California Statutes,* 26 INS. LITIG. RPTR. 713 (December 3, 2004).

- *Rescission, Claim Denial, Misrepresentations in Application,* 26 INS. LITIG. RPTR. 730 (December 3, 2004). Here, an insurance agent filled out the application and was alleged to be responsible for the misrepresentations.

- *Vendors Endorsements:  Doctors As Insured Vendors,* 26 INS. LITIG. RPTR. 733 (December 3, 2004).

- *Vendors Endorsements: Display Item Causes Injury at Retailer,* 26 INS. LITIG. RPTR. 734 (December 3, 2004).

- *Insurer-Principal Is Fiduciary of Broker-Agent,* 26 INS. LITIG. RPTR. 664 (November 17, 2004).

- *Insurance Agent Customers and Malpractice,* 26 INS. LITIG. RPTR. 606 (October 28, 2004).

- *Ambiguities in Insurance Documents and Reasonable Expectations,* 26 INS. LITIG. RPTR. 574 (October 13, 2004).

- *Insurance Agents and General (Not Particular) Instructions from Customers,* 26 INS. LITIG. RPTR. 556 (October 13, 2004).

- *Insurer Entitled to Summary Judgment in Managing General Agent Case,* 26 INS. LITIG. RPTR. 555 (October 13, 2004).

- *Agents & Brokers Have No Duty to Investigate,* 26 INS. LITIG. RPTR. 554 (October 13, 2004).

- *Federal Rule 12(b)(6) Motion to Dismiss "Malpractice" Suit Against Broker,* 26 INS. LITIG. RPTR. 521 (September 29, 2004).

- *ERISA Does Not Preempt State Law Providing Basis for Suing Insurance Agents,* 26 INS. LITIG. RPTR. 519 (September 29, 2004).

- *Assignability of Claims for Professional Negligence Against an Insurance Brokerage Firm,* 26 INS. LITIG. RPTR. 517 (September 29, 2004) (Arizona case).

- *Reinsurance: Retrocession Reinsurance Sold by Broker . . . . ,* 26 INS. LITIG. RPTR. 471 (Late August 2004).

- *Insurance Broker's Representations . . . ,* 26 INS. LITIG. RPTR. 457 (Late August 2004).

- *When an Insured Requests a Defense From a Liability Insurer. . . . ,* 26 INS. LITIG. RPTR. 435 (August 9, 2004) (Texas Supreme Court: *Davalos*).

- *Under Texas Law, Exclusion for Bodily Injury "Due to . . . ,"* 26 INS. LITIG. RPTR. 448 (August 9, 2004). ("Professional Services" Exclusion/*Utica National*).

- *Cancellation: Insurer Must Actually Receive Notice of Cancellation from Premium Finance Company Before Cancellation Can Become Effective,* 25 INS. LITIG. RPTR. 311 (May 31, 2003).

- *ERISA/Managed Care: ERISA Does Not Preempt Medical Malpractice Cases Against HMO,* 25 INS. LITIG. RPTR. 316 (May 31, 2003).

- *ERISA/Managed Care: ERISA Preempts Medical Malpractice Claims Against Health Plan and Its Advisors,* 25 INS. LITIG. RPTR. 318 (May 31, 2003).

- *Duty to Defend: Liability Insurer Owes Insured Duty of Reasonable Care in Providing a Defense, Even Though Insurer Is Not Vicariously Liable for the Misconduct of the Lawyer It Hires to Defend Insured; Insured's Lost Profits Are Compensable Damages for Breach of Duty,* 25 INS. LITIG RPTR. 283 (May 16, 2003).

- *ERISA/Managed Care: ERISA Does Not Preempt State AAny Willing Provider@ Statutes,* 25 INS. LITIG RPTR. 287 (May 16, 2003).

- *Pollution Exclusion/Notice: Federal District Court Analyzes Whether Insured Met Burden of Proving Sudden and Accidental Pollution Discharges within Exception to the Pollution Exclusion under Michigan Law,* 25 INS. LITIG RPTR. 247 (April 10, 2003).

- *Insurance Counsel: Counsel for Insurers May Be Held Liable for Misrepresentation in Dealing with Someone Who Has Obtained Judgment against an Insured,* 25 INS. LITIG. RPTR. 235 (April 10, 2003).

- *Excess Insurance: Wrongful Failure to Defend By a Primary Carrier Does not Automatically Trigger a Duty to Defend for an Excess Carrier,* 25 INS. LITIG. RPTR. 232 (April 10, 2003).

- *Agents and Brokers: Insurance Agent Broker Can Be Liable If Negligent in Selecting Carrier,* 25 INS. LITIG RPTR. 219 (April 10, 2003).

- *CGL Insurer May Owe Duty to Defend for Car Wreck,* 24 INS. LITIG RPTR. 620 (October 15, 2002).

- *Negligent Adjustment Does Not Warrant Punitive Damages,* 24 INS. LITIG RPTR. 608 (October 15, 2002).

- *Credit Liability Insurer Liable for Bad Faith in Punitive Damages,* 24 INS. LITIG RPTR. 513 (September 20, 2002).

Resume

- *Liability Insurance/Intentional Acts,* 24 INS. LITIG. RPTR. 398 (July 10, 2002).

- *Liability Insurance/Intentional Acts,* 24 INS. LITIG. RPTR. 395 (July 10, 2002).

- *Bad Faith/Duty to Settle,* 24 INS. LITIG. RPTR. 299 (June 1, 2002).

- *Bad Faith/Delay,* 24 INS. LITIG. RPTR. 297 (June 1, 2002).

- *Comment* [on DiMugno on a vendor endorsement case], 24 INS. LITIG. RPTR. 156 (March 8, 2002).

- *"First Publication" Exclusion Applies Only Where Publications Prior to the Policy Period Cause Injury Identical to the Latter Publication,* 24 INS. LITIG. RPTR. 149 (March 8, 2002).

- *Patent Infringement in the Digital Circuitry of a Coin-Operated Video Game Constitutes Neither "Piracy" Nor "Advertising Injury" under Coverage B,* 24 INS. LITIG. RPTR. 140 (March 8, 2002).

- *Liability Insurance/Intentional Harm,* 23 INS. LITIG. RPTR. 680 (December 20, 2001).

- *Bad Faith/Uninsured Motorist Coverage,* 23 INS. LITIG. RPTR. 670 (December 20, 2001).

- *Bad Faith/Duty to Settle,* 23 INS. LITIG. RPTR. 667 (December 20, 2001)

- *Cyber Liability Insurance,* 21 LICENSING J. 25 (November/December 2001).

- *Agents & Brokers/Bad Faith,* 23 INS. LITIG. RPTR.. 360 (August 2001).

- *Bad Faith/Evidence,* 23 INS. LITIG. RPTR.. 364 (August 2001).

- *Bad Faith/Workers Compensation,* 23 INS. LITIG. RPTR.. 370 (August 2001).

- *[Expert] Testimony Usurped Role of Both Judge and Jury,* 23 INS. LITIG. RPTR.. 191 (June 2001).

- *Malpractice Claim Against Lawyer Rejected,* 23 INS. LITIG. RPTR. 187 (June 2001).

- *Software Coverage,* 21 LICENSING J. 30 (May 2001).

- *Commercial General Liability, Coverage B: Redux,* 21 LICENSING J. 23 (April 2001).

- *Trade Secret Misappropriation Liability Insurance,* 21 LICENSING J. 26 (March 2001).

- *Bad Faith: Credit Life Premiums,* 23 INS. LITIG. RPTR. 54 (March 1, 2001).

- *Intellectual Property Insurance,* 21 LICENSING J. 31 (February 2001).

- *Insurance for Cyber Liabilities,* 21 LICENSING J. 34 (January 2001).

- *Grievance Defense and Adversariality,* 1 TLIE LEGAL MALPRACTICE ADVISORY 1 (2001).

- *Advertising Injury Insurance,* 20 LICENSING J. 31 (November/December 2000).

- *Procrastination Plus Underestimates Produce Bad Faith,* 16 BAD FAITH L. RPTR. 244 (December 2000).

- *Liability Insurer Not Liable for Negligence Spoliation,* 16 BAD FAITH L. RPTR. 243 (December 2000).

- *Failure of Credit Life Insurer to Return Unearned Premium Promptly Not Tortious in the Absence of Conspiracy,* 16 BAD FAITH LAW RPTR. 200 (October-November 2000).

- *Liability Insurance and High-Tech Industries,* 20 LICENSING J. 26 (October 2000).

- *Comments of the Chair,* 2 J. OF TEX. INS. L. 1 (2000). (This is a squib of no substantive interest. It is recorded here for Rule 26-type reasons.)

- *Even if Prejudgment Interest On Tort Claims Is Statutory, Insurer Obligations to Pay It Are Contractual*, 16 BAD FAITH L. RPTR. 175 (August-September 2000).

- *Hospital's Billing Agent Can Sue Insurer That Denied Claims for Tortiously Interfering with Agency Agreement*, 16 BAD FAITH L. RPTR. 167 (August-September 2000).

- *Even a Reasonable Basis to Deny Claim Will Not Prevent Bad Faith Liability If Insurer Fails to Identify that Basis Before Denial*, 16 BAD FAITH L. RPTR. 163 (August-September 2000). Written with William T. Barker.

- *Conduct by Excess Carrier Before Primary Carrier Tendered Policy Limits Not Admissible to Show Excess Carrier Was Negligent Unless Conduct Damaged Insured's Defense*, 16 BAD FAITH L. RPTR 156 (August-September 2000). Written with Stephen Pate.

- *A Reservation of Rights Is Not Always Enough To Preserve Coverage Defenses*, 16 BAD FAITH L. RPTR. 89 (May 2000).

- *Where Insured and Insurer Understood Warranty Differently, [The insured] Did Not Breach Warranty, But Insurer Was Not Unreasonable in Thinking She Had*, 16 BAD FAITH L. RPTR. 83 (April 2000).

- *Where Policy Govern By New York Law, That Law also Govern Breach of Duty to Settle Claim for Kansas Accident*, 16 BAD FAITH L. RPTR. 56 (March 2000).

- *Statutory Prohibition on Insurer Specification of Parts to Be Used in Repair or of Shop to Make Repair Did Not Require Insurer to Pay for OEM Parts*, 16 BAD FAITH L.RPTR. 54 (March 2000).

- *The Lies Firm Recruiters Tell*, 12 TEXAS LAWYER 13 (December 9, 1996).

**Speeches & Lectures**   (The abbreviation "TDI/ICE" means that the Texas Department of Insurance awards continuing education credit to insurance professionals for this function.) (A number of these speeches have been videotaped, and some special videotapes have been prepared on legal ethics by the Texas Center for Legal Ethics.)

- *Legal Practicality Versus (?) Abstract Theories of Law: Edwards v. Levinson*, UT LAW SCHOOL: RICHARD MARKOVITZ'S SENIOR SEMINAR (April 26, 2005 - 1¼ hours). Some focus on moral philosophy and fiduciary duties.

- *A Successive Conflict Problem*, HOUSTON BENCH & BAR CONFERENCE (Galveston, Saturday, April 23, 2005). The panel discussion was called "Ethics Potpourri." My specific conflict problem was this: $L_1$ represents only $D_1$ on paper in a large case with many defendants. However, $L_1$ does significant central work for $D_2 ... D_n$ (i.e., all defendants) in the same case, as part of an informal joint defense arrangement. Can $L_1$ represent $L_5$ against his named client, $D_5$, in a subsequent suit where $L_5$ is trying to recover fees from the original big suit. $L_5$ hires $L_1$ because of his extensive knowledge of the underlying case.

- *Expert Testimony in Property Insurance Cases: An Only Mostly Abstract Discussion*, A.B.A. Tort Trial & Insurance Practice Section (Property Insurance): Symposium on Experts and Ethics (April 14-16, 2005-San Antonio). My speech concerned expert witnesses in property insurance cases resulting from fire. I discussed *Daubert, Kumho, Tire,* and NFBA 921 (This book is a source important in fire testimony. It is entitled GUIDE FOR FIRE AND EXPLOSION INVESTIGATIONS (2004 Edition).) The speech lasted about 45".

- *The Duty to Defend: Texas History, Fifth Circuit History, and the Meaning of Hallman.* COOPER & SCULLY CONTINUING EDUCATION SEMINAR (April 1, 2005). These were two hour-long panel discussions for adjusters. Approximately 300, or so, attended this seminar in Dallas. Three Cooper & Scully lawyers were also on the panel.

- *Depositions of Adjustment Fact & Expert Witnesses (Including Many Adjusters Themselves) in Insurance Cases*, State Bar of Texas, SECOND ANNUAL ADVANCED INSURANCE LAW COURSE, Ch. 11 (Dallas, March 31, 2005).

- *Ensuing Loss Debate*, SOUTH TEXAS COLLEGE OF LAW, TEXAS INSURANCE LAW SYMPOSIUM (January 27, 2005). The participants in this one hour speech were William J. Chriss and Michael Sean Quinn.

- *Disability Insurance: An Elaborate Introduction and Some Other Reflections*, ABA/TIPS: LIFE, HEALTH, AND DISABILITY INSURANCE (January 14, 2005). (The paper was not the speech. Instead I gave a 20-minute speech on desirable qualities in expert witnesses in bad faith matters. I emphasized the role of the sociology of insurance ethics in testifying on bad faith topics. I also participated as "Mr. Witness" in a sample deposition performance. The entire presentation was two hours in length. Evan Koch was junior author on the long paper distributed by the ABA on a CD, not paper.)

- *Disability Insurance: An Elementary and "Puristical" Introduction*, THE UNIVERSITY OF TEXAS SCHOOL OF LAW 9TH ANNUAL INSURANCE LAW INSTITUTE. (This speech was given on November 12th, 2004. It was a short speech but a long paper. The former was 30-minutes, the latter was 110+ pages. Evan Koch helped with the research and writing. In the morning I chaired the session.)

- *The 75th Birthday of Stowers*, THE UNIVERSITY OF TEXAS SCHOOL OF LAW 9TH ANNUAL INSURANCE LAW INSTITUTE (November 11, 2004 luncheon speech). The speakers were Vincent E. Morgan and Michael Sean Quinn. (This is a historical treatment of the times and players in the *Stowers* decision from 1929. The original idea was that of Vince Morgan, and he did most of the work. I helped out with some research and some writing. He was probably also the lead speaker. I mostly talked about the little-known (or hitherto unknown) dissent and its jurisprudential significance. The speech lasted about 45 minutes. This paper and the joint presentation was given a second time at the STATE BAR OF TEXAS SECOND ANNUAL ADVANCED INSURANCE LAW COURSE (August 1, 2004, a luncheon speech). It was preceeded by a short *Keynote Address* given by Quinn in response to receiving an honor.

- *Happiness, Unhappiness, and Legal Professionalism*, THE NOBLE LAWYER: ETHICS, FULFILLMENT, AND SUCCESS (1) (Houston, October 7, 2004). I was also the Chair of the Houston symposium, since William J. Chriss, its founder and designer was unable to come. I participated from time to time in group discussions and gave *The Eleven Commandments* in the afternoon. The new speech took a bit more than an hour, as did the old one. (2) Done again (Austin, December 1, 2004). I made the same two ethical presentations but did not otherwise participate. I also designed the notebook.

- *The Eleven Commandments of Professional Responsibility (The Briefer Version Revised)*, 2004 FARM CREDIT SYSTEM ATTORNEYS CONFERENCE (October 4, 2004). Evan Koch is co-author of the paper. This speech was 1 ½ hours long, or so.

- *Damages in Suits Against Lawyers: Several Recent Developments*, THE UNIVERSITY OF TEXAS SCHOOL OF LAW THE DAMAGES INSTITUTE (Dallas: October 1, 2004 & Houston: October 14, 2004). Olga Seelig was co-author of this paper. A new paper consisting of 49 pages was distributed. Both the Dallas and the Houston speeches were a ½ hour long, or so, although the Houston delivery was somewhat better than the Dallas delivery, even though the Dallas version better covered the implications of *Alexander v. Turtur*.

- *The Eleven Commandments of Professional Responsibility (The Briefer Version Revised)*, THE UNIVERSITY OF TEXAS M.D. ANDERSON CANCER CENTER, THE UNIVERSITY OF TEXAS SYSTEM 4TH ANNUAL LEGAL CONFERENCE (October 1, 2004). Evan Koch is co-author of the paper. (A relatively updated but shortened version of the longer paper was used. It is 134 pages long. The hour-long speech was for the General Counsel's Office(s); many of the lawyers work in the medical divisions.)

- *Conflicts and Ethical Issues in Partnership Transactions*, THE UNIVERSITY OF TEXAS SCHOOL OF LAW CURRENT ISSUES AFFECTING PARTNERSHIPS, LIMITED PARTNERSHIPS, AND LIMITED LIABILITY COMPANIES (July 16, 2004). (Evan Koch was co-author of the paper.) UT is sponsoring a video version of this course in August. Evan Koch and I have revised the paper-part outline to make it a little better, we hope.

- *Civil Liability of Lawyers*, Video, approximately 1.0+ hours. (University of Texas School of Law CLE, May 6, 2004.) (There was no audience. This was a video only. There is somehow connected to this video a similar version of *The Eleven Commandments*. I recorded these at UT's request at UT itself in the first quarter of 2004.)

- *Agents, Lawyers and Duality*, THE UNIVERSITY OF TEXAS SCHOOL OF LAW THE LEASING INSTITUTE (April 1, 2004). (Evan Koch was co-author of the paper.)(The paper was a short summary of the rules governing the responsibility of agents to principals, plus some quoted material on negotiation. The argument of the 45" speech concerned several things: Should lawyers really be through of as agents, through and through, given their independence, the way agency is distinguished from being an independent contractor, and the allocation of responsibility between lawyers and clients? What limits are there on dual representations given the

*utmostness* and *solely* elements integral to fiduciary duties? And how can lawyers structure a role as an intermediary between clients given the *best interest* component built into Rule 1.07?)

- *The Eleven Commandments of Legal Ethics,* THE UNIVERSITY OF TEXAS SCHOOL OF LAW 30TH ANNUAL ERNEST E. SMITH OIL, GAS & MINERAL LAW INSTITUTE (March 26, 2004). (In this talk I focused on the problems of lawyers doing business with clients, although that was embedded in a more general talk. To some degree my talk focused on Rule 1.08. Evan Koch assisted in the preparation of the outline.)

- *The Eleven Commandments of Legal Ethics,* THE UNIVERSITY OF TEXAS SCHOOL OF LAW 26TH ANNUAL CORPORATE COUNSEL INSTITUTE in Houston (March 26, 2004). (In this talk, I focused on Rules 1012 and 1.06 of the Texas Rules, especially as they affect corporate counsel. Evan Koch assisted in the preparation of the outline.)

- *Panelist: The Insurer Agrees to Defend, But Who Picks [and Controls] the [Defense] Lawyer?* TEXAS BAR CLE ADVANCED INSURANCE LAW COURSE 2004 (March 25, 2004). (The panel consisted of Elizabeth Gilday and Ernest Martin, Jr. in addition to myself. The written seminar material consisted of my paper, *Reserving Rights Rightly* (1997) and a newly revised paper entitled *May Insurance Defense Lawyers Also Represent the Defending Insurers?* Evan Koch participated in preparing this revision. I argued that, contrary to the majority rule, if a liability insurance contract provided that insurers could control the defense, we should be able to do so even if a reservation of rights had been issued. Of course, they would do so at their peril. Ms. Gilday presented a more orthodox position, and Mr. Martin argued that my view was inconsistent with significant Texas law.)

- *Mold and Ethics.* TEXAS BAR CLE MOLD, INSURANCE, AND TORT REFORM UPDATE (March 12, 2004). (Lectured for one hour on the relationship between the law governing lawyers and legal ethics-morals, with reference the extent to which this distinction is hidden but animates the rules of professional conduct.)

- *Counseling in the Gray Areas: Where's the Edge?,* THE UNIVERSITY OF TEXAS SCHOOL OF LAW 6TH ANNUAL TELECOMMUNICATIONS LAW CONFERENCE. (March 12, 2004). (Spoke briefly on the problems of inside counsel created by the law governing lawyers together with the obligations of an officer of a corporation, then a panelist on a legal ethics hypo based on access fees.)

- *The Civil Liability of Lawyers*, THE UNIVERSITY OF TEXAS SCHOOL OF LAW 8TH ANNUAL LAND USE PLANNING LAW CONFERENCE. (March 5, 2004.) This was an hour and a half speech. The paper was a revised version of the briefer, cut down ELEVEN COMMANDMENTS OF LEGAL ETHICS (with Evan Koch).

- *Prompt Performances*, THE UNIVERSITY OF TXAS SCHOOL OF LAW 19TH ANNUAL SCHOOL LAW CONFERENCE (February 27, 2004). This was an hour speech. The paper was a revised version of the briefer, cut down ELEVEN COMMANDMENTS OF LEGAL ETHICS (with Evan Koch).

- *Some Ethical Dimensions of the New Residential Real Estate Construction Commission Act*, TEXAS BAR CLE, THE NEW RESIDENTIAL REAL ESTATE CONSTRUCTION LAW RULES UNDER THE NEW TEXAS RESIDENTIAL CONSTRUCTION COMMISSION ACT. (February 20, 2004). The paper was a revised version of the briefer, cut down ELEVEN COMMANDMENTS OF LEGAL ETHICS (with Evan Koch).

- *The Ethical Dimensions of Eminent Domain Practice: A Dialogic Presentation,* CLE INTERNATIONAL 3RD ANNUAL CONFERENCE! EMINENT DOMAIN TAKINGS, VALUATION AND BEYOND. (February 19, 2004.) The paper was a revised version of the briefer, cut down ELEVEN COMMANDMENTS OF LEGAL ETHICS (with Evan Koch).

- *Extra Expenses*, SOUTH TEXAS COLLEGE OF LAW, TEXAS INSURANCE LAW SYMPOSIUM (January 22-23, 2004). Pamella A. Hopper was the co-author on the paper. (This paper was about an aspect of business income/business interruption coverage.)

- *Buybacks*, THE UNIVERSITY OF TEXAS SCHOOL OF LAW, 8TH ANNUAL INSURANCE LAW INSTITUTE (November 13, 2003). Evan Koch was the co-author of the paper.

- *Ensuing Losses*, THE UNIVERSITY OF TEXAS SCHOOL OF LAW, 8TH ANNUAL INSURANCE LAW INSTITUTE (November 12, 2003). Olga Seelig who was the co-author of the paper presented the speech.

- *Lawyers and Confidentiality: The Fischel Challenge,* AMERICAN CORPORATE COUNSEL ASSOCIATION (SOUTH/CENTRAL TEXAS CHAPTER), 6TH ANNUAL ETHICS CONFERENCE (WHICH HAT TODAY?) (November 6,

2003). (This was a half-day conference held in San Antonio. The other speakers were William Ide and Elizabeth Kefer.)

- *Do Insurance Defense Lawyers Also Represent the Defending Insurers?* STATE BAR OF TEXAS INSURANCE SECTION, Telephone Symposium on "[Legal] Ethics and Insurance Law" (November 4, 2003). The 2 hour teleconference involved the following participants: William Chriss (Moderator), Rusty McMains, David Disere, and me. I contributed the paper listed above. It is an revision and update of a paper earlier published in the J. OF TEX. INS. LAW under a slightly different title.

- *Blasting Caps*, THE UNIVERSITY OF TEXAS SCHOOL OF LAW, 27TH ANNUAL PAGE KEETON PRODUCTS LIABILITY AND PERSONAL INJURY LAW CONFERENCE (October 31, 2003). (This was a 25-minute speech on possible strategies for circumventing or removing caps on punitive-exemplary damages. The caps are provided by § 41 of the Civil Practice and Remedies Code.)

- *Proportionate Responsibility: The New Law*, THE UNIVERSITY OF TEXAS SCHOOL OF LAW, LAW PRACTICE AFTER HB4-WHAT EVERY PRACTITIONER NEEDS TO KNOW (October 10, 2003). (This was a 45 minute speech based upon a paper prepared by Kirk Watson. The speech focused on the new Chapter 33 of the C.P.R.C.)

- *The Eleven Commandments of Professional Responsibility (The Briefer Version),* THE UNIVERSITY OF TEXAS SCHOOL OF LAW, RESIDENTIAL CONSTRUCTION LAW (September 4-5, 2003). (I spoke for 1.5 hours. The paper distributed was a revision of the shorter version of the longer outline.)

- *Do's and Don'ts in the Courtroom—Mistakes Lawyers Make*, STATE BAR OF TEXAS, 26TH ANNUAL ADVANCED CIVIL TRIAL COURSE (August 27, 2003). (I was an invited panelist for a luncheon symposium. Judge Dietz was the Moderator. My assignment was to talk about opening statements and preserving error, especially through offers of proof. This was a quicky. I spoke only for about 15 minutes. I did not distribute a paper.)

- *Statutorily Regulated Offers of Settlement in Texas 2003: A New Day with Some New Problems for Lawyers-- Questions, Quandaries, & Qualms*, THE UNIVERSITY OF TEXAS SCHOOL OF LAW, LAW PRACTICE AFTER HB4 (August 22, 2003). A revised version of this speech was given again in Dallas on September 3, 2003. The paper was slightly revised. Another version with another revision in the paper was given in Houston on September 25, 2003. The speech was given again on October 10, 2003 in McAllen. This speech focused on attorneys' fees. The paper was not revised for the McAllen presentation., though it was substantially revised for the next presentation, since the Supreme Court of Texas published a new Rule 167 on October 9, 2003. That presentation took place in San Antonio on Friday, October 17, 2003. The speech again resolved around attorney's fees, although not solely.

- *Enron & the Exquisite Temptations of the Byzantinely Clever*, SOUTH TEXAS COLLEGE OF LAW, THE ENERGY LAW INSTITUTE FOR ATTORNEYS AND LANDMEN (August 21, 2003). (The handout was an outline which has been evolving over the last year or so. It is now 161 pages single-spaced.)

- *Three Cardinal Virtues of the Ethical Lawyer,* THE UNIVERSITY OF TEXAS SCHOOL OF LAW: ADMINISTRATIVE LAW IN TEXAS, A GUIDE FOR LITIGATORS, BUSINESS LAWYERS, GENERAL PRACTITIONERS AND THE CURIOUS (August 1, 2003). (This was a 2-hour speech; planned to be an hour and a half speech. In addition to an outline of the talk and some cribbed maxims, the paper was quite a lengthy rendition of *The ANALECTS for Texas Lawyers*. This paper is an imaginative reconstruction of the classic text of Confucius, adapted for lawyers in general and Texas lawyers in particular.)

- *Statutory Construction and Administrative Law*, THE UNIVERSITY OF TEXAS SCHOOL OF LAW: ADMINISTRATIVE LAW IN TEXAS, A GUIDE FOR LITIGATORS, BUSINESS LAWYERS, GENERAL PRACTITIONERS AND THE CURIOUS (July 31, 2003). (This was a longish paper and a very short talk. Evan Koch assisted with the preparation of the paper and should be thought of as its co-author.)

- *Enron & Several Temptations of the Byzantinely Clever: New Issues of Partnerships and the Ethical Problems of Business Lawyers*, THE UNIVERSITY OF TEXAS SCHOOL OF LAW: CURRENT ISSUES AFFECTING PARTNERSHIPS, LIMITED PARTNERSHIPS, AND LIMITED LIABILITY COMPANIES (July 18, 2003). (Paper only. The speech was given by Tom Watkins.)

- *The New Texas Offer of Settlement Statute: Ethical and Insurance Implications*. BEFORE THE INK IS DRY - AN INSIDER'S LOOK AT THE NEW TORT AND INSURANCE LEGISLATION (June 19 & 20, 2003). (I did not prepare a discursive paper. Instead I prepared an 8-page double-spaced set of questions for discussion. The presentation was more of a panel discussion than a series of speeches.)

- *Mold and Insurance: The Case of Texas*, LORMAN EDUCATION SERVICES: SOLVING WATER INTRUSION AND MOLD PROBLEMS IN TEXAS (June 5, 2003). (Veronica Carmona Czuchna and Olga Seelig were the co-authors of this outline.)

- *The Legalization of Legal Ethics: Natural Law v. Legal Positivism, Problems and Principles, & Some Helpful Meta-Commandments*, CLE INTERNATIONAL 13TH ANNUAL CONFERENCE! TEXAS WETLANDS (February 10-11, 2003). The paper was a shortened version of THE ELEVEN COMMANDMENTS OF PROFESSIONAL RESPONSIBILITY.

- *Jurisprudence, Legal Ethics, and the Law of Lawyering*, THE UNIVERSITY OF TEXAS SCHOOL OF LAW 7TH ANNUAL CONFERENCE ON LAND USE PLANNING LAW (February 6-7, 2003). The paper was a shortened version of THE ELEVEN COMMANDMENTS OF PROFESSIONAL RESPONSIBILITY. The speech was nearly two hours long. It discussed the interpenetration of law and morals plus it considered The Eleven Commandments.

- *Jurisprudence, Legal Ethics, and the Law of Lawyering*, CLE INTERNATIONAL 2ND ANNUAL EMINENT DOMAIN CONFERENCE (February 6-7, 2003). The paper was a currently shortened version of THE ELEVEN COMMANDMENTS OF PROFESSIONAL RESPONSIBILITY. The speech focused upon a synthesis of ethics and law.

- *Rescission, D&O Insurance, and the Enron Fiasco*, SOUTH TEXAS COLLEGE OF LAW TEXAS INSURANCE LAW SYMPOSIUM (January 31, 2003). I was also the moderator with an hour and a half session on financial insurance.

- *Rescission and Surety Bonds: The Morgan-Chase-Enron Problem*. SOUTH TEXAS COLLEGE OF LAW TEXAS INSURANCE LAW SYMPOSIUM (January 30, 2003). I was a substitute speaker. Someone was called away. I did not write a paper.

- *Client Conflicts: Concurrent and Successive*. CLE INTERNATIONAL 3RD ANNUAL CONFERENCE LAND USE LAW (November 21-22, 2002). The paper distributed was a current shortened version of THE ELEVEN COMMANDMENTS OF PROFESSIONAL RESPONSIBILITY. (This speech focused on one part of one of the commandments and emphasized Texas law.)

- *Temptations of the Byzanetinely Clever: Enron, Andersen, & God Knows Who Else*, UNIVERSITY OF OKLAHOMA COLLEGE OF CONTINUING EDUCATION: EUGENE KUNTZ CONFERENCE ON NATURAL RESOURCES OF LAW & POLICY (November 1, 2002).

- *Lawyerly Madness: The Case of Enron*, UNIVERSITY OF OKLAHOMA LAW SCHOOL (November 1, 2002). This was a law school sponsored lecture to about 250 first-year law students. I think they may have been registered in a course, perhaps entitled "Legal Process.".

- *Successive Conflicts*, THE UNIVERSITY OF TEXAS SCHOOL OF LAW, 11TH ANNUAL ADMIRALTY AND MARITIME LAW INSTITUTE, Houston, Texas (October 18, 2002). (The paper distributed was a revised and shortened version of THE ELEVEN COMMANDMENTS OF PROFESSIONAL RESPONSIBILITY. This speech focused on one part of one of the commandments and emphasized Texas law.)

- *Risk Management by Insurance: The Proper Role of Corporate Counsel*. (October 10, 2002.) This was a one-hour luncheon speech given to the Corporate Counsel Section of the Travis County Bar Association in Austin, Texas.

- Video Presentation: *In-House Counsel, The Law of Lawyering, and Legal Ethics*. (September 20, 2002.) This was a 45-minute presentation at the request of the Office of General Counsel of the University of Texas System. It was to be part of their 2-day CLE program for 2002.

- Luncheon Talk: *Top 10 "Most Important" Texas Insurance Decisions*. THE UNIVERSITY OF TEXAS SCHOOL OF LAW 7TH ANNUAL INSURANCE LAW INSTITUTE, September 6, 2002, San Antonio, Texas. Speakers: Honorable Catharina Haynes and Michael Sean Quinn. I prepared an outline. I couldn't get the announced topic to work, so the outline discussed several topics of a jurisprudential nature I think might be important. Judge Haynes and I discussed a variety of insurance litigation-related matters, before the assembled throng.

- *Legal Ethics*, THE UNIVERSITY OF TEXAS SCHOOL OF LAW 7TH ANNUAL INSURANCE LAW INSTITUTE, September 5, 2002, San Antonio, Texas. A cut-down, slightly amended version of *The Eleven Commandments* was distributed.

- *Effective Deposition Techniques*, THE UNIVERSITY OF TEXAS SCHOOL OF LAW, August 22, 2002, Austin, Texas. This is an all-day CLE course. It involves mostly discursive presentations, a few formal but more informal demonstrations, lots of questions, and a little audience participation in doing mock depositions. William J. Chriss and I usually do it together. I was the principal author of an outline of varying length. There was a second presentation in El Paso on September 19, 2002. The outline was slightly revised. Veronica M. Czuchna presented with Michael Quinn. There was a third presentation in Dallas on September 26, 2002 by William J. Chriss and Michael Quinn. The outline was not revised. The material was resented in Austin on January 24, 2003 by Chriss and Quinn in Austin. The outline revised somewhat. It was presented again in Houston on January 31, 2003 by Quinn and Chriss. The outline was revised again. The next presentation was on August 20, 2003 at UT-Austin-LS. The outline was slightly revised. It was presented again on September 4, 2003 in Dallas. The outline was slightly revised by me again for the Dallas presentation and then yet again for a presentation by William Chriss in Houston on September 26, 2003. I gave the presentation alone in McAllen on October 9, 2003. Will Chriss and I did it together again with a slightly different form in San Antonio on October 16, 2003. It was presented again in Dallas on September 16, 2004 by Quinn, Chriss and a new addition: Vernon Hartline. The outline was revised yet again. At the October 7, 2004 "edition" of this course in Houston, I gave but one hour-long (or so) speechBthe one on "Maxims." Beforehand I revised and expanded slightly the outline. At the December 2, 2004 session, I participated, as usual, more extensively.

- *The Eleven Commandments of Professional Responsibility: With Some Reference to Estate Planning (The Briefer Version)*, THE UNIVERSITY OF TEXAS 4TH ANNUAL INTERMEDIATE ESTATE PLANNING, GUARDIANSHIP AND ELDER LAW CONFERENCE, August 15-16, 2002, Galveston, Texas. (100+ page revised paper provided.)

- *Enron, Andersen, and The Temptations of the Byzantinely Clever*, SOUTH TEXAS COLLEGE OF LAW ENERGY LAW INSTITUTE FOR ATTORNEYS AND LANDMEN, August 15-16, 2002, Houston, Texas. (Updated outline provided.)

- *Insurance Bad Faith and the Attorney-Client Privilege: Waiver and Exception/Process and Stasis*, AMERICAN BAR ASSOCIATION 2002 ANNUAL MEETING, August 8-10, 2002, Washington, D.C. (Part of this paper was written by John S. Torigian. The paper concerned, mainly, two cases: *State Farm v. Lee*, 18 P.3d 1169 (Ariz. 2000) and *Boone v. Vanliner Ins. Co.*, 744 N.E.2d 154 (Ohio 2001). The Quinn-Torigian discussion was a debate about erosions to the attorney-client privilege in the area of insurance bad faith. The paper was included in a booklet created by the TIPS section of the ABA entitled USE IT OR LOSE IT: THE ATTORNEY-CLIENT PRIVILEGE UNDER SIEGE (2002).)

- *Enron and the "Special Purpose Entity": Of Partnerships & Financial Chicanery—"Where Were the Lawyers?"*, THE UNIVERSITY OF TEXAS SCHOOL OF LAW, CURRENT ISSUES AFFECTING PARTNERSHIPS, LIMITED PARTNERSHIPS, AND LIMITED LIABILITY COMPANIES, July 18 & 19, 2002. (I was one member of a three person panel which included William Freivogel and Robert Keatinge. My talk was accompanied by an 83 pp. plus exhibits outline.)

- *Legal Ethics and the Government Lawyer*, THE ATTORNEY GENERAL STATEWIDE CONFERENCE ON CHILD SUPPORT (Dallas--July 17, 2002). This was nearly a 3-hour lecture modeled on the *Eleven Commandments*, to some degree adapted for the problems of the government lawyer. A revised version of that paper was provided.

- *Bankruptcy's Impact on Insurance Cases*, ANNUAL MEETING, INSURANCE SECTION, 2002 STATE BAR OF TEXAS (Dallas--June 14, 2002). The speech focused on the *UNR* case decided in the 7th Circuit, 11 U.S.C. § 524(g) and *Fuller-Austin v. Fireman's Fund*, No. BC 116835, "Statement of Decision," February 26, 2002 (2002 WL 398672). (The last case is a trial court decision. Can neither be reported nor cited in California but which is of cardinal significance, at least for the present.) At the presentation, an updated version of Quinn and Martin, *Insurance in Bankruptcy*, 36 TORT & INS. L. J. 1025 (2001), was distributed, it having been updated by Olga Seelig who was listed as the co-author of the presentation in Dallas.

- *Ethics in Your Lloyd's and Equitas Practice*, LLOYD'S AND EQUITAS 2002, SECOND ANNUAL CONFERENCE (May 14-15, 2002--Chicago, Illinois). This conference was sponsored by the American Bar Association and the Illinois State Bar Association. Michael Flaherty also spoke. In fact, our co-presentation was interactive.

- *Ethics: Multi-Jurisdictional Practice (MJP) of Law*, CORPORATE COUNSEL INSTITUTE (April 26, 2002--Dallas). This conference was sponsored by the University of Texas Law School.

- *Creating the Explosive Enron Implosion: The Semi-Hidden Involvement of Lawyers: Reports, Queries, Conjectures & Provocations* CORPORATE COUNSEL INSTITUTE (April 18, 2002--Houston and April 25, 2002--

Dallas) . This conference was sponsored by the University of Texas Law School. The paper was a 75-pp. outline emphasizing the problems for lawyers and especially for in-house counsel presented by the Enron mess.

- *Insurance Ethics: The Problem of Temptations*, CPCU LOCAL CHAPTER MEETING, Austin, Texas (March 26, 2002). (This was an AEthics Month@ invited presentation.)

- *End-Run and Its Lawyers:  A Cautionary Tale*, TRAVIS COUNTY BAR:  OIL, GAS AND MINERAL LAW SECTION LUNCHEON (March 13, 2002--Austin). This luncheon was sponsored by the State Bar of Texas.

- *The Eleven Commandments of Professional Responsibility:  With Some Reference to Telecommunications (The Briefer Version)*, 4TH ANNUAL TELECOMMUNICATIONS LAW CONFERENCE (March 8, 2002--Galveston). This conference was sponsored by the University of Texas School of Law. The paper was 127 pp. long. Charlene Brownlee at Fulbright & Jaworski was the co-author and co-presenter.

- *Terrorism Exclusions and Specialized Insurance*, SECURITIES REGULATION AND BUSINESS LAW PROBLEMS (February 21, 2002--Galveston). This conference was sponsored by the University of Texas Law School. I placed a 45+ page paper (double spaced) in the conference notebook. It concerned the insurance controversies and litigation following 9/11; it discussed the new ISO terrorism exclusion; and it discussed existing insurance arrangements to deal with terrorist activities, such as terrorism policies, kidnap insurance, and so forth.

- *Land Use Planning, The Law of Lawyering, and Legal Ethics*, 6TH ANNUAL CONFERENCE ON LAND USE PLANNING (February 8, 2002--Austin). This conference was sponsored by the University of Texas Law School. The paper was an updated version of *The Eleven Commandments*. The updating consisted in inserting material on legal ethics and land-use planning. The speech consisted of a discussion of a significant recent Texas case regarding conflicts, public service, and real estate law.

- *Eminent Domain, Imminent Problems, and Emanate Wisdom*, EMINENT DOMAIN CONFERENCE (February 8, 2002--Austin). This conference was sponsored by CLE International. The paper in the seminar notebook was an adapted version of the *Eleven Commandments*. The talk focused mainly on conflicts problems which might arise for lawyers involved in eminent domain proceedings and other problems at the intersection between local government and real estate.

- Moderator [and Provocateur], *Coverage Cafeteria*, THE SOUTH TEXAS INSURANCE LAW SYMPOSIUM (February 1, 2002--Houston, Texas). This symposium was sponsored by South Texas College of Law. (I gave a talk on subrogation, since the designated speaker could not attend, and organized a discussion of various topics which might be raised by insurance litigation which might arise out of the Word Trade Center bombing, e.g., additional insureds, coinsurance, other insurance clauses, plus insurance for construction companies, architects, engineers, and the like.)

- *Lying and Negotiations*, NEGOTIATING LEASES CONFERENCE:  PRACTICAL ADVICE IN A DISTRESSED MARKET (January 28, 2002--Austin). This conference was sponsored by CLE International. The paper in the seminar notebook was a version of *Eleven Commandments* adapted somewhat for real estate issues. The speech--which was more of a dialogue with the group--focused on one of the commandments.

- *Preparing for the Adjuster's Deposition*, MEALEY'S BAD FAITH CONFERENCE 2001. (September 13-14, 2001). (My speech was scheduled to be a 45-minutes speech on the afternoon of September 13. It stretched out some. It might have been right over an hour.)

- *International Mass Tort Coverage Litigation*; CPCU SOCIETY 2001 ANNUAL MEETING (Seattle Washington, October 21, 2001). This was a mock trial involving a coverage issue based upon the Bridgestone-Firestone problem. I participated as counsel for the insurer.

- *Bad Faith and Other Extra-Contractual Liabilities*. I was the moderator of this section which included two other lawyers. I contributed a 100+ paper entitled *Insurance Bad Faith: Principles, Philosophy, and Pragmatics*. (Some parts of the paper had been used and published before. The paper was updated.)

- *Ethical Obligations of Insurance Defense Counsel*. This was an hour-long symposium in which I was a participant with three other lawyers.

- *Disability Insurance: An Elementary Introduction*, 6TH ANNUAL INSURANCE LAW INSTITUTE [presented by the University of Texas--Austin Law School (September 7, 2001)]. (This was a 30 minute speech. I provided a 51-page double spaced paper for inclusion in the course book.)

- Moderator and Symposiast, *Gandy Aftermath*, 6TH ANNUAL INSURANCE LAW INSTITUTE (September 6, 2001). (This was a discussion of the current state of declaratory judgment law in Texas.)

- Participant and Moderator, *Reservation of Rights Workshop*, 6TH ANNUAL INSURANCE LAW INSTITUTE [presented by the University of Texas--Austin Law School] (September 5, 2001).

- "Privileges," STATE BAR OF TEXAS: ADVANCED CIVIL TRIAL COURSE (Dallas) (August 31, 2001 in Dallas, October 5, 2001 (in Houston)).  (I did not prepare the paper.  Alex Albright did.  I just lectured.)

- "The Eleven Commandments of Professional Responsibility: General Principles with Special Reference to Real Estate Transaction Problems," CLE INTERNATIONAL: REAL ESTATE DEVELOPMENT (Austin, August 3, 2001). (This was an hour-long socratic discussion, backed up a 150-page outline adapted for the occasion.)

- "Holdings and Dicta: Some Problems," Dallas Bar Association--Appellate Section (June 21, 2001).  (This was a 45" talk followed by some Q & A and discussion with audience members.)

- Debate, "When Negligence Blindly Assists Deliberateness," Insurance Section: Annual Meeting State Bar of Texas (Thursday, June 14, 2001) in Austin.  (Arguing the affirmative: that those accused of negligence should receive a defense from a liability carrier when someone else is accused of participating deliberately and causing the same injury.  I was opposed by Chris Martin.)

- Panelist, "Is the *Matagorda County* Case Really Bad for Insurers?"  COOPER & SCULLY SYMPOSIUM FOR CLAIMS PEOPLE, March 30, 2001 in Dallas.  (Arguing the negative.)

- "Bankruptcy and Insurance: Does It Change Everything?" ULTIMATE INSURANCE SEMINAR (Dallas, March 29, 2001).  (Brian Martin was the co-author of this 70 pp., small print, double-columned essay.  It is a revision of a previous essay on roughly the same topic.)

- "1998 Coverage B--Personal and Advertising Injury Liability," ABA-LITIGATION-INSURANCE COVERAGE COMMITTEE ANNUAL MID-YEAR PROGRAM (March 8-10, 2001).  (I was a speaker and a panelist on Coverage B.)

- "Duty of Good Faith and Fair Dealing:  Is the Duty to Settle Allocable?" ABA-TIPS, INSURANCE COVERAGE LITIGATION COMMITTEE ANNUAL MID-YEAR PROGRAM (February 22-24, 2001).  (I was originally scheduled to be a panelist, but I could not attend.  The forum was something like a mock mediation and a moot court.  I wrote the problem, *Raging Plants*, and wrote the mock *Mediation Statement* for one of the (fictional) policyholders.)

- "The Eleven Commandments of Professional Responsibility," THE HOUSTON COMMERCIAL FINANCE LAWYERS' FORUM (February, 2001).  (This was a discussion group lasting approximately 1-1/2 hours.  A paper entitled *The Eleven Commandments of Professional Responsibility:  The Semi (Sort Of) Stripped-Down Texas Tease* was distributed.  This is a somewhat shorter version of what has been formerly known as the *Gallimaufry* paper.)

- "Ethics 2000: Revisions for the 21st Century," UT LAW SCHOOL, 23RD ANNUAL CONFERENCE ON SECURITIES REGULATION AND BUSINESS LAW PROBLEMS (February 16, 2001).  This was a 23-page single-spaced paper describing and evaluating some significant portions of the ABA suggested revisions to the MODEL RULES OF PROFESSIONAL CONDUCT.  (The presentation was a 2-hour panel involving Charles "Hank" Still, Amon Burton, Charles Wolfram, and me.)

- Panelist, "Our Lives as Lawyers," TEXAS DISCIPLINARY SYSTEM: LAWYER REGULATION IN TEXAS--2000 STYLE (Austin, November 17, 2000).  Steven Keeva was the luncheon speaker at this conference.  Mark Perlmutter and I served on a reaction panel which lasted about an hour.  The CLE notebook included my squib-review of Keeva's, TRANSFORMATIVE PRACTICES (1999) entitled *Spiritual Lawyering.*)

- "Equity Investments in Clients, Ethical Issues, Malpractice Pitfalls and Current Practices."  5TH ANNUAL PATENT LAW INSTITUTE--University of Texas School of Law (November 16-17, 2000).  The CLE booklet included a 33-page paper entitled *Investments in Clients:  Dangerous Liaisons.*  Matt Baab was the junior author of the paper.  Donald E. Bradley, of Palo Alto, California also participated in this program.  Each of us gave short speeches and then responded to one another.  (A revised version of this paper was included in the

materials provided at the UT Law School, 23RD ANNUAL CONFERENCE ON SECURITIES REGULATION AND BUSINESS LAW PROBLEMS (February 15-16, 2001). It was discussed, to some degree, by the panel and the audience at the 2-hour session on the afternoon of the 16th.)

- Panelist, "Coverage Cafeteria: A Buffet of Hot Coverage Issues," THE TEXAS INSURANCE LAW SYMPOSIUM--SOUTH TEXAS COLLEGE OF LAW (November 9-10, 2000). I presented part of a paper on D&O coverage, which Andrea Levin and I had written. It is partly a revision of a previous paper, and partly new. I also presented coverage issues pertaining to employment law. Other panelists were J. Mark Lawless (CGL: toxic torts), Mark R. Zeidman (CGL: construction), Beth D. Bradley (CGL: advertising liability), and Andrea Levin (D&O: dangers).

- Panelists, "Restore and Respect! The Ethics of the Legal Profession," by St. Edward's University (November 8, 2000) (I was symposist along with Tom Watkins and Judge Jan Patterson).

- "Appellate Paralegal Activities," CAPITAL AREA PARALEGAL ASSOCIATION (October 25, 2000). This was a one-hour noontime speech on how paralegals can be used effectively in appellate advocacy.

- "Role of the Expert Witness in Coverage and Bad Faith Litigation," ANNUAL MEETING OF THE CPCU SOCIETY (October 24, 2000). (This was an afternoon-long program involving a mock trial, in which I appeared as the expert witness for the insurance company and subsequently discussed the trial and coverage problems as part of a panel.)

- "Lying and the Law of Lawyering," 9TH ANNUAL ADMIRALTY AND MARITIME LAW INSTITUTE--University of Texas School of Law (September 21-22, 2000). A 179-page outline entitled THE ELEVEN COMMANDMENTS OF LEGAL ETHICS: A GALLIMAUFRY was distributed to those in attendance as part of the CLE notebook. The speech lasted 45 minutes and concerned only Commandment Two. At some point, Matt Baab became the junior author of this outline.

- "Hard-Nosed Holdings vs. Dizzy Dicta: Appellate Rhetoric and the Rule of Law," 14TH ANNUAL ADVANCED CIVIL APPELLATE PRACTICE COURSE--State Bar of Texas (September 14-15, 2000, Richardson). (The already-published paper *Argument & Authority in Common Law Advocacy and Adjudication*, was included in the CLE notebook. The speech itself concerned the "Holding Theory of Precedent" vs. the "Scalia Theory of Precedent" (a/k/a "The Imperial Theory"), and these ideas were applied to the reasoning in *Grapevine Excavation,, Inc. v. Maryland Lloyds*, 35 S.W.3d 1 (Tex. 2000), a case involving awardability of attorneys' fees in insurance breach of contract cases.

- "Insurance and Bankruptcy," 5TH ANNUAL INSURANCE LAW INSTITUTE--University of Texas School of Law (August 24 - 25, 2000, Austin). An 82-page single-spaced paper with roughly this title was included in the seminar notebook. I chaired the morning session on August 25th.

- "The Eleven Commandments of Legal Ethics," State Bar of Texas sponsored CLE given in person at Sheinfeld, Maley & Kay in Austin and by telephone at Sheinfeld, Maley & Kay in Houston for SMK lawyers and the general legal public. A 130-page outline entitled THE ELEVEN COMMANDMENTS OF LEGAL ETHICS was distributed to all of those in attendance. (May 24, 2000).

- "Liability Claims People: Problems and Temptations In Dealing With Defense Counsel--*Tilley & Traver*," a panel discussion, Cooper & Scully 7th Annual Bad Faith Seminar for Claims People. (Dallas, May 5, 2000). I participated in an hour-long panel discussion with Brent Cooper and Mark Ticer. I also contributed a paper to the seminar notebook. A 38-page paper entitled "Insurance Defense Lawyers, Insurance Adjusters, and the Monica Lewinsky Affair." (TDI/ICE)

- "A Real Joy/Real World," was a two-hour telephone CLE for ethics credits sponsored by the State Bar of Texas. The participants were John McShane, Michael Quinn, Mark Perlmutter, and Steven Keeva, from the American Bar Association in Chicago. The seminar was a discussion of Steven Keeva's book TRANSFORMING PRACTICES (1999). Written material distributed to the seminar participants included a short essay by Quinn entitled, "Spiritual Lawyering."

- "*Stowers* Problems and Rational/Prudent Claims Adjustment," 14th Annual SMK Insurance Program. (Houston: April 27, 2000). This was a program for 750, or so, claims people around Texas. (TDI/ICE).

- "Lawyering By the Numbers: A Workshop on Ethical and Practical Issues Related to Insurer Cost Containment Measures," Texas Tech University School of Law (April 20, 2000). The sponsor was Professor Susan Fortney.

It was designed for law students and the bar. I was the opening speaker. The other participants were Veronica Carmona Czuchna and John Tollefson.

• "Finding Coverage for Very Bad Things," Consumer Law Section of the State Bar of Texas, 9TH ANNUAL ULTIMATE INSURANCE SEMINAR, Dallas, Texas. March 30-31, 2000 (Video Presentation: Houston, Texas, May 4-5, 2000). This was a half-hour lecture on the second day of the conference. The paper is ' U in the seminar notebook, and it is entitled *Criminality, Fortuity, and Insurance*. The paper was 36-pages, single-space, double-column, plus footnotes. (Parts of the paper were drawn from other work.)

• "Ethics Round Table: Tough Issues in Security and Business Law Practice," University of Texas School of Law, 22ND ANNUAL CONFERENCE ON SECURITY REGULATION AND BUSINESS LAW PROBLEM, February 17-18, 2000 (Dallas, Texas). This was an hour-long panel discussion on the second day of the conference involving Richard C. Jones (Managing Partner, Baker & Botts), Larry Schoenbrun (Managing Partner, Gardere & Wynne), Michael W. Tankersley (Bracewell & Patterson), and me. A 150 pp. single-spaced outline, plus an Appendix consisting of Corporate and Securities Hypos was included in the notebook of the conference. (Lee Polson at Sheinfeld, Maley & Kay helped with the hypos.) The title of the outline-paper is "The Eleven Commandments of Professional Responsibility: A Gallimaufrey." (Edition Dated February 11, 2000).

• "The Tort of Negligent Representation by Lawyers," State Bar of Texas--Construction Law Section, 13TH ANNUAL CONSTRUCTION LAW CONFERENCE, February 17-18, 2000 (Houston, Texas). This was a half-hour lecture on the second day of the conference. In the conference brochure, it was entitled "Applings and Dumplings: 'Is' to 'May' and 'Will' to 'Might'." A 25 pp., double-spaced paper was included in the conference notebook. The paper used the straight, as opposed to the cute, title.

• "Liability Insurance: An Introduction," On-Line CLE sponsored by the Law School at the University of Texas--Austin. (This was a four-hour taped lecture. The CLE office intends to divide it into two 2-hour lectures. The first one will be accompanied by some general written material. The second lecture will be accompanied by more specific materials.) Some of the material to accompany the second lecture was written by Veronica Czuchna, and some of it was written by Beth Bradley.

• "Insurer Bad Faith and Other Extra-Contractual Liabilities," The American Law Institute-American Bar Association, INSURANCE COVERAGE IN THE NEW MILLENNIUM (Washington, D.C., January 13-14, 2000).

• "Whom Does the Insurance Defense Lawyer Represent?" The American Law Institute-American Bar Association, INSURANCE COVERAGE IN THE NEW MILLENNIUM (Washington, D.C., January 13-14, 2000).

• "Weird Risks, Strange Policies, and Unusual Insurers: New Dimensions for Helpful Lawyers?" 1999 TEXAS INSURANCE LAW SYMPOSIUM § F, (Houston, Texas, November 11-12, 1999). This was a 45-minute speech on surplus lines insurance in Texas, including materials relating to regulation, policy forms, adjustment practices, and the applicability of bad faith law. It was accompanied by 41 pp. paper and a number of exhibits, including some fairly exotic insurance policies. (Janis Detloff was the co-author of the paper, and gave a substantial portion of the speech. My portion of the speech pertained to the practices, customs and liabilities of insurance intermediaries in the surplus lines market.)

• Panelists: *Traver* and the Problem of Two Masters. 1999 TEXAS INSURANCE LAW SYMPOSIUM, South Texas College of Law (November 11-12, 1999). I was the moderator of this panel and a participant. The other participants were Veronica C. Czuchna, Michael W. Huddleston, and Werner A. Powers. I contributed a foundational paper entitled "The 'Tripartite Relationship' in Texas." This paper was a revision of the paper previously presented to the 22ND ANNUAL ADVANCED CIVIL TRIAL COURSE, STATE BAR OF TEXAS (1999).

• "Faithless Fiduciaries Forfeit Fees," 23RD ANNUAL PAGE KEETON PRODUCTS LIABILITY & PERSONAL INJURY LAW CONFERENCE sponsored by the University of Texas School of Law (October 21-22, 1999, Austin). This was a one-hour speech devoted to *Burrow v. Arce*, 997 S.W.2d 229 (Tex. 1999) and *Arce v. Burrow*, 958 S.W.2d 239 (Tex. Civ. App.--Houston [1st Dist.] 1998, modified). (It was accompanied by an outline of 90+ pages entitled AThe Eleven Commandments of Professional Responsibility: A Gallimaufry.@ This outline is revision and expansion of a similar outline with roughly the same title.)

• "Directors and Officers Liability Insurance," 4TH ANNUAL INSURANCE LAW INSTITUTE--University of Texas School of Law (October 7-8, 1999, Dallas). (A 70-page paper with the same title was included in the seminar notebook. I chaired the morning session on October 7th.)

- Panelist: *The Law of Lawyering, Legal Ethics, and the Immigration Lawyer*, The University of Texas School of Law, 23rd Annual Conference on IMMIGRATION AND NATIONALITY LAW (September 20, 1999). (A paper entitled *The Eleven Commandments of Professional Responsibility for the Immigration Lawyer*) was contributed. I was the senior author; M. Nicole Morrison was the junior author; she made most of the immigration-related contributions. We also solicited and received hypotheticals from Bruce A. Hake.)

- "Defendant-Insureds, Liability Insurers, and Defense Lawyers: Perspective at Individual Insureds: Who Was a Friend and Who is a Foe?" 22ND ANNUAL ADVANCED CIVIL TRIAL COURSE, STATE BAR OF TEXAS, September 3, 1999 (Fort Worth). (A 22-page single-spaced, double-columned paper was included in the course materials. Michael Sean Quinn and Michael J. Crowley were listed as the authors. The materials are to be found at Chapter HH of the course materials.) (Quinn gave a second time on October 1, 1999 in Houston and for a third in San Antonio on November 3, 1999.)

- "Use of Experts: The *Kumho Tire* Revolution," Lorman Educational Services Seminar: *Insurance Bad Faith Claims in Texas*, Dallas, Texas, August 26, 1999. (This was a 1-hour speech mainly concerning practical problems of selecting, monitoring, and credentializing expert witnesses in insurance bad faith cases.) (TDI/ICE)

- "The Eleven Commandments of Professional Responsibility," was a 2-hour lecture given to a small audience at the UT Law School on August 6, 1999. The lecture was videotaped, and the UT CLE office presents it Aon-line@ and at other UT-LS-CLE functions from time to time. Both the lecture and the on-line presentation are accompanied by an 85-page outline.

- "Economic Analysis of Attorney Conflicts of Interest and Confidentiality Rules," June 24, 1999. This was a two and a half hour presentation to some members of the faculty of the Law School of the University of Texas at Austin.

- "Ethical Habitats of Insurance Professionals," National Association of Insurance Women 58th Annual National Convention, June 14-15, 1999, Las Vegas, Nevada. Pamela Richey and I gave this hour-long speech-demonstration three times over two days. The topic was how codes of professional conduct can be used and misused in the depositions of insurance professionals, including agents and brokers. (TDI/ICE)

- "Coverage Disputes in the Context of Bad Faith Including the Legal Problems Created by Unethical Lawyering" presented at the Insurance Law in Texas seminar given by the Lorman Business Center, Inc. in Austin, Texas on May 25, 1999. This hour long lecture mostly concerned the role of lawyers in the insurance claims process. (TDI/CLE)

- "Fortuity and Insurance" was a 45-minute speech concerning how insurance policies capture fortuity in various ways given to a continuing education symposium for 600 or so insurance people sponsored by Sheinfeld, Maley & Kay in Houston, Texas on May 25, 1999. A paper accompanied the talk. (TDI/ICE)

- Panel member. "Key Ethics, Professional Responsibility, and Malpractice Issues for Technology Lawyers" presented at the 12th Annual Computer Law Conference given by the University of Texas School of Law on May 21, 1999. There was give-and-take discussion. I gave a 30-minute lecture on lawyers advertising on the Internet.

- "Insurance: Some New Directions," a thirty minute speech presented to the 21st Annual CORPORATE COUNSEL INSTITUTE sponsored by the University of Texas Law School on April 23, 1999 in Houston, Texas and May 14, 1999 in Dallas, Texas. There was a 29-page bullet-point hand out distributed, with attachments. Janis Detloff, an associate with Sheinfeld, Maley & Kay wrote part of the paper and presented part of the speech.

- "Legal Malpractice: Some New Directions," a one hour speech given to the Dallas Bar Association, Torts and Insurance section, on April 22, 1999. A short handout was distributed.

- "Expert Testimony, No-Evidence Appellate Review, and Insurer Bad Faith," This paper was distributed in typescript to the 11th Annual Meeting of the ABA Section of Litigation Insurance Coverage Litigation Committee Mid-Year Meeting (March 4-6, 1999). No speech following the paper was delivered. However, I gave a ten-minute talk based on part of the paper as part of Panel Discussion on the moral aspects of insurer bad faith, related punitive damages, how those aspects should shape discovery and trial presentation. This talk was given on March 5, 1999.

- "Bugs, Lugs, Slugs and Thugs:  Insurance Aspects of the Y2K Problem--The Legal Dimension," a half-hour lecture at the symposium entitled LITIGATING THE YEAR 2000 ISSUE sponsored by the Review of Litigation of the University of Texas School of Law on February 12, 1999.

- "Y2K and Insurance Coverages."  This was an hour-long invited lecture given at the February 4, 1999 meeting of the Austin Claims Association.  (TDI/ICE)

- "Legal Ethics for the Consumer Lawyer," a half-hour lecture given at the 10th Annual Conference on the Texas Deceptive Trade Practices Act, December 17-18, 1998 in San Antonio, Texas.  This seminar was sponsored by the University of Texas School of Law.  I discussed two cases in some detail:  *Latham v. Castillo*, 36 TEX. S. CT. J. 994 (June 27, 1998) and *State Farm v. Traver*, 997 S.W.2d 229 (Tex. 1998) (opinion subsequently withdrawn and revised).  I also briefly touched upon *Commission for Lawyer Discipline v. Benton*, 41 TEX. S. CT. J. 1250 (July 14, 1998) and *Steinberg v. Am. Nat'l Fire Ins. Co.*, No. 01-97-00913-CV (Tex. App.--Houston [1st Dist.] November 12, 1998).  The speech was accompanied by a 46 page outline entitled "Ten Commandments for Professional Responsibility:  Legal Ethics for the Consumer Lawyer."

- "Human Element of Claims Adjusting," given at the 35th Annual Texas Farm Mutual Seminar, February 1, 1999 in Austin, Texas.  This seminar was sponsored by the Texas Association of Mutual Insurance Companies.  (TDI/ICE)

- "Avoiding the Problems," a 50-minute lecture given at The Ethics Course, Thursday, December 10, 1998 at the South Texas College of Law, Houston, Texas.  (This CLE was sponsored by the Texas Center for Legal Ethics and Professionalism.)

- Panel Member and Moderator, *Restating Who, What & Why* (We gave comments on a speech by Professor Thomas D. Morgan on *The New Restatement: How It Affects You*).  This was part of a program entitled LEGAL ETHICS AND THE BOTTOM LINE, which was put on by the Texas Academy of Advanced Legal Ethics which is somehow part of the Texas Center for Legal Ethics and Professionalism, which--in turn--is somehow connected with the State Bar of Texas.

- "Ethics, Adjusting, and Insurer Bad Faith," was a 3-hour lecture/seminar given to the San Antonio Claims Association on Thursday, October 22, 1998.  Brian Martin also participated.  (TDI/ICE)

- "Denials and Doubts: Getting to No," was an hour-long invited speech given to the Texas Claims Association's state-wide annual meeting held in Austin, Texas on Saturday, October 17, 1998.  (TDI/ICE)

- "Pleading Texas Insurance Cases," was a 45-minute speech given at the 3rd Annual Insurance Law Institute presented by the University of Texas School of Law on September 24-25, 1998 in Austin, Texas.  This speech was accompanied by a 75-page double spaced paper, which was included in the Institute's proceedings.

- Moderator and Participant, Symposium:  "Trial of the Coverage Suit," an hour long panel discussion was part of the 3rd Annual Insurance Law Institute sponsored by the University of Texas School of Law on September 24-25, 1998 in Austin, Texas.

- "The Ten Commandments of Legal Ethics."  This paper was given at the 7th Annual Admiralty and Maritime Law Conference sponsored by the University of Texas School of Law on September 18, 1998.  I spoke for 30 minutes.  The paper in the CLE notebook was a version of ATen Commandments for Professional Responsibility,@ adapted and expanded for maritime and admiralty situations.  The speech, however, was not a review of the paper.  Instead, I discussed *State Farm Mut. Automobile Ins. Co. v. Traver*, 980 S.W.2d 625 (1998), and to a lesser extent, the issues in *Burrows v. Arce*, 997 S.W.2d 229 (Tex. 1998).

- "The Ethical Habitat of Adjusting."  This was two hour long lectures delivered to the National Association of Insurance of Women at their Texas State Council Meeting on September 12, 1998 in Austin, Texas.

- Participant, Symposium:  "Lawsuit Futures:  Identifying and Dealing with Conflicts of Interest."  I provided the paper for this panel discussion.  It was a substantially expanded and updated 55 page version of the outline "Ten Commandments for Professional Responsibility."  It was also adapted to include problems which typically face lawyers in the area of managed healthcare.  This symposium occurred at the Second Annual *Suing and Defending Managed Health Care Providers: Risk, Reward and Liability in Health Care Delivery*.  This CLE Program was sponsored by the University of Texas Law School and given on September 10-11, 1998.

- "Foundation Claims," was a 30-minute speech on *Baladran* given to the Independent Insurance Agents Association of San Antonio, Texas on August 20, 1998. (TDI/ICE)

- "Expert Witnesses in Insurance Bad Faith Cases," a *One Day CLE Course: Bad Faith Litigation Texas,* Dallas, Texas (August 14, 1998). (I spoke for approximately 45 minutes. This CLE course was sponsored by Lorman Educational Services.) (TDI/ICE)

- Moderator and Participant, Symposium: "Conflicts, Defense Council, and Legal Fees," Texas Insurance Law Symposium at South Texas College of Law (somehow affiliated with Texas A&M University, Houston, Texas) July 30 and 31, 1998.

- "Insurer Bad Faith, Expertise, and Appellate Review," was a paper given at the ABA National Meeting for 1998 in Toronto, Canada. It was part of a symposium entitled *Insurance Litigation in the New Millennium,* and it was sponsored by The West Group Presidential CLE Program Track on August 1, 1998. (A 24-page single spaced paper was distributed.)

- "The Advisory Society and the Insurance Intermediary." This invited, half-hour speech was given to a group of Austin insurance agents and brokers on July 15, 1998. It concerned some legal problems facing insurance agents as they not only execute orders but provide advice. (TDI/ICE)

- "Ten Commandments of Professional Responsibility." This was an invited two-hour lecture expounding simple ethical principles which, if followed consistently, would avoid most violations of the laws governing lawyers. The speech was presented to the Computer Law CLE Conference sponsored by the University of Texas on Wednesday, May 13, 1998. The talk was adapted to computer law problems.

- "Conflicts of Interest and Insurance Defense Lawyer." This was a half-hour lecture at a CLE Institute sponsored by the Houston Bar Association on Friday, May 1, 1998. It was entitled "Everything You Need to Know About Insurance Law" and was held at the South Texas College of Law in Houston, Texas. There was a handout. It was an anthology of materials Professor Charles Silver and I prepared, together with the latest edition of ' 215 of the RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS (1998).

- "The Extra Contractual Exposure of Liability Carriers." This was an hour-long lecture given to the San Antonio Claims Association on Wednesday, April 29, 1998. It was part of a two-hour package entitled "Bad Faith Exposures and the Texas Adjuster." Pam Nielson and Brian Martin of Sheinfeld, Maley & Kay gave the other two sections. (TDI/ICE)

- "Layered Coverages and Choice of Law Problems." This was a half-hour lecture at the Ultimate Insurance Seminar sponsored by the Consumer Law Section of the State Bar of Texas on Friday, March 27, 1998. There was an essay in the course book discussing choice of law issues in the context of layered coverage conflicts.

- "Malpractice, Grievance, and Other Exposures of Corporate Counsel." This was an hour-long luncheon lecture to the March 15, 1998 meeting of the Houston Chapter of the American Corporate Counsel Association. There was a handout. A revised version of this lecture was given again on Thursday, March 26, 1998 (in Houston) and on Thursday, April 2, 1998 (in Dallas) at the Corporate Counsel Institute sponsored by the UT Law School CLE office.

- "Of Depositions and Claims People." This was an hour-long interactive speech given to the Austin Claims Association on March 5, 1998. Pam Nielson participated. We distributed an outline and involved the audience by having some of them act as witnesses in "mock" deposition fragments. We gave a second version of this talk to the April 14, 1998 luncheon meeting of the San Antonio Claims Association. We gave it for a third time at a day-long continuing education seminar for claims people sponsored by Sheinfeld, Maley & Kay and held in Houston on April 30, 1998. For this particular occasion we created some snazzy videotapes demonstrating the right way and the wrong way to get deposed, and there was a 10-page handout. (TDI/ICE)

- "The Primary, The Excess, & The Insured: A Stacked Deck or an Oblique Triangle? Some Texas Twists." (This was a 30-minute speech delivered to the Torts & Insurance Practice Section of the American Bar Association on Friday, February 20, 1998 in Scottsdale, Arizona. There was a 60+ page paper which was distributed at the time of the speech. At the same conference I was a co-moderator of a bad faith luncheon discussion group, and I was a moot court judge for a problem involving the use of extrinsic evidence.)

- "Problems in the Tripartite Relationship." This is an approved Texas CLE course offered by CLE Online. I have been an instructor three or four times since 1998, along with others.

- "Insurance Law." This was a day-long course given in Austin on Thursday, January 29, 1998, and in San Antonio on Friday, January 30, 1998. I gave about half the lectures. There was a study book distributed to the students. I wrote approximately 60% of it. (Much of my contribution was drawn from material either already published or designated for publication else where in the near future.) (TDI/ICE)

- "Lawyers and Lawyering:  Principles and Character."  This was a longish speech delivered to the 1997 symposium entitled "The Foundations of Legal Ethics," which was sponsored by The Texas Academy for Advanced Legal Ethics, which is in turn an initiative of The Texas Center for Legal Ethics and Professionalism. The conference lasted two half days and all of the third.  The speech itself was given on Friday, November 14, 1997.  (This was a Alast minute@ affair.  The designated speaker was Edwin J. Delattre, Dean of the School of Education at Boston University, but he was taken ill.)

- "The Ethical Habitat of Adjusters."  This was a speech delivered to the 1997 Insurance Law Institute sponsored by the Law School of the University of Texas at Austin.  This speech was given on Friday, October 10, 1997. I also contributed a paper with the above name; it was 95 pages double-spaced.  At the same program, I was a panelist for a program entitled "Hard-Ball Insurance Litigation," and I was the presiding officer for the opening session.

- "The Nona Byington Case."  Taught a 2-hour ethics CLE seminar for UT-LS faculty members on the above matter.  (July 3, 1997.)  Amon Burton led the way and provided materials.

- "Advance (Client) Consent."  This was a speech delivered to an institute sponsored by the Professional Development office of the State Bar of Texas.  The institute was entitled "Recognizing and Resolving Conflicts of Interest."  I gave the speech live in Houston on May 9, 1997, live in Dallas on May 23, 1997, and it is to be shown by videotape in 38 other locations.  The paper distributed by the institute concerned the Texas Disciplinary Rules, The Model Rules, The Model Code, and the (draft) RESTATEMENT in so far as they pertain to an attorneys obtaining consent--usually, the consent of the client--as a way of defeating prima facie prohibitions.  In addition, the paper discussed several Texas Supreme Court cases, including *National Medical Enterprises, Barcelo, Huie v. DeShazo, and Anderson Producing v. Koch Oil.*

- "Reserving Rights in Texas."  This was a speech given to a shade under 600 claims people at a seminar entitled "Law Update 1997."  The session was held on May 8, 1997 in Houston, and was sponsored by the law firm of Sheinfeld, Maley & Kay.  (TDI/CLE)

- "The Duty to Defend--Some Recent Texas Developments."  This was a speech to a continuing education meeting at the Austin Claims Association on April 16, 1997.  It concerned *Merchant's Fast Motor Lines, Griffith,* and *Head.*  (TDI/ICE)

- "Bad Faith Avoidance and the Claimsperson."  I was a panelist on a program with Phil Maxwell and Brent Cooper at a state approved continuing education program for adjusters sponsored by Cooper,  Aldous, and Scully.  The program occurred on March 21, 1997.  (TDI/ICE)

- "The Tripartite Relationship." I was a speaker/panelist on a program devoted to the law governing insurance defense lawyers.  The session was part of the 9th annual mid-year meeting of the Insurance Coverage Litigation Committee of the American Bar Association's Section of Litigation in Tucson, Arizona.  The session occurred on Saturday, March 15, 1997.

- "The ALI Restatement (Third) of the law of Lawyering: Its Impact on the Profession." This speech concerned recent Texas Supreme Court cases on the law governing lawyers and how they fit with the *Restatement.*  Instead of presenting a prepared text, I distributed several sections of the *Restatement.*  I gave the speech on Friday, Feb. 28, 1997 at the South Texas College of Law "Advanced Civil Trial Law Conference."

- "Reimbursement of Defense Expenses -- A Moot Court." I was assigned to write a brief and argue for the policyholder. The exercise was conducted at the Midwinter meeting of the Insurance Coverage section of TIPS on February 21, 1997.

- "Grievance and Malpractice Avoidance." This hour-long (or so) speech is part of some programs sponsored by The Texas Center for Legal Ethics and Professionalism.  One course is tantamount to required by the Supreme Court and by the State Bar for new lawyers.  The entire program is entitled "A Guide to the Basics." Other times, the speech is given as a part of a CLE program entitled "The Ethics Course."  This course resembles the other one, but is designed for older lawyers, although some young ones come.  The speech has

evolved. No paper is distributed with it. Versions of this speech have been given on November 16, 1996 (Baylor), January 22, 1997 (St. Marys), February 21, 1997 (UT-LS--Austin), April 12, 1997 (Baylor), September 24, 1997 (St. Mary's), September 19, 1997 (Austin), October 18, 1997 (Baylor), January 16, 1998 (South Texas College of Law [STCL]--Houston), January 23, 1998 (Austin), February 14, 1998 (Baylor), September 23, l998 (Trinity), October 2, l998 (Texas Tech), October 16, 1998 (SMU), and October 17, 1998 (Baylor), October 23, 1998 (Austin), February 5, 1999 (STCL-Houston), March 18, 1999 (Trinity), March 20, 1999 (Baylor), March 26, 1999 (St. Mary's), September 17, 1999 (Texas Tech), October 15, 1999 (Houston--STCL), November 4, 1999 (Austin), November 18, 1999 (Trinity), February 25, 2000 (Houston--STCL), March 2, 2000 (Texas Tech). April 7, 2000 (Austin), October 6, 2000 (Austin), November 10, 2000 (Houston--STCL), December 14, 2000 (SBOT Law Center--Austin), February 10, 2001 (Baylor--Waco), October 5, 2001 (SBOT-Austin), November 30, 2001 (Houston- STLS), January 18, 2002 (Austin), February 15, 2002 (Houston--STCL), February 22, 2002 (Lubbock-Texas Tech) [Experimental-Ironic Version], March 22, 2001 (San Antonio), April 19, 2002 (Houston-STCL), August 2, 2002 (Houston-STCL); October 4, 2002 (Austin-State Bar of Texas); October 18, 2002, Austin-LBJ School); November 15, 2002 (Dallas-SMU), December 13, 2002 (Houston-STCL), February 7, 2003 (Austin-LBJ Library), February 21, 2003 (Houston-STCL), November 7, 2003 (Austin-LBJ Library), December 5, 2003 (Houston-STCL), February 27, 2004, March 26, 2004 (Dallas, Texas.

- "Archetypal Ethical Problems and the Youngish Lawyer." I was a panelist at an American Inns Court Meeting in Austin (Justice Garwood Chapter) during the Winter of 1996/1997.

- "Liability Insurance Contracts: A Primer." This speech was delivered to the 1996 Insurance Law Institute sponsored by the Law School of the University of Texas at Austin. The speech was given on September 26, 1996, and it was accompanied by a 57-page, single spaced paper. At this conference, I was also the presiding officer for the closing session.

- "Litigating With Insurance Companies." This speech was delivered twice at the 1996 Meeting of the State Bar of Texas in Dallas: Once on June 19, 1996, and once on June 20, 1996. It was part of the "CLE Super Store." The speech was accompanied by an 8-page, single-spaced outline on the use of declaratory judgments in insurance litigation.

- "Sex, Drugs, and Insurance Disputes." This speech was delivered twice at the 1996 Ultimate Insurance Seminar. The State Bar sponsored this program once in Dallas on March 1, 1996 and once in Houston on March 8, 1996.

- "The Claimsperson's Reliance Upon Coverage Opinions of Counsel and the Company's Bad Faith Exposure -- Some Practical Considerations." I gave a speech to a state accredited continuing adjuster education program presented by Cooper, Aldous and Scully on February 8, 1996. (TDI/ICE)

- "Texas Insurance Update: 1994-95." This speech was delivered to the 1995 Conference on Products Liability sponsored by the Law School of the University of Texas on November 2-3, 1995. The speech was based, in part, on a paper by Professor Mark Gergen, although the organization of the speech varied considerably from the plot-line of the paper and added discussions of several new cases.

- "Insurance Coverage Opinions." This speech was delivered to the 3rd Annual "Advanced Issues in Insurance Bad Faith Litigation" CLE program at South Texas Law School on October 12-13, 1994. The speech was accompanied by a 66 page contribution to the program loose-leaf book. Another version of this speech was given to the Appellate Section of the Dallas Bar Association on April 20, 1995.

- "Authority and the Common Law: Holdings, Dicta, and Miracles -- Reflections on Meta-Doctrine and Appellate Advocacy." This speech was delivered to the Appellate Section of the Dallas Bar Association on May 21, 1992. The accompanying hand-out was a new 33 page, single-spaced essay which discussed the nature of precedent in Texas.

- "Closing Arguments: Rhetoric and Rationality." This speech was delivered to the Dallas Bar Association on March 13, 1992 at a Friday Clinic. The hand-out was a new 78 page essay below.

- "Insurance Fraud in the Age of Bad Faith." This speech was given to the 1991 Fall Seminar of the Texas Independent Adjusters Association. It was accompanied by a 12 page outline plus a statutory appendix concerning 21.55 and 21.21. James Speier was listed as the second author.

- "The Unruly Judge." This speech was delivered to the Dallas Bar Association on November 8, 1991 at a Friday Clinic. There was a hand-out. The paper was also presented and discussed at a Dallas Chapter meeting of the American Inns of Court, on November 13, 1991, where I appeared as a panelist.

- "Aggressive Good Faith." This was a program designed for claims people on the Texas law of insurer good faith. It usually lasted two or three hours and involves the distribution of a hand-out, which consisted of an outline and a series of exhibits. The outline was approximately 20 pages long, and the exhibits were approximately 40 pages long. The hand-out passed through several revisions. I was the architect and principal author, but I assisted by one or two associates. The speech was given to the Dallas/Ft. Worth Area Claims Council in 1991 and to several different insurance companies during 1990-91. Another version was given in March 1992, to the Litigation Section of the Dallas Association of Legal Assistants. Subsequent versions of the speech, together with the hand-out were distributed to various insurance companies for their continuing education meetings. (TDI/ICE)

- "Handling the Unruly Judge," National Association of Railroad Trial Counsel Annual Meeting. Delivered twice: February 19, 1991 (Naples, Florida) and May 4, 1991 (Pebble Beach, California). The hand-out was a 80 page, 1-1/2 space original paper written by Quinn and Caldwell.

- "Pollution and Property Policies," CLE Symposium: ENVIRONMENTAL LAW AND INSURANCE, Executive Management Institute. Houston, Texas. October 1990. A 33 page, single-spaced outline was included in the CLE ring-binder.

- "Ambiguity, Sophistication, and the Limited Pollution Exclusion." Environmental Insurance Law Institute, Executive Management Institute. Houston, Texas. April 1991. An 89 page, space-and-a-half paper was included in the CLE ring binder. That paper was written by Quinn and Caldwell.

- "Post-Employment Agreements Not to Compete." RECENT DEVELOPMENTS IN BUSINESS TORTS, Southern Methodist University. November 19, 1989. A 109 page, single-spaced typescript was included in the CLE manual.

- "Quinn on Closing." National Association of Railroad Trial Counsel Annual Meeting. Delivered twice: February 1989 (Palm Beach Gardens, Florida) and June 1989 (Pebble Beach, California). A revised version of the speech was published in 35 THE CHRONICLE 74 (1990).

- At various times from the mid-1980's through the early 1990's, I participated a half-dozen times, or so, in teaching NITA Trial Advocacy courses both in Minnesota and in Texas. This involved providing practical critique and instruction. (I took the course myself before I participated in teaching it.)